1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JOHN L. BARBER, SB# 160317
2     E-Mail: barber@lbbslaw.com
   KENNETH D. WATNICK, SB# 150936
3     E-Mail: watnick@lbbslaw.com
   SHAWNA T. RASUL, SB# 252201
4     E-Mail: rasul@lbbslaw.com
   SONJA PAVLOV, SB# 261053
5     E-Mail: pavlov@lbbslaw.com
   221 North Figueroa Street, Suite 1200
6  Los Angeles, California 90012
   Telephone: (213) 250-1800
7
   *Attorneys for MONTE CAHN, an individual*
8

9

10              UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 MONTE CAHN, an individual, | ) CASE NO.  CV11-03800 SVW (AGRx) |
| 14 | ) **FIRST AMENDED COMPLAINT** |
| Plaintiff, | ) **FOR:** |
| 15 | ) |
| v. | ) **1)  BREACH OF CONTRACT -** |
| 16 | ) **MANAGEMENT INCENTIVE** |
| OVERSEE.NET, a California | ) **PLAN** |
| 17 corporation; JEFF KUPIETZKY, an | ) **2)  BREACH OF CONTRACT -** |
| individual; LAWRENCE NG, an | ) **COMMISSION PLAN** |
| 18 individual; and Does 1 through 10 | ) **3)  BREACH OF CONTRACT -** |
| | ) **RESTAURANTS.COM** |
| 19 Defendants. | ) **4.)  BREACH OF THE COVENANT** |
| | ) **OF GOOD FAITH AND FAIR** |
| 20 | ) **DEALING** |
| | ) **5)  ACCOUNTING** |
| 21 | ) **6)  INTENTIONAL** |
| | ) **MISREPRESENTATION** |
| 22 | ) **7)  NEGLIGENT** |
| | ) **MISREPRESENTATION** |
| 23 | ) **8)  CONVERSION** |
| | ) **9)  UNFAIR COMPETITION** |
| 24 | ) **UNDER CAL. BUSINESS &** |
| | ) **PROFESSION CODE § 17200** |
| 25 | ) |

26

27

28

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4834-6011-6233.1

FIRST AMENDED COMPLAINT

1    Plaintiff Monte Cahn alleges for his Complaint against Defendants
2  Oversee.net, Jeff Kupietzky and Lawrence Ng (collectively "Defendants") as
3  follows:

4                    **JURISDICTION AND VENUE**

5    1.    This Court has diversity jurisdiction of this action under 28 U.S.C. §
6  1332, in that there is complete diversity of citizenship between the parties, and the
7  amount in controversy exceeds the sum or value of $75,000, exclusive of interest and
8  costs.

9    2.    Venue is proper in the Central District under 28 U.S.C. § 1391(a) in that
10  one or more of the defendants reside in this judicial district, and in particular, in the
11  Court of Los Angeles, and a substantial part of the events giving rise to the claim
12  occurred in this district.

13                         **PARTIES**

14    3.    Plaintiff Monte Cahn ("Cahn" or "Plaintiff") is, and at all times
15  mentioned was, an individual residing in Lauderdale by the Sea, Florida.

16    4.    Defendant Oversee.net ("Oversee") is, and at all times mentioned was, a
17  corporation, organized and existing under the laws of the State of California, with its
18  principal place of business in Los Angeles, California.  Cahn is informed and
19  believes that Oversee is a wholly owned subsidary of ODN Holding Corporation
20  ("ODN").

21    5.    Defendant Jeff Kupietzky ("Kupietzky") is, and at all times mentioned
22  was, an individual residing in California.  Kupietzky is the Director, Chief Executive
23  Officer and President of Oversee.

24    6.    Defendant Lawrence Ng ("Ng") is, and at all times mentioned was, an
25  individual residing in California.  Ng is the Chairman of the Board and Co-Founder
26  of Oversee.

27    7.    The true names and capacities, whether individual, corporate, associate
28  or otherwise, of the defendants named herein as Does 1 through 100, are unknown to

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4834-6011-6233.1                          -2-

1  Cahn at this time.  Cahn is informed and believes that each of these fictitiously
2  named defendants is in some manner responsible for the events and damages alleged
3  herein and will seek leave of court to amend this Complaint to show the true names
4  and capacities when the same have been ascertained.

5                          **FACTS AND BACKGROUND**

6      8.    Cahn is one of the leading pioneers of the domain name selling, valuing,
7  and auction concept, starting one of the first online domain brokerage businesses on
8  the Internet in 1996.

9      9.    Cahn formed Domain Systems, Inc. d/b/a Moniker.com ("Moniker") in
10  1999.  Moniker is a web-based service that provides users a streamlined interface to
11  search for, register and manage their domain names.  It provides domain sales,
12  brokerage, registration of domains, domain traffic monetization and parking, drop
13  and expired name back order and purchasing services, and domain management and
14  asset management services.

15      10.   Cahn successfully managed and operated the business as the sole owner
16  until 2005, at which time Cahn sold Moniker to Seevast Corp. ("Seevast").  Cahn
17  remained CEO and maintained management responsibilities for the company until
18  2007.  Through his work with Moniker, Cahn became a highly respected figure in the
19  domain industry.

20      11.   Oversee specializes in monetizing, registering, selling and developing
21  domain names through its various subsidiaries, including SnapNames, DOMAINfest,
22  LowFares.com, ShopWiki.com, AboutAirportParking.com and CreditCards.org.

23      12.   In or around 2007, Oversee approached Seevast and Cahn with an offer
24  to purchase Moniker.  The parties engaged in extensive negotiations.  However,
25  Oversee stated that it would not purchase Moniker unless Cahn, as one of the leaders
26  in the industry, agreed to join Oversee for at least three years after the sale.  Cahn's
27  agreement to join Oversee was an explicit condition of the agreement to purchase
28  Moniker from Seevast.

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

1      13.    Kupietzky and Ng were primarily responsible for the negotiations on

2 behalf of Oversee and for making several statements, the purpose of which were to

3 induce Cahn to join Oversee after the merger.  These statements were made in or

4 around the year 2007 while Oversee and Seevast were negotiating the terms of their

5 purchase agreement.

6      14.    Specifically, in or around December 2007, Kupietzky promised that,

7 post merger, Moniker would get adequate marketing and public relations assistance

8 from Oversee. Kupietzky also claimed that Oversee could and would centralize the

9 operations of both Moniker and Oversee so that there was a seamless integration of

10 software and a uniform way to respond to intellectual property disputes, litigation,

11 audit and survey responses and complaints from customers.

12      15.    In or around December 2007, Kupietzky also promised that there would

13 be integration and cross-selling potential between all of Oversee's subsidiaries.  This

14 included Moniker's ability to cross-promote and advertise to the customers of each

15 Oversee entity.

16      16. During the merger discussions, Ng made statements which concluded that

17 Moniker, pre-merger, was "understaffed" and its employees "overworked."  Based

18 on this assessment, Ng promised that the merger with Oversee would provide

19 Moniker with the resources and staffing it needed to flourish in the market.

20      17.    During the negotiations, its was determined and agreed upon that, if

21 Cahn were to join Oversee, he would serve as the President of Moniker, and would

22 have the normal duties, responsibilities, functions and authority as are normally

23 associated with and appropriate for such position.

24      18.    During negotiations it was also determined and agreed upon that Cahn

25 would report directly to Ng, who was then the CEO, ensuring Cahn had adequate

26 authority and dominion to carry out and achieve Moniker's performance goals within

27 Oversee's infrastructure.  Because Cahn had a great professional relationship with

28 Ng, it was important for Cahn that Ng be the individual to which he would report.

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

19.     As an additional inducement for Cahn to join Oversee.net, Oversee, through Ng and Kupietzky, proposed a "Management Incentive Plan" ("MIP") whereby Cahn would be able to earn up to $13,000,000 through a goal oriented bonus structure.  The MIP was to be in effect from October 1, 2007 through December 31, 2010, and divided into three "determination periods."  The bonus structure set forth under the proposed MIP was based on Cahn's attainment of certain performance goals in four categories: the Registrar Business Segment, the Domain Sales Business Segment, the TrafficClub Business Segment, and Oversee EBITDA.  Cahn's performance was to be determined, in good faith, by the Oversee board of directors, and was based upon Oversee's Interim Financial Statements or the Determination Period Financial Statements.

20.     Ng and Kupietzky were primarily responsible for making the false representations and assurances to Cahn that he would be able to earn up to $13,000,000 in bonuses under the MIP.

21.     Kupietzky, on behalf of all defendants, represented that the overall Oversee EBITDA in the MIP would be adjusted, either up or down, from the time the merger took place throughout the term of the MIP, and those calculations would be the controlling benchmarks.

22.     Based on Defendants' representations about Moniker's ability to successfully integrate with Oversee and assurances that Cahn would have the ability to earn up to $13,000,000 in payments under the MIP, Cahn was induced to forgo other lucrative business opportunities, and continue in his management and oversight of Moniker.  The parties reached a mutual agreement regarding the terms of the sale of Moniker to Oversee on or around December 14, 2007.

23.     Cahn is informed and believes, and on the basis of such information and belief alleges that sometime on or around December 2007, but on a date presently unknown to Cahn, Defendants formed the intent, and actively concealed and misrepresented the true fact that they intended to fully subjugate Moniker and Cahn,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1  taking for themselves the full benefit of Moniker's great public reputation and
2  industry value at the time of merger while simultaneously jettisoning and reducing
3  Cahn's staff, influence and ability to properly manage and lead Moniker. In doing
4  so, Defendants intended to and did make it impossible for Cahn to obtain benefits
5  under the MIP.

6      24.    Post merger, Defendants took the following affirmative actions, the
7  intent and result of which was to deny Cahn the ability to obtain benefits under the
8  MIP:

9          A.    While acting as President of Moniker at Oversee, Oversee
10                delegated Cahn the additional responsibility of running the
11                SnapNames and DomainSponsor divisions of Oversee, and
12                removed Cahn's oversight and control from the Registrar
13                Business Segment. No explicit changes were made to modify
14                Cahn's performance goals under the MIP, as required under the
15                terms of the MIP, to take into account the additional
16                responsibilities that Cahn would incur, and the changes that the
17                additional subdivisions would have on Monikers' EBITDA.
18                However, Defendants had, at a minimum, an implied obligation to
19                factor these additional responsibilities into Cahn's performance
20                goals;

21          B.    Oversee improperly diverted substantial revenues and profits from
22                Moniker to other subsidiaries of Oversee;

23          C.    Cahn's staff at Moniker was reduced by more than 33% despite
24                Ng's promises that Moniker would be infused with resources to
25                alleviate its pre-merger under staffing issues;

26          D.    Oversee improperly and incorrectly reported Moniker's Selling,
27                General & Administrative Expenses, which had the effect of
28                making it seem as if Moniker underperforming;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

E.   Oversee severely restrained the marketing and public relations budget available to Moniker, reserving those funds almost exclusively for Oversee's use despite Kupietzky's promises to provide Moniker with adequate support in this area. This negatively impacted Cahn and Moniker's abilities to reach their performance goals;

F.   Oversee placed severe restrictions on Moniker's ability to transact in adult domain names which, pre-merger, comprised a substantial portion of Moniker's business;

G.   Moniker was explicitly denied the opportunity to cross-market to other Oversee subsidiaries' customers despite Kupietzky's promises that the Oversee business units would work together in this regard;

H.   Oversee, through Ng and Kupietzky, purposely delayed implementing infrastructure and technology integration between Moniker and Oversee which resulted in Moniker's inability to fully monitor, account for and measure its own performance levels;

I.   Oversee implemented a nine month freeze on development of new products and services post-merger which hampered Moniker's ability to adjust to their new role within Oversee's infrastructure and keep up with the inherently quick-paced technological environment in which they all worked;

J.   Despite the agreements between the parties, Cahn's reporting relationship was changed several times throughout his tenure with Oversee so that he was no longer reporting to the CEO. This had the effect of relegating Cahn to a non-senior executive position and stripping Cahn of his ability to effectively manage Moniker;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-6011-6233.1

-7-

FIRST AMENDED COMPLAINT

K.   As part of the change in Cahn's reporting, Cahn had to go through Kupietzky and other individuals in order to approve expenses for Moniker's employees and pricing some of the products Moniker offered.  These tasks are part of the normal duties, responsibilities, functions and authority normally associated with and appropriate for Cahn's position as President of Moniker and when they were taken away, Cahn no longer had the full ability to perform in his role as President;

L.   Oversee stalled and ultimately did not obtain a California escrow license for Moniker so that it could legally perform its auctions in California, the state in which Oversee was based.  This adversely affected Moniker's ability to earn revenue through its live domain auctions;

M.   Oversee drastically reduced Moniker's staff training budget to less than 1/10 of what Cahn needed to properly invest in one of Moniker's largest commodities - its employees;

N.   Post-merger, and due to the conduct delineated above, customers began to lose confidence in Moniker, sending numerous complaints and even taking their business elsewhere.  Despite Cahn's repeated complaints to Defendants about the lack of commitment from Oversee to maintaining the integrity of Moniker's business operations, Defendants' intentional actions had the effect of causing Moniker to lose customers, negatively affecting Cahn and Moniker's abilities to achieve their performance goals.

25.   Additionally, knowing Cahn wanted to work for Ng directly due to their professional relationship, Oversee and Ng represented to Cahn that he would report directly to Ng post-merger.  However, Cahn is informed and believes, and on that

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4834-6011-6233.1

-8-

1   basis alleges that at the time that representation was made, Ng knew that he would be

2   stepping down as CEO in the very near future and was already looking for his

3   replacement. Had Cahn known this fact he would not have agreed to work with

4   Oversee.

5       26.    Due to Defendants' intentional acts as outlined above, Cahn was

6   prevented from earning benefits under the MIP. Cahn is informed and believes, and

7   on the basis of such information and belief alleges that in 2009 Oversee was within

8   at least seventy percent of its yearly EBITDA goal, entitling Cahn, at a minimum, to

9   the Oversee EBITDA award for 2009 under the MIP. In direct violation of the MIP,

10  Oversee failed to provide Cahn his award.

11      27.    Cahn is informed and believes, and on the basis of such information and

12  belief alleges that in 2010 Oversee met its yearly EBITDA goal, entitling Cahn, at a

13  minimum, to the Oversee EBITDA award for 2010 under the MIP. In direct

14  violation of the MIP, Oversee failed to provide Cahn his award. During his

15  employment term with Oversee Cahn did not receive one cash award under the MIP.

16      28.    On or around June 4, 2010, Oversee offered Cahn an additional form of

17  compensation through a commission plan ("Commission Plan"). Oversee's goal was

18  to leverage Cahn's skill set in order to achieve their corporate Gross Profit and

19  Revenue goals for 2010. Oversee utilized Cahn's expertise to close individual sales

20  transactions with particular reference to high-value names sales, and Cahn was to

21  receive a pre-determined percentage based on the prescribed scale. This

22  compensation was to be in addition to that delineated in the MIP.

23      29.    Through their improper diversion of revenue and accounting errors,

24  Defendants denied Cahn full compensation under the Commission Plan.

25      30.    During his employment term with Oversee Cahn performed all of his

26  duties and responsibilities as required under both the terms of his employment, and

27  under the conditions of the MIP, the Commission Plan and the additional

28  responsibilities bestowed upon him, beyond those required under the terms of the

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**

4834-6011-6233.1                                   -9-

1  contracts.

2      31.   Cahn's employment with Oversee expired on December 31, 2010.  Cahn

3  elected to not renew his employment agreement with Oversee.

4                        **FIRST CLAIM FOR RELIEF**

5  **BREACH OF CONTRACT - 2007 MANAGEMENT INCENTIVE PLAN**

6                            **(Against Oversee)**

7      32.   Cahn refers to each of the foregoing paragraphs in their entirety, and

8  hereby incorporates them by reference as though fully set forth herein.

9      33.   Cahn entered into a valid, enforceable, written 2007 Management

10  Incentive Plan on December 14, 2007, which provided Cahn with additional cash

11  compensation upon the attainment of the delineated performance goals.

12      34.   Pursuant to paragraph 10 of the contract, the MIP contains the entire

13  agreement between the parties with respect to Cahn's supplemental compensation for

14  the attainment of his performance goals, and supercedes all prior agreements or

15  understandings, whether written or oral, between the parties relating to such subject

16  matter.

17      35.   Cahn performed all the conditions, covenants and promises required on

18  his part to be performed, to the extent his duties and obligations have not been

19  excused, frustrated or prevented by the wrongful acts and omissions of Oversee.

20      36.   Oversee's conduct, as alleged herein, constitutes a material breach of the

21  MIP in that Oversee has (I) failed to pay awards under the MIP for each

22  determination period upon attainment of the performance goals, as established by the

23  contract; (ii) failed to determine, in good faith, the attainment of the performance

24  goals as set forth in the contract; (iii) failed to make the requisite amendments to the

25  contract, and failed to take into consideration, the acquisition of new business

26  segments and the change in management and control of other business segments in

27  the determination of the performance goals under the MIP; (iv) intentionally took

28  actions for the sole purpose of manipulating the Registrar EBITDA, Oversee

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4834-6011-6233.1                           -10-

1   EBITDA, Domain Sales EBITDA and the Gross Profit with respect to the Traffic
2   Club Business Segment; (v) improperly diverted revenue and profit from Moniker to
3   SnapNames; and (vi) improperly diverted revenue from Moniker to DomainSponsor.

4       37.    As a direct, actual and proximate consequent and result of the conduct
5   alleged herein, Cahn has suffered, and continues to suffer, significant damages in an
6   amount to be proven at trial, but that exceeds $75,000, together with interest thereon
7   at the legal rate.

8                          **SECOND CLAIM FOR RELIEF**
9                **BREACH OF CONTRACT - COMMISSION PLAN 2010**
10                                **(Against Oversee)**

11      38.    Cahn refers to each of the foregoing paragraphs in their entirety, and
12  hereby incorporates them by reference as though fully set forth herein.

13      39.    Cahn entered into a valid, enforceable, written Commission Plan on
14  May 24, 2010, which provided Cahn a reward and incentive for his sale of both third
15  party and owned and operated domain names.  This plan was in addition to the MIP
16  and the ICP.

17      40.    Cahn performed all the conditions, covenants and promises required on
18  his part to be performed, to the extent his duties and obligations have not been
19  excused, frustrated or prevented by the wrongful acts and omissions of Oversee.

20      41.    Oversee's conduct, as alleged herein, constitutes a material breach of the
21  Commission Plan in that Oversee has failed to pay Cahn his rewards pursuant to the
22  terms of the Commission Plan.  Additionally, there were deals that Cahn closed
23  before his employment ended to which he is due commission pursuant to the
24  Commission Plan.  Oversee's failure to pay these commissions constitutes a material
25  breach of the Commission Plan.

26      42.    As a direct, actual and proximate consequent and result of the conduct
27  alleged herein, Cahn has suffered, and continues to suffer, significant damages in an
28  amount to be proven at trial, but that exceeds $75,000, together with interest thereon

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-6011-6233.1                        -11-
                                FIRST AMENDED COMPLAINT

1 | at the legal rate.

2 | ### THIRD CLAIM FOR RELIEF

3 | ### BREACH OF CONTRACT - RESTAURANTS.COM

4 | #### (Against Oversee)

5 | 43.    Cahn refers to each of the foregoing paragraphs in their entirety, and
6 | hereby incorporates them by reference as though fully set forth herein.

7 | 44.    Cahn and Oversee entered into a valid and binding agreement that upon
8 | the closing of Restaurants.com sale, Cahn would be entitled to a commission
9 | payment as an outside broker, and was to receive fifty-percent of the payable
10 | commission. The payable commission on Restaurants.com was negotiated at 20
11 | percent of the gross profit of the sale. Cahn's commission agreement for the sale of
12 | Restaurants.com was confirmed by Defendants, including confirmation from Craig
13 | Snyder, General Manager of Oversee, in a February 9, 2011 email from Snyder to
14 | Cahn.

15 | 45.    Cahn performed all the conditions, covenants and promises required on
16 | his part to be performed, to the extent his duties and obligations have not been
17 | excused, frustrated or prevented by the wrongful acts and omissions of Oversee.

18 | 46.    Cahn successively brokered the sale of Restaurants.com, and the deal
19 | closed in February 2011. Oversee failed to provide Cahn his commission payment.

20 | 47.    Oversee's conduct, as alleged herein, constitutes a material breach of the
21 | contract in that Oversee has failed to pay Cahn his commission pursuant to the terms
22 | of the agreement.

23 | 48.    As a direct, actual and proximate consequent and result of the conduct
24 | alleged herein, Cahn has suffered, and continues to suffer, significant damages in an
25 | amount to be proven at trial, but that exceeds $75,000, together with interest thereon
26 | at the legal rate.

27 | ////

28 | ////

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-6011-6233.1

-12-

FIRST AMENDED COMPLAINT

## FOURTH CLAIM FOR RELIEF

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Oversee)

49.   Cahn refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

50.   The MIP and the Commission Plan constituted valid and enforceable contracts between Cahn and Oversee. In both the MIP and the Commission Plan there exists an implied covenant of good faith and fair dealing that neither party will do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

51.   Cahn was induced to enter into the MIP as part of the sale of Moniker to Oversee, under the representation and belief that he would earn a certain level of income under the MIP. Cahn entered into the MIP in trust that Oversee would, in good faith, abide by the terms of the contract, deal with Cahn in good faith, and not do anything to deprive Cahn of his benefits under the MIP. Based on this trust, Cahn forwent other valuable business opportunities in exchange for the benefits he was to receive under the MIP, and expended his time, money and effort in maintaining the continued success of Moniker under the ownership of Oversee.

52.   Cahn is informed and believes that Oversee misrepresented its intent to provide Cahn cash awards under both the MIP and the Commission Plan. Cahn is informed and believes that Oversee used the MIP to induce Cahn to join Oversee by conditioning the sale of Moniker upon his continued management and oversight of Moniker, and never had the intent to distribute his additional income under the MIP. Cahn is informed and believes that Oversee also used the Commission Plan to induce Cahn to sell domain names for the benefit of Oversee without any intent to pay Cahn his commission. Had Cahn known the true intent of Oversee, Cahn would not have agreed to assist in the sale of Moniker, Cahn would not have agreed to enter into the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-6011-6233.1                               -13-
FIRST AMENDED COMPLAINT

1  MIP, and Cahn would not have expended his valuable time and energy into
2  completing valuable domain name sales for the benefit of Oversee while foregoing
3  other valuable business opportunities.

4      53.    Based on the conduct alleged above, among other things, Oversee
5  breached its duty of good faith and fair dealing under the MIP, thereby depriving
6  Cahn of his benefits under the contracts.

7      54.    As a direct, actual and proximate consequent and result of the conduct
8  alleged herein, Cahn has suffered, and continues to suffer, significant damages in an
9  amount to be proven at trial, but that exceeds $75,000, together with interest thereon
10 at the legal rate.

11                        **FIFTH CLAIM FOR RELIEF**

12                            **ACCOUNTING**

13                          **(Against Oversee)**

14     55.    Cahn refers to each of the foregoing paragraphs in their entirety, and
15 hereby incorporates them by reference as though fully set forth herein.

16     56.    Oversee represented to Cahn that he would have the ability to receive up
17 to $13,000,000 in payments under the MIP.  Unbeknownst to Cahn at the time,
18 Oversee never had the intent to pay Cahn under the MIP.  Oversee also wrongfully
19 interfered with Cahn's ability to achieve his performance goals under the terms of MI
20 P, ensuring that he would not collect his bonus payments under the MIP.

21     57.    Had Cahn known Oversee's true intent at the time the contract was
22 entered, Cahn would not have agreed to the assist in the sale of Moniker by entering
23 into the MIP, and maintaining his position as President of Moniker, for the benefit of
24 Oversee.

25     58.    Cahn and Oversee also entered into a Commission Plan on May 24,
26 2010 which provided Cahn a reward and incentive for his sale of both third party and
27 owned and operated domain names.  Unbeknownst to Cahn at the time, Oversee
28 never had the intent to fully pay Cahn under the Commission Plan.

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4834-6011-6233.1                          -14-
                          FIRST AMENDED COMPLAINT

59.   Had Cahn known Oversee's true intent at the time the contract was entered, Cahn would not have agreed to expend valuable time and energy in consummating the domain sales for the benefit of Oversee while foregoing other valuable business opportunities.

60.   Cahn is informed and believes that he is entitled to cash awards pursuant to the MIP and the Commission Plan. The parties mutually agreed to the terms of the MIP and the Commission Plan, and Oversee failed to abide by the express terms of the contracts. Oversee has failed to make any payments to Cahn under either the MIP or the Commission Plan.

61.   Cahn is informed and believes, and on the basis alleges that he cannot ascertain what is rightfully due and owed to him without an accounting.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENTATION
### (Against All Defendants)

62.   Cahn refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

63.   During the negotiations, Oversee, Kupietzky and NG represented to Cahn that he would have the ability to earn up to $13,000,000 in payments under the MIP. Based on this representation and belief, Cahn agreed to assist Oversee in the purchase of Moniker, and agreed to continue in the management and oversight of Moniker.

64.   Cahn is informed and believes, and on the basis alleges that at some point unknown to Cahn, but during the negotiations, Oversee, Kupietzky and Ng formed the intent to withhold compensation to Cahn under the MIP, and only made such a representation to induce Cahn to join Oversee and assist in the purchase of Moniker.

65.   In reliance upon Oversee's representation, Cahn entered into the MIP as a condition of the sale of Moniker to Oversee, and agreed to continue in the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
4834-6011-6233.1                    -15-
FIRST AMENDED COMPLAINT

1  management and oversight of Moniker under the understanding and belief that he
2  was to receive additional compensation during his employment with Oversee in the
3  form of cash awards under the MIP.

4        66.   Cahn never received any payment from Oversee under the MIP.

5        67.   Oversee, Kupietzky and Ng carried out their deliberate scheme to
6  defraud Cahn out of his award payments by, amongst other things, (I) failing to
7  determine, in good faith, Cahn's attainment of his performance goals as set forth in
8  the MIP; (ii) failing to adjust the overall Oversee EBITDA for all three years of the
9  MIP; (iii) intentionally imposing upon Cahn the additional responsibility of
10 managing SnapNames and DomainSponsor; (iv) failed to make the requisite
11 amendments to the contract, and failed to take into consideration, the acquisition of
12 new business segments and the change in management and control of other business
13 segments in the determination of the performance goals under the MIP; (v) moving
14 Cahn down the corporate hierarchy and altering the chain of command; (vi)
15 intentionally manipulating the Registrar EBITDA, Oversee EBITDA, Domain Sales
16 EBITDA and the Gross Profit with respect to the Traffic Club Business Segment;
17 (vii) improperly diverted revenue and profit from Moniker to SnapNames; and (viii)
18 improperly diverted revenue from Moniker to DomainSponsor; (ix) intentionally
19 withholding resources from Moniker; (x) cutting the size of Moniker's staff; (xi)
20 Cutting off access to streams of business such as the adult industry; (xii) failing to
21 timely integrate Moniker into Oversee's infrastructure; (xiii) stripping Cahn of his
22 ability to manage Moniker by requiring Cahn to get permission for expenses and
23 pricing of products; (xiv) promising Cahn the ability to report and work directly with
24 Ng when Ng already determined he was stepping down as CEO and additional
25 conduct as delineated herein.

26       68.   Cahn is informed and believes, and on the basis alleges that the conduct
27 of Oversee, Kupietzky and Ng was carried out as a scheme to induce Cahn to join
28 Oversee, and to defraud Cahn out of the full amount of his entitlements under the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-6011-6233.1                    -16-
                        FIRST AMENDED COMPLAINT

1  MIP. Such conduct was oppressive, fraudulent, and malicious, and subjected Cahn
2  to unjust hardship in a willful and conscious disregard of his rights, warranting
3  exemplary and punitive damages in accordance with *California Civil Code* section
4  3294.

5      69.    As a direct, actual and proximate consequent and result of the conduct
6  alleged herein, Cahn has suffered, and continues to suffer, significant damages in an
7  amount to be proven at trial, but that exceeds $75,000, together with interest thereon
8  at the legal rate.

**EIGHTH CLAIM FOR RELIEF**

**NEGLIGENT MISREPRESENTATION**

**(Against All Defendants)**

12     70.    Cahn refers to each of the foregoing paragraphs in their entirety, and
13  hereby incorporates them by reference as though fully set forth herein.

14     71.    During the negotiations, Oversee, Kupietzky and Ng represented to
15  Cahn that he would have the ability to earn up to $13,000,000 in payments under the
16  MIP. Based on this representation and belief, Cahn agreed to assist Oversee in the
17  purchase of Moniker, and agreed to continue in the management and oversight of
18  Moniker.

19     72.    Cahn is informed and believes, and on the basis alleges that the
20  representations made in paragraphs 14-16, 18, 19, 21, 24 and 25 were made without
21  any reasonable ground for believing that the representations were true.

22     73.    Cahn is informed and believes, and on the basis alleges that Oversee,
23  Kupietzky and Ng only made such representations in order to induce Seevast to sell
24  Moniker at a reduced rate and to induce Cahn to agree to work for Oversee.

25     74.    In reliance upon Oversee's representation, Cahn entered into the MIP as
26  a condition of the sale of Moniker to Oversee, and agreed to continue in the
27  management and oversight of Moniker under the understanding and belief that he
28  was to receive additional compensation during his employment term with Oversee in

4834-6011-6233.1                    -17-
                          FIRST AMENDED COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1    the form of cash awards under the MIP.

2      75.    Cahn never received any payment from Oversee under the MIP.

3      76.    Oversee, Kupietzky and Ng carried out their deliberate scheme to

4 defraud Cahn out of his award payments by, amongst other things, (I) failing to

5 determine, in good faith, Cahn's attainment of his performance goals as set forth in

6 the MIP; (ii) failing to adjust the overall Oversee EBITDA for all three years of the

7 MIP; (iii) intentionally imposing upon Cahn the additional responsibility of

8 managing SnapNames and DomainSponsor; (iv) failed to make the requisite

9 amendments to the contract, and failed to take into consideration, the acquisition of

10 new business segments and the change in management and control of other business

11 segments in the determination of the performance goals under the MIP; (v) moving

12 Cahn down the corporate hierarchy and altering the chain of command; (vi)

13 intentionally manipulating the Registrar EBITDA, Oversee EBITDA, Domain Sales

14 EBITDA and the Gross Profit with respect to the Traffic Club Business Segment;

15 (vii) improperly diverted revenue and profit from Moniker to SnapNames; and (viii)

16 improperly diverted revenue from Moniker to DomainSponsor; (ix) intentionally

17 withholding resources from Moniker; (x) cutting the size of Moniker's staff; (xi)

18 Cutting off access to streams of business such as the adult industry; (xii) failing to

19 timely integrate Moniker into Oversee's infrastructure; (xiii) stripping Cahn of his

20 ability to manage Moniker by requiring Cahn to get permission for expenses and

21 pricing of products; (xiv) promising Cahn the ability to report and work directly with

22 Ng when Ng already determined he was stepping down as CEO and additional

23 conduct as delineated herein.

24      77.    As a direct, actual and proximate consequent and result of the conduct

25 alleged herein, Cahn has suffered, and continues to suffer, significant damages in an

26 amount to be proven at trial, but that exceeds $75,000, together with interest thereon

27 at the legal rate.

28 ////

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-6011-6233.1      -18-
FIRST AMENDED COMPLAINT

1

## NINTH CLAIM FOR RELIEF

2

### CONVERSION

3

### (Against Oversee)

4      78.     Cahn refers to each of the foregoing paragraphs in their entirety, and

5  hereby incorporates them by reference as though fully set forth herein.

6      79.     Near the end of his employment with Oversee, Cahn discovered that he

7  had approximately 4,500 domain names which he personally owned that were mixed

8  up with Moniker's owned and operated names at the time of the merger.

9      80.     As the rightful owner of the domain names, Cahn is entitled to all

10  advertising revenue produced through parking the domains.

11      81.     When Cahn moved the Domain Name System of his owned and

12  operated domains, he discovered that Oversee was receiving the revenue from names

13  he personally owned.

14      82.     Cahn made repeated demands to Defendants for the information related

15  to the actual revenue earned from his owned names, to which there has been no

16  response.  As such, Oversee prevented Cahn from accessing and refused to return the

17  revenue earned from Cahn's personal property.

18      83.     As a direct, actual and proximate consequent and result of the conduct

19  alleged herein, Cahn has suffered, and continues to suffer, significant damages in an

20  amount to be proven at trial, but that exceeds $75,000, together with interest thereon

21  at the legal rate.

22

## TENTH CLAIM FOR RELIEF

23

### Unfair Competition under Cal. Business & Professions Code § 17200

24

### (Against Oversee)

25      84.     Cahn refers to each of the foregoing paragraphs in their entirety, and

26  hereby incorporates them by reference as though fully set forth herein.

27      85.     Oversee conditioned its purchase of Moniker on Cahn's continued

28  management and oversight of Moniker.  As an inducement for Cahn to join Oversee,


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1  Oversee represented to Cahn that he would have the ability to earn up to $13,000,000

2  in payments under the MIP. Cahn is informed and believes, and on the basis of such

3  information and belief alleges that Oversee never intended to abide by its obligations

4  under the MIP, and actively concealed and misrepresented such intent in order to

5  consummate the sale of Moniker. Based upon Oversee's representations Cahn

6  forewent other lucrative business opportunities, and instead entered into the MIP

7  under the representation and belief that he would earn a certain level of income under

8  the MIP.

9       86.    Cahn is informed and believes, and on the basis alleges that during the

10  determination periods of October 1, 2007 through December 31, 2010, Cahn satisfied

11  the conditions, as set forth in the MIP, entitling him to cash awards under the MIP,

12  and as such had a vested legal right to the ownership and possession of cash awards

13  in the amount specified under the terms of the MIP. Despite the satisfaction of his

14  obligations under the terms of the MIP, Cahn has not received any compensation

15  under the MIP.

16       87.    In a scheme to further the interests of Oversee, Oversee represented to

17  Cahn that he would have the ability to earn commission payments for the sale of

18  third party and owned and operated domain names under the Commission Plan.

19  Cahn is informed and believes, and on the basis of such information and belief

20  alleges that Oversee never intended to abide by its obligations under the Commission

21  Plan, and actively concealed and misrepresented such intent in order to induce and

22  incentivize Cahn to perform under the agreement. Had Cahn known the true intent

23  of Oversee, Cahn would not have expended his valuable time and energy into

24  consummating valuable domain name sales for the benefit of Oversee while

25  foregoing other valuable business opportunities.

26       88.    Cahn is informed and believes, and on the basis alleges that he satisfied

27  the conditions, as set forth in the Commission Plan, entitling him to commission

28  payments, and as such had a vested legal right to the ownership and possession of the

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

4834-6011-6233.1

-20-

FIRST AMENDED COMPLAINT

1  commission payments in the amount specified under the terms of the Commission
2  Plan. Cahn's entitlement to commission for the Restaurants.com sale is confirmed in
3  the February 9, 2011 email from Craig Snyder to Cahn. Despite the satisfaction of
4  his obligations under the terms of the Commission Plan, Cahn has not received any
5  payments under the contract.

6      89.    In a scheme to further the interests of Oversee and to induce Cahn to
7  join Oversee, Defendants falsely represented to Cahn that Moniker would be fully
8  staffed, would have access to Oversee's resources and would have adequate training
9  and marketing budgets. Defendants further falsely represented that Moniker's and
10 Oversee's infrastructure, software and technology would be promptly integrated,
11 assuring a merger which would not cause interruptions in Moniker's business
12 operations.

13     91.    Post-merger, and due to the conduct delineated above, customers began
14 to lose confidence in Moniker, sending numerous complaints and even taking their
15 business elsewhere. Numerous customers complained that the merger caused them
16 to lose revenue on their domains. Despite Cahn's repeated complaints to Defendants
17 about the lack of commitment from Oversee to maintaining the integrity of
18 Moniker's business operations, Defendants' intentional actions had the effect of
19 causing Moniker to lose customers, causing customers to lose revenue and negatively
20 affecting Cahn and Moniker's abilities to achieve their performance goals.

21     92.    The conduct as described herein constitutes unfair and fraudulent
22 business practices. Oversee intentionally mislead Cahn, who in turn unwittingly
23 mislead Moniker's employees and the general public about Oversee's intentions and
24 obligations towards Moniker post-merger. Due to these actions, both Moniker and
25 Cahn's public images and strong position in the industry have been negatively
26 affected.

27     89.    Such conduct, as delineated above, was oppressive, fraudulent, and
28 malicious, and subjected Cahn to unjust hardship in a willful and conscious disregard

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1  of his rights, warranting exemplary and punitive damages in accordance with

2  *California Civil Code* section 3294.

3      90.   As a direct, actual and proximate consequent and result of the conduct

4  alleged herein, Cahn has suffered, and continues to suffer, significant damages in an

5  amount to be proven at trial, but that exceeds $75,000, together with interest thereon

6  at the legal rate.

7  **PRAYER FOR RELIEF**

8      Wherefore, Cahn prays for judgment in his favor and against Defendants as

9  follows:

10      1.   For judgment in his favor, and against Defendants, for damages in an

11  amount to be proven at trial, but exceeding $75,000;

12      2.   For punitive damages in an amount to be determined by the trier of fact;

13      3.   For an accounting to determine the amounts due to Cahn under the

14  terms of the MIP, which would have been received by Cahn but for the wrongful

15  conduct of Defendants;

16      4.   For restitution of all wrongfully withheld amounts and disgorgement of

17  all ill-gotten profits, in an amount according to proof;

18      5.   For costs of suit;

19      6.   For prejudgment and post-judgment interest; and

20      7.   For such other relief as the Court may deem just and proper.

21  DATED: June 21, 2011        JOHN L. BARBER
22                             KENNETH D. WATNICK
23                             **LEWIS BRISBOIS BISGAARD & SMITH LLP**

24

25                             By /S/ John L. Barber

26                                John L. Barber
                              Attorneys for MONTE CAHN, an individual

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

1

## DEMAND FOR JURY TRIAL

2     Cahn hereby demand trial by jury to the full extent permitted by law.

3

4     DATED: June 21, 2011              JOHN L. BARBER
                                        KENNETH D. WATNICK
5                                       **LEWIS BRISBOIS BISGAARD & SMITH
                                        LLP**
6

7
                                        By /S/ John L. Barber
8                                          John L. Barber
                                           Attorneys for MONTE CAHN, an individual
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**

4834-6011-6233.1                           -23-
                                  FIRST AMENDED COMPLAINT

# FEDERAL COURT PROOF OF SERVICE

Monte Cahn v. Oversee Net, et al.
USDC Central District of California Case No: CV-11-03800 SVW (AGRx)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 21, 2011, I served the following document(s): **FIRST AMENDED COMPLAINT FOR:**
1) **BREACH OF CONTRACT -MANAGEMENTINCENTIVE PLAN**
2) **BREACH OF CONTRACT - COMMISSION PLAN**
3) **BREACH OF CONTRACT - RESTAURANTS.COM**
4.) **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
5) **ACCOUNTING**
6) **INTENTIONAL MISREPRESENTATION**
7) **NEGLIGENT MISREPRESENTATION**
8) **CONVERSION**
9) **UNFAIR COMPETITION UNDER CAL. BUSINESS & PROFESSION CODE § 17200**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**Attorney for Defendants:**
William Delgado
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
E-Mail: WDelgado@willenken.com

(213) 955-8026 ofc.
(213) 250-7900 fax

The documents were served by the following means:

[X]   (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on June 21, 2011, at Los Angeles, California.

Mary Ann Campi

4834-6011-6233.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP