William A. Delgado (State Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner @willenken.com
**WILLENKEN WILSON LOH & LIEB LLP**
707 Wilshire Boulevard, Suite 3850
Los Angeles, California 90017
Tel: (213) 955-9240 ■ Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFF KUPIETZKY,
and LAWRENCE NG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual, | Case No. CV11-03800 SVW (AGRx) |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO RULE 12(f)** |
| OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10 | |
| Defendants. | **[REQUEST FOR JUDICIAL NOTICE FILED UNDER SEPARATE COVER]** |
| | DATE:    August 15, 2011 |
| | TIME:    1:30 p.m. |
| | PLACE:  Crtrm. 6 |

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 15, 2011, at 1:30 p.m. in Courtroom 6 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Oversee.net, Jeff Kupietzky, and Lawrence Ng will, and hereby do, move, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain Claims for Relief in the First Amended Complaint in this action on the ground that they fail to state a claim upon which relief can be granted, and to strike Plaintiff's request for punitive damages.

The grounds for this motion are as follows:

- The Fourth, Sixth, Eighth, Ninth and Tenth Claims for Relief all fail to state a claim upon which relief can be granted; and

- The Sixth and Eighth Claims for Relief fail to plead fraud with particularity as required by Fed. R. Civ. P. 9.

Defendants additionally hereby move to strike Plaintiff's prayer for punitive damages on the grounds that Plaintiff has failed to plead any claim pursuant to which he has entitled to that form of damages.

This Motion is brought pursuant to this Notice of Motion and Motion; the Memorandum of Points and Authorities and Request for Judicial Notice filed herewith, and on such other or further matters as may be presented at the hearing of this matter. This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on or about July 5, 2011.

Dated:  July 15, 2011                    WILLENKEN WILSON LOH & LIEB LLP


                                         By: _/s/ William A. Delgado_____.
                                              William A. Delgado
                                              Attorneys for Defendants OVERSEE.NET,
                                              JEFF KUPIETZKY, and LAWRENCE NG

---

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.    INTRODUCTION……………………………………………...........1

II.   SUMMARY OF COMPLAINT………………………..………………………1

    A.  Plaintiff's Factual Allegations…………………………………1

    B.  Cahn's Causes of Action……………………..……..……………3

III.  LEGAL STANDARD……………………………………………3

IV.   GOVERNING  LAW…………………………………………4

V.    ARGUMENT………………………………………………...5

    A.  The Fourth Claim for Relief for Breach of the Implied Covenant
        of Good Faith and Fair Dealing Fails to State a Claim………………………6

        1.  The Fourth Claim Fails Under California Law………………………......6

        2.  The Fourth Claim Fails Under Florida Law……………………..……7

    B.  The Sixth and Eighth Claims for Negligent and Intentional
        Misrepresentation Fail to State a Claim…………………………………...8

        1.  Summary of Allegations…………………………………8

        2.  Failure to Plead with Particularity…………………………………9

        3.  The FAC Establishes that the Sixth and Eight Claims for
            Relief are Restatements of Cahn's Contract Claim……………………10

        4.  The Alleged Misrepresentation are Non-Actionable Opinions…………12

    C.  Plaintiff's Ninth Claim for Conversion Should Be Dismissed……………...13

        1.  Choice of Law………………………………………13

        2.  Cahn's Conversion Claim Fails Under California Law………………...14

    D.  The Tenth Claim Under Business & Professions Code Section
        17200 Fails to State a Claim Upon Which Relief May be Granted………...15

        1.  Cahn Fails to Plead a Cognizable UCL Claim…………………………15

        2.  Cahn Fails to Seek Relief Available Under the UCL…………………16

VI.  PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD
BE STRICKEN BECAUSE PUNITIVE DAMAGES ARE NOT
AVAILABLE REMEDIES UNDER PLAINTIFF'S ASSERTED
THEORIES…………………………………………………..…….…...18

VII. CONCLUSION…………………………………………………….…..18

# TABLE OF AUTHORITIES

**Page(s)**

## State Cases

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ........................................................ 10, 11

*Banco do Brasil v. Latian*,
  234 Cal. App. 3d 973, 285 Cal. Rptr. 870, (1991) .................................. 6

*Bank of America v. Lamb Finance Co.*,
  179 Cal. App. 2d 498, 3 Cal. Rptr. 877 (1960) .................................... 7

*Bank of the West v. Superior Court*,
  2 Cal. 4th 1254 (1992) ........................................................ 16

*Careau & Co. v. Security Pacific Business Credit*,
  222 Cal. App. 3d 1371 (1990) ................................................... 6

*Cel-Tech Communications v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................ 16

*Cruz v. Pacific Health Systems, Inc.*,
  30 Cal. 4th 303 (2003) ........................................................ 15

*Ehrlich v. Menezes*,
  21 Cal. 4th 543 (1990) ........................................................ 11

*Foreman & Clark Corp. v. Fallon*,
  3 Cal.3d 875 (1971) ........................................................... 12

*Home v. Kramer*,
  7 Cal. 2d 361, 60 P.2d 854 (1936) ............................................. 14

*Khoury v. Maly's of California*,
  14 Cal. App .4th 612 (1993) .................................................... 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...................................................... 16, 17

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999) ............................................................... 16

*Lovejoy v. AT&T Corp.*,
  92 Cal. App. 4th 85 (2001) ..................................................................... 9

*Messerall v. Fulwilder*,
  199 Cal. App. 3d 1324, 245 Cal. Rptr. 548 (1988) ............................... 14

*Nedlloyd Lines B.V. v. Sup. Court*,
  3 Cal. 4th 459 (1992) ........................................................................ 4, 5

*Neu-Visions Sports, Inc. v. Soren/McAddam/Bartells*,
  86 Cal. App. 4th 303 (2000) .................................................................. 12

*Pacesetter Homes, Inc. v. Brodkin*,
  5 Cal. App. 3d 206 (1970) ..................................................................... 12

*Podolsky v. First Healthcare Corp.*,
  50 Cal. App. 4th 632 (1996) .................................................................. 15

*Spates v. Dameron Hospital Ass'n*,
  114 Cal. App. 4th 208, 7 Cal. Rptr. 3d 597, (2003) .............................. 14

*Tarmann v. State Farm Mut. Auto Ins. Co.*,
  2 Cal. App. 4th 153 (1991) .................................................................... 12

*Taylor v. Forte Hotels, Int'l*,
  235 Cal. App. 3d 1119, 1 Cal. Rptr. 2d 189 (1991) .............................. 14

*Washington Mutual Bank, FA v. Superior Court*,
  24 Cal.4th 906, 15 P.3d 1071 (2001) ..................................................... 13

## Federal Cases

*Aquino v. Credit Control Servs.*,
  4 F. Supp. 2d 927 (N.D. Cal. 1998) ...................................................... 16

*Bell Atlantic Corp. v. Twombly*,
  500 U.S. 544 (2007) ................................................................................ 4

*Blake v. Dierdorff,*
   856 F.2d 1365 (9th Cir. 1988) ........................................................ 9

*Clegg v. Cult Awareness Network,*
   18 F.3d 752 (9th Cir. 1994) .......................................................... 4

*Cusano v. Klein,*
   280 F. Supp. 2d 1035 (C.D. Cal. 2003) ............................................. 11, 12

*Erikson v. Pardus,*
   551 U.S. 89 (2007).................................................................... 1, 3

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
   100 F. Supp. 2d 1086 (C.D. Cal. 1999) ............................................. 9, 12

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,*
   685 So.2d 1238 (Fla.,1996) ........................................................... 7

*Ileto v. Glock, Inc.,*
   349 F.3d 1191 (9th Cir. 2003) ....................................................... 3

*In re GlenFed, Inc. Sec. Litig.,*
   42 F.3d 1541 (9th Cir. 1994) ........................................................ 9

*McGehee v. Coe Newnes/McGehee UCL,*
   2004 WL 2452855 at *2 (N.D. Cal. 2004) ........................................ 11

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993) .......................................................... 10

*Patton v. Cox,*
   276 F.3d 493 (9th Cir. 2002) ........................................................ 4

*Saldate v. Wilshire Credit Corp.,*
   268 F.R.D. 87 (E.D. Cal. 2010) ..................................................... 16

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
   983 F. Supp. 1303 (N.D.Cal. 1997) ............................................... 15

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ....................................................... 9

*Wilkerson v. Butler*,
  229 F.R.D. 166 (E.D. Cal. 2005) ............................................................. 18

## Rules

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 3

Federal Rule of Civil Procedure 12(f) ........................................................ 18

Federal Rule of Civil Procedure 9(b) ....................................................... 8, 9

## Statutes

Cal. Civ. Code § 1625 ........................................................................... 2, 6

Cal. Civ. Code § 1646.5 ............................................................................ 5

Cal. Civ. Code § 1710(1) ........................................................................... 9

Cal. Civ. Code § 1710(2) ........................................................................... 9

California Business and Professions Code Section 17200 ("UCL") ..................... passim

California Business and Professions Code Section 17203 ..................... 16, 17

## Other Authorities

Unfair Business Practices Act ........................................................... 16

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Monte Cahn is suing his former employer under three different contracts.  None of his contract claims is at issue in this motion.  Rather, by this motion, defendants Oversee.net ("Oversee"), Jeff Kupietzky and Lawrence Ng (collectively, "Defendants") seek dismissal of Cahn's non-contractual claims on the ground that they fail to state cognizable causes of action under applicable law.

## II.   SUMMARY OF COMPLAINT[1]

### A.    Plaintiff's Factual Allegations.

In 1999, Cahn formed a company called Domain Systems, Inc. dba Moniker.com ("Moniker"), which provided internet users with a streamlined interface to search for, register, and manage their domain names.  First Amended Complaint ("FAC") at ¶ 9.  Cahn sold Moniker to Seevast Corp. in 2005, and Cahn was retained as CEO.  *Id*. at ¶ 10.  Seevast sold Moniker to Oversee in 2007.  *Id*. at ¶ 12.  As part of that transaction, Cahn "agreed to join Oversee for at least three years after the sale." *Id*.  The transaction was consummated "on or around" December 14, 2007.  *Id*. at ¶ 22.

According to the FAC, Defendants Kupietzky and Ng negotiated the deal on behalf of Oversee.  *Id*. at ¶ 13.  They allegedly made statements to Cahn to induce him "to join Oversee after the merger."  *Id*.  These statements, which apparently underlie Cahn's tort claims, consist of general statements about future business plans, including: (i) that Moniker would receive "adequate" marketing and public relations assistance from Oversee (*id*. at ¶ 14); (ii) that Oversee would "centralize" and "integrate" the operations of the two companies (*id*. at ¶¶ 14, 15); (iii) that there would be "cross-selling potential" among Oversee's subsidiaries (*id*. at ¶ 15); (iv) that Oversee would provide Moniker with the resources it needed to "flourish in the market;" (*id*. at ¶ 16);

---

[1]   While Defendants do not concede any of Plaintiff's allegations, Defendants acknowledge that the Court must accept as true Plaintiff's allegations on a motion to dismiss.  *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).

1    and (v) that Cahn's title would be "President" of Moniker, and he would report directly

2    to Ng, who was then Oversee's CEO (*id.* at ¶¶ 17-18).

3        Cahn also negotiated with Ng and Kupietzky for a "Management Incentive Plan"

4    (referred to as the "MIP"). *Id.* at ¶ 19.  Cahn alleges that Ng and Kupietzky falsely

5    represented that Cahn could earn up to $13 million under the MIP. *Id.* at ¶ 20.  The

6    false representations by Ng and Kupietzky consist of the general statements of business

7    plans and prospects summarized in the preceding paragraph and representations that

8    Oversee's "EBITDA in the MIP would be adjusted" throughout the term of the MIP.

9    *Id.* at ¶ 21.  Cahn alleges that Oversee manipulated its EBITDA calculations and failed

10   to provide the promised business support to Moniker.  *Id.* at ¶¶ 24, 36.  As a result,

11   Cahn allegedly failed to receive the bonuses he expected under the MIP.

12       Notably, though, Cahn admits that the MIP was reduced to a writing that

13   "supersedes all prior agreements or understandings, whether written or oral, between

14   the parties relating to such subject matter." *Id.* at ¶ 34.  Thus, per Cahn's own

15   admission, the alleged false representations of Ng and Kupietzky concerning the MIP,

16   Cahn's prospects for earning bonuses under the MIP, and how those bonuses would be

17   calculated, are superseded by the written agreement.  *See also,* Cal. Civ. Code § 1625.[2]

18       Cahn also sues for breach of two post-transaction agreements he allegedly

19   negotiated with Oversee.  He alleges that Oversee breached Cahn's 2010 written

20   Commission Plan, allegedly executed on May 24, 2010.  *Id.* at ¶¶ 39-41.  Cahn also

21   alleges that Oversee breached an agreement to pay him a commission for brokering the

22   sale of the domain name <restaurants.com>.  *Id.* at ¶¶ 44-47.  Cahn alleges that a

23   February 9, 2011 email confirms the commission agreement with respect to

24   <restaurants.com>.  *Id.* at ¶ 44.  Although Oversee denies liability under those

25   agreements, it is also not seeking dismissal of Cahn's Second and Third Claims for

26   _____

27   [2]   Although Defendants deny a breach of the MIP, they are not moving to dismiss
     Cahn's First Claim for Relief, which alleges that Oversee breached the terms of the

28   MIP.

---

-2-

Relief, which allege that Oversee breached the Commission Plan and a separate agreement to pay Cahn a commission on the sale of <restaurants.com>.

### B.  Cahn's Causes of Action

Cahn's first three causes of action, which are not at issue in this motion, allege that Oversee breached the MIP, the 2010 Commission Plan, and an agreement to pay Cahn a specific commission on the sale of <restaurants.com>.  While Oversee denies liability on these claims, it does not seek dismissal on the basis of Cahn's pleading.  Oversee is also not seeking dismissal of the accounting claim, although Oversee believes that basic discovery should suffice.

Cahn's remaining causes of action, however, seek to convert his breach of contract claims into other causes of action that are legally insupportable.  As discussed below, Defendants seek dismissal of:

- The Fourth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing
- The Sixth Claim for Intentional Misrepresentation
- The Eighth Claim for Negligent Misrepresentation
- The Ninth Claim for Conversion
- The Tenth Claim for Statutory Unfair Competition.

The First Amended Complaint does not contain a claim labeled a Seventh Claim for Relief.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  In determining whether the complaint's allegations are sufficient to state a claim for relief, all allegations of material fact are taken as true. *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Moreover, the Court is not required to accept legal

conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The plaintiff's obligation to provide the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 555 (2007).

## IV.    <u>GOVERNING LAW</u>

As pleaded, all of Cahn's claims, other than his Ninth Claim for Conversion, appear to arise from his employment with Oversee. As a result, they are generally governed by his Oversee Employment Agreement, which contains a Florida choice of law provision. *See,* Request for Judicial Notice, ex. 1, ¶ 18.[3] There is one carve-out, however: the MIP also contains a choice of law provision, stating that its "terms" are to be governed by California law.[4] *Id.* at ex. 2, ¶ 13. As explained, below, both choice of law provisions can be given effect.

Cahn invokes this Court's diversity jurisdiction and alleges that a substantial part of the events giving rise to his claims occurred in the Central District of California. FAC, ¶ 2. Federal courts in a diversity case will apply the same choice of law rules that the local state courts would apply. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). California follows the Second Restatement approach. *Nedlloyd Lines B.V. v. Sup. Court*, 3 Cal. 4th 459, 464-5 (1992). As summarized in *Nedlloyd,* under Restatement Section 187, a court will first review a contractual choice of law provision to determine if the chosen state has a substantial relationship to the transaction or the parties, or if there is any other reasonable basis for the choice of law. *Id.* at 466. If so, the court will enforce the choice of law provision unless doing so would be contrary to

---

[3]    In addition, Cahn alleges that he is a Florida resident. FAC, ¶ 3.

[4]    The MIP choice of law agreement reads:  "The terms of this Plan shall be governed by the laws of the State of California, without reference to the conflict of laws principles thereof."

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

a fundamental policy of the state of California.  *Id.*  A further analysis ensues if the Court finds such a conflict, but Defendants know of no such conflict here.  *See also,* Cal. Civ. Code § 1646.5 (choice of law provision selecting California law is automatically enforceable in California, even if the transaction bears no relationship to California, but containing exception for labor and personal services contracts).[5]

Based upon the Restatement approach embraced by California, Defendants believe that both the Employment Agreement and the MIP contain valid and enforceable choice of law provisions.  Cahn is a Florida resident (FAC, ¶ 3), so it reasonable that his Employment Agreement is governed under Florida law.  Oversee is a California corporation with its principal place of business in Los Angeles, and Cahn also alleges that a substantial part of the events giving rise to this action arose in the Central District of California.  FAC, ¶¶ 2, 4.  Thus, the California choice of law provision that governs the terms of a company-wide MIP is also reasonable and enforceable.

Therefore, to the extent Cahn seeks recovery not related to the MIP, but arising from his employment relationship with Oversee, Florida law would apply.  To the extent that the terms of the MIP are implicated, California law applies.   Because of the two choice of law provisions, Defendants will note the governing law in connection with their analysis of each claim for relief.

## V.    ARGUMENT

As noted above, Defendants are not presently attacking the first three Claims for Breach of Contract, or the Fifth Claim for an Accounting.  Cahn's remaining claims,

---

[5]    Section 1646.5 contains exceptions for: (i) labor or personal services contracts; and (ii) contracts for personal, family or household purposes.  It also yields to Commercial Code § 1301 in the event of a conflict.  It is unnecessary to determine whether Section 1646.5 applies here because the contractual choice of law provisions are enforceable under the Restatement analysis adopted in *Nedlloyd.*

however, are all efforts to restate basic contract claims.  They are all legally improper, and each of the Fourth and Sixth through Tenth Claims for Relief should be dismissed.

## A.   The Fourth Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails to State a Claim.

The Fourth Claim for Relief alleges that Oversee violated the terms of the MIP and the Commission Plan because Oversee represented to Cahn that he would receive more compensation under both agreements than he received.  FAC, ¶¶ 51, 52.  As such, the cause of action is mislabeled.[6]  Based on the Cahn's allegations, he claims that he was misled about what the agreements said – and *not* that the covenant of good faith and fair dealing implied into those agreements supports his recovery.  California law governs the aspect of Cahn's claims regarding a violation of the MIP.  Florida law governs the aspect of Cahn's claim regarding a violation of the Commission Plan.

### 1.   THE FOURTH CLAIM FAILS UNDER CALIFORNIA LAW.

Under California law, the claim fails.  Cahn alleges that the MIP was reduced to an integrated writing.  FAC, ¶34.  He also alleges that the Commission Plan is contained in a "valid, enforceable, written" document.  FAC, ¶39.  As such, the written agreements supersede all prior negotiations.  Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.").

A party cannot seek to change his bargain by alleging that he was misled about the terms of a written agreement.  *Banco do Brasil v. Latian,* 234 Cal. App. 3d 973, 1000, 285 Cal. Rptr. 870, 1009 (1991) (allegations of false promise are inadmissible

---

[6]   If Cahn really intended to state a claim for breach of the implied covenant of good faith and fair dealing, he fails to do so because he fails to allege a basis for distinguishing his claim from a claim alleging breach of contract. *See, Careau & Co. v. Security Pacific Business Credit,* 222 Cal. App. 3d 1371, 1395 (1990). (if a claim for breach of the implied covenant of good faith and fair dealing merely restates a claim for breach of contract, it is disregarded as superfluous).

under the parol evidence rule unless "independent of or consistent with" the written instrument); *see also, Bank of America v. Lamb Finance Co.,* 179 Cal. App. 2d 498, 502, 3 Cal. Rptr. 877 (1960) ("if, to induce one to enter into an agreement, a party makes an independent promise without intention of performing it, this separate false promise constitutes fraud which may be proven to nullify the main agreement; but if the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible.").

Although labeled a claim for breach of the implied covenant of good faith and fair dealing, the Fourth Claim for Relief alleges that Oversee misled Cahn about the amounts he would earn under the MIP and the Commission Plan.  However, because Cahn clearly alleges that both agreements are integrated writings, his entitlement to payment is governed by the contracts.  He cannot seek to alter his rights under those contracts by alleging that he was misled about what they contained or how they would be applied.

### 2.    THE FOURTH CLAIM FAILS UNDER FLORIDA LAW.

Florida law is similar to California law.  Under Florida law, a party cannot state a tort claim that relies on alleged breaches of contract.  "Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract."  *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla.,1996).  As the *HTP* Court further explained:

> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Id.* at 1240.  Because Cahn alleges that he failed to receive money due to him under the Commission Plan, his claims are not extraneous to the contract, and Florida law relegates him to his contract claims.

**B.**  **The Sixth and Eighth Claims for Negligent and Intentional Misrepresentation Fail to State a Claim.**

The Sixth and Eighth claims are merely restatements of Cahn's First Claim for Breach of Contract.  However, the claims are not pleaded with specificity, as required by Fed. R. Civ. P. 9.  Further, they are improper attempts to turn a breach of contract claim into a tort.  Moreover, even if those alleged statements stood on their own, independent of a contract, they would be non-actionable as future projections.  Because these claims relate to the terms of the MIP, they are governed by California law.

**1.**  **SUMMARY OF ALLEGATIONS.**

The Sixth and Eighth Claims for Relief both allege the same conduct.  Specifically, both allege that Defendants engaged in a scheme to prevent Cahn from receiving his contractually-agreed payments under the MIP by engaging in various separate acts of sabotage.  FAC, ¶¶ 67, 76.  The alleged acts can be categorized as follows:

- Oversee breached the MIP by failing to calculate bonuses as allegedly required by the MIP (FAC¶67(i), (vi); ¶ 76(i)(vi));
- Oversee failed to adjust Oversee EBITDA and to amend the MIP (FAC, ¶67(ii), (iv); ¶ 76 (ii), (iv));
- Oversee gave Cahn duties he didn't expect (FAC, ¶ 67(iii), (v), (xiii), (xiv); ¶ 76 (iii), (v), (xiii), (xiv)); and
- Oversee made business decisions that undermined Cahn's ability to earn bonuses under the MIP (FAC, ¶ 67(vii), (viii), (ix), (x), (xi), (xii); ¶ 76 (vii), (viii), (ix), (x), (xi), (xii).

Without exception, these are not fraud claims.  They are claims that Oversee breached the MIP either directly, by failing to comply with its terms, or indirectly, by

undermining Cahn's ability to earn bonuses under the MIP.  These are simple claims for breach of contract fully addressed in the First Claim for Relief.  Indeed, many of these allegations *are* the same breaches alleged in support of Cahn's First Claim for Relief.  *Compare,* FAC, ¶ 36.

### 2.   FAILURE TO PLEAD WITH PARTICULARITY.

Intentional misrepresentation, is the suggestion, as a fact, of that which is not true, by one who does not believe it to be true.  Cal. Civ. Code § 1710(1).  Negligent misrepresentation, by contrast, is the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.  Cal. Civ. Code § 1710(2).  With the exception of knowledge of falsity, the elements of the two claims are identical: (1) misrepresentation of past or existing fact, (2) knowledge of falsity – whether the defendant knew the statement was false (fraud) or had no reasonable basis upon to which to believe it was true (negligent misrepresentation), (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage.  *See, e.g., Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001).

Claims for fraud must be alleged with particularity.  Fed. R. Civ. P. 9(b); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  To properly plead a fraud claim, the complaint must adequately specify the statements that are allegedly false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("averments of fraud must be accompanies by the who, what, where, when, and how of the misconduct charged" (citations omitted)).  In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and ***why*** it is false."  *Glen Holly Entm't, Inc.*, 100 F.2d at 1095 (emphasis added); *see Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (holding that Rule 9(b) requires specific descriptions of the representation made and the reasons for their falsity).  Averments

that fail to meet these exacting standards must be dismissed.  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

The closest the FAC comes to identifying a false representation is the allegation that Defendants "represented to Cahn that he would have the ability to earn up to $13,000,000 in payments under the MIP."  FAC, ¶¶ 63, 71.  Setting aside whether this actually constitutes a misrepresentation (discussed *infra*), this conclusory and general allegation is insufficient to satisfy the heightened pleading standard required for fraud claims.  Plaintiff does not specify where, when, and by what means *each* of the Defendants made any alleged representation.

Moreover, Plaintiff does not allege **why** any representations were false.  To the contrary, Plaintiff's First Claim for Relief implies that the MIP, as drafted, provided Cahn with the potential to earn up to $13 million in bonuses.  The Complaint explains that Plaintiff's ability to earn such bonuses was conditioned on the attainment of certain performance goals in four different segments of Oversee's business.  FAC, ¶ 19.  If, in fact, Cahn contends that the MIP did *not* allow him an opportunity to earn $13 million, he needs to allege that with particularity to support a misrepresentation claim.  He cannot, however, maintain the inherently contradictory position that Defendants *falsely* told him that the MIP carried the potential for Cahn to earn $13 million but allege that he is entitled to recover $13 million under the terms of the MIP *as written*.

### 3.    THE FAC ESTABLISHES THAT THE SIXTH AND EIGHTH CLAIMS FOR RELIEF ARE RESTATEMENTS OF CAHN'S CONTRACT CLAIM.

The essence of Plaintiff's pleading is that Oversee failed to fulfill certain contractual promises (Claims 1 through 3).  To the extent there is any truth to this allegation (and there is not), the contracts set forth the contractual remedies available to Plaintiff.

As a general rule, California does not authorize tort recovery for breach of contract claims.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503,

514-15 (1994) (recognizing fundamental differences between contract and tort cases). In contract actions, "[t]he measure of damages is limited to those losses which might be reasonably foreseen by the parties." *Ehrlich v. Menezes*, 21 Cal. 4th 543, 553 (1990). "Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. An omission to perform a contractual obligation is never a tort, unless that omission is also an omission of a legal duty." *Id.* at 551 (citations omitted). "The California Supreme Court has repeatedly held that '[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.'" *McGehee v. Coe Newnes/McGehee UCL*, 2004 WL 2452855 at *2 (N.D. Cal. 2004) (citing *Applied Equipment*, 7 Cal. 4th at 515). Here, Plaintiff has not alleged any "independent duty" because none exists.

  *Cusano v. Klein*, 280 F. Supp. 2d 1035 (C.D. Cal. 2003), is instructive. There, the court dismissed the plaintiff's fraud claims because the fraud claims did no more than allege breaches of contractual duties. The plaintiff and defendants in *Cusano* entered into a written contract whereby defendants were obligated to render quarterly accounting statements to plaintiff for plaintiff's share of profits derived from worldwide exploitation of plaintiff's songs. *Id.* at 1037-38. The plaintiff alleged breach of contract and fraud based on defendants' alleged improper accounting for royalties due to plaintiff, contrary to defendants' representations that they would faithfully administer the royalty account. *Id.* at 1039. The Court stated that "a fraud claim fails when it merely states an alleged breach of contractual duties and does not concern representations that are collateral or extraneous to the parties' contract."[7] *Id.* at 1042. The Court held that the plaintiff could not "maintain his claims for fraud and negligent misrepresentation against [the defendant] because they merely state a breach

---

[7]  The Court applied New York law, which is identical in all pertinent respects to California law on this issue.

1  of contractual duties… The claims against [defendants] do not involve representations

2  collateral or extraneous to the employment contract." *Id.*

3      Here, as in *Cusano*, Plaintiff's fraud claims do not involve duties, actions or

4  representations collateral or extraneous to the agreements at issue. Indeed, the only

5  fraud asserted against Oversee is an alleged false promise to perform the contractual

6  duties at issue. *See, e.g.,* FAC, ¶¶ 64 (Defendants "formed the intent to withhold

7  compensation to Cahn under the MIP"), 66 ("Cahn never received any payment from

8  Oversee under the MIP"), 75 (same). That is precisely the type of "tortifying" of a

9  contract claim that California law prohibits. Plaintiff's Fraud Claims are, therefore,

10  precluded as a matter of law.

11          **4.   THE ALLEGED MISREPRESENTATIONS ARE NON-ACTIONABLE**

12                **OPINIONS.**

13      To be actionable, a misrepresentation "must ordinarily be as to past or existing

14  material facts. Predictions as to future events, or statements as to future action by some

15  third party, are deemed opinions, and not actionable fraud." *Tarmann v. State Farm*

16  *Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (internal quotations and citations

17  omitted) (demurrer properly sustained where the alleged misrepresentation involved

18  promises of future conduct and not past or existing material fact); *Glen Holly Entm't*,

19  100 F. Supp. 2d at 1093. Indeed, it is hornbook law that statements regarding future

20  events are merely deemed opinion. *Neu-Visions Sports, Inc. v.*

21  *Soren/McAddam/Bartells*, 86 Cal. App. 4th 303, 309-10 (2000). Accordingly,

22  California courts have held that predictions about future sales, profits or value are non-

23  actionable expressions of opinion. *See, id.* (holding that statement that property was

24  worth $5 million was non-actionable opinion, because it essentially was a prediction

25  that an appraiser would value the property at $5 million); *Foreman & Clark Corp. v.*

26  *Fallon*, 3 Cal.3d 875, 882 (1971) (affirming trial court's finding that statements

27  regarding lessors' future sales were mere expressions of opinion); *Pacesetter Homes,*

28  *Inc. v. Brodkin*, 5 Cal. App. 3d 206, 210 (1970) (affirming trial court's finding that

1  statements regarding the future rental income that might be generated after the

2  completion of unfinished duplex units were non-actionable statements of opinion).

3     As discussed, *supra*, the only misrepresentation alleged is that Cahn "would be

4  able to earn up to $13,000,000 in bonuses."  FAC, ¶¶ 63, 71.  Cahn alleges a number of

5  actions that allegedly undermined his ability to earn those bonuses – all of which

6  further demonstrate that any representation concerned *future* events.  FAC, ¶ 24.  But,

7  projections about future performance are, by definition, not statements about a past or

8  existing material fact.  They are non-actionable expressions of opinion, and the Sixth

9  and Eighth Claims for Relief should therefore be dismissed.

10     **C.     Plaintiff's Ninth Claim for Conversion Should Be Dismissed.**

11     Plaintiff's claim for conversion asserts that, because domain names he owned

12  "were mixed up with Moniker's," he did not receive the revenue generated by those

13  domains.  FAC, ¶¶ 78-83.  Cahn does not contend that Oversee intentionally took the

14  domain names, but rather that, when he asked Oversee to account for revenues from

15  the websites, Oversee refused.  Cahn does not, and cannot, allege the intent necessary

16  to support a claim for conversion.

17     **1.     CHOICE OF LAW**

18     The claim for conversion does not relate to the terms of the MIP, and, as alleged,

19  it also appears to be independent of the Employment Agreement.  Thus, a standard

20  choice of law analysis applies.  "[W]hen there is no advance agreement on applicable

21  law, but the action involves the claims of residents from outside California, the trial

22  court may analyze the governmental interests of the various jurisdictions involved to

23  select the most appropriate law."  *Washington Mutual Bank, FA v. Superior Court*, 24

24  Cal.4th 906, 915, 15 P.3d 1071 (2001).  The governmental interest analysis involves a

25  three-step approach.  *Id.* at 919.

26     "Under the first step of the governmental interest approach, the foreign law

27  proponent must identify the applicable rule of law in each potentially concerned state

28  and must show it materially differs from the law of California."  *Id.* at 919.  Defendants

will stop at this step.  Defendants contend that California law should apply to the conversion claim.  Because they are not "proponents" for the application of foreign law, and because Cahn's complaint fails to indicate that he seeks to apply foreign law, California law should apply.  If Cahn chooses to advocate for the application of Florida law to the conversion claim, Defendants will respond to that argument in their reply brief.

### 2.   CAHN'S CONVERSION CLAIM FAILS UNDER CALIFORNIA LAW.

Conversion is an intentional tort.  A conversion claim "rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which the injury to the latter results…."  *Spates v. Dameron Hospital Ass'n*, 114 Cal. App. 4th 208, 222, 7 Cal. Rptr. 3d 597, 609 (2003).  To prevail on a claim for conversion, a plaintiff must prove: (1) plaintiffs' ownership or right to possession of property at the time of the conversion; (2) defendants' conversion *by a wrongful act or disposition* of plaintiffs' property rights; and (3) damages.  *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329, 245 Cal. Rptr. 548, 550 (1988) (emphasis added).

"Conversion is a tort, and to establish it there must be a tortious act."  *Home v. Kramer*, 7 Cal. 2d 361, 363, 60 P.2d 854, 855 (1936).  "The *act* must be knowingly and intentionally done…  Because the act must be knowingly done, neither negligence, active or passive, nor a breach of contract, even though it result (sic) in injury to, or loss of, specific property, constitutes a conversion."  *Taylor*, 235 Cal. App. 3d at 1124, 1 Cal. Rptr. 2d 189 (emphasis in original).

Cahn fails to allege (and he cannot allege) that Oversee knowingly and intentionally asserted wrongful control over Cahn's domain names.  In fact, he specifically alleges a "mix up" not an intentional and knowing act.  FAC, ¶ 79.  His conversion claim thus fails.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**D.** **The Tenth Claim Under Business & Professions Code Section 17200 Fails to State a Claim Upon Which Relief May be Granted.**

Plaintiff's Tenth Claim for Relief purports to allege violations of California Business and Professions Code Section 17200 ("UCL").[8]  But, in reality, this claim just restates Cahn's claim for breach of contract.  He alleges breach of the MIP (¶¶ 85, 86); breach of the Commission Plan (¶ 87); breach of the <restaurants.com> agreement (¶ 88), and the conduct that allegedly prevented Cahn from receiving bonuses under the MIP (¶¶ 89, 91).  Cahn seeks damages from the breach of those contracts.  FAC ¶ 90.  The claim fails because: (i) it fails to allege statutory unfair competition; and (ii) it fails to allege entitlement to a remedy available under the UCL.

**1.** **CAHN FAILS TO PLEAD A COGNIZABLE UCL CLAIM.**

The UCL "establishes three varieties of unfair competition – acts or practices which are unlawful, unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996).  To state a claim for violation of the UCL, a plaintiff must sufficiently allege the defendant engaged in an unlawful, unfair or fraudulent business practice.  *See Cruz v. Pacific Health Systems, Inc.*, 30 Cal. 4th 303, 315 (2003).  Moreover, the complaint "must state with reasonable particularity the facts supporting the statutory elements of the violation." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (citing *Khoury v. Maly's of California*, 14 Cal. App .4th 612, 619 (1993)).

The FAC fails to identify which of the three prongs (*i.e.*, unfair, unlawful or fraudulent) Cahn's claim is based upon, and it fails entirely to allege that Oversee engaged in an unfair, unlawful, or fraudulent business practice.

---

[8]    Because this is a statutory claim under California law, there is no choice of law analysis required.  There could be an issue as to whether Section 17200 applies to certain conduct alleged in this Claim for Relief, but Defendants will reserve their arguments on that issue and confine their arguments here to the application of Section 17200 to the entirety of the conduct alleged in this Claim for Relief.

Cahn cannot proceed under the "fraudulent" prong because the alleged fraud is directed at a single victim. *See, e.g., Aquino v. Credit Control Servs.*, 4 F. Supp. 2d 927, 930 (N.D. Cal. 1998) (dismissing plaintiff's UCL claim because plaintiff only alleged facts regarding her particularized problems with defendant's service and failed to allege that defendant's actions harmed or misled the public). Indeed, the "fraudulent" prong requires a plaintiff to show deception to some members of the public, or harm to the public interest, or to allege that members of the public are likely to be deceived. *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 103 (E.D. Cal. 2010). The Complaint contains no such allegations.

The remaining two prongs under the UCL are equally unavailable. To proceed under the "unlawful" prong, there must be a predicate violation of the law. *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). Here, however, the Complaint alleges no such predicate violate. Lastly, the Complaint lacks allegations of ongoing wrongful business conduct or a pattern of such conduct to justify a claim under the "unfair" prong. *Id.*

## 2. CAHN FAILS TO SEEK RELIEF AVAILABLE UNDER THE UCL.

Cahn seeks general damages and punitive damages on his UCL claim. FAC, ¶¶ 89, 90. A plaintiff's remedies under the UCL, however, are limited to injunctive relief and restitution.[9] Cal. Bus. & Prof. Code §17203; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003) (rejecting UCL claim where plaintiff sought unavailable remedy). General damages, including punitive damages, are not allowed. *Id.* at 1148 ("[A]ttorney's fees and damages, including punitive damages, are not available under the UCL."); *Cel-Tech Communications v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) (plaintiffs suing for unfair competition may not receive damages, much less treble damages, or attorney's fees); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("the Unfair Business Practices Act does not

---

[9]     Plaintiff does not seek injunctive relief herein. *See* Prayer for Relief.

1   authorize an award of damages"). Because Cahn seeks only damages under the UCL,

2   he fails to state a claim because damages are unavailable.

3       Though not specifically tethered to the UCL claim, the Prayer for Relief requests

4   "restitution of all wrongfully withheld amounts and disgorgement of ill-gotten profits,

5   in an amount according to proof." Prayer for Relief, ¶ 4. That allegation cannot

6   salvage the Tenth Claim for Relief, because it does not seek the type of restitution

7   available under the UCL. *Korea Supply* holds that restitution under the UCL only

8   allows the plaintiff to recover money or other assets taken from him by the defendant.

9   Restitution does not permit a disguised recovery of damages, nor does it include

10  disgorgement of profits. *Korea Supply*, 29 Cal. 4th at 1134.[10]

11      Cahn does not seek the return of money he paid to Oversee. Indeed, Plaintiff

12  does not allege that he paid money to Oversee at any time. Rather, his requested relief

13  is nothing more than a request for damages. Because Plaintiff cannot allege facts to

14  support a claim for restitutionary relief, the Tenth Claim should be dismissed without

15  leave to amend.

16

17

18

19

20

21

22  [10]    In *Korea Supply*, the plaintiff sought the disgorgement of profits acquired by the
defendant through its allegedly unfair business practices. *Korea Supply*, 29 Cal.
23  4th at 1142. The California Supreme Court reaffirmed the distinction it had
previously made between disgorgement and restitution, in that disgorgement is a
24  broader remedy than restitution. *Id.* at 1144-45. The Supreme Court held that,
while restitution was an available remedy under the UCL, disgorgement of
25  money obtained through an unfair business practice is an available remedy in a
representative and an individual UCL action only to the extent that it constitutes
26  restitution. *Id.* at 1145. Thus, the Supreme Court confirmed what is clear on the
face of the statute: "Restitution is the only monetary remedy expressly
27  authorized by Section 17203." *Id.* at 1146.

28

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## VI. <u>PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN BECAUSE PUNITIVE DAMAGES ARE NOT AVAILABLE REMEDIES UNDER PLAINTIFF'S ASSERTED THEORIES.</u>

Plaintiff seeks punitive damages on his Sixth (Intentional Misrepresentation) and Tenth (UCL) Claims for Relief.  As described above, neither of those claims has merit, and punitive damages are unavailable under the UCL.  The prayer for punitive damages should thus be stricken.  Fed. R. Civ. P. 12(f); *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005) ("A motion to strike is appropriate to address requested relief, such as punitive damages, which is not recoverable as a matter of law").

## VII. <u>CONCLUSION</u>

The FAC attempts to convert Cahn's contract claims into tort claims that are neither legally viable nor properly alleged.  Defendants thus request that the Court dismiss Plaintiff's Fourth, Sixth, Eighth, Ninth and Tenth Claims for Relief.

Dated:  July 15, 2011                     WILLENKEN WILSON LOH & LIEB LLP


                                          By: */s/ William A. Delgado*                .
                                              William A. Delgado
                                              Attorneys for Defendants OVERSEE.NET,
                                              JEFF KUPIETZKY, and LAWRENCE NG

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated:  June 15, 2011                    WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*                    .
                    William A. Delgado
                    Attorneys for Defendants OVERSEE.NET,
                    JEFF KUPIETZKY, and LAWRENCE NG

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT