1   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    JOHN L. BARBER, SB# 160317
2     E-Mail: barber@lbbslaw.com
    KENNETH D. WATNICK, SB# 150936
3     E-Mail: watnick@lbbslaw.com
    SHAWNA T. RASUL, SB# 252201
4     E-Mail: rasul@lbbslaw.com
    SONJA PAVLOV, SB# 261053
5     E-Mail: pavlov@lbbslaw.com
    221 North Figueroa Street, Suite 1200
6   Los Angeles, California  90012
    Telephone: 213.250.1800
7   Facsimile: 213.250.7900

8   Attorneys for MONTE CAHN, an
    individual
9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  MONTE CAHN, an individual,          | CASE NO. CV11-03800 SVW (AGRx)

14              Plaintiff,              | The Hon. Stephen V. Wilson

15      v.

16  OVERSEE.NET, a California          | **MONTE CAHN'S OPPOSITION TO**
    corporation; JEFF KUPIETZKY, an    | **DEFENDANTS' MOTION TO**
17  individual; LAWRENCE NG, an        | **DISMISS**
    individual; and Does 1 through 10,
18                                      | DATE:      August 15, 2011
              Defendants.              | TIME:      1:30 p.m.
19                                      | PLACE:     Crtrm. 6
20

21                                      | COMPLAINT FILED:   May, 3, 2011
                                        | TRIAL DATE:        TBD
22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   STATEMENT OF RELEVANT FACTS.............................................2

III.  STANDARD .......................................................................................3

IV.   CAHN'S FOURTH CLAIM FOR BREACH OF THE
      COVENANT OF GOOD FAITH AND FAIR DEALING IS
      SUFFICIENTLY PLED.......................................................................4

      A.   Cahn Has Alleged Defendants' Breach of the Implied Covenant
           of Good Faith and Fair Dealing Under the MIP. ....................4

      B.   Cahn Has Alleged Defendants' Breach of the Implied Covenant
           of Good Faith and Fair Dealing Under the Commission Plan. .............7

V.    CAHN'S SIXTH AND EIGHTH CLAIMS FOR NEGLIGENT
      AND INTENTIONAL MISREPRESENTATION ARE
      SUFFICIENTLY PLED.......................................................................8

      A.   Cahn's Claims for Misrepresentation Are Pled With the
           Requisite Level of Specificity.................................................8

      B.   Cahn's Claims for Misrepresentation Are Not Restatements of
           His Contract Claim.................................................................11

      C.   A Promise of Future Conduct is Actionable as Fraud if Made
           Without the Intent to Perform. ..............................................13

VI.   CAHN'S NINTH CLAIM FOR CONVERSION IS
      SUFFICIENTLY PLED.....................................................................14

VII.  CAHN'S TENTH CLAIM FOR UNFAIR COMPETITION IS
      SUFFICIENTLY PLED.....................................................................15

      A.   Cahn has Pled a Cognizable UCL Claim. ..............................15

      B.   The UCL Is Purposefully Broad. ...........................................15

      C.   Oversee's Actions Were Unfair Under the UCL. ...................16

      D.   Oversee's Conduct Was Also Unfair Because it Violated
           Antitrust Law.........................................................................17

      E.   Oversee's Conduct Was Fraudulent Under the UCL..............18

      F.   Cahn Has Alleged an Adequate Remedy.................................18

VIII. CAHN'S CLAIMS FOR PUNITIVE DAMAGES ARE VALID..............19

IX.   CONCLUSION ................................................................................20

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Burlesci v. Petersen*
(1998) 68 Cal. App. 4th 1062.................................................................14

*Centurion Air Cargo v. UPS Co.*,
(11th Cir. Fla. 2005) 420 F.3d 1146 ......................................................7

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.*
(2010) 748 F. Supp. 2d 1145................................................................14

*Chelini v. Nieri*
(1948) 32 Cal. 2d 480............................................................................11

*Comunale v. Traders & General Ins. Co.*
(1958) 50 Cal.2d 654.....................................................................4, 5, 6

*Cusano v. Klein*
(2003) 280 F. Supp. 2d 1035.................................................................13

*Engalla v. Permanente Medical Group, Inc.*
(1997)15 Cal. 4th 951............................................................................8

*Enter. Leasing Corp. v. Shugart Corp.*
(1991) 231 Cal. App. 3d 737..........................................................14, 15

*Erlich v. Menezes*
(1999) 21 Cal. 4th 543.....................................................................11, 12

*Freeman & Mills, Inc. v. Belcher Oil Co.*
(1995) 11 Cal. 4th 85............................................................................12

*Harm v. Frasher*
(1960) 181 Cal. App. 2d 405...................................................................5

*Hartzell v. Myall*
(1953) 115 Cal. App. 2d 670.................................................................19

*In re Burlington Coat Factory Sec. Litig.*
(3d Cir. 1997) 114 F.3d 1410..................................................................3

*Korea Supply Co. v. Lockheed Martin Corp.*
(2003) 29 Cal. 4th 1134........................................................................19

*Las Palmas Associates v. Las Palmas Center Associates*
(1991) 235 Cal. App. 3d 1220...............................................................12

*Lazar v. Superior Court*
(1996) 12 Cal.4th 631..............................................................................8

*Lone Star Industries, Inc. v. Horman Family Trust*
(10th Cir. 1992) 960 F.2d 917.................................................................4

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Magpali v. Farmers Group*
(1996) 48 Cal. App. 4th 471 .................................................................... 13

*Menzies v. Geophysical Service, Inc.*
(1953) 16 Cal. App. 2d 419 .................................................................... 19

*Moore v. Kayport Package Express*
(9th Cir. 1989) 885 F.2d 531 .................................................................. 9

*Neubronner v. Milken*
(9th Cir. 1993) 6 F.3d 666 ...................................................................... 9

*Peloza v. Capistrano Unified School Dist.*
(9th Cir. 1994) 37 F.3d 517 .................................................................... 4

*People v. Casa Blanca Convalescent Homes, Inc.*
(1984) 59 Cal App 3d 509 ..................................................................... 16

*Robinson Helicopter Co., Inc. v. Dana Corp.*
(2004) 34 Cal. 4th 979 ........................................................................... 12

*Saunders v. Superior Court*
(1994) 27 Cal. App. 4th 832 ................................................................... 18

*Schnall v. Hertz Corp.*
(2000) 78 Cal. App. 4th 1144 .......................................................... 15, 16

*SCLC v. Supreme Court*
(5th Cir. 2001)252 F.3d 781 .................................................................... 4

*Semegen v. Weidner*
(9th Cir. 1985) 780 F.2d 727 .................................................................. 9

*Shroyer v. New Cingular Wireless Servs.*
(9th Cir. 2010) 622 F.3d 1035 ......................................................... 4, 6, 8

*Simon Oil Co. v. Norman*
(9th Cir. 1986) 789 F.2d 780 .................................................................. 4

*Smith v. State Farm Mutual Automobile Ins. Co.*
(2001) 93 Cal. App. 4th 700 ................................................................... 16

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
(1991) 2 Cal. App. 4th 153 ................................................................ 8, 13

*Three Keys, Ltd. v. Kennedy Funding, Inc.*
(2009) 28 So. 3d 894 ............................................................................... 7

*United States v. Redwood City*
(9th Cir. 1981) 640 F.2d 963 .................................................................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Plaintiff MONTE CAHN ("Cahn") submits the following Opposition to
2  Defendants Oversee.net ("Oversee"), Jeff Kupietzky ("Kupietzky") and Lawrence
3  Ng's ("Ng") (collectively "Defendants") Motion to Dismiss First Amended
4  Complaint ("Motion to Dismiss").

5

6  ## MEMORANDUM OF POINTS AND AUTHORITIES

7  I.     INTRODUCTION

8  In response to Cahn's Complaint, Defendants filed a Motion to Dismiss
9  Cahn's Fourth (Breach of the Covenant of Good Faith and Fair Dealing), Sixth
10  (Intentional Misrepresentation), Eighth (Negligent Misrepresentation), Ninth
11  (Conversion), and Tenth (Unfair Competition) claims for relief.  Defendants did not
12  object to Cahn's First, Second and Third claims for breach of contract, or his Fifth
13  claim for accounting.

14  Defendants have failed to set forth any case law or viable arguments in
15  support of its Motion to Dismiss.  First, Defendants argue that Cahn's forth claim
16  for conversion fails to state a claim because the writings are integrated.  This
17  argument fails because Cahn's claim is much broader than that argued by
18  Defendants, additionally, Cahn has demonstrated that Defendants intentionally
19  interfered with Cahn's ability to perform under the contract.

20  Second, Defendants argue that Cahn's sixth and eighth claims for intentional
21  and negligent misrepresentation fail because they are not pled with specificity, they
22  are simply restatements of his contract claim, and the representations are non-
23  actionable opinions.  Again, all of these arguments fail.  Cahn has alleged a series of
24  specific misrepresentations made by Defendants as an inducement for Cahn to enter
25  into a contract with Defendants.  Also, the relevant case law clearly holds that tort
26  damages are permitted on a contract claim when a plaintiff is fraudulent induced to
27  enter into a contract by a defendant.  Finally, contrary to the position articulated by
28  Defendants, representations of future conduct are actionable when they are made

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

1  without the present intent to perform, as they were in this case.

2        Third, in its Motion to Dismiss Defendants' argue that Cahn did not state a

3  viable claim for conversion because Cahn failed to allege that Oversee knowingly

4  converted Cahn's property.  However, Defendants seem to have misapplied the law

5  again.  Conversion is a strict liability tort, and it is not required that Oversee

6  knowingly converted Cahn's property, only that it intended to assert control over the

7  property (in this case, the domain names), which it did.

8        Finally, Defendants' object to Cahn's tenth claim for unfair competition

9  stating that Cahn failed to identify which prong of the statute it asserted a claim

10  under, and that he failed to seek appropriate relief.  This is simply incorrect as the

11  Complaint clearly alleges that Oversee's conduct was unfair and fraudulent under

12  the UCL.  Oversee's conduct was unfair and fraudulent because its behavior was

13  immoral, unethical, oppressive and unscrupulous; Oversee deceived the public; and

14  it violated antitrust laws.  Additionally, Cahn stated a remedy for restitution, which

15  is specifically provided for in the statute.

16        Therefore, as explained in further detail below, Cahn has stated viable claims

17  for breach of the covenant of good faith and fair dealing, intentional

18  misrepresentation, negligent misrepresentation, conversion, and unfair competition.

19  As a result, the Court should deny Defendants' Motion to Dismiss.

20

21  II.    **STATEMENT OF RELEVANT FACTS**

22        Plaintiff Monte Cahn is the founder of Moniker.com ("Moniker").  (¶ 9 of

23  Complaint.)  Cahn sold Moinker to Seevast Corp. ("Seevast") in 2005, but stayed on

24  as CEO in order to continue to manage and operate the business in the same manner

25  that had made it the success that it was.  (¶ 10 of Complaint.)  In 2007 Oversee, a

26  competitor of Moniker, approached Seevast regarding the purchase of Moniker.  (¶

27  12 of Complaint.)  However, Cahn's agreement to join Oversee was an explicit

28  condition of the agreement to purchase Moniker from Seevast.  (¶ 12 of Complaint.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  Therefore, in addition to negotiating a sale price with Seevast, Oversee also had to
2  induce Cahn to joint Oversee.  In an attempt to convince Cahn to join, Defendants
3  made a series of representations regarding Cahn's management of Moniker, the
4  resources that would be available to him, and his compensation.  (¶¶ 13-21 of
5  Complaint.)  Included in the negotiations was also an ability for Cahn to earn $13
6  million through a goal oriented bonus structure.  (¶ 19 of Complaint.)  However, at
7  the time of these negotiations, Defendants knew that they would not be able to abide
8  by their representations.[1]  The parties reached an agreement on or around December
9  14, 2007.  (¶ 22 of Complaint.)  After Cahn joined Oversee, Defendants took a
10  series of affirmative actions specifically targeted to deny Cahn the ability to reach
11  his benchmarks under the MIP.  (¶¶ 24-25 of Complaint.)   In June 2010 Oversee
12  offered Cahn another opportunity to earn additional compensation by earning
13  commission on individual sale transactions, however, Oversee failed to compensate
14  Cahn under this agreement as well.  (¶¶ 28-29 of Complaint.)   As a result, Cahn
15  was forced to bring this suit against Defendants to recover monies that are rightfully
16  owed to him.

17

18  III.   **STANDARD**

19       "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if,
20  accepting all well-pleaded allegations in the complaint as true, and viewing them in
21  the light most favorable to plaintiff, plaintiff is not entitled to relief." (*In re*
22  *Burlington Coat Factory Sec. Litig.* (3d Cir. 1997) 114 F.3d 1410, 1420.) Dismissal

23  ─────────────────────

24       [1] Since filing the Complaint, it has come to our attention that during these
25  negotiations there was a contract in place between Google and Oversee, which
26  Defendants had knowledge of, and which precluded Cahn from attaining the
27  benchmarks/goals in his MIP.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  for failure to state a claim is "proper only where there is no cognizable legal theory

2  or an absence of sufficient facts alleged to support a cognizable legal theory."

3  (*Shroyer v. New Cingular Wireless Servs.* (9th Cir. 2010) 622 F.3d 1035, 1041,

4  *citing Navarro v. Block* (9th Cir. 2001) 250 F.3d 729, 732.)

5       Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.

6  (*See SCLC v. Supreme Court* (5th Cir. 2001)252 F.3d 781, 786; *Lone Star*

7  *Industries, Inc. v. Horman Family Trust* (10th Cir. 1992) 960 F.2d 917, 920.)  "A

8  complaint should not be dismissed for failure to state a claim unless it appears

9  beyond doubt that the plaintiff can prove no set of facts in support of his claim

10 which would entitle him to relief."  (*Simon Oil Co. v. Norman* (9th Cir. 1986) 789

11 F.2d 780, 781, *citing Conley v. Gibson* (1957) 355 U.S. 41, 45-46.)  Courts must

12 assume that all general allegations "embrace whatever specific facts might be

13 necessary to support them."  (*Peloza v. Capistrano Unified School Dist.* (9th Cir.

14 1994) 37 F.3d 517, 521, *see also United States v. Redwood City* (9th Cir. 1981) 640

15 F.2d 963, 966 [dismissal is proper only in "extraordinary" cases].)

16

17 IV.   **CAHN'S FOURTH CLAIM FOR BREACH OF THE COVENANT OF**

18       **GOOD FAITH AND FAIR DEALING IS SUFFICIENTLY PLED.**

19       A.   **Cahn Has Alleged Defendants' Breach of the Implied Covenant of**

20            **Good Faith and Fair Dealing Under the MIP.**

21       The MIP's choice of law provision provides that "the terms of this Plan shall

22 be governed by the laws of the State of California…"  (P. 2 of the MIP, Exhibit "2"

23 to Defendant's Request for Judicial Notice ("RJN").)

24       Under California law it is well established that "[t]here is an implied covenant

25 of good faith and fair dealing in every contract that neither party will do anything

26 which will injure the right of the other to receive the benefits of the agreement."

27 (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.)  Additionally,

28 "[t]his covenant not only imposes upon each contracting party the duty to refrain

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

4

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  from doing anything which would render performance of the contract impossible by
2  any act of his own, but also the duty to do everything that the contract presupposes
3  that he will do to accomplish its purpose." (*Harm v. Frasher* (1960) 181 Cal. App.
4  2d 405, 417.)
5      Cahn and Oversee entered into the MIP on October 1, 2007. (¶ 19 of
6  Complaint.) The bonus structure set forth under the proposed MIP was based on
7  Cahn's attainment of certain performance goals in four categories. (*Id.*) Pursuant to
8  California law, once Oversee entered into the MIP with Cahn it had a duty to refrain
9  from doing anything that would interfere with Cahn's ability to attain the
10 performance goals delineated in the MIP (*Comunale*, 50 Cal.2d at p. 658), and an
11 affirmative duty to do everything that the MIP presupposes that Oversee would do
12 to accomplish its purpose. (*Harm*, 181 Cal. App. 2d at p. 417.) Oversee breached
13 its duty of good faith and fair dealing under the MIP by:
14      • Delegating Cahn the additional responsibility of running the
15        SnapNames and DomainSponsor divisions of Oversee, and removing
16        Cahn's oversight and control from the Registrar Business Segment,
17        while failing to make the requisite alterations to the MIP goals to
18        account for the changes. (¶ 24A of Complaint.)
19      • Improperly diverting substantial revenues and profits from Moniker to
20        other subsidiaries of Oversee. (¶ 24B of Complaint.)
21      • Reducing Cahn's staff at Moniker by more than 33%. (¶ 24C of
22        Complaint.)
23      • Improperly and incorrectly reporting Moniker's Selling, General &
24        Administrative Expenses. (¶ 24D of Complaint.)
25      • Severely restraining the marketing and public relations budget available
26        to Moniker. (¶ 24E of Complaint.)
27      • Restricting Moniker's ability to transact in adult domain names which,
28        pre-merger, comprised a substantial portion of Moniker's business, and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   again, without making the requisite alterations to the MIP goals to
2   account for the change.  (¶ 24F of Complaint.)

3   • Denying Moniker the opportunity to cross-market to other Oversee
4     subsidiaries' customers.  (¶ 24G of Complaint.)

5   • Delaying the infrastructure and technology integration between
6     Moniker and Oversee inhibiting Moniker's inability to fully monitor,
7     account for and measure its own performance levels.  (¶ 24H of
8     Complaint.)

9   • Implementing a nine month freeze on development of new products
10    and services post-merger.  (¶ 24I of Complaint.)

11  • Altering Cahn's reporting relationship several times throughout his
12    tenure, stripping Cahn of his ability to effectively manage Moniker.
13    (¶¶ 24J and K of Complaint.)

14  • Oversee failed to obtain a California escrow license for Moniker so that
15    it could legally perform its auctions in California.  (¶ 24L of
16    Complaint.)

17  • Reducing Moniker's staff training budget to less than 1/10 of what
18    Cahn needed.  (¶ 24M of Complaint.)

19  Each of these allegations were incorporated into the Fourth Claim for Relief for
20  Breach of the Covenant of Good Faith and Fair Dealing.  (¶ 49 of Complaint.)

21      Therefore, as set forth above, Cahn has sufficiently pled a cause of action for
22  breach of the covenant by demonstrating that Oversee intentionally committed a
23  deluge of actions specifically targeted at interfering and disrupting Cahn's ability to
24  receive his benefits under the MIP. (*Comunale,* 50 Cal.2d at p. 658)

25      Oversee's argument that Cahn's claim for breach of the covenant is really a
26  claim for breach of contract is incorrect.  As stated above, dismissal for failure to
27  state a claim is "proper only where there is no cognizable legal theory or an absence
28  of sufficient facts alleged to support a cognizable legal theory." (*Shroyer,* 622 F.3d

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

6

1   at p. 1041.)  Here, Cahn has identified at least twelve specific instances where
2   Oversee breached its duty of good faith and fair dealing by intentionally interfering
3   with Cahn's ability to perform under the MIP.  (*See* ¶¶ 24A-M of Complaint.)
4   Accordingly, Cahn has pled a viable claim for breach of the covenant of good faith
5   and fair dealing under the MIP.

6       **B.   Cahn Has Alleged Defendants' Breach of the Implied Covenant of**
7            **Good Faith and Fair Dealing Under the Commission Plan.**

8       Under Florida law, like California law, "every contract contains an implied
9   covenant of good faith and fair dealing, requiring that the parties follow standards of
10  good faith and fair dealing designed to protect the parties' reasonable contractual
11  expectations. [Citation omitted.]  A breach of the implied covenant of good faith
12  and fair dealing is not an independent cause of action, but attaches to the
13  performance of a specific contractual obligation."  (*Centurion Air Cargo v. UPS Co.*
14  (11th Cir. Fla. 2005) 420 F.3d 1146, 1151-1152.)  "The purpose of the implied
15  covenant of good faith is to protect the reasonable expectations of the contracting
16  parties."  (*Three Keys, Ltd. v. Kennedy Funding, Inc.* (2009) 28 So. 3d 894, 903.)

17      As identified above, paragraphs 24A-M of Complaint clearly set forth an
18  abundance of facts demonstrating Oversee's deliberate interference with Cahn's
19  ability to properly manage his business units, thereby impairing his rights under the
20  Commission Plan.  Again, paragraphs 24A-M of Complaint were incorporated into
21  the Fourth Claim for Relief through paragraph 49.  Accordingly, Cahn has pled a
22  viable claim for Oversee's breach of the covenant of good faith and fair dealing
23  under the Commission Plan.

24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

7

V.   **CAHN'S SIXTH AND EIGHTH CLAIMS FOR NEGLIGENT AND INTENTIONAL MISREPRESENTATION ARE SUFFICIENTLY PLED.**

    A.   **Cahn's Claims for Misrepresentation Are Pled With the Requisite Level of Specificity.**

The elements of fraud that will give rise to a tort action for deceit are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal. 4th 951, 974.)

Further, dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." (*Shroyer,* 622 F.3d at p. 1041.) While Cahn's claims for misrepresentation may be more appropriately deemed "promissory fraud", promissory fraud is simply a type of intentional misrepresentation.

> To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing. [Citations omitted.] Given this requirement, an action based on a false promise is simply a type of intentional misrepresentation, i.e., actual fraud.

(*Tarmann v. State Farm Mut. Auto. Ins. Co.,* (1991) 2 Cal. App. 4th 153, 159.)

Oversee claims that Cahn has not pled his claims for fraud with adequate specificity. However, the courts have interpreted Rule 9(b) to require that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

8

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    against the charge and not just deny that they have done anything wrong."

2    (*Semegen v. Weidner* (9th Cir. 1985) 780 F.2d 727, 731.)  Additionally, a pleading

3    "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so

4    that the defendant can prepare an adequate answer from the allegations."

5    (*Neubronner v. Milken* (9th Cir. 1993) 6 F.3d 666, 671-672.)  Therefore, while "mere

6    conclusory allegations of fraud are insufficient" (*Moore v. Kayport Package*

7    *Express* (9th Cir. 1989) 885 F.2d 531, 540), Cahn has stated more than sufficient

8    facts apprising Defendants of the claims and allegations asserted against them.

9           In the Complaint, Cahn specifically and particularly alleges the following[2]:

10     • Kupietzky and Ng were primarily responsible for the negotiations on

11        behalf of Oversee and for making several statements, the purpose of which

12        were to induce Cahn to join Oversee after the merger.  (¶ 13 of

13        Complaint.)

14     • Around December 2007, Kupietzky promised that Moniker would get

15        adequate marketing and public relations assistance from Oversee.  (¶ 14 of

16        Complaint.)

17     • Around December 2007, Kupietzky claimed that Oversee could and would

18        centralize the operations of both Moniker and Oversee.  (¶ 14 of

19        Complaint.)

20     • Around December 2007, Kupietzky promised that there would be

21        integration and cross-selling potential between all of Oversee's

22        subsidiaries.  (¶ 15 of Complaint.)

23

24    ───────────────

25    [2] All of the statements identified below are incorporated by reference into the Sixth

26    and Seventh Claims for Relief by and through paragraphs 62 and 70 of the

27    Complaint.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1                                    9
─────────────────────────────────────────────────
MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1     •   During the negotiations, Ng promised that the merger with Oversee would

2          provide Moniker with the resources and staffing it needed to flourish in the

3          market.   (¶ 16 of Complaint.)

4     •   During the negotiations, its was determined and agreed upon that, if Cahn

5          were to join Oversee, he would serve as the President of Moniker, and

6          would have the normal duties, responsibilities, functions and authority as

7          are normally associated with and appropriate for such position.   (¶ 17 of

8          Complaint.)

9     •   During negotiations it was also determined and agreed upon that Cahn

10          would report directly to Ng, who was then the CEO, ensuring Cahn had

11          adequate authority and dominion to carry out and achieve Moniker's

12          performance goals within Oversee's infrastructure.   (¶ 18 of Complaint.)

13     •   Oversee, through Ng and Kupietzky, proposed a "Management Incentive

14          Plan" ("MIP") whereby Cahn would be able to earn up to $13,000,000

15          through a goal oriented bonus structure.   (¶ 19 of Complaint.)

16     •   Kupietzky represented that the overall Oversee EBITDA in the MIP would

17          be adjusted, either up or down, throughout the term of the MIP, and those

18          calculations would be the controlling benchmarks.   (¶ 21 of Complaint.)

19       The statements identified above, in paragraphs 13-21 of the Complaint,

20 specifically identify which defendant made what representations, and when they

21 made them.  Further, paragraphs 24A-M of Complaint (identified above) and

22 paragraphs 67 and 76 specifically identify *why* each of the representations were

23 false.

24       Additionally, since filing the First Amended Complaint, it has come to our

25 attention that there was a contract in place between Google and Oversee during the

26 time Oversee was negotiating with Seevast and Cahn, which Defendants had

27 knowledge of, and which directly effected Cahn's performance under the MIP.  We

28 are of the understanding and belief that the acquisition of Moniker was in direct

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    violation of the Google contract.  Therefore at the time Defendants entered the MIP,
2    Defendants knew that Cahn would never be able to reach the benchmarks set forth
3    under his MIP as a result of the Google contract, and therefore Cahn never even had
4    the ability to earn the $13 million bonus.

5          An action for promissory fraud may lie where a defendant fraudulently
6    induces the plaintiff to enter into a contract.  (*Chelini v. Nieri* (1948) 32 Cal. 2d 480,
7    487 ["tort of deceit" adequately pled where plaintiff alleges "defendant intended to
8    and did induce plaintiff to employ him by making promises . . . he did not intend to
9    (since he knew he could not) perform…"].)  Here Oversee induced Cahn to enter
10   into his employment agreement and his MIP by the various representations alleged
11   in paragraphs 13-21 of the Complaint.  Additionally, as alleged in paragraphs 24A-
12   M, 67 and 76 of the Complaint, these representations were false, and Defendants
13   knew that they were false at the time they entered into the contracts because, for
14   example, they knew of the existence of the Google contract.  Therefore, Cahn's
15   sixth and eighth claims for fraud are adequately pled.

16        B.    **Cahn's Claims for Misrepresentation Are Not Restatements of His**
17              **Contract Claim.**

18        Defendants argue that conduct amounting to a breach of contract becomes
19   tortious only when it also violates an independent duty arising from principles of
20   tort law.  (11:4-12 of Motion to Dismiss [Doc. 12].)  However, Defendants failed to
21   identify all the instances where tort damages have been permitted in contract cases.
22   In analyzing the application of tort damages to breach of contract causes of action,
23   the Court in *Erlich v. Menezes* (1999) 21 Cal. 4th 543 found that:

24              Tort damages have been permitted in contract cases where a
25              breach of duty directly causes physical injury [citation omitted];
26              for breach of the covenant of good faith and fair dealing in
27              insurance contracts [citation omitted]; for wrongful discharge in
28              violation of fundamental public policy [citation omitted]; or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1
11

1    where the contract was fraudulently induced. [citation omitted]
2    In each of these cases, the duty that gives rise to tort liability is
3    either completely independent of the contract or arises from
4    conduct which is both intentional and intended to harm.

5    (*Erlich v. Menezes* (1999) 21 Cal. 4th 543, 551-552; *see also Robinson Helicopter*
6    *Co., Inc. v. Dana Corp.* (2004) 34 Cal. 4th 979, 989-990, *and Freeman & Mills, Inc.*
7    *v. Belcher Oil Co.* (1995) 11 Cal. 4th 85, 108 [Our determination to allow the
8    plaintiff to sue for fraud and to potentially recover exemplary damages is not
9    justified by the plaintiff's greater loss, but by the fact that the breach of a
10   fraudulently induced contract is a significantly greater wrong, from society's
11   standpoint, than an ordinary breach.].)

12   The courts have specifically identified fraudulent inducement to enter into a
13   contract as grounds for awarding tort damages in a breach of contract cause of
14   action because it arises from conduct which is both intentional and intended to harm.
15   (*Id.*, see also *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235
16   Cal. App. 3d 1220, 1238 [Court found that where sellers entered into lease
17   guaranties without the intent to perform, they were subject to tort liability.].)

18   In *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal. 4th 979,
19   plaintiff purchased parts from defendant manufacturer, and defendant provided false
20   certificates of conformance.   (*Id.* at pp. 985-986.)  The court stated that but for
21   defendant's affirmative misrepresentations by supplying the false certificates of
22   conformance, plaintiff would not have accepted delivery and used the
23   nonconforming clutches over the course of several years, nor would it have incurred
24   the cost of investigating the cause of the faulty clutches.  Accordingly, defendant's
25   fraud was a tort independent of the breach of contract.  (*Id.* at pp. 990-991.)

26   The analysis in *Robinson Helicopter* is similar to the allegations in Cahn's
27   Complaint -- but for the false representations made by Defendants, Cahn would not
28   have entered into the MIP, which was the keystone in the sale of Moniker to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Oversee.  In both scenarios the breach of contract was accompanied by an
2    intentional tort, not negligence.  Therefore, Defendant's fraud is a tort independent
3    of Cahn's breach of contract claims.

4        In their Motion to Dismiss, Defendants rely upon *Cusano v. Klein* (2003) 280
5    F. Supp. 2d 1035, for the proposition that fraud claims which do no more than allege
6    breach of contractual duties should be dismissed.  Even thought Cahn's allegation of
7    fraudulent inducement is sufficient grounds to seek tort damages, *Cusano* is
8    distinguishable, nevertheless.  *Cusano* involved a plaintiff who was seeking
9    royalties under a written agreement.  (*Id.* at pp. 1038-1039.)  The court found that
10   since the plaintiff only claimed the amount of royalties due him was falsely
11   reported, he alleged only a breach of contract and his fraud claims were dismissed.
12   (*Id.* at p. 1042)  The court stated that "[a] fraud claim fails when it merely states an
13   alleged breach of contractual duties and does not concern representations that are
14   collateral or extraneous to the parties' contract."  (*Id.*)

15       In our case, Cahn has alleged several facts which do not appear in the parties'
16   contract and which were made for the specific purpose of inducing Cahn to enter
17   into the MIP.  These statements are extraneous to the parties' agreement and are
18   therefore independently actionable.

19       C.    **A Promise of Future Conduct is Actionable as Fraud if Made**
20             **Without the Intent to Perform.**

21       Oversee's assertion that predictions as to future events, or statements as to
22   future action by some third party, are deemed opinions, and not actionable fraud is
23   also only partially correct.  (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2
24   Cal. App. 4th 153, 158.)   Oversee deliberately, and strategically, omits that other
25   half of the law which holds that "a promise of future conduct is actionable as fraud
26   only if made without a present intent to perform."  (*Magpali v. Farmers Group*
27   (1996) 48 Cal. App 4th 471, 481, *see also Tarmann,* 2 Cal. App. 4th at pp. 158-
28   159.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   As explained in detail above, Oversee knew that at the time it was negotiating
2   the MIP with Cahn that it was *impossible* for Cahn to meet the benchmarks imposed
3   by Oversee, as a result Defendants had no intent of paying Cahn the bonuses as
4   negotiated.  Therefore, since Defendants did not have the present intent to perform
5   under the MIP, its promises of future conduct – including the promise of paying
6   Cahn $13 million in bonuses – are actionable as fraud.

7

8   VI.   **CAHN'S NINTH CLAIM FOR CONVERSION IS SUFFICIENTLY**
9        **PLED.**

10   Conversion is simply the wrongful exercise of dominion over the property of
11   another. The elements of a conversion claim are: (1) the plaintiff's ownership or
12   right to possession of the property; (2) the defendant's conversion by a wrongful act
13   or disposition of property rights; and (3) damages." (*Burlesci v. Petersen* (1998) 68
14   Cal. App. 4th 1062, 1066.)  Further, "[c]onversion is a strict liability tort. The
15   foundation of the action rests neither in the knowledge nor the intent of the
16   defendant." (*Burlesci v. Petersen* (1998) 68 Cal. App. 4th 1062, 1066.)
17   Accordingly, as a general rule, "conversion rests neither in the knowledge nor the
18   intent of the defendant. It rests upon the unwarranted interference by defendant with
19   the dominion over the property of the plaintiff from which injury to the latter results.
20   Therefore, neither good nor bad faith, neither care nor negligence, neither
21   knowledge nor ignorance, are the gist of the action." (*Burlesci v. Petersen* (1998)
22   68 Cal. App. 4th 1062, 1067, *see also Enter. Leasing Corp. v. Shugart Corp.* (1991)
23   231 Cal. App. 3d 737, 747-748.)  "Thus, while the act constituting the conversion
24   must be intentionally done - that is, the defendant must intend to assert dominion
25   over the property - the defendant's good faith or lack thereof is immaterial." (*Chase*
26   *Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.* (2010) 748 F. Supp. 2d
27   1145, 1178.)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    In his Complaint Cahn alleged that Oversee exercised possession of
2 approximately 4,500 domain names which Cahn personally owned. (¶ 79 of
3 Complaint.) Oversee argues that Cahn failed to allege that Oversee "knowingly and
4 intentionally asserted wrongful control over Cahn's domain names". (14:23-26 of
5 Motion to Dismiss.) Again, Oversee has incorrectly applied the law. Conversion is
6 a strict liability tort, it does not require that Oversee knowingly and intentionally
7 asserted control over *Cahn's* domain names, it simply requires that Oversee
8 intentionally asserted control over the domain names, in general. Specific
9 knowledge that Cahn's domain names were "mixed up" with Moniker's is irrelevant
10 under a claim for conversion. "[D]efendant' good faith, ignorance, mistake or
11 motive is irrelevant and does not constitute a defense." (*Enter. Leasing Corp. v.*
12 *Shugart Corp.* (1991) 231 Cal. App. 3d 737, 747-748.) Therefore, as long as
13 Oversee had the intent to assert control over Moniker's domain names, its alleged
14 ignorance, or the fact that Cahn's domain names were "mixed in" with Moniker's is
15 irrelevant and does not constitute a defense to a claim for conversion.
16
17 VII.  **CAHN'S TENTH CLAIM FOR UNFAIR COMPETITION IS**
18       **SUFFICIENTLY PLED.**
19       A.    **Cahn has Pled a Cognizable UCL Claim.**
20       Oversee's first argument is that Cahn has failed to allege statutory unfair
21 competition because he failed to identify which of the three prongs his claim is
22 based upon. (15:21-23 of Motion to Dismiss.) A cursory reading of the Complaint
23 would reveal that Cahn has alleged that "[t]he conduct described herein constitutes
24 *unfair* and *fraudulent* business practices." (¶ 92 of Complaint.) Therefore, Cahn
25 has alleged both violations of the unfair and fraudulent prongs of the UCL.
26       B.    **The UCL Is Purposefully Broad.**
27       Additionally, the UCL is purposefully broad and encompasses a wide variety
28 of acts by a business. (*See, e.g., Schnall v. Hertz Corp.* (2000) 78 Cal. App. 4th

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1
15
MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1144, 1153-1154 ["[T]he unfair competition law's scope is broad.  Unlike the Unfair Practices Act . . . it does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.'  Its coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.' . . . By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."].)

*Schall* goes on to state: "The statutory language referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." (*Id.* at p. 1153.)  "[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." (*Id.* at p. 1153.)  "[T]he determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim…" (*Id.* at p. 1167.)

## C.   Oversee's Actions Were Unfair Under the UCL.

An "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 59 Cal App 3d 509, 530, *see also Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal. App. 4th 700, 718-719.)

In this case, Cahn has sufficiently alleged an unfair business practice on behalf of Oversee.  Oversee intentionally misrepresented the resources and opportunities which would be provided if Cahn agreed to enter into his employment agreement and MIP.  (¶¶ 13-21, 87-89 of Complaint.)  Cahn relied upon these false

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1
16
MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   promises and conveyed them to Moniker's customers in the form of personal

2   communications in response to complaints and publically posted letters describing

3   services and commitments which would be provided. Thus, not only was Cahn

4   deceived, Oversee's misrepresentations inevitably deceived the public and Cahn's

5   customer base that he had spent years developing and fostering. Furthermore, as

6   explained above, at the time that Oversee and Cahn entered into their contractual

7   obligations, Oversee knew that Cahn would not be able to reach the benchmarks in

8   his MIP because of the existing Google contract. They fraudulently enticed Cahn to

9   enter into the MIP with the promise of a large bonus in exchange for his approval of

10  the sale of Moniker to Oversee. Defendants' behavior was exceptionally immoral,

11  unethical, oppressive and unscrupulous.

12      D.   **Oversee's Conduct Was Also Unfair Because it Violated Antitrust**

13           **Law.**

14      Additionally, "When a plaintiff who claims to have suffered injury from a

15  direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair'

16  in that section means conduct that threatens an incipient violation of an antitrust law,

17  or violates the policy or spirit of one of those laws because its effects are

18  comparable to or the same as a violation of the law, or otherwise significantly

19  threatens or harms competition." (*Cel-Tech Communications, Inc. v. Los Angeles*

20  *Cellular Telephone Co.* (1999) 20 Cal. 4th 163, 187.) The central question is one of

21  competitive injury. (*GAF Corp. v. Circle Floor Co.* (1972) 463 F.2d 752, 758, *see*

22  *also Apex Hosiery Co. v. Leader* (1940) 310 U.S. 469, 492-493 [the Sherman Act

23  was "enacted in the era of 'trusts' and of 'combinations' of businesses and of capital

24  organized and directed to control of the market by suppression of competition in the

25  marketing of goods and services, the monopolistic tendency of which had become a

26  matter of public concern. The end sought was the prevention of restraints to free

27  competition in business and commercial transactions which tended to restrict

28  production, raise prices or otherwise control the market to the detriment of

4834-9885-9786.1

17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   purchasers or consumers of goods and services, all of which had come to be

2   regarded as a special form of public injury."].)

3        Prior to the purchase of Moniker, Moniker and Oversee were involved in the

4   same business areas, primarily registration and management of domain names,

5   traffic monetization and parking, and drop and expired name back order and

6   purchasing. (¶¶ 9, 11 of Complaint.)  Moniker was the market leader both as a

7   registrar and as a domain brokerage and auction company at the time of the

8   purchase.  However, in order for Oversee to retain its market share, and destroy its

9   competition, Oversee fraudulently induced Cahn to enter into the MIP so that

10  Seevast could complete the sale of Moniker to Oversee.  The effect of the merger

11  had a detrimental impact on the public by directly destroying one of industry

12  leaders.  Therefore, Oversee's violation of the antitrust laws satisfies the "unfair"

13  prong of the UCL as well.

14        E.     **Oversee's Conduct Was Fraudulent Under the UCL.**

15        The second prong that Cahn asserted is the "fraudulent" prong.  The

16  "fraudulent" prong of the UCL "does not refer to the common law tort of fraud but

17  only requires a showing members of the public 'are likely to be deceived.'"

18  (*Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832, 839, *citing Bank of the*

19  *West v. Superior Court* (1992) 2 Cal. 4th 1254, 1267.)  Oversee claims that the

20  Complaint contains no such allegations. (16:5-9 of Motion to Dismiss.)  This is

21  incorrect.  As discussed above in the "unfair" prong, the Complaint states that as a

22  result of Oversee's  numerous misrepresentations, Moniker's employees and

23  customers were misled. (¶ 92 of Complaint.)   Therefore, Cahn has stated a claim

24  under the "fraudulent" prong of the UCL as well.

25        F.     **Cahn Has Alleged an Adequate Remedy.**

26        Oversee asserts that Cahn has failed to seek relief available under the UCL,

27  specifically, that remedies under the UCL are limited to injunctive relief and

28  restitution. (16:17-19 of Motion to Dismiss.)  However, Oversee then admits that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

18

1 | "the Prayer for Relief requests 'restitution of all wrongfully withheld amounts and
2 | disgorgement of ill-gotten profits, in an amount according to proof." (17:3-5 of
3 | Motion to Dismiss.)  Therefore, by its own admission, Cahn has in fact stated an
4 | appropriate remedy for his UCL claim.

5 | Furthermore, "the language of section 17203 is clear that the equitable powers
6 | of a court are to be used to 'prevent' practices that constitute unfair competition and
7 | to 'restore to any person in interest' any money or property acquired through unfair
8 | practices." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal. 4th 1134,
9 | 1147-1148.)  This is what Cahn has pled in his Complaint, and therefore Cahn has
10 | alleged a claim for unfair competition under section 17200.

11 |

12 | **VIII.   CAHN'S CLAIMS FOR PUNITIVE DAMAGES ARE VALID.**

13 | As explained in more detail above, Cahn has stated viable claims for
14 | Intentional Misrepresentation and Unfair Competition.  Additionally, where the
15 | Complaint sets forth facts demonstrating that Defendants acted willfully, unlawfully
16 | and maliciously, such allegations are sufficient as against a demurrer to entitle
17 | Plaintiff to seek exemplary damages. (*Menzies v. Geophysical Service, Inc.* (1953)
18 | 16 Cal. App. 2d 419, 424, *see also Hartzell v. Myall* (1953) 115 Cal. App. 2d 670,
19 | 678.)

20 | Cahn has demonstrated, repeatedly, that Defendants acted willfully,
21 | unlawfully and maliciously in inducing Cahn to enter in the MIP in order to
22 | complete the sale of Moniker to Oversee. (*See, e.g.,* ¶¶ 13-21, 234-25 of Complaint,
23 | and §§ 4, 5 and 7 of Cahn's Opposition to Motion to Dismiss.)  Accordingly,
24 | Defendants' request to strike Cahn's prayer for punitive damages such be denied.
25 | / / /
26 | / / /
27 | / / /
28 | / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

19

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

IX.   **CONCLUSION**

Based on the arguments and case law set forth herein, Cahn respectfully requests that this Court deny Defendants' Motion to Dismiss Cahn's Fourth, Sixth, Eighth, Ninth and Tenth claims for relief.  Alternatively, the Court should grant Cahn leave to correct any alleged defects in his Complaint.

DATED: July 25, 2011                    JOHN L. BARBER
                                        KENNETH D. WATNICK
                                        SHAWNA T. RASUL
                                        SONJA PAVLOV
                                        **LEWIS BRISBOIS BISGAARD &
                                        SMITH** LLP


                                        By:  ___/s/ Sonja Pavlov_____
                                             Sonja Harrington
                                             Attorneys for MONTE CAHN

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**FEDERAL COURT PROOF OF SERVICE**
**Monte Cahn vs. Oversee.Net, et al**

**File No. 31555-02**

STATE OF CALIFORNIA, COUNTY OF Los Angeles

    At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    On July 25, 2011, I served the following document(s): **MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

    I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

William Delgado
WILLENKEN WILSON LOH &
LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017

(213) 955-8026 ofc.
(213) 250-7900 fax

The documents were served by the following means:

☒  (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

    (BY E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on July 25, 2011, at Los Angeles, California.

                    /s/ Diana Larenas
                    Diana Larenas

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-9885-9786.1

MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS