William A. Delgado (State Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner @willenken.com
**WILLENKEN WILSON LOH & LIEB LLP**
707 Wilshire Boulevard, Suite 3850
Los Angeles, California 90017
Tel: (213) 955-9240 ■ Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFF KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10<br><br>Defendants. | Case No. CV11-03800 SVW (AGRx)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>DATE:  August 15, 2011<br>TIME:   1:30 p.m.<br>PLACE: Crtrm. 6 |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION……………………………………………………………............1

II. ARGUMENT………………………………………………………………………….1

    A. Plaintiff Has Not Stated a Distinct Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ……………………..…………..…1

        1. The Fourth Claim Fails Under California Law With Respect to the MIP…………………………………………………………….......1

        2. The Fourth Claim Fails Under Florida Law With Respect to the Commission Plan……………………………………………………..3

    B. The Sixth and Eighth Claims for Negligent and Intentional Misrepresentation Fail to State a Claim………………………………………....4

        1. The Sixth and Eighth Claims Fail as Claims for Promissory Fraud………………………………………………………………....4

        2. Failure to Plead Fraud with Specificity…………………………….....7

        3. The Parol Evidence Rule Bars Cahn's Newly-Described Claim for Promissory Fraud……………………………………………….....8

        4. Summary of Fraud Claims……………………………………………..9

    C. Plaintiff's Ninth Claim for Conversion Should be Dismissed………………..9

    D. The Tenth Claim Under Business & Professions Code Section 17200 Fails to State a Claim Upon Which Relief May be Granted…………10

III. PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRIKEN………………………………………………………………………….....11

IV. CONCLUSION…..……………………………………………….………………12

# **TABLE OF AUTHORITIES**

**Page(s)**

### **State Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) .................................................................................... 5

*Abers v. Rounsavell*,
  189 Cal. App. 4th 348 (2010) ....................................................................... 3

*Alling v. Universal Manufacturing Corp.*,
  5 Cal.App.4th 1412 (1992) ........................................................................... 9

*Brookwood v. Bank of America*,
  45 Cal. App. 4th 1667 (1996) ....................................................................... 5

*Brown v. Wells Fargo Bank, NA*,
  168 Cal. App. 4th 938 (2008) ....................................................................... 5

*Careau & Co. v. Security Pacific Business Credit*,
  222 Cal. App. 3d 1371 (1990) ...................................................................... 2

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
  2 Cal. 4th 342 (1992) .................................................................................... 2

*Chelini v. Nieri*,
  32 Cal. 2d 480 (1948) ................................................................................... 6

*Comunale v. Traders & General Ins. Co.*,
  50 Cal. 2d 654 (1958) ................................................................................... 2

*Ford v. Shearson Lehman/American Express, Inc.*,
  180 Cal. App. 3d 1011 (1986) ...................................................................... 5

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
  11 Cal.4th 85 (1995) ..................................................................................... 6

*Hunter v. Up-Right, Inc.*,
  6 Cal. 4th 1174 (1994) .................................................................................. 2

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .................................................................................. 10, 11

*Las Palmas Assoc. v. Las Palmas Center Assoc.*,
  235 Cal. App. 3d 1220 (1991) ................................................................................ 6

*Magpali v. Farmers Group, Inc.*,
  48 Cal. App. 4th 471 (1996) ............................................................................... 8, 9

*Price v. Wells Fargo Bank*,
  213 Cal. App. 3d 465 (1989) .................................................................................. 5

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ......................................................................................... 5, 6

*Wolf v. Walt Disney Pictures and Television*,
  162 Cal. App. 4th 1107 (2008) ............................................................................... 2

### Federal Cases

*Blake v. Dierdorff*,
  856 F.2d 1365 (9th Cir. 1988) ................................................................................ 8

*Burger King v. Weaver*,
  169 F.3d 1310 (11th Cir. 1999) .............................................................................. 3

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.*,
  748 F. Supp. 2d 1145 (2010) .................................................................................. 9

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) .................................................................................... 7

*Cusano v. Klein*,
  280 F. Supp. 2d 1035 (C.D. Cal. 2003) .................................................................. 4

*Enola Contracting Services, Inc. v. URS Group, Inc.*,
  2008 WL 1844612 *3 (N.D. Fla. April 23, 2008) .................................................. 3

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) .................................................................. 7

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) .................................................................................. 7

*Janoe v. Stone*,
    2008 WL 3931395 *1, n.2 (S.D. Cal.) .................................................................... 7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................. 7

**Rules**

Federal Rule of Civil Procedure 9(b) ..................................................................... 4, 7, 8

**Statutes**

Cal. Civ. Code § 1625 ............................................................................................... 8

California Business & Professions Code Section 17200 (UCL) ............................. 10, 11

-iv-
DEFENDANTS' REPLY MEMORANDUM

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Monte Cahn's ("Cahn") Opposition to the Motion to Dismiss ("Opposition") merely confirms that he is improperly attempting to turn contract claims into tort claims. He expressly confirms that his tort claims arise out of precisely the same allegations that support his contract claims, and he cites plainly inapplicable precedent to justify doing so. As noted in the moving papers, Defendants do not dispute that Cahn has pleaded (although he cannot prove) claims for breach of contract. But, the parties' respective rights and obligations arise from their contracts – a fact the Opposition expressly admits – and that fact precludes tort recovery in this action.

## II. ARGUMENT

### A. Plaintiff Has Not Stated a Distinct Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

#### 1. THE FOURTH CLAIM FAILS UNDER CALIFORNIA LAW WITH RESPECT TO THE MIP.

Defendants demonstrated in their moving papers that Cahn mislabeled his Fourth Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing. Rather than alleging that Defendants failed to comply with contractual obligations implied in the alleged agreements, Cahn's Fourth Claim instead alleges that Defendants fraudulently induced Cahn to agree to the MIP and the Commission Plan. *See,* FAC, ¶¶ 51, 52. As a result, to the extent that the Fourth Claim is a fraudulent inducement claim (which is how it is pleaded), it should be dismissed for the same reasons that the Sixth and Eighth Claims should be dismissed.

To the extent that Cahn wishes to pursue a *true* claim for breach of the implied covenant, he has failed to allege any such claim distinct from his contract claims. Indeed, Cahn's Opposition argues that he bases his Fourth Claim on Paragraph 24 of the FAC. Opp. at 5:14-6:20. By relying on the same allegations that support his claims for breach of contract, Cahn confirms that his Fourth Claim is indistinguishable

from his breach of contract claims.  See, FAC, ¶¶ 32, 28, 43; see also FAC, ¶ 36 (breach of contract exists because Oversee "failed to take into consideration…change in management and control of other business segments…"; "improperly diverted revenue and profit from Moniker to SnapNames; and [] improperly diverted revenue from Moniker to DomainSponsor") and Opp. at 5:19-20 (breach of the implied covenant based on "[d]elegating Cahn the additional responsibility of running SnapNames and DomainSponsor…while failing to make the requisite alterations to the MIP goals to account for the changes" and "improperly diverting substantial revenues and profits from Moniker to other subsidiaries of Oversee").

So, with his Opposition, Cahn not only concedes that his Fourth Claim for Relief is superfluous because it arises from precisely the same conduct as his three breach of contract claims[1], but he also confirms that his pleading is hopelessly muddled in that it fails entirely to disclose to Defendants the basis for Cahn's claims.

Defendants do not take issue with Cahn's basic contention that a claim for breach of the implied covenant of good faith and fair dealing may exist in certain limited situations.  However, it does not exist, as Cahn implies by his citation to *Comunale v. Traders & General Ins. Co.,* 50 Cal. 2d 654 (1958), as a tort claim.[2] Furthermore, the implied covenant of good faith and fair dealing cannot add terms to a contract.  *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342 (1992).  Nor can the implied covenant be used to impose on a party any obligation to act with restraint in exercising its rights under a contract.  *Wolf v. Walt Disney Pictures and Television,* 162 Cal. App. 4th 1107 (2008).  Rather, courts will

---

[1] *Careau & Co. v. Security Pacific Business Credit,* 222 Cal. App. 3d 1371, 1395 (1990).

[2] An insurer can be liable in tort to an insured because: (i) "the insured does not seek to obtain a commercial advantage by purchasing the policy;" and (ii) "the relationship of insurer and insured is inherently unbalanced." *Hunter v. Up-Right, Inc.,* 6 Cal. 4th 1174, 1181 (1994) (citations omitted).  No similar considerations apply here.

imply a contractual right only under "limited circumstances" on grounds of "obvious necessity" "where the term is indispensable to effectuate the expressed intention of the parties." *Abers v. Rounsavell*, 189 Cal. App. 4th 348, 361-62 (2010) (citations omitted).

Cahn has made no effort to identify a duty breached by defendants that must be implied into one of the parties' contracts on the ground of "obvious necessity" and is not an express provision of the contract. Rather, he has pleaded his Fourth Claim as a repetition of his Sixth and Eighth Claims, and he is now arguing that his Fourth Claim is actually a repetition of his First and Second Claims. In either case, Cahn's Fourth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing should be dismissed.

## 2. THE FOURTH CLAIM FAILS UNDER FLORIDA LAW WITH RESPECT TO THE COMMISSION PLAN.

Plaintiff's claim for breach of the implied covenant fares just as poorly under Florida law. Like California law, Florida law does not recognize a claim for breach of the implied covenant if it is duplicative of a claim for breach of contract. *Enola Contracting Services, Inc. v. URS Group, Inc.*, 2008 WL 1844612 *3 (N.D. Fla. April 23, 2008) (no claim "where the allegations underlying the claim for breach of the implied covenant are duplicative of those which support the claim for breach of contract") *citing Burger King v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999).

Cahn's Opposition also confirms that his Fourth Claim arises solely under the MIP (whose interpretation is governed by California law) and not the Commission Plan because Cahn relies on paragraph 24 of the FAC to justify his claim. Opp. at 5:12-13 (arguing that, "Oversee breached its duty of good faith and fair dealing *under the MIP* by" various acts alleged in Paragraph 24 of the FAC (emphasis added)); *see also* FAC, ¶ 24 ("Post merger, Defendants took the following affirmative actions, the intent and result of which was to deny Cahn the ability to obtain benefits *under the MIP*….") (emphasis added).

So, to the extent that the Fourth claim relies on Paragraph 24, it does not invoke Florida law. To the extent the claim does invoke Florida law, Florida law, like California law, does not recognize a claim for breach of the implied covenant of good faith and fair dealing unless it alleges breaches and obligations distinct from the express terms of the parties' contract.

### B. The Sixth and Eighth Claims for Negligent and Intentional Misrepresentation Fail to State a Claim.

Cahn argues that his Sixth and Eighth Claims are intended to plead claims for promissory fraud. Opposition at 8:14-16. On that basis, Cahn attempts to justify his failure to comply with Rule 9(b) and to excuse his attempt to turn contract claims into tort claims. Neither argument is persuasive.

#### 1. THE SIXTH AND EIGHTH CLAIMS FAIL AS CLAIMS FOR PROMISSORY FRAUD.

Cahn's Opposition lists the allegations on which his newly-labeled claims for "promissory fraud" are based. Opp. at 9:10-10:18; *see also* Opp. at 10:21-23 ("Further, paragraphs 24A-M of Complaint (identified above) and paragraphs 67 and 76 specifically identify *why* each of the representations were false."). Each allegedly fraudulent statement is incorporated into Cahn's breach of contract claims, thus establishing that he does not have a separate fraud claim. *See, Cusano v. Klein*, 280 F. Supp. 2d 1035, 1042 (C.D. Cal. 2003) ("a fraud claim fails when it merely states an alleged breach of contractual duties and does not concern representations that are collateral or extraneous to the parties' contract.").[3]

If Cahn contends that Oversee breached the MIP, his claim is for breach of contract. He cannot convert his breach of contract claim into a tort claim because Kupietzky and Ng allegedly told Cahn what the MIP said. Cahn, who alleges that the MIP was a fully-integrated writing, had a duty to read the MIP, and to understand the

---

[3] The Court applied New York law, which is identical in all pertinent respects to California law on this issue.

obligations it imposed. *Brookwood v. Bank of America,* 45 Cal. App. 4th 1667, 1674 (1996). He cannot turn a breach of contract claim into a fraud claim because someone allegedly told him what the contract said. *See Brown v. Wells Fargo Bank, NA,* 168 Cal. App. 4th 938, 958 (2008) (reasonable reliance is necessary element of a claim for fraud in the inducement); *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 517 (party allegedly breaching a contract "should in all cases be exposed only to contractual liability . . . .").

If, on the other hand, Cahn is arguing that he actually has established the elements of fraud in the inducement, then his remedy (not pursued in the FAC) would be to rescind the MIP. *See, Ford v. Shearson Lehman/American Express, Inc.,* 180 Cal. App. 3d 1011, 1028 (1986), *rv. denied* ("In the usual case of fraud, where the promisor knows what he is singing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*. In order to escape from its obligations the aggrieved party must *rescind,* by prompt notice and an offer to restore the consideration received, if any.") (emphasis in original; citation omitted); *see also Price v. Wells Fargo Bank,* 213 Cal. App. 3d 465, 484 (1989). It is clear from Cahn's FAC, however, that he is not seeking a fraudulent inducement claim pursuant to which he seeks to void the MIP. Rather, he seeks to enforce the MIP and collect amounts that he claims Oversee owes him under the MIP. That is a claim for breach of contract not fraudulent inducement.

Plaintiff relies on *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979 (2004), for the proposition that a breach of contract can also be a tort. That case is inapposite. *Robinson Helicopter* was a products liability case in which the Court considered application of the economic loss rule where a product supplier not only supplied defective parts but supplied fraudulent certificates that attested to the parts' conformance with specifications. In that situation, the Court held that the supplier had done two things wrong: it breached the contract by supplying non-conforming parts; and it lied about whether the parts conformed to the contract. That latter conduct

supported a claim for fraud because it induced the plaintiff to incorporate the defective parts into helicopters and exposed the plaintiff to <u>liability to third parties</u>. On those unique facts, the Court held that tort liability attached to the provision of fraudulent certificates of conformance. The *Robinson Court* specifically noted "[o]ur holding today is narrow in scope and limited to a defendant's affirmative misrepresentation on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id*. at 993. It is beyond dispute that, at no point in time, was Plaintiff exposed to "liability for personal damages independent of [his] economic loss." Thus, neither *Robinson,* nor the "economic loss rule" that it applies, has any application here.

Cahn also relies on dicta in *Chelini v. Nieri,* 32 Cal. 2d 480 (1948), to support his contention that a breach of contract can also be a tort. In fact, that case affirmed a judgment for <u>breach of contract</u> that included compensation for physical and emotional suffering of a son whose mother was improperly embalmed by a mortician. Although the Court noted, in dicta, that, under the unique facts of that case, the allegations may have supported a fraud claim, no such claim was pleaded or presented to the jury. The Court thus reversed the award of punitive damages on the ground that punitive damages are not available in a breach of contract action.[4]

In reality, Cahn's arguments all miss the point because he has failed to allege any tortious conduct separate from conduct constituting alleged breaches of contract. Indeed, the FAC and Opposition both make it clear that Cahn is seeking to pursue both

---

[4] Cahn also relies on *Las Palmas Assoc. v. Las Palmas Center Assoc.,* 235 Cal. App. 3d 1220 (1991) for the proposition that tort liability may arise when a party misrepresents its intent to honor its contractual obligations. In that case, the defendant was found liable for fraud because it executed guaranties that, a jury found, it had no intention of honoring. Although not expressly overruled, that aspect of the case cannot have any further validity following the Supreme Court's decision in *Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85 (1995). *Freeman & Mills* rejects tort recovery for bad faith denial of contractual obligations.

a breach of contract claim and a fraud claim in order to recover the benefits he believed he should receive under the MIP.[5] Cahn is thus seeking a contractual recovery and his Sixth and Eighth Claims should be dismissed.

### 2. FAILURE TO PLEAD FRAUD WITH SPECIFICITY

Even if Cahn could cite a theory that allows him to convert his contract claims into fraud claims, his Sixth and Eighth Claims would fail because they do not meet the rigorous pleading standards imposed by Rule 9.[6] To plead a fraud claim, the complaint must adequately specify the statements that are allegedly false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("averments of fraud must be accompanies by the who, what, where, when, and how of the misconduct charged" (citations omitted)). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and **why** it is false." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp.2d 1086, 1095 (C.D. Cal 1999) (emphasis added); *see*

---

[5] Although Cahn places the promissory fraud label on his claims, he is still alleging fraudulent inducement. Opp. at 11:5-6 ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract").

[6] Nowhere is Cahn's non-compliance with Rule 9 more apparent than in his attempt to rely on allegations that even he admits are absent from his FAC regarding some alleged Google contract. Opp. at 10:24-11:4. Defendants' Motion, however, must be decided on the basis of the FAC, not on the basis of arguments raised in the Opposition. *Janoe v. Stone*, 2008 WL 3931395 *1, n.2 (S.D. Cal.) ("Plaintiff puts forth new allegations throughout his Opposition. However, upon [sic] this motion to dismiss, it is the allegations in the Complaint itself that are at issue. A plaintiff must include colorable allegations within the complaint, new allegations in its opposition cannot stand in for allegations within the complaint.") citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

*Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (holding that Rule 9(b) requires specific descriptions of the representation made and the reasons for their falsity).

The FAC does not meet this exacting standard.  Indeed, Cahn's description of the allegations on which he relies only underscores how ambiguous his allegations are. Opp. at 9:10-10:19.  He repeats in the Opposition allegations that sound like nothing more than notional platitudes, such as that Kupietzky and Ng promised Cahn that: (i) Moniker "would get adequate marketing and public relations assistance;" (Opp. at 9:14-16) (ii) Oversee would "centralize" operations (*id.* at 9:17-19); (iii) there would be "integration and cross-selling potential" (*id.* at 9:20-22) (iv) Moniker would have resources to "flourish in the market" (*id.* at 10:1-3); and (v) Cahn would have "normal" duties and responsibilities as Moniker's president (*id.* at 10:4-12).

Cahn's only specific allegations (which still fail the Rule 9 pleading standard) concern representations that Kupietzky and Ng allegedly made about the terms of the MIP. *Id.* at 10:13-18.  As a matter of law, those representations merged into the MIP. Cal. Civ. Code § 1625.

In short, the only reasonably clear allegations in Cahn's Sixth and Eighth Claims for Relief are those that demonstrate that Cahn seeks recovery for Oversee's alleged contract breaches.  Cahn has failed to plead a claim for fraud.

### 3. THE PAROL EVIDENCE RULE BARS CAHN'S NEWLY-DESCRIBED CLAIM FOR PROMISSORY FRAUD.

Cahn acknowledges that statements as to future acts or events, such as those alleged in this action, generally cannot support a claim for fraud.  Opp. at 13:21-23. Relying on *Magpali v. Farmers Group, Inc.,* 48 Cal. App. 4th 471 (1996), however, Cahn argues that a promise of future conduct may be actionable if made without a present intent to perform.  Opp. at 13:24-26 *citing Magpali*, 48 Cal. App. 4th at 481. First, Cahn relies on dicta.  *Magpali* affirmed a defense verdict.

Second *Magpali* does not allow a plaintiff to support a fraud claim by relying on representations about future *contractual* performance.  Rather, any such representations

-8-
DEFENDANTS' REPLY MEMORANDUM

run afoul of the parol evidence rule. Thus, "unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." *Alling v. Universal Manufacturing Corp.*, 5 Cal.App.4th 1412, 1436 (1992). [7] Given that all of the alleged representations relate to contractual performance and, therefore, not independent, *Magpali* provides Cahn no help.

### 4. SUMMARY OF FRAUD CLAIMS.

The law narrowly circumscribes the instances in which a plaintiff can use contract negotiations as a springboard for tort claims. Cahn vaguely alleges that he was told certain things during negotiations for the MIP that turned out not to be true. The allegations about what he was told are not specifically pleaded, and the allegations Cahn does plead establish that he is suing because he earned less than he expected. If he was entitled to more under his contracts, Cahn will recover that money; if he was not entitled to anything more under his contracts, he will recover nothing. But, Cahn is limited to his contract claims, and his fraud claims should be dismissed.

### C. Plaintiff's Ninth Claim for Conversion Should Be Dismissed.

Defendants do not dispute that California law recognizes conversion as a strict liability tort. However, conversion is also an intentional tort, and Cahn expressly alleges that Oversee did not undertake any intentional act of conversion. Opp. at 14:23-27 *citing Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs.*, 748 F. Supp. 2d 1145, 1178 (2010) ("[] [T]he act constituting the conversion must be

---

[7] *Magpali* also fails to assist Cahn because he alleges that Kupietzky and Ng made representations about what *Oversee* would do. *See, e.g.*, FAC, ¶ 14 (Oversee would provide adequate marketing and public relations assistance), ¶ 15 (there would be cross-selling between all Oversee subsidiaries), ¶ 16 (Oversee would provide Moniker with resources and staffing it needed to flourish in the market). Kupietzky and Ng cannot be liable for making a promise without a present intent to perform, because they were not promising that *they* would perform. Even accepting Cahn's allegations, Kupietzky and Ng allegedly promised what Oversee would do, and that allegation cannot support a claim for promissory fraud as to either of them individually.

intentionally done—that is, the defendant must intend to assert dominion over the property….").

Cahn claims that: (i) he discovered that 4,500 of his domain names were mixed up with Moniker's owned and operated domain names, (ii) he discovered that Oversee was receiving revenue from the names he personally owned, and (iii) Oversee refused to provide him information as to the "actual revenues" it had earned from those names. Nowhere in the conversion claim does it say that Oversee intentionally asserted dominion over his domain names. The FAC does not even attribute the "mix up" to Oversee. Absent an allegation that Oversee intentionally deprived Cahn of his domain names, the conversion claim must be dismissed.

### D. The Tenth Claim Under Business & Professions Code Section 17200 Fails to State a Claim Upon Which Relief May be Granted.

Cahn's Opposition fails to salvage his Tenth Claim for Relief. In his Opposition, Cahn argues that he has pleaded a proper UCL claim because defendants' conduct misled Moniker's customers. Opp. at 17:3-5; 18:21-23. That is not the case. Cahn has not pleaded any such theory. Instead, Cahn has alleged that he (Cahn) misled Moniker customers. FAC, ¶ 92 (p. 21).

More importantly, Cahn's Opposition fails to explain what restitution (the only type of damages available under the UCL) he is entitled to. Rather, he seeks to altogether avoid the holding in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), by arguing that that case stands for the proposition that the UCL permits the Court to restore to any person in interest money or property acquired through unfair practices. Opp. at 19:5-10. Cahn's selective quotation is thoroughly misleading.

In *Korea Supply*, the defendant bribed Korean officials to obtain a defense contract. The plaintiff brought a claim for interference with prospective economic advantage and a claim under the UCL. The trial court sustained demurrers to both causes of action, and after an intermediate decision by the appellate court, the Supreme

Court granted review. The Supreme Court allowed the interference with prospective economic advantage claim to proceed. However, the Court affirmed dismissal of the UCL claim because the plaintiff had not identified a remedy available to it under the UCL. The Court explained that restitution under the UCL is limited to refunding money to the person *from whom it was taken*. *Id.* at 1149 ("an order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'"). Cahn's claim that Defendants frustrated his expectations of future profits, like the plaintiff's claim in *Korea Supply,* is not a claim for restitution available under the UCL.

Finally, Cahn desperately attempts to salvage his UCL claim by alleging that Oversee's acquisition of Moniker violated the antitrust laws. Opp. at 17:12-18:13. That theory is not articulated anywhere in the FAC, and Cahn's apparent (and false) confession to conspiring to violate the Sherman Act is baffling.

### III. PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN.

Cahn acknowledges that his claim for punitive damages relies on his contention that Defendants made misrepresentations to induce him to enter into the MIP. Because his misrepresentation claims fail, his claim for punitive damages should be stricken.

//
//

## IV. CONCLUSION

The FAC attempts to convert Cahn's contract claims into tort claims that are neither legally viable nor properly alleged. Defendants thus request that the Court dismiss Plaintiff's Fourth, Sixth, Eighth, Ninth and Tenth Claims for Relief.

Dated: August 1, 2011                WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*           .
    William A. Delgado
    Attorneys for Defendants OVERSEE.NET, JEFF KUPIETZKY, and LAWRENCE NG

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated: August 1, 2011                WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*                .
   William A. Delgado
   Attorneys for Defendants OVERSEE.NET, JEFF KUPIETZKY, and LAWRENCE NG