William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10<br><br>    Defendants. | Case No. CV11-03800 SVW (AGRx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO RULE 12(f)**<br><br>DATE:    October 24, 2011<br>TIME:    1:30 p.m.<br>PLACE: Crtrm. 6 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2011, at 1:30 p.m. in Courtroom 6 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Oversee.net, Jeffrey Kupietzky, and Lawrence Ng will, and hereby do, move, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain Claims for Relief in the Second Amended Complaint in this action on the ground that they fail to state a claim upon which relief can be granted and to strike Plaintiff's request for punitive damages.

The grounds for this motion are as follows:

- The Fifth, Sixth, and Seventh Claims for Relief all fail to state a claim upon which relief can be granted;
- The Fifth Claim for Relief fails to plead fraud with particularity as required by Fed. R. Civ. P. 9; and
- The Seventh Claim was filed without the requisite leave of court under Fed. R. Civ. P. 15(d).

Defendants additionally hereby move to strike Plaintiff's prayer for punitive damages on the ground that Plaintiff has failed to plead any claim pursuant to which he would be entitled to that form of damages.

This Motion is brought pursuant to this Notice of Motion and Motion; the Memorandum of Points and Authorities filed herewith, and on such other or further matters as may be presented at the hearing of this matter.  This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on September 16, 2011.

Dated:  September 23, 2011        WILLENKEN WILSON LOH & LIEB LLP


By:*/s/ William A. Delgado*
William A. Delgado,
Attorneys for Defendants OVERSEE.NET,
JEFFREY KUPIETZKY, and LAWRENCE NG

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.................................................................................1

II.  SUMMARY OF THE CASE..............................................................1

III. PROCEDURAL BACKGROUND........................................................2

    A. Dismissal of the FAC.................................................................2

    B. Summary of Revisions to the SAC.............................................2

    C. Plaintiff's Amended Fraud and Conversion Factual Allegations............3

        1. Amended fraud claim.........................................................3

        2. Amended conversion claim.................................................4

        3. Supplemental conversion claim...........................................4

IV.  LEGAL STANDARD....................................................................4

V.   ARGUMENT...............................................................................5

    A. The Fifth Claim for Fraud Should be Dismissed...........................5

        1. The fifth claim still seeks damages for breach of Cahn's
          contracts...................................................................5

    B. Plaintiff's Sixth Claim for Conversion Should Be Dismissed Without
        Leave to Amend..................................................................12

        1. Plaintiff did not cure the defects in his conversion claim...........12

        2. The sixth claim for conversion is time-barred.......................13

    C. Plaintiff's Seventh Claim for Conversion Should Be Dismissed Without
        Leave to Amend..................................................................15

VI.  PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE
    STRICKEN.................................................................................16

VII. CONCLUSION...........................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bell Atlantic Corp. v. Twombly,*
  500 U.S. 544 (2007) .......................................................................... 5, 12

*Blake v. Dierdorff,*
  856 F.2d 1365 (9th Cir. 1988) ............................................................ 11

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) ................................................................. 5

*Cusano v. Klein,*
  280 F. Supp. 2d 1035 (C.D. Cal. 2003) ............................................ 7, 8

*Erikson v. Pardus,*
  551 U.S. 89 (2007) .............................................................................. 4

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) ................................... 8, 10, 11

*Ileto v. Glock, Inc.,*
  349 F.3d 1191 (9th Cir. 2003) .............................................................. 4

*In re GlenFed, Inc. Sec. Litig.,*
  42 F.3d 1541 (9th Cir. 1994) .............................................................. 11

*Kremen v. Cohen,*
  325 F.3d 1035 (9th Cir. 2003) ............................................................ 13

*McGehee v. Coe Newnes/McGehee UCL,*
  2004 WL 2452855 at *2 (N.D. Cal. 2004) ........................................... 7

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) .................................................................. 11

*Ortega v. Toyota Motor Sales, USA, Inc.,*
  572 F. Supp. 2d 1218 (S.D. Cal. 2008) .............................................. 16

*Salveson v. Western States Bankcard Ass'n,*
    525 F. Supp. 566 (N.D. Cal. 1981) ............................................................... 13

*Solid Host, NL v. NameCheap, Inc., et al.,*
    652 F. Supp. 2d 1092 (C.D. Cal. May 19, 2009)........................................ 13

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...................................................................... 11

*Wilkerson v. Butler,*
    229 F.R.D. 166 (E.D. Cal. 2005) ................................................................ 16

**State Cases**

*AmerUS Life Ins. Co. v. Bank of America, N.A.,*
    143 Cal. App. 4th 631 (2006) ....................................................................... 14

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) ............................................................................... 6, 7

*Bono v.Clark,*
    103 Cal.App.4th 1409 (2002) ....................................................................... 14

*BP Alaska Exploration, Inc. v. Superior Court,*
    199 Cal. App. 3d 1240 (1988) ....................................................................... 9

*Collins v. American Empire Ins. Co.,*
    21 Cal. App. 4th 787 (1994) ....................................................................... 12

*Ehrlich v. Menezes,*
    21 Cal. 4th 543 (1990) ................................................................................. 6

*Foreman & Clark Corp. v. Fallon,*
    3 Cal.3d 875 (1971) ....................................................................................... 8

*Haigler v. Donnelly,*
    18 Cal. 2d 674 ............................................................................................. 16

*Italiani v. Metro-Goldwyn-Mayer Corp.,*
    45 Cal.App.2d 464 (1941) ........................................................................... 13

*Lovejoy v. AT&T Corp.*,
    92 Cal. App. 4th 85 (2001) ............................................................................. 10

*Michelson v. Hamada*,
    29 Cal. App. 4th 1566 (1994) ........................................................................ 16

*Naftzger v. American Numismatic Society*,
    42 Cal.App.4th 421 (1996) ............................................................................ 14

*Neu-Visions Sports, Inc. v. Soren/McAddam/Bartells*,
    86 Cal. App. 4th 303 (2000) ............................................................................ 8

*Pacesetter Homes, Inc. v. Brodkin*,
    5 Cal. App. 3d 206 (1970) ............................................................................... 9

*Shahood v. Cavin*,
    154 Cal. App. 2d 745 (1957) ........................................................................ 16

*Strasberg v. Odyssey Group, Inc.*,
    51 Cal.App.4th 906 (1996) ............................................................................ 14

*Tarmann v. State Farm Mut. Auto Ins. Co.*,
    2 Cal. App. 4th 153 (1991) ............................................................................. 8

*Vu v. Cal. Commerce Club, Inc.*,
    58 Cal. App. 4th 229 (1997) ........................................................................ 16


**Rules**

Civ. Proc. 339(1) ........................................................................................... 13

Fed. R. Civ. P. 9(b) ....................................................................................... 10

Fed. R. Civ. P. 15(d) ................................................................................. 2, 15

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1, 4

Federal Rule of Civil Procedure 12(f) ....................................................... 1, 16

1

**Codes**

2

Cal. Civ. Proc. Code § 339(1) ........................................................................ 13

3

Cal. Code Civ. Proc. 338(c) .......................................................................... 15

4

5

Civil Code § 1625 .................................................................................. 8, 9, 10

6

Cal. Civ. Code § 1710(1) ............................................................................. 10

7

8

**Other Authorities**

9

California Business and Professions Code Section 17200 ("UCL") .............................. 6

10

11

B.E. Witkin, California Procedure, Actions,
    § 620 at p. 804 ...................................................................................... 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Apparently, the third time is *not* the charm.  Plaintiff Monte Cahn's ("Cahn") Second Amended Complaint ("SAC") is still as fundamentally flawed as his original complaint and his First Amended Complaint ("FAC").  First, the SAC not only fails to repair his fraud allegations but, actually, provides further confirmation that his fraud claim simply restates his claims for breach of contract.  Second, consistent with his move in the wrong direction, Cahn's original conversion claim not only still fails to plead conversion adequately, but now clearly pleads a claim that is time-barred by the applicable statute of limitations.  Third, Cahn has now filed a supplemental conversion claim, but he neither sought nor obtained leave to do so.

As stated in Defendants' Motion to Dismiss Cahn's First Amended Complaint, and as confirmed by the Court's August 25, 2011 Order ("Order") [Dkt. 22], the facts underlying this action simply do not support claims for fraud or conversion.  Those claims now should be dismissed with prejudice, and this matter should proceed as a matter rooted in contract law.

## II.     SUMMARY OF THE CASE

As with Cahn's earlier complaints, the SAC alleges a series of claims arising from defendant Oversee.net's ("Oversee") acquisition of Domain Name Systems, Inc. dba Moniker.com ("Moniker").  Cahn contends that Oversee breached three separate agreements under which Cahn claims he was entitled to compensation.  The most significant of the contracts was known as the Management Incentive Plan ("MIP").  In essence, Cahn alleges that Moniker's operations and results were manipulated in order to prevent Cahn from reaching his MIP compensation targets.  Cahn's efforts to plead a fraud claim amount to little more than alleging that the Defendants promised him that he would be given a fair opportunity to earn his contractual incentive compensation.

1    None of the three contract claims was in issue in the prior motion to dismiss,

2  which did not address either Cahn's first three Breach of Contract claims or his fifth

3  claim, which sought an accounting that Cahn claimed was necessary to assess his

4  contractual rights.  The Court agreed, however, that Cahn could not plead tort and

5  statutory claims that were mere restatements of his contract claims.  Although Cahn

6  has now abandoned some of his theories, he still seeks to turn a breach of contract

7  claim into a claim for fraud, and he still seeks to plead conversion claims that fail as a

8  matter of law.

9

10  **III.    PROCEDURAL BACKGROUND**

11         A.    Dismissal of the FAC.

12         By its Order regarding the FAC, the Court dismissed Cahn's claims for Breach

13  of the Implied Covenant of Good Faith and Fair Dealing (4th Claim); Intentional and

14  Negligent Misrepresentation (6th and 8th Claims); Conversion (9th Claim); and Statutory

15  Unfair Competition (10th Claim).  The FAC did not contain a Seventh Claim, leaving

16  Cahn with three contract claims and a claim for an accounting.

17         B.    Summary of Revisions to the SAC.

18         The SAC abandons Cahn's Fourth, Eighth and Tenth Claims for, respectively,

19  Breach of the Implied Covenant of Good Faith and Fair Dealing, Negligent

20  Misrepresentation, and Statutory Unfair Competition.  Cahn attempts to revive his

21  Sixth Claim for Intentional Misrepresentation (now labeled as his Fifth Claim for

22  "Fraud") and his Ninth Claim (renumbered as his Sixth Claim) for Conversion.  Cahn

23  also alleges a supplemental conversion claim (Seventh Claim), allegedly arising from

24  events transpiring between August 16 and August 31, 2011.  This second conversion

25  claim is a supplement, not an amendment, and is thus filed in violation of Fed. R. Civ.

26  P. 15(d).

27         Factually, the allegations in the SAC are virtually unchanged from the FAC.  In

28  an effort to conceal the lack of change, Cahn reformats some of his allegations and

repeatedly adds to his factual allegations speculative contentions about the defendants' states of mind, but, otherwise, he does little other than to allege additional bases to contend that Oversee breached the MIP.[1]

Substantively, Cahn adds one new element to his breach of contract allegations in paragraph 25, but these revisions are irrelevant to the issues before the Court on this motion because they are all intended to support Cahn's First Claim for Breach of Contract which Defendants are not seeking to dismiss.[2]  *See,* SAC, ¶26 ("Due to Defendants' intentional acts as outlined above, Cahn was prevented from earning benefits under the MIP.").

The sum and substance of Cahn's revised factual allegations appear to consist of little more than: (i) an effort to allege at least one additional act constituting a breach of the MIP; and (ii) several rhetorical flourishes about the supposed importance to Oversee of retaining Cahn post-merger.  None of these allegations changes the basic fact that Cahn admits that the MIP superseded any prior negotiations, and any recovery he may obtain will be determined on the basis of whether Oversee breached the MIP.

   C.   Plaintiff's Amended Fraud and Conversion Factual Allegations.

      1.   Amended fraud claim.

Cahn's Fifth Claim for Fraud, like the claim labeled "Intentional Misrepresentation" in his FAC, continues to incorporate by reference all of the factual allegations supporting Cahn's claims for breach of contract.  SAC, ¶ 60.  The

---

[1]   Most notably, Cahn repeatedly adds vague allegations about misrepresentations supposedly made to him by Defendants (none of which is alleged with particularity) in an effort to persuade him not to take another job.  *See, e.g.,* SAC, ¶ 13 (4:6-12); ¶ 14 (19-23); ¶ 15 (4:26-28; 5:12-15); ¶ 17 (6:3-6); ¶ 20 (7:9-12); ¶ 21 (7:15-17); 24 (8:21-24).

[2]   Paragraph 25 of the SAC is similar to paragraph 24 of the FAC, except that paragraph 25.b. is new, and 25.c. and 25.d. add detail to allegations that appeared in the FAC.

1   amendments are cynical attempts to rearrange and restate the same allegations in the

2   FAC already considered and rejected by the Court, while adding allegations that can

3   best be described as vague and conclusory predictions, such as that: (a) Cahn would

4   make more money with Oversee than in any of his other employment options (¶ 65(a));

5   (b) Cahn's relationship with Oversee would be a "long-term prosperous" one (¶ 65(b));

6   (c) the transition from Moniker to Oversee would be "seamless" (¶ 65(k)); (d) Cahn

7   would be a leader at Oversee (¶65(l)); and (e) Oversee would "integrate, support, and

8   enhance" Moniker's operations (¶65(m)).  SAC, ¶ 65.  As is discussed, below, many of

9   these allegations are not new at all, and, even taken collectively, they fail to support a

10  claim for fraud.

11              2.   Amended conversion claim.

12       Cahn's Sixth Claim for Conversion is virtually unchanged.  Cahn still alleges

13  that, due to a mix-up, Oversee wound up with approximately 4,500 domain names

14  owned by Cahn.  SAC, ¶ 77.  He seems only to add that Oversee still owns 200 of the

15  domains.  SAC, ¶ 80.

16              3.   Supplemental conversion claim.

17       Without leave of court, Cahn has added a supplemental claim for conversion.

18  His Seventh Claim is filed in violation of Rule 15(d) but, in any case, fails to state a

19  claim.

20

21  **IV.   LEGAL STANDARD**

22       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

23  legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d

24  1191, 1199-1200 (9th Cir. 2003).  In determining whether the complaint's allegations

25  are sufficient to state a claim for relief, all allegations of material fact are taken as true.

26  *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  "To survive a motion to dismiss, a

27  complaint must contain sufficient factual matter, accepted as true, to state a claim to

28  relief that is plausible on its face."  Moreover, the Court is not required to accept legal

1  conclusions cast in the form of factual allegations if those conclusions cannot

2  reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d

3  752, 754-55 (9th Cir. 1994).  The plaintiff's obligation to provide the grounds of

4  entitlement to relief "requires more than labels and conclusions, and a formulaic

5  recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v.*

6  *Twombly*, 500 U.S. 544, 555 (2007).

7

8  **V.    ARGUMENT[3]**

9         A.     <u>The Fifth Claim for Fraud Should be Dismissed</u>

10               1.     <u>The fifth claim still seeks damages for breach of Cahn's contracts.</u>

11         Cahn's primary effort to find a theory of recovery that is not redundant of his

12  breach of contract claim consists of repeated allegations that Defendants made

13  representations to Cahn about his role and his prospects for compensation at Oversee in

14  order to induce him to forego better employment opportunities.  SAC, ¶¶ 62, 65, 70,

15  71.  That theory alters nothing.  Cahn acknowledges and, in fact, affirmatively alleges

16  that all of the representations made to him were superseded by a fully integrated MIP.

17  SAC, ¶ 38.  Indeed, Cahn fails even to allege that he made less under the MIP than he

18  would have made in his other supposed opportunities.  His "damage" lies in not

19  receiving what he expected under the MIP.  That being the case, his cause of action is

20  limited to a claim for breach of the MIP.

21         Even a brief comparison of the FAC and the SAC discloses that Cahn continues

22  to make the *same* factual allegations.  He continues to allege that Oversee failed to

23  provide adequate support to Moniker, to give Cahn the authority and position he

24  believed he deserved, and to pay him what he claimed he was owed.  SAC, ¶¶ 65 (b),

25

26  [3]    Plaintiff did not contest Defendants' choice of law analysis set forth in the
27         Motion to Dismiss the FAC.  Thus, Defendants will not reargue that issue herein
         and apply California law to Plaintiff's fraud and conversion claims.

28

(c), (d), (e), (f), (g), (h), (j), (k), (l), (m).  Cahn also carries over the express allegation that defendant Kupietzky represented to him that the MIP provisions would be amended (SAC, ¶65(i)) – an allegation expressly foreclosed by Cahn's own prior allegation that the MIP was a fully-integrated agreement (SAC, ¶ 38).  In other words, he does not dispute that Oversee, in fact, offered him an advantageous employment opportunity; he just claims that he was stiffed.  His claim as to what he is owed is a claim under the MIP and the other agreements alleged in his SAC.

Because the claim hasn't changed, for the same reasons described in Defendants' Motion to Dismiss the FAC, which are repeated below and were previously analyzed by the Court, the SAC should be dismissed.  In particular, the Fifth Claim for Fraud is merely a restated breach of contract claim, the alleged misrepresentations are nothing more than non-actionable opinions and forecasts, and none of the alleged misrepresentations is pleaded with requisite Rule 9 specificity.

> a. <u>The fifth claim for fraud should be dismissed because it attempts to turn a breach of contract claim into a tort claim.</u>

As a general rule, California does not authorize tort recovery for breach of contract claims.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514-15 (1994) (recognizing fundamental differences between contract and tort cases).  In contract actions, "[t]he measure of damages is limited to those losses which might be reasonably foreseen by the parties."  *Ehrlich v. Menezes*, 21 Cal. 4th 543, 553 (1990).  "Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.  An omission to perform a contractual obligation is never a tort, unless that omission is also an omission of a legal duty."  *Id.* at 551 (citations omitted).  "The California Supreme Court has repeatedly held that '[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.'"  *McGehee v. Coe Newnes/McGehee UCL*, 2004 WL 2452855 at *2 (N.D. Cal.

1  2004) (citing *Applied Equipment*, 7 Cal. 4th at 515).  Here, Plaintiff has not alleged any

2  "independent duty" because none exists.

3  *Cusano v. Klein*, 280 F. Supp. 2d 1035 (C.D. Cal. 2003), is instructive.  There,

4  the court dismissed the plaintiff's fraud claims because the fraud claims did no more

5  than allege breaches of contractual duties.  The plaintiff and defendants in *Cusano*

6  entered into a written contract whereby defendants were obligated to render quarterly

7  accounting statements to plaintiff for plaintiff's share of profits derived from

8  worldwide exploitation of plaintiff's songs.  *Id.* at 1037-38.  The plaintiff alleged

9  breach of contract and fraud based on defendants' alleged improper accounting for

10  royalties due to plaintiff, contrary to defendants' representations that they would

11  faithfully administer the royalty account.  *Id.* at 1039.  The Court stated that "a fraud

12  claim fails when it merely states an alleged breach of contractual duties and does not

13  concern representations that are collateral or extraneous to the parties' contract."[4]  *Id.*

14  at 1042.  The Court held that the plaintiff could not "maintain his claims for fraud and

15  negligent misrepresentation against [the defendant] because they merely state a breach

16  of contractual duties…  The claims against [defendants] do not involve representations

17  collateral or extraneous to the employment contract."  *Id.*

18  Here, Cahn has tried to disguise his contract claim as a fraud claim by

19  attempting to add allegations that his losses occurred as a result of (i) Defendants

20  "taking for themselves the full benefit of Moniker's great public reputation and

21  industry value;" and (ii) being induced to forego other opportunities.  SAC, ¶¶ 66, 70.

22  But, that is mere subterfuge.  To the extent he is claiming that his loss is due to

23  Oversee's purchase of Moniker, he has no standing.  To the extent that Cahn was

24  induced to forego other opportunities, Cahn is still alleging a claim for breach of the

25  MIP.  His argument is that he expected to earn more under the MIP (as compared to his

26

27  [4]  The Court applied New York law, which is identical in all pertinent respects to California law on this issue.

28

other opportunities), so he chose to stay on with Oversee after Oversee acquired Moniker.  Therefore, his damage, if any, lies in any failure to receive what he was due under the MIP.

Put simply, as in *Cusano*, Plaintiff's fraud claims do **not** involve duties, actions or representations collateral or extraneous to the agreements at issue.  Cahn's theory is that the Defendants misled him about how much money he would make with Oversee.  Nevertheless, his rights to compensation with Oversee are governed by contracts (as alleged in Cahn's first three claims).  Thus, these representations, assuming they were made, are not separate from the contracts; they were part of the contract negotiation process and superseded, as a matter of law, by the written agreements. Cal. Civ. Code § 1625.

> b.  The supposed misrepresentations are non-actionable forecasts and opinions in any event.

To be actionable, a misrepresentation "must ordinarily be as to past or existing material facts.  Predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (internal quotations and citations omitted) (demurrer properly sustained where the alleged misrepresentation involved promises of future conduct and not past or existing material fact); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  Indeed, it is hornbook law that statements regarding future events are merely deemed opinion. *Neu-Visions Sports, Inc. v. Soren/McAddam/Bartells*, 86 Cal. App. 4th 303, 309-10 (2000).  Accordingly, California courts have held that predictions about future sales, profits or value are non-actionable expressions of opinion. *See, id.* (holding that statement that property was worth $5 million was non-actionable opinion, because it essentially was a prediction that an appraiser would value the property at $5 million); *Foreman & Clark Corp. v. Fallon*, 3 Cal.3d 875, 882 (1971) (affirming trial court's finding that statements regarding lessors' future sales were mere expressions of

opinion); *Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206, 210 (1970) (affirming trial court's finding that statements regarding the future rental income that might be generated after the completion of unfinished duplex units were non-actionable statements of opinion).

The alleged misrepresentations, listed in SAC, ¶ 65 consist of Defendants telling him that:

> 65.a.  Cahn's employment offer was more lucrative than his other opportunities – clearly an opinion and also one on which Cahn could not reasonably rely.  *See, BP Alaska Exploration, Inc. v. Superior Court*, 199 Cal. App. 3d 1240, 1264 (1988) ("If a party knows the true facts, he cannot justifiably rely on the alleged misrepresentations.").

> 65.b.  The parties' relationship would be "prosperous" and would "develop and grow" – clearly an opinion and a forecast.

> 65.c.  Cahn could expect additional compensation beyond the MIP – this allegation is barred by ¶ 38 of the Complaint and Civil Code § 1625.

> 65.d.  Cahn would "maximize Moniker's profitability" because of marketing– an opinion and a forecast.

> 65.e.  Cahn would "maximize Moniker's profitability" because of additional resources – an opinion and a forecast.

> 65.f.  Cahn would report directly to Ng, who was CEO – Cahn is complaining that Ng retired, that is not an actionable misrepresentation.

> 65.g.  Cahn would be treated like other executives – an opinion and a forecast.

> 65.h.  Cahn would receive adequate resources – an opinion and a forecast.

1        65.i.   The MIP would be revised to allow Cahn to hit his targets.  This

2                claim is barred by ¶ 38 of the complaint and Civil Code § 1625.

3        65.j.   Cahn would report to Ng who would remain CEO – forecast.

4        65.k   The transition would be "seamless" – an opinion and a forecast.

5        65.l.   Cahn would be a leader – an opinion and a forecast.

6        65.m. Moniker's business would be integrated, supported, and enhanced –

7                an opinion and a forecast.

8     While each of these supposed misrepresentations are incapable of supporting a

9 fraud claim for the reasons described above, they are also fundamentally incapable of

10 supporting a fraud claim because they are so vague that they could not reasonably be

11 relied upon.  *See, e.g., Glen Holly Entm't, Inc. v. Tektronix*, 343 F.3d 1000, 1015-16

12 (9th Cir. 2003) (affirming dismissal of fraud claims what were "generalized, vague and

13 unspecific assertions").

14     In short, Cahn's fraud allegations amount to descriptions of generalized

15 discussions during contract negotiations[5] that were never reduced to writing and never

16 created enforceable commitments.  They are not "fraud" claims.

17           c.    <u>Cahn's fraud claims are not pleaded with particularity.</u>

18     As this Court previously recognized, claims for fraud[6] must be alleged with

19 particularity.  Fed. R. Civ. P. 9(b); *Glen Holly Entm't, Inc.*, 100 F. Supp. 2d at 1093.

---

[5]    Notably, Cahn explicitly admits that the allegations took place during the "pre-employment negotiations" of Cahn's contracts with Oversee, an admission that only highlights the fact that Cahn's fraud claims are entirely derivative of his contract claims.  As Oversee noted in the previous section, they are not independent as would be required to survive.

[6]    Intentional misrepresentation is the suggestion, as a fact, of that which is not true, by one who does not believe it to be true.  Cal. Civ. Code § 1710(1).  The elements are: (1) misrepresentation of past or existing fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage.  *See, e.g., Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001).

To properly plead a fraud claim, the complaint must adequately specify the statements that are allegedly false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("averments of fraud must be accompanies by the who, what, where, when, and how of the misconduct charged" (citations omitted)).  In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and ***why*** it is false." *Glen Holly Entm't, Inc.*, 100 F.2d at 1095 (emphasis added); *see Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (holding that Rule 9(b) requires specific descriptions of the representation made and the reasons for their falsity).  Averments that fail to meet these exacting standards must be dismissed. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

As with the FAC, the SAC simply does not meet this exacting standard.  While the SAC may refer to the "who" (i.e., Defendant Ng and/or Kupietzky), it does not specifically lay out the where, when, or how of the alleged "misrepresentations."  Moreover, nowhere does the SAC describe factually how any of the supposed misrepresentations that support the fraud claim were *false*.  Cahn's sole attempt to allege falsity consists of the following:

> "At the time these statements were made, [Defendants] knew that the statements were false and misrepresented the true fact that they intended to fully subjugate Moniker and Cahn, taking for themselves the full benefit of Moniker's great public reputation and industry value at the time of merger."

SAC, ¶ 66.  That does not allege any fact at all.  Cahn needs to identify a factual statement and allege the *facts* demonstrating that the factual statement was not true.

"[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 500 U.S. at 555.  Cahn provides no such facts.[7]

    B.    <u>Plaintiff's Sixth Claim for Conversion Should Be Dismissed Without Leave To Amend.</u>

        1.    <u>Plaintiff did not cure the defects in his conversion claim.</u>

Cahn's conversion claim, as pled in the FAC, was based on the assertion that, because domain names that Plaintiff owned "were mixed up with Moniker's," he did not receive the revenue generated by those domains.  FAC, ¶¶ 78-83.  This Court previously dismissed the conversion claim on the grounds that it "fails to allege any intentional act by Defendants."  Order, p. 10.

In an attempt to salvage his claim, Plaintiff included paragraphs 75 and 76 in the SAC, which collectively allege that at the time of the merger, Oversee intended to obtain possession of *Moniker's* owned and operated domain names, and after the merger, did obtain possession thereof.  SAC, ¶¶ 75-76.  These allegations do not save Plaintiff's claim because there is no allegation that Oversee intended to take *Plaintiff's* domain names.  In order to establish a conversion, Plaintiff "must show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property.  Thus, a necessary element of the tort is **an intent to exercise ownership over the property which belongs to another**.  For this reason, conversion is considered an intentional tort." *Collins v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 812 (1994) (internal citations and quotations omitted) (emphasis added).

As a result of purchasing Moniker, Oversee was entitled to possession of Moniker's domain names.  Thus, Oversee did not commit an intentional act to take

---

[7]    In addition, as noted above, these representations also fail to allege damages other than breach of contract damages.

1  property belonging *to another*.  It simply took possession of domain names it

2  purchased for itself.  That Cahn's domain names had been "mixed up" in Moniker's

3  domain names is of no moment since Cahn has not pleaded an intent to take *his* domain

4  names. So, Plaintiff has failed, again, to properly plead his conversion claim.

2.   The sixth claim for conversion is time-barred.

6      In addition, Cahn's amendments in the SAC now make clear that the Sixth

7  Claim for Conversion also fails because it is time-barred.  Cahn alleges that Oversee

8  took possession of the Moniker domain names "at the time of the merger" (SAC, ¶ 75)

9  which occurred on December 14, 2007.  SAC, ¶ 23.  Cahn also admits that Oversee

10  converted his domain names "**at least**" three years ago.  SAC, ¶ 80 (emphasis added).

11  Since Cahn filed this action on May 3, 2011, his claim is time-barred.

12      Domain names are intangible items.  *Cf. Kremen v. Cohen*, 325 F.3d 1035 (9th

13  Cir. 2003) (certifying question to California Supreme Court as to whether domain

14  names can even be converted).  Put simply, a domain name is an alphanumeric

15  representation that is understood by an Internet browser to represent an Internet

16  Protocol ("IP") address.  *Solid Host, NL v. NameCheap, Inc., et al.*, 652 F. Supp. 2d

17  1092, 1094 (C.D. Cal. May 19, 2009) (internal citations omitted).    It does not have a

18  physical form and is not capable of being touched.  *Cf.,* BLACK'S LAW DICTIONARY

19  1592 (9th ed. 2009) (defining tangible as "1. Having or possessing physical form.  2.

20  Capable of being touched and seen; perceptible to the touch…").  The statute of

21  limitations for conversion of intangible items is two years.  Cal. Civ. Proc. Code §

22  339(1); *Italiani v. Metro-Goldwyn-Mayer Corp.*, 45 Cal.App.2d 464, 466-67 (1941);

23  *Salveson v. Western States Bankcard Ass'n,* 525 F. Supp. 566, 584 (N.D. Cal. 1981),

24  *aff'd in part and rev'd in part on other grounds*, 731 F.2d 1423 (9th Cir. 1984),

25  *superseded by statute on other grounds* (applying California law in holding that

26  "[m]isappropriation or conversion of intangible interests is governed by the two-year

27  statute of Civ. Proc. 339(1)"); *see also* 3 B.E. Witkin, California Procedure, Actions, §

28

620 at p. 804 (noting as an exception to the three year limitations period that "[a]n action involving intangibles is governed by the 2-year limitation of C.C.P. 339(1).").

The California discovery rule does *not* apply to a claim for conversion, nor does the owner's ignorance toll the statute; rather, the "statute of limitations for conversion is triggered by the act of wrongfully taking the property." *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006) ("Under California law, the general rule is well established: the statute of limitations for conversion is triggered by the act of wrongfully taking property"); *Bono v.Clark*, 103 Cal.App.4th 1409, 1433 (2002) ("the statute of limitations for conversion is triggered by the act of wrongfully taking property"); *Strasberg v. Odyssey Group, Inc.*, 51 Cal.App.4th 906, 915-16 (1996) ("it is act of wrongfully taking the property which triggers the statute of limitations"); *Naftzger v. American Numismatic Society*, 42 Cal.App.4th 421, 429 (1996) ("an owner's cause of action accrues when the conversion occurs even if the owner is ignorant of the wrong committed").[8]

It is clear from Cahn's own allegations that his Sixth Claim is time-barred. Cahn freely admits that Oversee took possession of the Moniker domain names (in which his domain names were mixed-up) in December 2007. SAC ¶¶ 23, 75. Applying a two-year statute for intangible property, his conversion claim expired in December 2009. Notably, even if the Court were to apply the three-year statute for tangible property

---

[8] California courts will only toll the statute of limitations in a conversion claim if: (1) the defendant commits affirmative acts to fraudulently conceal the theft, or (2) the defendant breaches a fiduciary duty to the plaintiff by failing to disclose the theft. *AmerUS Life Ins. Co.*, 143 Cal. App. 4th at 639. There are no allegations in the SAC that Defendants fraudulently concealed the alleged theft. To the contrary, the SAC essentially alleges that a mix up occurred. SAC, ¶ 77. There are also no allegations that Defendants owed and/or breached a fiduciary duty to Plaintiff. Tellingly, Plaintiff alleged a claim for breach of fiduciary duty in its original complaint but withdrew the claim because Defendants owed no fiduciary duty to Plaintiff.

1  (*see,* Cal. Code Civ. Proc. 338(c)), his claim would still be time-barred, as it would

2  have expired in December 2010, before this lawsuit was filed.

3     C.     Plaintiff's Seventh Claim for Conversion Should Be Dismissed Without

4            Leave To Amend.

5     Plaintiff's Seventh Claim for Conversion was not asserted by Plaintiff in his

6  prior pleadings.  Plaintiff claims that on August 16, 2011, Oversee confiscated

7  Plaintiff's personal account, which contained in excess of 3,000 personal domain

8  names, and redirected those domain names to Oversee.  SAC, ¶¶ 85-87.  Plaintiff's

9  account was restored on August 31, 2011.  SAC, ¶ 88.  Plaintiff claims that, during

10 those 15 days that the domain names were allegedly in Oversee's possession, Oversee

11 received the revenue stream from Plaintiff's domain names. [9]  SAC, ¶ 87.  Cahn seeks

12 as damages the recovery of all revenue generated therefrom.  SAC, ¶ 89.

13     1.     Plaintiff did not receive leave to file the seventh claim for

14            conversion.

15     The Seventh Claim alleges conduct supposedly occurring after the

16 commencement of this action.  In order to add such claims to this case, a plaintiff must

17 seek and obtain leave of court to supplement its complaint.  Fed. R. Civ. P. 15(d).

18 Cahn neither sought nor obtained leave, and this claim should thus be dismissed.

19     2.     A conversion claim cannot consist of a general claim for money.

20     In addition to the procedural defect, the Seventh Claim for conversion is

21 substantively deficient.  The law is clear that generalized claims for money are not

22 actionable as a claim for conversion, and money can only be the subject of an action

23 for conversion if a specific sum capable of identification is involved.  *Ortega v. Toyota*

___

25 [9]     Notably, the allegations in the Seventh Claim that the domain names were
26        redirected to Oversee and that Oversees received revenue therefrom are
        completely false.  Moreover, it would have been very easy for Plaintiff and/or
27        his counsel to ascertain that the domain names had **not** been redirected to
        Oversee.

1  *Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008); *Haigler v.*

2  *Donnelly*, 18 Cal. 2d 674, 681 (money cannot be the subject of an action for conversion

3  unless a specific sum capable of identification is involved); *Michelson v. Hamada*, 29

4  Cal. App. 4th 1566, 1589 (1994) (refusing to review trial court's order denying

5  submission of conversion claim to jury where plaintiff claiming breach of contract

6  because plaintiff did not allege a "specific, definite sum capable of identification to be

7  recovered"); *Shahood v. Cavin*, 154 Cal. App. 2d 745, 747 (1957) (a claim for

8  conversion lies "'only for specific chattels wrongfully converted, and not for money

9  had and received for payment of debts, money being the subject of conversion only

10  when it can be described or identified as a specific chattel.'").  Indeed, when money is

11  the subject of a claim for conversion, a plaintiff must plead facts sufficiently describing

12  and identifying the property.  *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229,

13  235 (1997).

14     Here, Plaintiff fails to plead any specific, definite sum of money capable of

15  identification.  Plaintiff cannot plead a viable conversion claim, and his seventh claim

16  should, therefore, be dismissed without leave to amend.

17

18  **VI.  PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE**

19  **STRICKEN.**

20     Plaintiff seeks punitive damages on his Fifth Claim for Fraud.  SAC, ¶ 73. As

21  described above, that claim lacks merit and the prayer for punitive damages should

22  thus be stricken.  Fed. R. Civ. P. 12(f); *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D.

23  Cal. 2005) ("A motion to strike is appropriate to address requested relief, such as

24  punitive damages, which is not recoverable as a matter of law").

25  //

26  //

27

28

## VII.   <u>CONCLUSION</u>

This case is about Cahn's arguments that he did not receive the compensation he believes he was entitled to receive under three separate contracts.  The evidence will prove Cahn wrong, but he is entitled to move beyond the pleading stage on his contract claims.  His tort claims, however, are legally baseless.  His claim for fraud ignores fundamental pleading standards by seeking to turn contract claims into tort claims, seeking to turn generalized statements into actionable misrepresentations, and failing to plead any part of his claim with particularity.  His two conversion claims similarly fail.  His Sixth claim fails to plead conversion, and, even if it did, it would be untimely.  His Seventh Claim is filed without leave of court and improperly seeks recovery of an unspecified sum of money.  For all of the foregoing reasons, this Motion to Dismiss should be granted.

Dated:  September 23, 2011                WILLENKEN WILSON LOH & LIEB LLP


                                          By:*/s/ William A. Delgado*
                                          William A. Delgado,
                                          Attorneys for Defendants OVERSEE.NET,
                                          JEFFREY KUPIETZKY, and LAWRENCE NG

## CERTIFICATE OF SERVICE

   I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

   Respectfully submitted this 23rd day of September 2011.


Dated:  September 23, 2011         WILLENKEN WILSON LOH & LIEB LLP


                                   By:/s/ William A. Delgado
                                   William A. Delgado,
                                   Attorneys for Defendants OVERSEE.NET,
                                   JEFFREY KUPIETZKY, and LAWRENCE NG