1   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    JOHN L. BARBER, SB# 160317
2     E-Mail: barber@lbbslaw.com
    KENNETH D. WATNICK, SB# 150936
3     E-Mail: watnick@lbbslaw.com
    SONJA HARRINGTON, SB# 261053
4     E-Mail: sharrington@lbbslaw.com
    221 North Figueroa Street, Suite 1200
5   Los Angeles, California 90012
    Telephone: 213.250.1800
6   Facsimile: 213.250.7900

7   Attorneys for MONTE CAHN, an individual

8

9                    UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12

| 13 | MONTE CAHN, an individual, | CASE NO. CV11-03800 SVW (AGRx) |
|---|---|---|
| 14 | Plaintiff, | |
| 15 | v. | The Hon. Stephen V. Wilson |
| 16 | OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual; LAWRENCE NG, an individual; and Does 1 through 10, | **MONTE CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| 17 | | |
| 18 | | |
| 19 | Defendants. | DATE:    October 24, 2011 |
| 20 | | TIME:    1:30 p.m. |
| 21 | | PLACE:   Crtrm. 6 |
| 22 | | COMPLAINT FILED: May 3, 2011 |
| 23 | | TRIAL DATE:       January 17, 2012 |

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1

1

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF RELEVANT FACTS ................................................... 3

III. STANDARD .............................................................................................. 4

IV.  CAHN'S FIFTH CAUSE OF ACTION FOR FRAUD IS SUFFICIENTLY
     PLED. ........................................................................................................ 5

     A.   CAHN'S CLAIM FOR FRAUD IS DISTINCTLY DIFFERENT THAN HIS CLAIM
          FOR BREACH OF CONTRACT. ................................................................. 5

     B.   OVERSEE'S ARGUMENT THAT THE REPRESENTATIONS ALLEGED BY
          CAHN ARE NOT ACTIONABLE BECAUSE THEY WERE FORECASTS AND
          OPINIONS IS INAPPLICABLE. ................................................................ 12

     C.   CAHN'S HAS PLED HIS CAUSE OF ACTION FOR FRAUD WITH SUFFICIENT
          PARTICULARITY ................................................................................... 15

V.   CAHN'S SIXTH CAUSE OF ACTION FOR CONVERSION IS
     SUFFICIENTLY PLED. ........................................................................... 17

     A.   CAHN HAS PLED A COGNIZABLE CLAIM FOR CONVERSION. ............... 17

     B.   THE STATUTE OF LIMITATIONS ON CAHN'S CLAIM FOR CONVERSION
          HAS NOT EXPIRED. ............................................................................... 19

VI.  CAHN'S SEVENTH CAUSE OF ACTION FOR CONVERSION IS
     SUFFICIENTLY PLED. ........................................................................... 23

VII. CONCLUSION ........................................................................................ 24

CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

3

CASES

4

*AmerUS Life Ins. Co. v. Bank of America, N.A.,*
    143 Cal. App. 4th 631, 639 (2006).)------------------------------------------ 22

5

*Aqua Connect, Inc. v. Code Rebel, LLC,*
    2011 U.S. Dist. LEXIS 110092 (C.D. Cal. Sept. 26, 2011) ------------------ 15

6

*Burlesci v. Petersen,*
    68 Cal. App. 4th 1062, 1066 (1998) ------------------------------------------ 18

7

*CRS Recovery, Inc. v. Laxton,*
    600 F.3d 1138, 1145 (9th Cir. Cal. 2010)-------------------------------- 18, 23

8

9

*Cusano v. Klein,*
    280 F. Supp. 2d 1035, 1038 (C.D. Cal. 2003)-------------------------------- 10

10

*Enter. Leasing Corp. v. Shugart Corp.,*
    231 Cal. App. 3d 737, 747-748 (1991)----------------------------------------- 18

11

*Estetique Inc. USA v. Xpamed LLC,*
    2011 U.S. Dist. LEXIS 104427, *28 (S.D. Fla. Sept. 14, 2011) --------------- 21

12

*Express Media Group, LLC v. Express Corp.,*
    2007 U.S. Dist. LEXIS 34800, *3-4 (N.D. Cal. May 10, 2007) --------------- 19

13

14

*Feingold v. American Rack & Stack, Inc.,*
    734 So. 2d 479, 480 (1999) ------------------------------------------------ 21

15

*Hands on Video Relay Servs. v. Am. Sign Language Servs. Corp.,*
    2009 U.S. Dist. LEXIS 124899, *33 (E.D. Cal. Aug. 12, 2009)------------ 15

16

*In re Burlington Coat Factory Sec. Litig. ,*
    114 F.3d 1410, 1420 (3d Cir. 1997) --------------------------------------------- 4

17

18

*Italiani v. Metro-Goldwyn-Mayer Corp.*
    45 Cal. App. 2d 464, 466-67 (1941)-------------------------------------------- 21

19

*Kearney v. Salomon Smith Barney, Inc.,*
    39 Cal. 4th 95, 107-108 (2006)------------------------------------------------ 20

20

21

*Kremen v. Cohen,*
    325 F.3d 1035 (9th Cir. 2003)------------------------------------------------- 23

22

*Landsman Packing Co. v. Continental Can Co.,*
    864 F.2d 721 (11th Cir. Fla. 1989)-------------------------------------------- 18

23

24

*Lazar v. Superior Court,*
    12 Cal. 4th 631, 635 (1996)---------------------------------------------------- 11

25

*Locke v. Warner Bros., Inc.,*
    57 Cal. App. 4th 354, 368 (Ct. App. 1997) ---------------------------------- 16

26

*Lone Star Industries, Inc. v. Horman Family Trust,*
    960 F.2d 917, 920 (10th Cir. 1992)--------------------------------------- 4, 5

27

*McGhee v. Arabian American Oil Co.,*

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1

ii

1      871 F.2d 1412, 1422 (9th Cir. Cal. 1989)------------------------------ 20

2    *Morissette v. United States*, 3
         42 U.S. 246, 270 (1952)------------------------------------------------ 18

3    *Myers v. Stephens*,
         233 Cal. App. 2d 104, 118-120 (1965)------------------------------- 23

4    *Orlando v. Carolina Cas. Ins. Co.*,

5        2007 U.S. Dist. LEXIS 56409, *29-30 (E.D. Cal. July 26, 2007) ------------- 16

6    *Peloza v. Capistrano Unified School Dist.*,
         37 F.3d 517, 521 (9th Cir. 1994)------------------------------------- 5

7    *R&B Holding Co. v. Christopher Adver. Group, Inc.*,

8        994 So. 2d 329, 330 (2008) ---------------------------------------- 23

9    *Robinson Helicopter Co., Inc. v. Dana Corp.*,
         34 Cal. 4th 979, 985-986 (2004) ----------------------------------- 12

10   *SCLC v. Supreme Court*,
         252 F.3d 781, 786 (5th Cir. 2001) --------------------------------- 4

11   *See Mendoza v. Continental Sales Co.*,

12       140 Cal. App. 4th 1395, 1405 (2006)------------------------------- 23

13   *Shroyer v. New Cingular Wireless Servs.*,
         622 F.3d 1035, 1041 (9th Cir. 2010) ------------------------------- 4

14   *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*,
         2005 U.S. Dist. LEXIS 36361, *15-16 (E.D. Cal. Aug. 29, 2005) ------------- 17

15   *Simon Oil Co. v. Norman*,

16       789 F.2d 780, 781 (9th Cir. 1986) --------------------------------- 5

17   *Spa Parts, Accessories & Servs., LLC v. Seeker*,
         2009 U.S. Dist. LEXIS 77181 (M.D. Fla. Aug. 11, 2009)---------------- 20, 23

18   *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.*,

19       125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000) ---------------------- 21

20   *Swartz v. KPMG LLP*,
         476 F.3d 756, 764 (9th Cir. 2007) --------------------------------- 15

21   *Tarmann v. State Farm Mut. Auto. Ins. Co.*,
         2 Cal. App. 4th 153, 158 (1991)----------------------------------- 13

22   *United States v. Redwood City*,

23       640 F.2d 963, 966 ----------------------------------------------- 5

24   *Vess v. Ciba-Geigy Corp. USA*,
         317 F.3d 1097, 1106 (9th Cir. Cal. 2003)------------------------- 15

25   *Watts v. Allstate Indem. Co.*, No. S-08-1877,
         2009 U.S. Dist. LEXIS 26618 (E.D. Cal. Mar. 31, 2009) ----------------- 15

26
                            STATUTES

27   Fla. Statute § 95.11(3)(h) --------------------------------------- 21

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Plaintiff MONTE CAHN ("Cahn") submits the following Opposition to
2  Defendants Oversee.net ("Oversee"), Jeff Kupietzky ("Kupietzky") and Lawrence
3  Ng's ("Ng") (collectively "Defendants") Motion to Dismiss Second Amended
4  Complaint ("Motion to Dismiss").

5

6                **MEMORANDUM OF POINTS AND AUTHORITIES**
7  **I.      INTRODUCTION**
8        As one of the pioneers of domain sales and management, and one of the
9  founders of the first domain asset management company, Monte Cahn was a very
10  valuable asset to any company in the domain management industry in 2007.  During
11  this time, around December of 2007, Oversee sought to induce Cahn to join Oversee
12  by making various false representations, all aimed at making the deal more enticing
13  to Cahn.  Based on the representations made by Defendants, Cahn passed up
14  numerous other lucrative opportunities and entered into a contract with Oversee.
15  Based on these false promises Cahn filed the present claim for fraud against
16  Oversee.  Cahn also filed a claim for conversion based on Oversee's possession, and
17  conversion of Cahn's personal domain names after the merger.

18        Oversee, in response, filed a Motion to Dismiss.  As this is Oversee's second
19  Motion to Dismiss, Oversee has defaulted to boilerplate, insubstantial objections to
20  Cahn's claims.  For example, Oversee incorrectly objects that the fraud claim is a
21  restatement of the breach of contract claim, that it is based on forecasts and
22  opinions, and that it is not alleged with sufficient particularity.  As further explained
23  below, none of these objections are applicable to the facts alleged by Cahn in the
24  Second Amended Complaint.  Cahn's claim for fraud is distinctly different than his
25  claim for breach of contract as all of the representations made in support of the fraud
26  claim were made in order to induce Cahn not to pursue alternative opportunities, and
27  were made prior to entering into either the employment contract or the MIP.  Here,
28  Cahn is not suing for fraudulent breach of contract; rather he is suing Oversee

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1
                                        1
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   because Defendants' fraudulent representations caused Cahn to lose millions of

2   dollars in lost opportunities, including alternative employment and investment

3   opportunities with third parties.  Additionally, Oversee's Motion conveniently omits

4   pertinent case law that a claim for false promise may be based on forecasts and

5   opinions.  Further, Oversee's argument that the fraud claim is uncertain is belied by

6   the numerous specific allegations of fraud, including the allegations in paragraphs

7   13 through 19 of the Complaint.  Oversee's Motion simply ignores these clearly

8   detailed allegations.

9         Oversee's Motion to Dismiss the sixth and seventh claims for conversion is

10  also without merit.  Cahn's sixth claim for conversion does not require that Oversee

11  intended to convert Cahn's property, knowledge of the true title holder of the

12  property is irrelevant to a claim for conversion – only intent to take possession of

13  the property is required.  Additionally, Cahn's sixth claim for conversion is not

14  barred by the four year statute of limitations under Florida law, the governing law

15  for a resident of Florida.  Even if the claim was subject to a two year statute of

16  limitations, Cahn's claim is timely since the statute of limitations was tolled by

17  Oversee's concealment of the conversion and violation of its fiduciary duty to Cahn.

18  In any event, Oversee's conversion of Cahn's personal domain names was a

19  continuing conversion.  Every month Oversee earned significant income from

20  Cahn's domain names, and converted that profit for its own use.  Accordingly, each

21  time Oversee took possession of Cahn's profit it committed a distinct act of

22  conversion.[1]

23        Accordingly, Oversee's Motion to Dismiss should be denied in its entirety.

24

25

26  [1]  Defendants' claim that Cahn should file a motion to amend the Complaint to

27  assert a Seventh Claim for Conversion is an attempt to place form over substance
    and appears to reflect an improper attempt to increase the costs of this litigation.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1
2
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## II.   STATEMENT OF RELEVANT FACTS

1
2      Plaintiff Monte Cahn is the founder of Moniker.com ("Moniker"). (¶ 9 of
3   Second Amended Complaint (hereinafter, "Complaint").)  Cahn sold Moniker to
4   Seevast Corp. ("Seevast") in 2005 but stayed on as CEO in order to continue to
5   manage and operate the business in the same manner that had made it the success
6   that it was. (¶ 10 of Complaint.)  In 2007 Oversee, a competitor of Moniker,
7   approached Seevast regarding the purchase of Moniker. (¶ 12 of Complaint.)
8   Oversee's purchase of Moniker was conditioned upon Cahn's agreement to join
9   Oversee. (¶ 12 of Complaint.)  Therefore, in addition to negotiating a sale price
10  with Seevast, Oversee also had to induce Cahn to join Oversee.

11      In an attempt to convince Cahn to not accept or pursue alternative
12  opportunities, Defendants made a series of fraudulent representations to Cahn
13  relating to his future position at Oversee, his ability to manage Moniker, his
14  anticipated compensation, and his ability earn $13 million through a goal oriented
15  bonus structure. (¶¶ 13-21 and 65 of Complaint.)  Based on these representations,
16  Cahn was induced to forego numerous other lucrative business opportunities and to
17  join Oversee instead. (¶¶ 13-21 and 70-71 of Complaint.)  However, unknown to
18  Cahn at the time, during the negotiations Defendants knew that they would not be
19  able to abide by their representations. (¶¶ 13-21 and 65-71 of Complaint.)
20  Defendants made these fraudulent representations in order to prevent Cahn from
21  joining or forming a competitor and in an effort to obtain one of the premier
22  members of this industry. (¶¶ 13-22, 24, and 65-71 of Complaint.)

23      The parties reached an agreement on or around December 14, 2007. (¶ 22 of
24  Complaint.)  After Cahn joined Oversee, Defendants failed to abide by any of the
25  representations originally made when they induced Cahn to join Oversee. (¶¶ 24-25
26  of Complaint.)  As a result of these false representations, Cahn lost millions of
27  dollars in lost opportunities. (¶ 69 of the Complaint.)

28      In addition to its fraudulent conduct, Cahn has recently discovered that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Oversee converted hundreds of domain names that belonged to Cahn, a Florida
2    resident. (¶¶ 3 and 77-83 of Complaint.)  Cahn's employer, Oversee, fraudulently
3    concealed this information from Cahn in direct violation of their obligations.  To
4    this day, Oversee continues to profit from this unlawful conversion, to Cahn's
5    detriment. (¶ 80 of the Complaint.)

6          Additionally, on August 16, 2011, Oversee struck again and attempted to
7    convert in excess of 3,000 domain names that belonged to Cahn. (¶¶ 85-88 of
8    Complaint.)  On August 16, 2011, Rick Terry, an employee of Oversee, was
9    directed by the Oversee legal department to confiscate Cahn's personal account. (¶
10   85 of Complaint.)  On August 16, 2011, Cahn was locked out of his personal
11   account with Oversee that contained in excess of 3,000 personal domain names. (¶
12   86 of Complaint.)  The DNS on Cahn's personal domain names was redirected to
13   Oversee. (¶ 87 of Complaint.)  As a result Oversee received the stream of revenue
14   from Cahn's personally owned domain names. (¶ 87 of Complaint.) Also, Cahn's
15   private information, as the owner of the domain names, was improperly disclosed to
16   the public. (¶ 88 of Complaint.)

17

18   **III.   STANDARD**

19         "A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if,
20   accepting all well-pleaded allegations in the complaint as true, and viewing them in
21   the light most favorable to plaintiff, plaintiff is not entitled to relief." (*In re*
22   *Burlington Coat Factory Sec. Litig.* , 114 F.3d 1410, 1420 (3d Cir. 1997).)
23   Dismissal for failure to state a claim is "proper only where there is no cognizable
24   legal theory or an absence of sufficient facts alleged to support a cognizable legal
25   theory." (*Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir.
26   2010), *citing Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).)
27         Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.
28   (*See SCLC v. Supreme Court,* 252 F.3d 781, 786 (5th Cir. 2001); *Lone Star*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1
4
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  *Industries, Inc. v. Horman Family Trust,* 960 F.2d 917, 920 (10th Cir. 1992).) "A

2  complaint should not be dismissed for failure to state a claim unless it appears

3  beyond doubt that the plaintiff can prove no set of facts in support of his claim

4  which would entitle him to relief." (*Simon Oil Co. v. Norman,* 789 F.2d 780, 781

5  (9th Cir. 1986), *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).) Courts must

6  assume that all general allegations "embrace whatever specific facts might be

7  necessary to support them." (*Peloza v. Capistrano Unified School Dist.,* 37 F.3d

8  517, 521 (9th Cir. 1994), *see also United States v. Redwood City,* 640 F.2d 963, 966

9  (9th Cir. 1981) [dismissal is proper only in "extraordinary" cases].)

10

11  **IV.   CAHN'S FIFTH CAUSE OF ACTION FOR FRAUD IS**

12  **SUFFICIENTLY PLED.**

13  **A.   Cahn's claim for fraud is distinctly different than his claim for**

14  **breach of contract.**

15  Oversee asserts that Cahn's fifth claim for fraud should be dismissed because

16  it merely restates the breach of contract claim. This is simply incorrect. Oversee

17  completely overlooks the inherent difference between Cahn's claim for breach of

18  contract and his claim for fraud. Cahn's claim for breach of contract specifically

19  arises out of the acts committed by Defendants *after* the merger and the

20  commencement of the employment contract and MIP, specifically those acts

21  enumerated in paragraphs 25 and 40 of the Complaint. On the other hand, Cahn's

22  claim for fraud is based on assertions and representations made by Defendants to

23  Cahn during the negotiations and *prior* to the merger and execution of the

24  employment contract and MIP, as described in paragraphs 13-19 and again in

25  paragraphs 65-68 of the Complaint. Specifically, Cahn has alleged that Defendants'

26  fraudulent representations were intended to and did, in fact, cause Cahn to not

27  pursue alternative employment opportunities with a competitor of Oversee, to not

28  form his own company in direct competition to Oversee, and to enter into an

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1                                              5
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  employment relationship with Oversee.  The specific allegations include the
2  following:

3    13.    Kupietzky and Ng were primarily responsible for the
4           negotiations on behalf of Oversee and for making several
5           statements, the purpose of which were to induce Cahn to join
6           Oversee after the merger.  These statements were made in or
7           around the year 2007 while Oversee and Seevast were
8           negotiating the terms of their purchase agreement.  These
9           statements were untrue, were intended to fraudulently induce
10          Cahn to join Oversee, and were relied upon by Cahn in electing
11          not to pursue alternative employment opportunities. . .
12   14.    For example, in or around December 2007, Ng and Kupietzky
13          and Oversee promised Cahn that, post merger, Moniker would
14          receive adequate marketing and public relations assistance from
15          Oversee.  During this same time period, Ng and Kupietzky also
16          represented to Cahn that Oversee could and would centralize the
17          operations of both Moniker and Oversee so that there was a
18          seamless integration of software and a uniform way to respond to
19          intellectual property disputes, litigation, audit and survey
20          responses and complaints from customers. . .
21   15.    Throughout the negotiations, Ng and Kupietzky, and Oversee
22          represented to Cahn that Oversee could fully integrate, support,
23          and enhance the business activities of Moniker's operations. .
24          .Ng and Kupietzky knew that Oversee had a contract with
25          Google that would render it impossible for Traffic Club to
26          continue to operate in the same manner after the merger.  Ng and
27          Kupietzky were aware that Oversee's contract with Google was
28          inconsistent with Traffic Club's business model and operations...

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

16.    In or around December 2007, Ng, Kupietzky, and Oversee also promised Cahn that there would be integration and cross-selling potential between all of Oversee's subsidiaries. This included Moniker's ability to cross-promote and advertise to the customers of each Oversee entity. Kupietzky assured Cahn that, if Cahn joined Oversee, Oversee would not terminate or eliminate the positions of the Moniker employees. . .

17.    . . .Ng promised Cahn that, if he joined Oversee, the merger with Oversee would provide Moniker with the resources and staffing it needed to flourish in the market. . .

18.    During the negotiations with Ng, Kupietzky, and Oversee, it was determined and agreed upon that, if Cahn were to join Oversee, he would serve as the President of Moniker, and would have the normal duties, responsibilities, functions and authority as are normally associated with and appropriate for such position.

19.    During negotiations, Ng and Kupietzky, and Oversee told Cahn that Cahn would report directly to Ng, who was then the CEO, ensuring Cahn had adequate authority and dominion to carry out and achieve Moniker's performance goals within Oversee's infrastructure. . .

. . .

65.    . . .

    a.    Kupietzky and Ng represented that the employment offer and opportunity presented to Cahn was more lucrative than any other offer currently available to him;

    b.    Kupietzky and Ng represented that Cahn would be establishing a long-term prosperous relationship with Oversee and that Oversee would ensure that Cahn had a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 1  |    | viable platform to develop and grow his various business |
|----|----|
| 2  |    | opportunities; |
| 3  | c. | Kupietzky and Ng represented that in addition to the MIP, |
| 4  |    | Cahn could expect additional salary, bonuses, commission, |
| 5  |    | and other lucrative business opportunities through his |
| 6  |    | relationship with Oversee; |
| 7  | d. | Kupietzky represented that joining Oversee would |
| 8  |    | maximize Moniker's profitability because of the |
| 9  |    | marketing, public relations resources, technology and |
| 10 |    | integration provided by Oversee; |
| 11 | e. | Ng represented that joining Oversee would maximize |
| 12 |    | Moniker's profitability because of the increased staffing |
| 13 |    | and company resources that Oversee would provide |
| 14 |    | Moniker; |
| 15 | f. | Ng represented that Cahn would report directly to him, as |
| 16 |    | the CEO of Oversee, which was instrumental in Cahn |
| 17 |    | carrying out his duties as President of Moniker; |
| 18 | g. | Kupietzky and Ng represented that Cahn would be treated |
| 19 |    | in the same manner as all of the other Oversee executives; |
| 20 | h. | Kupietzky and Ng represented that they would provide |
| 21 |    | Cahn all of the resources and integration he needed in |
| 22 |    | order to develop his platform at Oversee; |
| 23 | i. | Kupietzky represented to Cahn during the negotiations that |
| 24 |    | the overall Oversee EBITDA in the MIP would be |
| 25 |    | adjusted, either up or down, from the time the merger took |
| 26 |    | place throughout the term of the MIP, and those |
| 27 |    | calculations would be the controlling benchmarks. |
| 28 |    | Similarly, during the negotiations, other Defendant |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    representatives, including Todd Greene and Hamed

2    Meshki represented and assured Cahn that if the

3    performance goals for Oversee EBITDA could not be

4    determined before the merger, the parties would meet in

5    good faith and develop objective criteria for determining

6    these goals.  Defendants' representatives assured Cahn

7    that these goals would be the same as the goals for other

8    senior management;

9         j.    Kupietzky and Ng represented that Cahn would directly

10              report to Ng and that Ng intended to remain as the CEO of

11              Oversee for the foreseeable future;

12        k.    Kupietzky and Ng represented that there would be a

13              seamless transition of Moniker's business activities into

14              Oversee and that the Moniker staff would prosper by the

15              merger of the companies;

16        l.    Kupietzky and Ng represented that Cahn would enjoy a

17              leadership role in Oversee; and

18        m.    Ng and Kupietzky represented to Cahn that Oversee could

19              fully integrate, support, and enhance the business activities

20              of Moniker's operations. . .Ng and Kupietzky knew that

21              Oversee had a contract with Google that would render it

22              impossible for TrafficClub to continue to operate in the

23              same manner after the merger.  Ng and Kupietzky were

24              aware that Oversee's contract with Google was

25              inconsistent with TrafficClub's business model and

26              operations. . .

27    The allegations stated above, in paragraphs 13-19 and 65, are based upon an

28    entirely different set of facts and circumstances, and took place at a different point

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    in time, than the facts alleged in paragraphs 25 and 40 in support of the breach of

2    contract claim.  Therefore Cahn has alleged two independent claims, under two

3    different sets of facts, with two distinct sets of damages.

4         In support of its argument Oversee cites to *Cusano v. Klein,* 280 F. Supp. 2d

5    1035 (C.D. Cal. 2003).  In *Cusano,* Plaintiff entered into a written employment

6    agreement with a musical group.  (*Cusano v. Klein,* 280 F. Supp. 2d 1035, 1038

7    (C.D. Cal. 2003).)  The parties subsequently entered into another agreement which

8    incorporated by reference the terms of the prior employment agreement.  (*Id.*)

9    Under the agreement Cusano was entitled to a certain share of income derived from

10   his compositions, and was also entitled to quarterly accounting statements.  (*Id.*)

11   Cusano filed suit alleging that the Defendants improperly accounted for the royalties

12   due to him, contrary to their representations that they would faithfully administer the

13   royalty account.  (*Id.*)  Each of the songwriter's claims was premised on Defendants'

14   allegedly false royalty statements.

15        The court held that "Cusano cannot maintain his claims for fraud and

16   negligent misrepresentation against [the defendant] because they merely state a

17   breach of contractual duties."  (*Id.* at 1043.)  "The thrust of his claims for fraud and

18   negligent misrepresentation is that Defendants falsely represented the amount of

19   royalties due him."  (*Id.*)  "The claims against [the defendant] do not involve

20   representations collateral or extraneous to the Employment Agreement."  (*Id.*)

21        The facts in *Cusano* are plainly distinguishable than those alleged by Cahn.

22   The claims in *Cusano* arise from acts that occurred after the contract was entered

23   and are based on Defendants' breach of duties as provided in the contract – more

24   specifically, their breach of the representations that they would faithfully administer

25   the royalty account.  On the other hand, Cahn's fraud allegations arise from acts that

26   occurred *prior* to entering into the contract.  The allegations are based on  fraudulent

27   representations that *induced* Cahn to not join or form a competitor to Oversee, thus

28   causing Cahn to lose millions of dollars in lost opportunities.  Cahn's allegations are

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1                                          10
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  fundamentally different than those in *Cusano* as they occurred *prior* to the formation

2  of the contract, and therefore cannot be based on Oversee's breach of any

3  contractual duties.

4       Courts have repeatedly recognized similar claims for promissory fraud.  For

5  example, in *Lazar v. Superior Court*, 12 Cal. 4th 631 (1996), Defendant contacted

6  Lazar to persuade him to come to work in Los Angeles as Defendant's West Coast

7  general manager.  Defendant, through its vice-president, its president and its chief

8  executive officer, intensively recruited Lazar.  (*Lazar v. Superior Court*, 12 Cal. 4th

9  631, 635 (1996).)  Lazar eventually accepted Defendant's offer of employment.  (*Id.*

10  at 636.)  During the recruiting process Defendant made certain representations to

11  Lazar regarding the terms on which he would be retained, Defendant's financial

12  health and Defendant's potential compensation.  These representations were false

13  and, when making them, Defendant's agents knew they were false.  (*Id.* at 636.)

14  Lazar was eventually terminated.  (*Id.* at 636.)

15       The court found that "'promissory fraud' is a subspecies of the action for

16  fraud and deceit.  A promise to do something necessarily implies the intention to

17  perform; hence, where a promise is made without such intention, there is an implied

18  misrepresentation of fact that may be actionable fraud."  (*Id.* at 639.)  Further, "[a]n

19  action for promissory fraud may lie where a defendant fraudulently induces the

20  plaintiff to enter into a contract."  (*Id.* at 639.)  The court recognized that "[t]his case

21  is different. . .we are not dealing with allegations of breach of a contract provision. .

22  ."  (*Id.* at 647.)  This was a case of fraud.  (*Id.* at 639.)  Lazar had specifically

23  alleged that "in order to induce him to come to work in California, [Defendant]

24  intentionally represented to him he would be employed by the company so long as

25  he performed his job, he would receive significant increases in salary, and the

26  company was strong financially.  Lazar further allege[d] that [Defendant's]

27  representations were false, and he justifiably relied on them. . ."  (*Id.*)  Therefore the

28  court found that Lazar could recover on his claim for fraud.  (*Id.* at 648-649.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1
11
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1     Similarly in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979

2   (2004), Plaintiff had purchased certain parts from Defendant manufacturer, and

3   Defendant provided false certificates of conformance.  (*Robinson Helicopter Co.,*

4   *Inc. v. Dana Corp.*, 34 Cal. 4th 979, 985-986 (2004).)  The court stated that but for

5   Defendant's affirmative misrepresentations by supplying the false certificates of

6   conformance, Plaintiff would not have accepted delivery and used the

7   nonconforming clutches over the course of several years, nor would it have incurred

8   the cost of investigating the cause of the faulty clutches.  Accordingly, all the

9   elements of fraud and misrepresentations were present.  (*Id.* at 990-991.)

10     The analysis in both *Lazar* and *Robinson Helicopter* are analogous to the

11   allegations in Cahn's Complaint – but for the false representations made by

12   Defendants, Cahn would have pursued other lucrative business opportunities and

13   would not have entered into an employment relationship with Oversee.  (¶¶ 13-19

14   and 70-71 of Complaint.)  Additionally, like *Lazar* and *Robinson Helicopter,* Cahn

15   was induced to forego these opportunities and enter into an agreement based on

16   false representations made by Defendants that Defendants knew were false at the

17   time they were made.  This is not a claim for fraudulent breach of contract, nor is it

18   a restatement of Cahn's breach of contract claim.  Cahn's claim for fraud arises of

19   Defendants' misrepresentations made to Cahn in order to induce Cahn to forgo other

20   lucrative opportunities and to join Oversee.  As such, Cahn has stated two distinct

21   causes of actions – one for breach of contract, and one for promissory fraud.

22     **B.     Oversee's argument that the representations alleged by Cahn are**

23     **not actionable because they were forecasts and opinions is**

24     **inapplicable.**

25     Oversee also argues, incorrectly, that Cahn's claim for fraud should be

26   dismissed because the misrepresentations alleged by Cahn are non-actionable

27   forecast and opinions.  Oversee cites to *Tarmann v. State Farm Mut. Auto. Ins. Co.,*

28   2 Cal. App. 4th 153 (1991) in support of its assertion that a "misrepresentation must

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  ordinarily be as to past or existing material facts. '[P]redictions as to future events,
2  or statements as to future action by some third party, are deemed opinions, and not
3  actionable fraud.'" (*Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th
4  153, 158 (1991).) However, Oversee fails to address the remaining holding in
5  *Tarman* which goes on to state that "[c]ertain broken promises of future conduct
6  may, however, be actionable. Civil Code section 1710, subdivision (4) defines one
7  type of deceit as 'A promise, made without any intention of performing it.'" (*Id.* at
8  158.) And "[t]o maintain an action for deceit based on a false promise, one must
9  specifically allege and prove, among other things, that the promisor did not intend to
10 perform at the time he or she made the promise and that it was intended to deceive
11 or induce the promisee to do or not do a particular thing." (*Id.* at 159.) This is
12 precisely what Cahn has alleged, a cause of action for false promise. Therefore
13 Oversee's argument regarding non-actionable forecasts and opinions is irrelevant
14 and inapplicable to Cahn's allegations for false promise.

15        Furthermore, Cahn has met all of the pleading requirements as stated above in
16 *Tarman* in support of his claim for false promise. In paragraphs 13-19 and 65-68,
17 Cahn made detailed allegations of representations made by Defendants, their intent
18 not to perform at the time the representations were made, and Defendants intent to
19 induce Cahn to enter into his employment agreement and the MIP.[2]  For example,
20 paragraph 15, similar to the remaining paragraphs, alleges that:

21              Throughout the negotiations, Ng and Kupietzky, and
22              Oversee represented to Cahn that Oversee could fully

23

24 [2] As explained in more detail below, under FRCP Rule 9(b), intent may be alleged
25 generally. (FRCP Rule 9(b), *Hands on Video Relay Servs. v. Am. Sign Language*
26 *Servs. Corp.*, 2009 U.S. Dist. LEXIS 124899, *33 (E.D. Cal. Aug. 12, 2009), *see*
27 *also Watts v. Allstate Indem. Co.*, No. S-08-1877, 2009 U.S. Dist. LEXIS 26618
   (E.D. Cal. Mar. 31, 2009).)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1
13
CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    integrate, support, and enhance the business activities of

2    Moniker's operations.  These representations were

3    knowingly false, were intended to fraudulently induce

4    Cahn to join Oversee, and were relied upon by Cahn in

5    electing not to pursue alternative employment

6    opportunities.  Among other things, Ng and Kupietzky

7    knew that Oversee had a contract with Google that would

8    render it impossible for Traffic Club to continue to

9    operate in the same manner after the merger.  Ng and

10   Kupietzky were aware that Oversee's contract with

11   Google was inconsistent with Traffic Club's business

12   model and operations. . .  Thus, based on Ng's and

13   Kupietzky's false, fraudulent, and misleading

14   representations about the seamless integration, Cahn

15   agreed not to pursue alternative employment

16   opportunities that would have enabled him to realize

17   millions of dollars in compensation.

18   And paragraph 19 alleges that:

19   During negotiations, Ng and Kupietzky, and Oversee told

20   Cahn that Cahn would report directly to Ng, who was

21   then the CEO. . .Ng knew and understood that Cahn

22   considered Ng's promise and assurance of a direct

23   reporting relationship critical to any successful merger of

24   Oversee and Moniker.  In contradiction to defendants'

25   representations and assurances to Cahn, Ng was in the

26   process of resigning as the CEO of Oversee. . .

27   Cahn has sufficiently alleged Defendants' misrepresentations, their intent not

28   to perform, and their intent to induce Cahn to join Oversee. (*See Tarmann*, 2 Cal.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   App. 4th at 159, *and* ¶¶ 13-19 and 65-68 of Complaint.)  Accordingly, Defendants'

2   argument that the cause of action for fraud should be dismissed because the

3   representations are non-actionable forecasts and opinions is inapplicable as Cahn

4   has properly alleged a cause of action for promissory fraud under *Tarman.*

5   (*Tarmann,* 2 Cal. App. 4th at 158.)

6            **C.**     **Cahn's has pled his cause of action for fraud with sufficient**

7                  **particularity.**

8         Oversee's final argument relating to Cahn's cause of action for fraud is

9   simply a boilerplate objection with no substance as it is applied to the facts alleged

10  by Cahn.  Oversee is left grasping at straws in a final attempt to overcome Cahn's

11  viable claims for fraud.

12        Rule 9(b) requires that averments of fraud "be 'specific enough to give

13  defendants notice of the particular misconduct . . . so that they can defend against

14  the charge and not just deny that they have done anything wrong.'"  (*Vess v. Ciba-*

15  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. Cal. 2003).)  And Federal Rule of

16  Civil Procedure 9(b) "requires more specificity including an account of the 'time,

17  place, and specific content of the false representations as well as the identities of the

18  parties to the misrepresentations.'"  (*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

19  Cir. 2007).)  However, pursuant to Rule 9(b), intent may be alleged generally."

20  (FRCP Rule 9(b), *Hands on Video Relay Servs. v. Am. Sign Language Servs. Corp.*,

21  2009 U.S. Dist. LEXIS 124899, *33 (E.D. Cal. Aug. 12, 2009) [holding that in a

22  case for promissory fraud "intent, including intent not to perform the contract, may

23  be alleged generally"], *see also Watts v. Allstate Indem. Co.*, No. S-08-1877, 2009

24  U.S. Dist. LEXIS 26618 (E.D. Cal. Mar. 31, 2009), *Aqua Connect, Inc. v. Code*

25  *Rebel, LLC*, 2011 U.S. Dist. LEXIS 110092, *22 (C.D. Cal. Sept. 26, 2011) ["The

26  Court finds that Plaintiff has also sufficiently pled the scienter requirement of fraud

27  by averring generally facts which indicate Movants knew their misrepresentations

28  were false at the time of contracting. *See Locke v. Warner Bros., Inc.*, 57 Cal. App.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    4th 354, 368, 66 Cal. Rptr. 2d 921 (Ct. App. 1997) (holding "[f]raudulent intent

2    must often be established by circumstantial evidence, and may be inferred from such

3    circumstances as defendant's . . . failure even to attempt performance . . .").])

4         Here, each of Cahn's allegations not only gives Defendants sufficient notice

5    of the particular misconduct so they can defend against the charges, but they also

6    meet the requirements of Rule 9(b). Each allegation clearly identifies who made

7    each representation – either Ng, Kupietzky or Oversee, depending on the allegation.

8    (*See* ¶¶ 14-19 and 65 of Complaint.) The content of the allegations is specific to

9    each allegation, and is individually identified in each paragraph. (*See* ¶¶ 14-19 and

10   65 of Complaint.) The allegations also specify the general time frame of the

11   representations. While the exact date is not stated, Cahn has sufficiently alleged that

12   they occurred "around December 2007", "during the negotiations" and "during the

13   merger discussions". (*See* ¶¶ 14-19 of Complaint.) All of the alleged

14   representations occurred during the course of negotiations, which occurred in both

15   Oversee's office in Los Angeles and Cahn's office in Florida.[3] (*See* ¶¶ 14-19 of

16   Complaint.) The court's have found that an allegations that "the representations

17   were made during the course of settlement negotiations" is sufficiently specific to

18   satisfy the time and place requirement of Rule 9(b). (*Orlando v. Carolina Cas. Ins.*

19   *Co.,* 2007 U.S. Dist. LEXIS 56409, *29-30 (E.D. Cal. July 26, 2007).) Further, the

20   time and place of these negotiations is well within the knowledge of Defendants as

21   Ng and Kupietzky were both deeply involved in the negotiation process.

22        Furthermore, Cahn has alleged why these statements were false. Paragraph

23   15 specifically alleges that "Ng and Kupietzky knew that Oversee had a contract

24   with Google that would render it impossible for Traffic Club to continue to operate

25   _____

26   [3] The parties were engaged in a continuous course of negotiations that take place
     over the course of at least four months over the telephone, by email and through
27   travel to both Los Angeles and Florida.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 in the same manner after the merger.  Ng and Kupietzky were aware that Oversee's
2 contract with Google was inconsistent with Traffic Club's business model and
3 operations." (*See* ¶¶ 15 and 65 of Complaint.)  Similarly, paragraph 19 states that
4 "Ng was in the process of resigning as the CEO of Oversee." (*See* ¶¶ 19 and 67 of
5 Complaint.)  The falsity of the remaining allegations is alleged in paragraphs 25,
6 and is evidenced by Oversee's breach of the MIP. (*Sierra Foothills Pub. Util. Dist.*
7 *v. Clarendon Am. Ins. Co.,* 2005 U.S. Dist. LEXIS 36361, *15-16 (E.D. Cal. Aug.
8 29, 2005) [holding that "the allegations of the Complaint suffice to allege a claim
9 for fraud. Unlike the allegations in *In re Glenfed Securities* and *Smith*, the
10 Complaint alleges more than a claim of fraud based solely on the fact that the
11 insurance policy was allegedly breached. Here, the Complaint alleges that the
12 insurance policy promised coverage and a defense, a misrepresentation evidenced
13 by the varying theories of denying coverage and a defense. Consequently, the court
14 concludes that the Complaint satisfies Rule 9(b) and precludes the conclusion that
15 the that plaintiff can prove no set of facts in support of the fraud cause of action.].)
16      Accordingly, Cahn has met the level of specificity as required by Rule 9(b) of
17 the FRCP, and as such, Oversee's Motion to Dismiss Cahn's claim for fraud must be
18 denied.
19
20 **V.    CAHN'S SIXTH CAUSE OF ACTION FOR CONVERSION IS**
21 **SUFFICIENTLY PLED.**
22      **A.    Cahn has pled a cognizable claim for conversion.**
23      Oversee has once again misinterpreted and misapplied the law of conversion.
24 Oversee asserts, incorrectly, that Oversee must have intended to convert Cahn's
25 property. (*See generally* 12:6-13:4 of Motion to Dismiss.)  This, unfortunately, is
26 not an element of conversion.  Conversion only requires that the defendant intend to
27 take possession of the subject property, it does not require the defendant to intend to
28 take possession of *plaintiff's* property – and therein lies the difference. (*Landsman*

1 | *Packing Co. v. Continental Can Co.*, 864 F.2d 721 (11th Cir. Fla. 1989) ["one who

2 | receives possession of the property of another and thereafter, without authority,

3 | intentionally exercises control over it in such a manner as to interfere with the

4 | owner's right of possession is guilty of conversion."].)

5 | The case law regarding Defendant's ignorance of the true title holder of the

6 | property is clear – knowledge of the true owner of the property is not an element to

7 | a claim for conversion.  In *CRS Recovery, Inc. v. Laxton,* 600 F.3d 1138, 1145 (9th

8 | Cir. Cal. 2010), a case relating to the conversion of the domain name "rl.com", the

9 | court held that "[t]he common law rule thus holds that so long as Laxton exercised

10 | conscious dominion and control over rl.com, he assumed the risk on the question of

11 | whether he is correct about the true title holder." (*CRS Recovery, Inc. v. Laxton,*

12 | 600 F.3d 1138, 1145 (9th Cir. Cal. 2010).)  The court in *Enter. Leasing Corp. v.*

13 | *Shugart Corp.,* 231 Cal. App. 3d 737 (1991) similarly held that "[b]ecause the tort

14 | of conversion is species of strict liability, defendant's good faith, ignorance, mistake

15 | or motive is irrelevant and does not constitute a defense". (*Enter. Leasing Corp. v.*

16 | *Shugart Corp.,* 231 Cal. App. 3d 737, 747-748 (1991), *see also Morissette v. United*

17 | *States*, 342 U.S. 246, 270 (1952) ["In the civil tort, except for recovery of exemplary

18 | damages, the defendant's knowledge, intent, motive, mistake, and good faith are

19 | generally irrelevant".)  This same holding was reiterated in *Burlesci v. Petersen,* 68

20 | Cal. App. 4th 1062 (1998) "[c]onversion is a strict liability tort. The foundation of

21 | the action rests neither in the knowledge nor the intent of the defendant. Instead, the

22 | tort consists in the breach of an absolute duty; the ***act of conversion itself is***

23 | ***tortious***. Therefore, questions of the defendant's good faith, lack of knowledge, and

24 | motive are ordinarily immaterial". (*Burlesci v. Petersen,* 68 Cal. App. 4th 1062,

25 | 1066 (1998) (emphasis added).)

26 | Even a good faith purchaser, as Oversee claims it is, can be liable for

27 | conversion of domain names.  In *Express Media Group, LLC v. Express Corp.*, 2007

28 | U.S. Dist. LEXIS 34800 (N.D. Cal. May 10, 2007) Defendants purchased the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1

18

1   domain name express.com from an unknown third party. (*Express Media Group,*

2   *LLC v. Express Corp.,* 2007 U.S. Dist. LEXIS 34800, *3-4 (N.D. Cal. May 10,

3   2007).) Plaintiffs sent Defendants a letter requesting the return of the domain name,

4   and Defendants failed to return the property. (*Id.* at 12.) Defendants' only defense

5   was that they were a good-faith purchaser. (*Id.* at 6.) The court disagreed with

6   Defendants' argument and held that "[i]t is not necessary that there be a manual

7   taking of the property; it is only necessary to show an assumption of control or

8   ownership over the property, or that the alleged converter applied the property to his

9   own use.' [Citation omitted] Possession of the property coupled with refusal to

10  return it is sufficient to support a defendant's liability for conversion. [Citation

11  omitted]." (*Id.* at 11.)

12      Oversee's argument detrimentally relies on the premise that it did not intend

13  to exercise ownership of Cahn's property, and it "simply took possession of domain

14  names it purchased for itself." (13:1-2 of Motion to Dismiss.) A statement which in

15  fact is not true, since Oversee did take actual possession of Cahn's domain names,

16  along with the names it purchased from Moniker. (¶¶ 75-77 of Complaint.)

17  However, as explained in *CRS Recovery, Enter. Leasing Corp.,* and *Burlesci,*

18  Oversee's ignorance of the true owner of the domain names is immaterial. As the

19  purchaser Oversee assumed the risk on the question of whether it was correct about

20  the true title holder of the domain names. Even if it was a good faith purchaser,

21  which it was not, it would still be liable for conversion simply by assuming control

22  over the property and retaining possession. Therefore, as long as Oversee exercised

23  conscious dominion and control over the domain names, Oversee is liable for

24  conversion. Accordingly, Cahn has met all of the required elements to plead a cause

25  of action for conversion.

26      **B.    The statute of limitations on Cahn's claim for conversion has not**

27          **expired.**

28      Without providing any choice of law analysis, Oversee has applied California

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1

19

CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  law to Cahn's claim for conversion.  However, here we have a Florida resident, with

2  personal property that was purchased and managed from Florida, and Defendants

3  that are California residents.  There is no contract establishing which law governs

4  the claim of conversion, and therefore we have an issue regarding the choice of law

5  to be applied.

6      Under California law, choice-of-law questions are resolved using the

7  "governmental interest analysis".  (*McGhee v. Arabian American Oil Co.*, 871 F.2d

8  1412, 1422 (9th Cir. Cal. 1989).)  The government interest test involves a three step

9  analysis:

10          First, the court determines whether the relevant law of

11          each of the potentially affected jurisdictions with regard

12          to the particular issue in question is the same or different.

13          Second, if there is a difference, the court examines each

14          jurisdiction's interest in the application of its own law

15          under the circumstances of the particular case to

16          determine whether a true conflict exists.  Third, if the

17          court finds that there is a true conflict, it carefully

18          evaluates and compares the nature and strength of the

19          interest of each jurisdiction in the application of its own

20          law 'to determine which state's interest would be more

21          impaired if its policy were subordinated to the policy of

22          the other state' [citation] and then ultimately applies "the

23          law of the state whose interest would be the more

24          impaired if its law were not applied."

25  (*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-108 (2006).)

26      First, Florida courts, like the California courts, recognize a cause of action for

27  conversion of domain names.  (*Spa Parts, Accessories & Servs., LLC v. Seeker*,

28  2009 U.S. Dist. LEXIS 77181 (M.D. Fla. Aug. 11, 2009) [holding that Defendants

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1

20

CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  "actions constitute conversion of the Service Customer List and domain names by

2  Seeker, and therefore, Spa Parts is likely to prevail on the merits of its conversion

3  claim."].)   Additionally, akin to California conversion law, the elements of

4  conversion in Florida are: "(1) an act of dominion wrongfully asserted; (2) over

5  another's property; and (3) inconsistent with his ownership therein." (*Estetique Inc.*

6  *USA v. Xpamed LLC*, 2011 U.S. Dist. LEXIS 104427, *28 (S.D. Fla. Sept. 14,

7  2011), *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.*,

8  125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000).)  However, in Florida a four year

9  statute of limitations applies to a claim for conversion (*see* Fla. Statute §

10  95.11(3)(h), *and Feingold v. American Rack & Stack, Inc.*, 734 So. 2d 479, 480

11  (1999)), versus two years in California (*Italiani v. Metro-Goldwyn-Mayer Corp.* 45

12  Cal. App. 2d 464, 466-67 (1941)), a notable difference.

13       Here, Florida has a strong interest in protecting the rights and interests of its

14  residents, especially their personal property.  Additionally, Florida has an interest in

15  protecting its residents from the predatory actions of non-resident corporations.

16  Most importantly, the Florida legislature had a reason for implementing a four year

17  statue of limitations on a claim for conversion, most notably, to protect its citizens.

18  Therefore a Florida citizen would be severely prejudiced if a foreign court imposed

19  a different statute of limitations, to its detriment, upon the conversion of his personal

20  property owned and managed in Florida.  Accordingly, Florida law should apply to

21  Cahn's claim for conversion of his domain names.

22       Applying Florida law to Cahn's claim for conversion, Cahn's claim must

23  have been brought within the four year statute of limitations in order to plead a

24  claim for conversion.  Assuming that Oversee assumed possession of Cahn's

25  domain names at the time of the merger, in or around December 2007, the statute

26  would not have expired until December 2011.  Since Cahn filed his original

27  Complaint in May 3, 2011, Cahn's claim was brought well within the statute, and

28  therefore is not time-barred.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-8930-3563.1

21

CAHN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    Even if Florida law did not apply, Cahn's claim for conversion would still
2  succeed under California's two year statute of limitations since the statute was tolled
3  based on Oversee's conduct.  Cahn's domain names were stored at Moniker prior to
4  the merger. (¶ 77 of Complaint.)  During the merger Oversee obtained possession
5  of all of Moniker's domain names, including Cahn's. (¶ 75-77 of Complaint.)
6  While in Oversee's possession, it earned revenue on both Moniker's and Cahn's
7  domain names. (¶¶ 78, 80 of Complaint.)

8    Oversee, as Cahn's employer, had a fiduciary duty to safely hold Cahn's
9  assets, and not to commingle Cahn's assets with the corporate assets of Oversee.
10  (*Tyler v. State of California*, 134 Cal. App. 3d 973, 977 (1982) ["the trustee must
11  keep the money separate from his own funds"].)  Additionally, in *AmerUS Life Ins.*
12  *Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631 (2006) the court held that ". . .
13  When the defendant in a conversion action fraudulently conceals the relevant facts
14  or where the defendant fails to disclose such facts in violation of his or her fiduciary
15  duty to the plaintiff.  In those instances, 'the statute of limitations does not
16  commence to run until the aggrieved party discovers or ought to have discovered the
17  existence of the cause of action for conversion.'" (*AmerUS Life Ins. Co. v. Bank of*
18  *America, N.A.,* 143 Cal. App. 4th 631, 639 (2006).)  Therefore, since Oversee
19  breached its duty to Cahn the statute of limitations was tolled.

20    Oversee's improper withholding of Cahn's personal domain names also
21  resulted in a continuing conversion.  Every month Oversee earned significant
22  income from Cahn's domain names, and converted that profit for its own use.
23  Accordingly, each time Oversee took possession of Cahn's profit it committed a
24  distinct act of conversion.  Therefore, since Cahn has alleged that Oversee "still
25  remains in possession of approximately 200 of Cahn's personal domain names
26  which Oversee has been monetizing and receiving revenue on" (¶ 80 of Complaint),
27  Oversee has continued to convert Cahn's domain names well within the two year
28  statute of limitations.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

1  **VI.  CAHN'S SEVENTH CAUSE OF ACTION FOR CONVERSION IS**
2  **SUFFICIENTLY PLED.**

3  Oversee has failed to make any substantive objections to Cahn's seventh
4  cause of action for conversion. The most recent instance of conversion occurred on
5  August 16, 2011, several months after the filing of the initial complaint, and after
6  the Court's order on Oversee's Motion to Dismiss Cahn's First Amended
7  Complaint. Cahn's claim falls within the scope and spirit of the Complaint and
8  should be tried in conjunction with the other claims asserted therein.

9  Oversee also argues that a conversion claim cannot consist of a general claim
10 for money. That is not what this claim is. This is a claim for conversion of Cahn's
11 personal domain names, which as Oversee itself previously admitted, the court's
12 have found is a proper subject for a claim for conversion. (*See Kremen v. Cohen,*
13 325 F.3d 1035 (9th Cir. 2003), *and CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138,
14 1144 (9th Cir. Cal. 2010) ["a domain name is intangible property, subject to an
15 action for conversion under California law"], *and Spa Parts, Accessories & Servs.,*
16 *LLC v. Seeker*, 2009 U.S. Dist. LEXIS 77181 (M.D. Fla. Aug. 11, 2009) [applying
17 Florida law].) Additionally, the courts have held that lost profits associated with the
18 conversion may also be included. (*See Mendoza v. Continental Sales Co.,* 140 Cal.
19 App. 4th 1395, 1405 (2006), *and Myers v. Stephens*, 233 Cal. App. 2d 104, 118-120
20 (1965), *and R&B Holding Co. v. Christopher Adver. Group, Inc.*, 994 So. 2d 329,
21 330 (2008) [applying Florida law].) Therefore Cahn has stated a proper claim for
22 conversion of his personal domain names.

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **VII.    CONCLUSION**

2          Based on the arguments and case law set forth herein, Cahn respectfully

3    requests that this Court deny Defendants' Motion to Dismiss Cahn's Fifth, Sixth and

4    Seventh claims for relief.  Alternatively, the Court should grant Cahn leave to

5    correct any alleged defects in his Complaint.

6

7    DATED: October 3, 2011                    JOHN L. BARBER
                                                KENNETH D. WATNICK
8                                               SONJA HARRINGTON
                                                **LEWIS BRISBOIS BISGAARD &**
9                                               **SMITH** LLP

10

11                                              By:    /s/ Sonja Harrington
                                                      Sonja Harrington
12                                                    Attorneys for MONTE CAHN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW