1  William A. Delgado (Bar No. 222666)
2  wdelgado@willenken.com
   Leemore Kushner (State Bar No. 221969)
3  lkushner@willenken.com
4  WILLENKEN WILSON LOH & LIEB LLP
   707 Wilshire Blvd., Suite 3850
5  Los Angeles, CA 90017
6  Tel: (213) 955-9240
   Fax: (213) 955-9250
7
8  Attorneys for Defendants
   OVERSEE.NET, JEFFREY KUPIETZKY,
9  and LAWRENCE NG

10            **UNITED STATES DISTRICT COURT**
11            **CENTRAL DISTRICT OF CALIFORNIA**
12

13  MONTE CAHN, an individual,           | Case No. CV11-03800 SVW (AGRx)
                                          |
14                                        |
             Plaintiff,                   |
15                                        | **DEFENDANTS' REPLY**
                                          | **MEMORANDUM IN SUPPORT OF**
16        v.                              | **MOTION TO DISMISS SECOND**
                                          | **AMENDED COMPLAINT**
17  OVERSEE.NET, a California             |
18  corporation; JEFF KUPIETZKY, an       | DATE:    October 24, 2011
    individual, LAWRENCE NG, an           | TIME:    1:30 p.m.
19  individual; and DOES 1 through 10     | PLACE: Crtrm. 6
                                          |
20                                        |
             Defendants.                  |
21                                        |
                                          |
22                                        |
                                          |
23  _____     |

24
25
26
27
28

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION……………………………………………………………1

II.   ARGUMENT……………………………..……………………………..1

   A.   Plaintiff's Fifth Claim for Fraud Fails to State a Claim………………………...1

      1.   The fifth claim restates Plaintiff's contract claim…………………………1

      2.   Plaintiff cites to precedent that is inapposite………………………………2

      3.   Plaintiff failed to adequately plead intent…………………………………4

      4.   Plaintiff relies on vague allegations about future performance
         under the MIP that are not actionable……………………………………5

      5.   Conclusion as to fraud claim………………………………………………6

   B.   Plaintiff's Sixth Claim for Conversion Should Be Dismissed…………………7

      1.   California's statute of limitations applies…………………………………7

      2.   The SAC makes clear that the statute of limitations is not tolled…………9

   C.   Plaintiff's Seventh Claim for Conversion Should Be Dismissed……………..10

   D.   Plaintiff's Prayer for Punitive Damages Should Be Stricken…………………11

III. CONCLUSION………………………………………………………………11

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

Federal Cases

5

6

*Blake v. Dierdorff,*
  856 F.2d 1365 (9th Cir. 1988) ................................................................. 6

7

*Browne v. McDonnell Douglas Corp.,*
  504 F. Supp. 514 (N.D. Cal. 1980) .......................................................... 9

8

9

*CRS Recover, Inc. v. Laxton,*
  600 F.3d 1138 (9th Cir. 2010) ................................................................. 8

10

*Cusano v. Klein,*
  280 F. Supp. 2d 1035 (C.D. Cal. 2003) .................................................... 2

11

12

*Deutsch v. Turner Corp.,*
  324 F.3d 692 (9th Cir. 2003) .............................................................. 7, 8

13

*In re GlenFed, Inc. Sec. Litig.,*
  42 F.3d 1541 (9th Cir. 1994) ................................................................. 6

14

15

*Ledesma v. Jack Stewart Produce, Inc.,*
  816 F.2d 482 (9th Cir. 1987) ................................................................. 8

16

*Marsh v. Burrell,*
  805 F. Supp. 1493 (N.D. Cal. 1992) ........................................................ 9

17

18

*Nelson v. Internat'l Paint Co.,*
  716 F.2d 640 (9th Cir. 1983) .............................................................. 7, 9

19

*Peterson v. Kennedy,*
  771 F.2d 1244 (9th Cir. 1985) ................................................................ 8

20

21

*Smith v. Allstate,*
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) ................................................. 4, 5

22

State Cases

23

24

*AmerUS Life Ins. Co. v. Bank of America, N.A.,*
  143 Cal. App. 4th 631 (2006) ................................................................. 9

25

*Ashland Chemical Co. v. Provence,*
  129 Cal. App. 3d 790 (1982) .............................................................. 7, 9

26

27

*Fox v. Ethicon Endo-Surgery, Inc.,*
  35 Cal. 4th 797 (2005) ........................................................................ 10

28

*Lazar v. Superior Court,*
   12 Cal. 4th 631 (1996) ................................................................................ 2, 3, 5

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
   34 Cal. 4th 979 (2004) .................................................................................... 3, 4

*Rochlis v. Walt Disney Co.,*
   19 Cal. App. 4th 201 (1993) ............................................................................... 6

*Tenzer v. Superscope, Inc.,*
   39 Cal.3d 18 (1985) ............................................................................................ 4

*Turner v. Anheuser-Busch, Inc.,*
   7 Cal. 4th 1238 (1994) ........................................................................................ 6

## Rules

Rule 15(d) ............................................................................................................ 10

Rule 9(b) .................................................................................................... 2, 4, 5, 6

## Other Authorities

Restatement (Second) of Conflict of Laws § 142, cmt f (1988) ..................... 7

## <u>REPLY MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.      <u>INTRODUCTION</u>

Plaintiff Monte Cahn's ("Plaintiff") Opposition to the Motion to Dismiss ("Opposition") merely confirms that he is improperly attempting to turn contract claims into tort claims.  He expressly confirms that his tort claims arise out of precisely the same allegations that support his contract claims, and he cites plainly inapplicable precedent to justify doing so.  Plaintiff has not rectified the deficiencies that this Court highlighted when granting Defendants' motion to dismiss the fraud and conversion claims pled in the First Amended Complaint ("FAC"), and, thus, his claims should now be dismissed without leave to amend.

As noted in the moving papers, Defendants do not dispute that Plaintiff has pleaded (although he cannot prove) claims for breach of contract.  But, the parties' respective rights and obligations arise from those contracts – a fact the Opposition expressly admits – and that fact precludes tort recovery in this action.

II.     <u>ARGUMENT</u>

      A.      <u>Plaintiff's Fifth Claim for Fraud Fails to State a Claim.</u>

           1.      <u>The fifth claim restates Plaintiff's contract claim.</u>

Plaintiff speciously claims that the fraud and contract claims are distinct because the fraud claim arises from acts that occurred *during* the negotiations that preceded the acquisition of Moniker whereas the contract claims arise from acts that occurred *after* the acquisition.  Opposition at 5:15-25.  In reality, Cahn's argument misses the point because he has failed to allege any tortious conduct *separate* from conduct constituting alleged breaches of contract.

Indeed, Plaintiff's own Opposition makes the point in at least two ways.  <u>First</u>, Plaintiff highlights Defendants' alleged misrepresentation that Plaintiff would directly report to defendant Lawrence Ng, who was Oversee's CEO.  Opposition, at 14-15; *see*

*also*, SAC, ¶ 19.  Cahn's reporting relationship, however, is expressly addressed in his Employment Agreement.  *See,* Request for Judicial Notice, Ex. 1 (Employment Agreement, ¶ 2(b) ("During the Employment Period, [Cahn] shall report to the Chief Executive Officer of the Company…."))  Thus, that alleged misrepresentation is not collateral to the agreements at issue and cannot support a claim for fraud.  Second, Plaintiff argues in the first part of his brief that the allegations in paragraph 25 of the SAC – which purport to detail how Defendants actions contradicted their express representations – support his claim for breach of the MIP and not the fraud claim (Opposition at 9:27-10:2) but argues later in the brief that the same paragraph 25 supports the fraud claim by providing support for the "why" requirement of Rule 9(b). Opposition at 17:5 ("The falsity of the remaining allegations is alleged in paragraphs 25….").  In short, Plaintiff admits that his fraud claim is based on the same actions and representations as his first claim for breach of the MIP and does not involve issues collateral or extraneous to the alleged breach of the MIP.  *See*, *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1042 (C.D. Cal. 2003) ("a fraud claim fails when it merely states an alleged breach of contractual duties and does not concern representations that are collateral or extraneous to the parties' contract.").  Plaintiff is thus seeking a contractual recovery and his Fifth Claim should be dismissed.

>   2.   Plaintiff cites to precedent that is inapposite.

In support of this flawed position, Plaintiff relies on *Lazar v. Superior Court*, 12 Cal. 4th 631 (1996).  However, that case is factually distinguishable because there was no written employment contract entered into between the parties, despite the employee's request for one.  *Id.* at 636.  Moreover, unlike here, the plaintiff's promissory fraud claim was buttressed by specific allegations of misrepresentations of fact made by the defendant to induce plaintiff to take employment with defendant and relocate across the country to do so.  Among the specific misrepresentations of fact used to induce the plaintiff were specific, false statements that (1) plaintiff would receive significant future raises when the employer knew its company policy was to

limit annual increases to two or three percent, and (2) that plaintiff's job would be permanent and secure when the employer knew it was planning on an operational merger likely to eliminate plaintiff's job. *Id.* at 635-36. The court held that, as to the fraud claim, the plaintiff could seek damages for the costs of uprooting his family, expenses incurred in relocation and the loss of security and income associated with his former employment. *Id.* at 648-49. Significantly, however, the court held that plaintiff must rely on his *contract* claim for recovery of any loss of income that was a result of the defendant's actions. *Id.* at 649.

In contrast, here, Plaintiff vaguely alleges that he was told certain things during negotiations for the MIP that turned out not to be true. His allegations make clear that he is suing because he earned less than he expected, but his right to compensation is governed by contracts, and the *Lazar* court made clear that such damages stem directly from the contract claims. *Id.*

Plaintiff's reliance on *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979 (2004), is also misplaced. There, the defendant misrepresented to a helicopter manufacturer that parts it had supplied complied with federal safety standards, and the manufacturer incorporated the parts into its helicopters. In that situation, the Court held that the supplier had done two things wrong: it breached the contract by supplying non-conforming parts; and it lied about whether the parts conformed to the contract. That latter conduct supported a claim for fraud because it induced the plaintiff to incorporate the defective parts into helicopters and exposed the plaintiff to liability to third parties. On those unique facts, the Court held that tort liability attached to the provision of fraudulent certificates of conformance. The *Robinson Court* specifically noted "[o]ur holding today is narrow in scope and limited to a defendant's affirmative misrepresentation on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 993. Here, however, it is beyond dispute that, at no point in time, was Plaintiff exposed to "liability for personal damages independent of [his] economic

loss."  Thus, neither *Robinson,* nor the "economic loss rule" that it applies, has any application here.

### 3.   Plaintiff failed to adequately plead intent.

Even if Plaintiff could cite a theory that allows him to convert his contract claims into a fraud claim, his Fifth Claim fails because it does not meet the rigorous pleading standard imposed by Rule 9(b).  Meticulousness in pleading fraud is especially important where a plaintiff alleges promissory fraud.  Indeed, requiring the pleading of *facts* establishing the claim – including facts establishing the alleged secret intent not to perform – guards against plaintiffs who hope to bootstrap a contract claim into a tort and punitive damages by the simple expedient of tossing in a conclusory allegation that the defendant never intended to perform.  *Smith v. Allstate*, 160 F. Supp. 2d 1150, 1153 (S.D. Cal. 2001) ("*Smith*") (failure to apply "the heightened pleading requirements of Rule 9(b) … would allow 'every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise'" (citations omitted)).

Plaintiff claims that the falsity of Defendants' purported representations is alleged in paragraph 25 of the SAC (which allegedly supports plaintiff's breach of contract claim) and Oversee's subsequent alleged breach of the MIP.  Opposition, 17:5-6; *see also*, Opposition, 10:1-2 (stating that paragraph 25 supports Plaintiff's breach of contract claim).  Nevertheless, the alleged failure to perform a contract does not, alone, establish a secret intent not to perform.  *Smith*, 160 F.Supp.2d at 1152; *see also, Tenzer v. Supersscope, Inc.*, 39 Cal.3d 18, 30-31 (1985) (it "is not and has never been, a correct statement of the law" that "proof that a promise was made and that it was not fulfilled is sufficient to prove fraud"; "something more than nonperformance is required to prove the defendant's intent not to perform his promise").  Indeed, an alleged breach does not establish that the defendant "never intended to honor the contract, thereby committing fraud."  *Smith*, 160 F.Supp.2d at 1153.  Plaintiff must plead specific, concrete facts demonstrating **contemporaneous** falsehood; "the

1  plaintiff is precluded from simply pointing to a defendant's statement, noting that the

2  content of the statement conflicts with the current state of affairs, and then concluding

3  that the statement in question was false when made." *Id.*[1]  A contrary rule "would

4  eviscerate the effect of Rule 9(b) in every case of promissory fraud" because "every

5  breach of contract would support a claim of fraud so long as the plaintiff adds to his

6  complaint general allegations that defendant never intended to keep her promise." *Id.*

7  Plaintiff's fraud claim attempts to do exactly what *Smith* rejected as improper and in

8  violation of Rule 9(b). He generally alleges representations made by the Defendants

9  but makes no attempt to specifically allege *why* they were false or that Defendants did

10 not have the intent to perform when the purported representations were made. *See,*

11 SAC, ¶¶ 13-19, 65.  Plaintiff does not have a fraud claim against Defendants; his

12 claim is one for breach of contract.[2]

> 4.  <u>Plaintiff relies on vague allegations about future performance under the MIP that are not actionable</u>.

15 Plaintiff contends – in conclusory fashion – that "the content of the allegations is

16 specific to each allegation."  Opposition at 16:8-9. To the contrary, Plaintiff's

---

[1] The *Smith* court noted that a plaintiff can satisfy the requirement of pleading facts explaining why the statement was false when made by pointing to inconsistent or contemporaneous statements or information which was made by or available to the defendant, or later statements made by the defendant along the lines of 'I knew it all along.' *Smith*, 160 F. Supp. 2d at 1153.  Plaintiff makes no such allegations in the SAC.

[2] To the extent that Plaintiff claims that paragraphs 15 and 65(m), which allege that Oversee had a contract with Google that supposedly rendered it impossible for TrafficClub to continue to operate after the merger, demonstrate the requisite element of intent, this conclusory allegation is not sufficient to satisfy Rule 9(b) because it fails to show how or why the Google contract was inconsistent with TrafficClub's business model.  *Lazar*, 12 Cal.4th at 645 ("In California, fraud must be pled specifically; general and conclusory allegations do not suffice.").  Moreover, the same allegation is used to support Plaintiff's contract claim (SAC, ¶ 25(d)), and that further evidences that his claim is one for breach of contract and not for fraud.

allegations are vague and superficial and fall woefully short of complying with the exacting requirements for pleading a promissory fraud claim. *See, In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (holding that Rule 9(b) requires specific descriptions of the misrepresentations made); *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 216 (1993) ("Promises too vague to be enforced will not support a fraud claim any more than they will one in contract."), *disapproved on other grounds by Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (1994). They include generalized allegations that Plaintiff would "receive adequate marketing and public relations assistance" (SAC, ¶ 14), that Oversee would "integrate" and "enhance" Moniker's business activities (*id.*, ¶ 15), that there would be "integration and cross-selling potential" (*id.*, ¶ 16), that Moniker would have resources to "flourish in the market" (*id.*, ¶ 17), and that Plaintiff would have "normal" duties and responsibilities as Moniker's president (*id.*, ¶ 18). None of these allegations are specific enough to establish a claim for fraud (e.g., what exactly does it mean to "enhance" a business activity or "flourish in the market" such that determining liability is even possible?). More importantly, as this Court previously recognized in its Order of August 25, 2011 these are merely allegations "regarding Defendants' future performance of its obligations under the MIP" (Order at p. 9) and, therefore, cannot form the basis of a claim for fraud.

### 5.    Conclusion as to fraud claim.

Plaintiff alleges that he was told certain vague, non-actionable representations during negotiations of his employment agreement and the MIP. These allegations are not specifically pleaded, and that is particularly true as to "intent" for which he merely provides conclusory statements as opposed to actual facts. The allegations Plaintiff does plead establish that he is suing because he earned less than he expected *under the MIP*. If Plaintiff is entitled to more under his contracts than he actually received, he will receive that money. If he was not entitled to anything more under his contracts, he

---

6
REPLY MEMORANDUM ISO MOTION TO DISMISS SAC

1   will recover nothing.  Plaintiff is limited to his contract claims, and his fraud claim

2   should be dismissed.

3       B.      Plaintiff's Sixth Claim for Conversion Should Be Dismissed.

4           1.      California's statute of limitations applies.

5       Plaintiff acknowledges that California's "governmental interest" approach to the

6   choice of laws applies, and argues that Florida's interest in protecting its resident from

7   "predatory actions of non-resident corporations" trumps California's interest in

8   protecting its citizens from stale claims.  Opposition, p. 21.  That is not the law.  When

9   the conflict concerns a statute of limitations, the governmental interest approach leads

10  state and federal courts in California to apply *California* law.  *Deutsch v. Turner Corp.*,

11  324 F.3d 692, 716 (9th Cir. 2003).  This is particularly so if California's statute would

12  bar a claim because a "state has a substantial interest in preventing the prosecution in

13  its courts of claims which it deems to be stale.  Hence, subject to rare exceptions, the

14  forum will dismiss a claim that is barred by its statute of limitations."  *Id* at 717. (*citing*

15  Restatement (Second) of Conflict of Laws § 142, cmt f (1988)).

16      *Nelson v. Internat'l Paint Co.*, 716 F.2d 640 (9th Cir. 1983) is instructive.  There,

17  the Ninth Circuit affirmed the district court's application of California's one-year

18  statute of limitations, instead of the two-year statutes of the other potentially interested

19  forums (Texas and Alaska), to the plaintiff's product liability claim.  *Id.* at 644-45.

20  The plaintiff was a resident of Texas, had inhaled toxic fumes while painting at a

21  construction site in Alaska, and alleged that his injury was caused by defectively

22  designed paint.  *Id.* at 642.  Plaintiff filed suit in Texas, and the case was transferred to

23  California.  Applying the governmental interest test, the Ninth Circuit affirmed the

24  application of the California statute because the forum was in California, the only

25  defendant was a California resident, and only California had in interest in having its

26  statute of limitations applied.  *Id.* at 644-45.  The *Nelson* court cited the Ninth Circuit's

27  rationale in *Ashland Chemical Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982),

28  which involved a conflict between California and Kentucky statutes of limitations, with

a Kentucky plaintiff, California defendants, and a California forum.  The Court there found that California is the only interested state:

> Statutes of limitations are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost ….  California courts and a California resident would be protected by applying California's statutes of limitations because California is the forum and the defendant is a California resident.  Applying California's statutes of limitations would thus advance its underlying policy.  In choice of law terms, California has an 'interest' in applying its law.  In contrast, Kentucky has no interest in having its statute of limitations applied because … there are no Kentucky defendants and Kentucky is not the forum.  This case is 'the very paradigm of the false conflict' ….  The court properly applied California law.

*Id.*; *see also, Deutsch*, 324 F.3d at716-17 (applying California's statute of limitations); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 485 (9th Cir. 1987) ("when both the forum and the defendant's residence were the same, no state other than California [has] an interest in having its statute applied."); *Peterson v. Kennedy*, 771 F.2d 1244, 1251 n.4 (9th Cir. 1985) ("We have long recognized that 'the forum court utilizes its own state's statute of limitations.'" (citations omitted)).

Plaintiff has identified no case, and Oversee could locate none, that applied a statute of limitations other than California's where the defendant was a resident of California and California was the forum.[3]  *See, Marsh v. Burrell*, 805 F. Supp. 1493,

---

[3]  Plaintiff cites to *CRS Recover, Inc. v. Laxton*, 600 F.3d 1138 (9th Cir. 2010) in support of his argument that he has properly pled a conversion claim.  Notably, the Ninth Circuit in that case analyzed whether California or Virginia law applied to the conversion claim and held that the district court properly applied California law to the conversion claim.  *Id.* at 1143.

1496 (N.D. Cal. 1992) (stating that the presumption in California is that California law applies and the burden is on the party seeking to have the foreign state's law applied); *Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980) ("Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling interest to displace forum law.").  Plaintiff has not met his burden of showing why Florida law should apply, and given Plaintiff's failure to contest the application of California law in connection with Defendants' Motion to Dismiss the conversion claim in the First Amended Complaint [Docket No. 18, pp. 14-15] *and* the Court's application of California law in connection therewith [Docket No. # 22, pp. 9-10], it is difficult to see how Plaintiff could.[4]

The present case parallels *Nelson* and *Ashland*, since the forum is in California, and Oversee is a California resident.  Thus, California's two year statute of limitations for conversion of intangible items applies, and because Plaintiff failed to bring his claim prior to December 2009, his claim is time-barred.

> 2.    The SAC makes clear that the statute of limitations is not tolled.

California courts will only toll the statute of limitations in a conversion claim if: (1) the defendant commits affirmative acts to fraudulently conceal the theft, or (2) the defendant breaches a fiduciary duty to the plaintiff by failing to disclose the theft. *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006).  To invoke the discovery rule, the plaintiff "must plead facts to show his or her inability to

---

[4]    In its motion to dismiss the conversion claim in the First Amended Complaint, Oversee applied California law pursuant to the first step of the governmental interest analysis because Plaintiff's complaint failed to indicate that he seeks to apply foreign law.  Plaintiff did not contest the application of California law, and applied California law, only, to argue that its conversion claim is proper.  The Court acknowledged that "Plaintiff does not appear to contest Defendant's argument regarding applicable law."  Court Order, Docket No. 22, p. 5.  Ironically, even in its latest Opposition, Plaintiff almost universally applies California law in arguing that his conversion claim is properly pled.  Opposition, pp. 17-19.

1   have discovered the necessary information earlier despite reasonable diligence." *Fox*

2   *v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005).

3       The SAC is devoid of any facts sufficient to establish that the discovery rule

4   applies to the sixth claim for conversion.  There are no allegations in the SAC that

5   Defendants fraudulently concealed the theft.  To the contrary, the SAC essentially

6   alleges that Cahn's domain names were combined with Moniker's.  SAC, ¶ 77.  The

7   SAC does not even attribute the purported "mix up" to Oversee, nor does it plead the

8   necessary requirements for fraudulent concealment.  SAC, ¶¶ 74-83.  There are also no

9   allegations that Oversee owed and/or breached a fiduciary duty to Plaintiff.[5]  *Id.*

10  Plaintiff's conversion claim should, therefore, be dismissed without leave to amend.[6]

11          C.      Plaintiff's Seventh Claim for Conversion Should Be Dismissed.

12      Plaintiff has failed to rebut or even address his failure to comply with Rule 15(d)

13  of the Federal Rules of Civil Procedure, which requires Plaintiff to seek and obtain

14  leave of court to supplement his complaint, claiming instead that requiring Plaintiff to

15  file a motion to amend "is an attempt to place form over substance…."  Opposition, p.

16  2, n.1.  Plaintiff cannot simply ignore the Federal Rules of Civil Procedure by refusing

17  to move the Court to amend his complaint to add a claim that allegedly accrued after he

18  filed this action.  To allow the Plaintiff to do so would render these Rules meaningless.

19      Moreover, Plaintiff's claim is fatally flawed because it is an improper claim for

20  money that is not capable of identification.  Contrary to Plaintiff's assertion, this is not

21  a claim to recover domain names because Plaintiff admits that he has possession

22  ――――――――――――――
    5   Tellingly, Plaintiff alleged a claim for breach of fiduciary duty against Oversee in
23      its original complaint but withdrew the claim after Defendants filed their motion to
        dismiss the claim on the grounds that the Complaint did not allege the existence of a
24      recognized fiduciary duty owed by Oversee.  *See* Docket No. 6, pp. 5-7.

25
    6   Plaintiff's final argument – that the conversion is "continuing" because Oversee
26      allegedly continues to remain in possession of Plaintiff's domain names – is
        nonsensical.  Opp. at 22:20-28.  Indeed, that interpretation of the law would render
27      all conversion claims ripe so long as the defendant remained in possession of the
        plaintiff's property, thereby rendering the statute of limitations meaningless.
28

thereof.  SAC, ¶ 88 ("Cahn's account was restored on August 31, 2011…..").  This is a claim for *money*.  SAC, ¶ 89 ("Cahn is entitled to all revenue….").  The claim should, therefore, be dismissed.

   D. <u>Plaintiff's Prayer for Punitive Damages Should Be Stricken</u>.

  Cahn acknowledges that his claim for punitive damages relies on his contention that Defendants made misrepresentations to induce him to enter into the MIP.  Because his misrepresentation claims fail, his claim for punitive damages should be stricken.

## III. <u>CONCLUSION</u>

  The SAC once again attempts to convert Cahn's contract claims into a fraud claim that is neither legally viable nor properly alleged.  Plaintiff's sixth claim for conversion claim is definitively time-barred under California's statute of limitations. Plaintiff cannot be allowed to circumvent the Federal Rules by filing an improperly alleged seventh claim for conversion without leave of court.  Defendants thus request that the Court dismiss Plaintiff's Fifth, Sixth, and Seventh Claims for Relief with prejudice.

Dated:  October 10, 2011    WILLENKEN WILSON LOH & LIEB LLP


         By: *<u>/s/ William A. Delgado</u>*   .
          William A. Delgado
          Attorneys for Defendants OVERSEE.NET,
          JEFFREY KUPIETZKY, and LAWRENCE
          NG

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated:  October 10, 2011                    WILLENKEN WILSON LOH & LIEB LLP


                                            By: */s/ William A. Delgado*                    .
                                                William A. Delgado
                                                Attorneys for Defendants OVERSEE.NET,
                                                JEFFREY KUPIETZKY, and LAWRENCE
                                                NG