William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual, | Case No. CV-11-03800 SVW (AGRx) |
| Plaintiff, | **DEFENDANT OVERSEE.NET'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10 | Declarations of Todd Greene and William Delgado [Filed Concurrently Herewith] |
| Defendants. | [Notice Provided to Opposing Counsel] [Fed. R. Civ. P. 65 and L.R. 7-19] |
| | [Referred to Magistrate Judge Alicia G. Rosenberg] |
| | No Hearing Scheduled |

*EX PARTE* APPLICATION FOR PROTECTIVE ORDER

TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, upon this *ex parte* application, pursuant to Fed. R. Civ. P. 26(c), Defendant Oversee.net ("Oversee") hereby applies for a protective order which will restrict the disclosure and dissemination of confidential documents and information that may be the subject of discovery in this matter. Oversee's proposed protective order has been lodged concurrently herewith. The parties have agreed to the language of eight sections of the proposed protective order that has been lodged herewith but have not agreed to the language of a ninth section (i.e., Section 9, the section on how the protective order may be modified in the future), thereby making this application necessary.

This Application is supported by the attached Memorandum of Points and Authorities, and the Declarations of William A. Delgado and Todd H. Greene.

## NOTICE OF *EX PARTE*

After meeting and conferring over the course of several weeks in search of a consensual resolution to this dispute, Oversee provided notice of this Application on October 10, 2011. The name, address and telephone number of Plaintiff's counsel are:

> Ken Watnick
> Lewis Brisbois Bisgaard & Smith
> 221 North Figueroa Street, Suite 1200
> Los Angeles, CA 90012-2601
> Tel: 213.680.5105

This Application is brought pursuant to Federal Rule of Civil Procedure 65 and Local Rule 7-19, and is made on the ground that a protective order limiting the disclosure and dissemination of sensitive and confidential information that is exchanged during discovery in this matter is necessary to protect the parties from the

harm of permitting third parties, including competitors, have access to such information.

## NEED FOR *EX PARTE* RELIEF

As discussed in more detail in the accompanying Memorandum of Points and Authorities, the parties first commenced meeting and conferring about the possibility of stipulating to a proposed protective order to be approved by the Court on September 8, 2011. During the meet and confer process, the parties agreed to the language of the vast majority of the Stipulated Proposed Protective Order which they had been discussing.[1] However, the parties disagree on Section 9 regarding future modification of the order. Plaintiff seeks to add language which imposes a standard for judicial review on any additional protections the parties may seek in the future. Oversee disagrees with this approach, believing Plaintiff's language to be both impractical and incorrect as a matter of law. Oversee has therefore proposed simply removing disputed language from Section 9 entirely and reverting to neutral language for this section that appeared in an earlier draft provided by the Plaintiff himself which simply preserves the rights of all parties on this issue. Plaintiff, however, now refuses to sign any protective order unless it directs the Court to follow its legally incorrect standard. As a result, and even though the parties have fully agreed on the handling of documents produced pursuant to a Stipulated Proposed Protective Order, Oversee cannot request the Court to enter a protective order by stipulation.

Fast approaching deadlines prevent the parties from preparing a Joint Stipulation and proceeding as envisioned in Local Rule 37. Even assuming that Oversee provided

---

[1] The drafts of the Stipulated Proposed Protective Order exchanged by the parties had ten sections of which only Section 9 remained in dispute. However, Section 10 (Execution and Counterparts) was only applicable if the parties had proceeded by stipulation, which they are not doing. Thus, for purposes of this application and the proposed protective order which Oversee has lodged, Section 10 has been eliminated, leaving a total of nine sections. The parties are in agreement on eight sections, leaving only Section 9 in dispute.

Plaintiff with its portion of the Joint Statement today, under the time frame provided by Local Rule 37 (i.e., seven days for Plaintiff to respond to Oversee's portion, another day for execution and filing, and hearing date 21 days out from the filing of the notice of motion), a regularly noticed motion would not be heard until November 15, 2011, at the earliest. Given the trial date and upcoming deadlines, a protective order is needed quickly so that sensitive commercial documents can be produced.

On August 29, 2011, this matter was set for trial on January 17, 2012, which means that initial expert reports are due on October 19, 2011. *See* Fed. R. Civ. P. 26 (a)(2)(D)(i) (initial expert reports due 90 days prior to trial date). In addition, Plaintiff has asked that Oversee produce defendant Jeffrey Kupietzky for deposition the last week of October 2011. *See* Declaration of William A. Delgado, dated October 10, 2011 at ¶ 16. At Plaintiff's request, Defendants have made arrangements to have Mr. Kupietzky, who currently resides in Israel, come to Los Angeles for deposition on October 26, 2011. *Id.* at ¶ 17, Ex. M. Plaintiff also seeks to take the deposition of Craig Snyder before November 15, 2011. *Id.* at ¶ 18, Ex. N. And, Oversee seeks to take the deposition of Plaintiff Monte Cahn on October 28, 2011. *Id.* at ¶ 19, Ex. O. All of these deadlines and dates are prior to November 15, 2011. In addition, Plaintiff has recently noticed three other depositions for November 15th (third party Stephen O'Neill), November 16th (third party Stacey Peterson) and November 18th (third party Joshua Armstrong). Delgado Decl. at ¶ 23. Even if a protective order was entered on November 15th, it would be difficult to produce documents in advance of all three depositions as counsel would be busy preparing for and taking depositions.

In order to meet the expert report deadline and for all these depositions to occur as scheduled (thereby avoiding the expense of having to reschedule various flights and hotels, including an international flight), the parties need to exchange documents in advance of these dates. However, the production of Oversee's confidential commercial documents cannot occur absent a standard protective order from the Court which will limit the use of such documents to this litigation. As such, for the sake of *both* parties,

and in the interests of efficient management of the discovery process, Oversee is requesting a protective order on this *ex parte* basis.

The injury and prejudice to both parties that could result if this application is not heard on an *ex parte* basis is not attributed to Oversee's lack of diligence. L.R. 37-3. To the contrary, as detailed in the Memorandum of Points and Authorities, Oversee was proactive about drafting a proposed protective order which it sent to Plaintiff in early September 2011. It was proactive about following up with Plaintiff when Plaintiff did not respond. Throughout the meet and confer process, it has offered concession after concession in order to avoid motion practice on this issue so that the parties could submit a proposed protective order through stipulation. In short, Oversee has done all that it could do without waiving its rights to resolve this issue in a manner that is efficient and expeditious to no avail. For these reasons, *ex parte* relief is appropriate.

Dated:  October 11, 2011                    WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*                .
    William A. Delgado
    Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff alleges that he should have received bonuses under a Management Incentive Plan ("MIP") adopted by his former employer, Oversee. He contends that either the targets in the MIP were met (but Oversee manipulated the data that proves that) or that Oversee undermined his ability to meet those targets. Oversee denies Plaintiff's allegations. Plaintiff claims that he needs Oversee's highly sensitive financial information to prove his claims. Oversee is willing to produce this information but needs a protective order to prevent its disclosure to third parties outside the context of this litigation—a condition that may also limit any incentives Plaintiff may have to abuse the discovery process.

Through the meet and confer process, the parties have agreed to the language of eight out of nine sections in a proposed protective order that they had intended to submit to the Court via stipulation. That is to say, the parties agree that a protective order is necessary to protect certain confidential and sensitive information (e.g., Oversee's financial information, human resources and employee information, etc.) from disclosure outside the context of this litigation and have agreed to the method by which the parties can designate such information as "CONFIDENTIAL." Thus, by and large, Oversee's request is not prejudicial to Plaintiff. Plaintiff has agreed to much of the request already.

However, there is one area of disagreement which is preventing the parties from submitting a proposed protective order by stipulation. The parties disagree on the language of Section 9, which relates to how the parties may seek modification of the protective order. Such modification may be necessary if, for example, certain documents are so sensitive that a party feels that they require a higher level of protection (e.g., a designation of "ATTORNEYS' EYES ONLY"). Put simply, Plaintiff seeks to have Section 9 incorporate a legal burden that Oversee does not

believe is an appropriate recitation of the law and, therefore, has objected to such language.

For purposes of this application, however, the Court need not resolve the dispute as to who has the legal burden on a future motion. Oversee has proposed to Plaintiff, and is now seeking from the Court, a protective order that does not affect the rights or arguments of either party with respect to that issue. Instead, both Plaintiff and Defendant would have the ability to make their respective arguments as to modification of the protective order (and who bears the burden of such a modification) if and when that issue arises in the future. Nevertheless, that isolated issue should not delay entry of a protective order pursuant to which Oversee can produce its confidential documents so that the parties can meet their upcoming deadlines, particularly given the upcoming expert deadline and depositions, as well as the January 17, 2012 trial date.

## II. STATEMENT OF FACTS

This is a lawsuit about a financial incentive plan called the Management Incentive Plan or "MIP." Plaintiff claims he entered into the MIP with defendant Oversee but was not paid any of the bonuses under the MIP as a result of Oversee's breach thereof. Oversee maintains that Plaintiff was not paid under the MIP because the constituent business lines failed to meet the targets in the MIP that would trigger such payments.

Shortly after the scheduling conference before Judge Wilson on August 29, 2011[2], counsel for Oversee, on his own initiative, prepared a draft protective order containing two tiers of protection for documents and information (i.e. "CONFIDENTIAL" and "ATTORNEYS' EYES ONLY") and sent the draft to counsel for Plaintiff on September 8, 2011. Delgado Declaration at ¶¶ 2-3, Ex. A. Plaintiff's

---

[2] At the scheduling conference, Judge Wilson bifurcated this matter so that, at present, only Plaintiff's first claim for breach of the MIP is set for trial, and discovery may only be conducted as to that first claim. Delgado Decl. ¶ 2.

counsel failed to respond to the draft. *Id*. at ¶ 4. Having received no reply, counsel for Oversee re-sent the draft protective order on September 23, 2011. *Id*., Ex. B. Later that day, Plaintiff's counsel provided a redlined draft which, made several non-substantive changes but eliminated the second tier of protection for ATTORNEYS' EYES ONLY documents. *Id*. at ¶ 5, Ex. C.

Between September 23rd and September 30th, counsel for the parties exchanged various e-mails in an attempt to resolve the issue (i.e., whether the order would have two tiers of protection) without motion practice. *Id*. at ¶ 6, Ex. D. Oversee explained why it sought an ATTORNEYS' EYES ONLY designation; to wit, in the event that it needed to protect a particularly competition-sensitive document from being disclosed to Plaintiff Monte Cahn, a competitor of Oversee. *Id*. Counsel for Cahn, **though admitting that Cahn was a competitor of Oversee**[3], initially objected to the nature of the two-tiered order because in-house counsel for Oversee would have access to AEO-designated documents but Cahn would not. *Id*.

On September 30, 2011, the parties had an in-person meet and confer, at which time Oversee offered to keep the AEO-designation but remove Oversee's in-house counsel's access to such AEO documents. *Id*. at ¶ 7. However, counsel for Cahn refused to accept any protective order having two tiers. *Id*. The following day, October 1, 2011, in a further effort to resolve the issue without motion practice, Oversee offered: (i) a proposed protective order having a single CONFIDENTIAL tier, (ii) that it would log particularly competition-sensitive documents (i.e., documents it would claim AEO-status) in a privilege log, and (iii) that the parties could meet and confer about those specific documents once their nature was more fully understood and, if no agreement was reached, the parties would be free to engage in future motion practice as to those particular documents. *Id*. at ¶ 8, Ex. E.

On October 4, 2011, Cahn provided a redlined draft which essentially agreed to all the language of Oversee's October 1st draft but included language that, to the extent

---

[3] Delgado Decl. Ex. D, page 1.

a party (e.g., Oversee) sought a modification of the protective order to provide a particular document with additional protection (e.g., AEO-status), then "[t]he party filing such a motion should have the burden of establishing that the document or information should be afforded additional protection and that there are no alternative, less restrictive means to ensure the confidentiality of such information." *Id*. at ¶ 9, Ex. F. As discussed below, this language, which seeks to define the burden of a future, unknown motion, is legally inaccurate, and, as a practical matter, unnecessary. The parties then exchanged various e-mails on the language of Section 9, but no resolution was reached. *Id*. at ¶10, Ex. G.

On October 5, 2011, Oversee made another attempt to resolve this dispute informally by keeping all of the agreed-upon language in the other sections of the proposed protective order and changing Section 9 to simply read: "Nothing herein precludes the Court from modifying or amending its terms or the treatment of any particular document or set of documents designated hereunder, either on its own motion, upon stipulation of the parties, or upon motion of either party." *Id*. at ¶ 11, Ex. H. On October 6, 2011, Cahn refused that proposal as well, insisting that the proposed protective order contain the language on "burden" which Oversee believes is inconsistent with established legal precedent. *Id*. at ¶ 12, Ex. I.

In a last-ditch effort to resolve this informally, Oversee presented Cahn with a final draft of a proposed protective order in which Section 9 now contained the **same language originally proposed by Cahn** in his September 23, 2011 draft. *Id*. at ¶ 13, Ex. J. Still, however, Cahn's attorneys refused to accept Oversee's proposal, arguing for the first time that he was **not** a competitor of Oversee, a statement that is directly at odds with his earlier admissions to the contrary. *Id*. at ¶ 14, Ex. K. On October 11, 2011, Oversee informed Plaintiff that no agreement could be reached and, therefore, it would request assistance from the Court. *Id*. at ¶ 15, Ex. L.

Having failed to reach resolution on this issue despite numerous good-faith attempts (but unwillingly to accept Plaintiff's version of Section 9, which incorrectly recites the law), Oversee now brings this application.

III. ARGUMENT

A. A Protective Order Is Necessary to Protect the Disclosure of Confidential Commercial Information.

Federal Rule of Civil Procedure 26(c) ("Rule 26(c)") provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Here, there is no disagreement that a protective order—in some form—is necessary. First, it is clear that Cahn has requested commercial information (e.g., financial information) that is sensitive and should not be used outside the context of this litigation and/or revealed to third parties. *In re Adobe Sys., Inc. Secs. Litig.*, 141 F.R.D. 155, 158 (N.D. Cal. 1992) ("Good cause [for a protective order] may be that the protected information includes proprietary and technical information, financial information and business strategy or marketing information which, if revealed to a competitor, would put a company at a competitive disadvantage.") Simply by way of example, Cahn's requests for production include, *inter alia*:

- Requests for documents that relate to the financial performance for various divisions, subsidiaries or business lines of Defendant Oversee.net, including documents related to capital investments, revenue, costs, operating income and losses, interest expense, depreciation, amortization, gross and net profit, cash flow, return on investment, profits, and operating results. Delgado Decl. at ¶¶ 20, 22, Exs. P and R (Request Nos. 1-14, Request No. 76-79, 94-104).

- Requests for Oversee's financial statements.[4] *Id.* at ¶¶ 20, 22, Ex. P and R (Request No. 15, 80-92).
- Requests for highly confidential contracts between Oversee and Google. *Id*. at ¶ 20, Ex. P (Request No. 16).
- Requests for documents related to the bonuses and compensation provided to other employees and officers, which, in addition to being confidential, are protected against disclosure by those individual's right to privacy. *Id*. at ¶¶ 20-22, Exs. P, Q, R (Request No. 26, Second Set of Requests Nos. 3-4a, Request Nos. 74-75).
- Requests related to the financial performance of the company, as specifically related to the MIP. Id. at ¶ 20, Ex. P (Request Nos. 36-39).
- Requests for documents regarding employment and staffing decisions. *Id*. at ¶ 20, Ex. P (Request Nos. 52-53).
- Requests for marketing and public relations budgets. *Id*. at ¶ 20, Ex. P (Request Nos. 54-55).
- Requests for pricing information of products. *Id*. at ¶ 20, Ex. P (Request No. 67).
- Requests for documents regarding communications with and presentations to the Oversee Board of Directors regarding Oversee's EBITDA (Earnings Before Income, Taxes, Depreciation, and Amortization). *Id*. at ¶ 21, Ex. Q (Second Set of Request Nos. 1-2).
- Requests for documents evidencing specific customers, which would result in the divulging of confidential customer information. *Id*. at ¶ 21, Ex. Q (Second Set of Request Nos. 4b-5).

Clearly, these are the types of documents whose disclosure to third parties outside of this lawsuit would put Oversee at a competitive disadvantage. This is particularly true

---

[4] Oversee is a privately-owned company. Declaration of Todd Greene, dated October 11, 2011, at ¶ 2.

given the breadth of the requests which seek financial information, budgets, pricing information, customer information, and communications with the Board of Directors. Second, it is not disputed that Oversee treats these types of documents as confidential precisely because their dissemination to third parties would harm their ability to compete in the marketplace. Greene Decl. at ¶¶ 3-13.

Third, and most importantly, Cahn has acknowledged the propriety of a protective order which limits the disclosure of documents beyond this litigation. Delgado Decl. at Ex. I ("…Mr. Cahn has agreed to stipulate to a protective order that would allow either party to designate documents as 'confidential' that cannot be used outside of this litigation.") and Ex. K ("Cahn has agreed to a protective order which once again confirms that either party will have the right to designate documents as confidential and not be used outside of this litigation."). Given that the documents sought by Cahn should be protected against disclosure and that Plaintiff does not object to the entry of a one-level protective order, Oversee respectfully requests that the Court enter the proposed protective order attached hereto.

B. This Protective Order Does Not Need Language About the Legal Standard of Some Future Motion.

As noted, *supra*, the parties' only remaining dispute appears to be whether the parties must agree on the standard the Court must apply in some future, as yet undefined, dispute over the production of documents that may not be adequately protected by the one-tier protective order that Plaintiff insists on using. Oversee's proposed protective order provides neutral language that simply allows for modification of the protective order either on stipulation of the parties or motion of a party. It does not prejudice either party's ability to seek further modification of the order, challenge a CONFIDENTIAL designation under the order[5], or seek enhanced

---

[5] In fact, the proposed protective order identifies that parties making a designation under *this* order have the burden of justifying such designations.

protection (e.g. AEO-status) for a particular set of documents. Most notably, the language that Oversee is proposing for Section 9 was present in the draft provided **by Plaintiff** on September 23rd.

Plaintiff, however, now refuses to stipulate to a proposed protective order unless Section 9 explicitly states that "[t]he party filing such a motion [for enhanced protection] should have the burden of establishing that the document or information should be afforded additional protection and that there are no alternative, less restrictive means to ensure the confidentiality of such information." Oversee objects to this additional language for two reasons.

First, it is unworkable. Plaintiff is attempting to set forth the legal burden of a theoretical motion, the precise contours of which are presently unknown. Second, assuming that the motion is one in which Oversee is seeking "attorneys' eyes only" protection for particular documents or information so that they cannot be disclosed to Cahn, that is not the correct legal standard. The burden is not entirely on Oversee, and Oversee need not show that "there are no alternative, less restrictive means to ensure the confidentiality of such information."

Rather, as with any motion for protective order, Oversee must make a threshold showing that the information for which it seeks protection is a trade secret or other confidential research, development or commercial information under Rule 26(c)(7) and that its disclosure would be harmful to Oversee. *Nutratech, Inc. v. Syntech (Sspf) Int'l, Inc.,* 242 F.R.D. 552, 554-555 (C.D. Cal. 2007) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). After Oversee makes that threshold showing, however, "[t]he burden then shifts to the party seeking discovery to show that the information is relevant to a party's claims or defenses or the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id*. at 555. In addition, for a motion seeking "Attorneys' Eyes Only" protection, Plaintiff must also establish that it is necessary for *Mr. Cahn* to see the documents (as opposed to just his lawyers and expert witnesses). *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 249-250 (D.

Kan. 2010) (court should "consider whether prohibiting the individual's access to the information would hamper the party's ability to assess the merits of the litigation."). "This involves considering the individual's specific role in the litigation, whether his or her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of the litigation." *Id.* at 250. Many courts frame the inquiry as whether the individual is "uniquely qualified" to evaluate the information or documents at issue. *See, e.g., Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 21-22 (D. Del. 1988) (considering whether plaintiff's president was "uniquely qualified" to assess the documents at issue). These cases make clear that, when considering a motion to designate certain documents as AEO, there is a burden *shift* and a burden on Plaintiff as well. As a result, Plaintiff's proposed language for Section 9 simply represents an inappropriate attempt by Plaintiff to foist an incorrect burden upon Oversee and only Oversee.

Once again, however, the Court need not decide this issue as part of this application. Oversee has proposed language for Section 9 that preserves all the parties' rights and arguments on the appropriate legal standard until such time as this issue is actually before the Court on a fully briefed record. For these reasons, Plaintiff's insistence on requiring language on "burden" in a stipulated protective order is baffling, particularly since such language is not acceptable to Oversee, is delaying document production in this matter, and, ultimately, is the incorrect recitation of the law.

IV. <u>CONCLUSION</u>

The proposed protective order submitted by Oversee in connection with this *ex parte* application contains eight sections on which the parties have agreed, and a ninth section that properly reflects a lack of agreement of the parties that allows the Court to fulfill its proper role in adjudicating future document production disputes. Oversee

respectfully requests that its *ex parte* application be granted and its proposed protective order be entered.

Dated: October 11, 2011      WILLENKEN WILSON LOH & LIEB LLP

By: */s/ William A. Delgado*     .
    William A. Delgado
    Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated: October 11, 2011              WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*                .
  William A. Delgado
  Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG