**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOHN L. BARBER, SB# 160317
  E-Mail: barber@lbbslaw.com
KENNETH D. WATNICK, SB# 150936
  E-Mail: watnick@lbbslaw.com
SONJA HARRINGTON, SB# 261053
  E-Mail: sharrington@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff, MONTE CAHN, an individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>           Plaintiff,<br><br>      v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual; LAWRENCE NG, an individual; and Does 1 through 10,<br><br>           Defendants. | CASE NO. CV11-03800 SVW (AGRx)<br><br>The Hon. Stephen V. Wilson<br>[Magistrate Judge Alicia G. Rosenberg]<br><br>**MONTE CAHN'S OPPOSITION TO OVESEE'S EX PARTE APPLICATION FOR PROTECTIVE ORDER**<br><br>COMPLAINT FILED:  May 3, 2011<br>TRIAL DATE:           January 17, 2012 |

4818-4511-5147.1
MONTE CAHN'S OPPOSITION TO OVESEE'S EX PARTE APPLICATION FOR PROTECTIVE ORDER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Monte Cahn ("Cahn") and Defendant Oversee.net ("Oversee") have agreed to a protective order which permits either party to designate documents as "confidential" and not to be used outside of this litigation. Oversee filed the instant ex parte application because it does not want the protective order to confirm that the party which seeks to file a motion for further protection of "confidential" information has the burden of proving the need for such further protection.

Cahn proposed that the protective order include specific language on such potential motions because of concerns that Oversee will seek to use the "heightened confidentiality" process as a method to deny, delay, and/or prejudice Cahn's ability to review evidence relating to his claim that Oversee owes him bonuses pursuant to his Management Incentive Plan ("MIP"). Based on Oversee's recently served discovery responses and its ex parte application, it appears that, once this Court enters a protective order, Oversee will file a motion to prevent Cahn from obtaining access to a substantial portion of its document production. Oversee appears to be basing such a motion on the grounds that Cahn is a competitor and that it needs protection for "competition-sensitive information. In fact, Cahn is not a competitor with Oversee and is subject to an existing confidentiality and a non-compete agreement which further restricts his ability to use information produced in this litigation. Cahn requires access to all of the financial information during the period in question (2008-2010) because Cahn is uniquely qualified to determine whether he should have received credit for certain transactions that are the subject of this litigation.

The need for specific language in the protective order is particularly compelling in this matter because of the existing deadlines. On August 29, 2011, the Court set trial for January 17, 2012 and ordered the parties to complete discovery in approximately 3 months. Thus, Cahn is concerned that Oversee may

4818-4511-5147.1

1

MONTE CAHN'S OPPOSITION TO OVESEE'S EX PARTE APPLICATION FOR PROTECTIVE ORDER

seek to file motions for additional protection in an effort to delay or further constrict the limited discovery period. Such motions will also frustrate the ability of experts to timely prepare reports.

Cahn's concerns also are based on the history of Oversee's efforts to prevent Cahn from obtaining information relating to his MIP. In 2007 Oversee induced Cahn to enter into an employment relationship based on certain incentives provided in a MIP offered by Oversee. The MIP set certain performance goals that were to be met each year of Cahn's employment, from 2007 through 2010. If Cahn met a certain percentage of any of the performance goals, he was to receive a pre-determined bonus for each benchmark met. The MIP was meant to supplement Cahn's salary, and the performance goals were set taking into consideration the compensation Cahn was expected to earn while at Oversee.

After three years of employment at Oversee, Cahn never received any bonuses under his MIP. Despite Cahn's repeated attempts and requests, Oversee refused to provide him with the financial information necessary to confirm that he met his performance goals. As a result, Cahn was compelled to file this suit.

By its ex parte application, Oversee seeks to place Cahn in the same position that forced him to file the suit in the first place. Oversee continues to set forth roadblocks that are intended to prevent Cahn from reviewing any financial information or evidence that would assist Cahn in evaluating whether or not he met his performance goals under his MIP. Cahn was not only an employee of Oversee for three years, but he was the President of Moniker, one of Oversee's subsidiaries, while at Oversee. Cahn joined Oversee with the expectation and belief, based on Oversee's representations, that he would earn a certain amount of compensation during his term at Oversee. However, Oversee continues, to this day, to refuse to provide Cahn with any information relating to his compensation under his MIP.

Cahn is simply trying to protect his rights as a party to this litigation, as a signatory to his MIP, and as a former President of Oversee. Cahn is not a

competitor of Oversee (as clearly prohibited by his non-compete clause in his employment contract) and therefore as a party to this litigation, and as the individual with exclusive knowledge as to his performance under the MIP, is entitled to view the documents that Oversee claim evidence their refusal to award any bonus payments to Cahn under the MIP.

## II.     STATEMENT OF FACTS

This case arises from Defendants' breach of a Management Incentive Plan ("MIP") entered into between Cahn and Oversee. At the commencement of his employment with Oversee, Cahn was in charge of three business segments at Oversee: TrafficClub, Moniker's Registrar, and Moniker's Domain Sales. The MIP set certain benchmarks, or performance goals, that Cahn was incentivized to meet based on the three business segments gross profit and/or EBITDA. The plan was to be in effect for Cahn's three years of employment at Oversee. If Cahn reached these benchmarks, or a certain percentage of any of them, he was to be awarded a pre-determined bonus. There was also a fourth category under the MIP that was available for Cahn to earn a bonus under, and that was for Oversee's overall EBITDA. If Oversee reached a certain percentage of its EBITDA goal, Cahn would be awarded a predetermined bonus amount. Oversee's EBITDA goal under Cahn's MIP was "TBD", and was supposed to be determined shortly after Cahn began his employment. However, Oversee failed to provide Cahn with any amendment setting Oversee's EBITDA goals. As a result, Cahn was not awarded any bonus payments under the fourth business segment as there were no goals set by Oversee.

Additionally, according to Defendants, Cahn failed to reach any of the performance goals for the remaining three business segments for any of the three years that he was employed at Oversee. Cahn repeatedly requested from senior management to review the financial information substantiating Defendants' assertion that the goals were not met. Cahn's requests were denied, repeatedly.

Defendants would not allow Cahn to view any evidence of either his business segments financial performance, or Oversee's overall performance that would allow him to determine whether or not his goals were met under the MIP. As such, Cahn was forced to bring the present action against Defendants.

Plaintiff filed his Complaint on May 3, 2011. However, because the pleadings were not at issue, Oversee refused to participate in a Rule 26 conference or submit to discovery in advance of the Court's Scheduling Conference.

On August 25, 2011, this Court issued an order setting a Scheduling Conference for August 29, 2011. [Doc. No. 23.] During the Scheduling Conference, the Court ordered the parties to conduct an initial exchange of documents within 30 days and set trial for January 17, 2012. [Doc. No. 25.]

On October 10, 2011, Oversee served its response to Cahn's First Request for Production. (Ex. "1," attached hereto.) In response to many of the requests, Oversee claimed that it will produce certain confidential documents upon the entry of a protective order and that "[c]onfidential financial documents which, in the opinion of Oversee, contain information that is competition-sensitive shall be listed in Oversee's privilege log." (See, for example, Response to RFP Nos. 1, 3, 4, and 5 of Oversee's Response to the First Request for Production, Ex. "1," attached hereto.)

### III  CAHN DOES NOT DISPUTE OVERSEE'S NECESSITY FOR A PROTECTIVE ORDER TO PROTECT CONFIDENTIAL COMMERCIAL INFORMATION.

The dispute here is not whether or not a protective order is necessary. Cahn has never disputed Oversee's right to protect its confidential commercial information. Cahn understands and appreciates the sensitivity of the information that he has requested from Oversee, and as such, has agreed that Oversee may label such documents "confidential" and not to be used outside of this lawsuit.

The dispute here has arisen not over third parties outside the litigation accessing "confidential" documents, but rather Oversee's request to have a higher level of confidentiality, which will preclude Plaintiff Monte Cahn from viewing numerous highly relevant documents. Since the parties have already agreed that "the Party requesting the 'Confidential' designation has the burden of proof in demonstrating that the documents or information is confidential pursuant to the terms of this order" (§ E of the 10-10-2011 [Proposed] Protective Order, Ex. "2"), Cahn has simply requested that the protective order confirm a comparable standard when a party seeks further protection beyond that provided in the protective order.

## IV. INCLUDING THE REQUESTED LANGUAGE IS NECESSARY BASED ON THE LIMITED DISCOVERY TIMEFRAME AND THE UNKNOWN QUANTITY OF "HIGHLY CONFIDENTIAL" DOCUMENTS.

Cahn's requested language that "[t]he party filing such a motion should have the burden of establishing that the document or information should be afforded additional protection and that there are no alternative, less restrictive means to ensure the confidentiality of such information" is consistent with remaining portions of the proposed protective order. The language only serves to limit the documents that can be labeled "attorney's eyes only". If a document can be labeled "confidential", then that is what it must be labeled. Such a simple dispute should not have to be brought before the court in a noticed motion. Due to the parties' expedited schedule, and a trial date of January 17, 2011, the parties do not have the luxury of litigating every discovery dispute that arises between the parties. The proposed language only reinforces the applicable law, that the party seeking the order has the burden of proof, and serves to limit the documents that can be labeled "attorney's eyes only" to only those documents that are in fact "highly confidential".

A designation of "attorney's eyes only" is reserved for only those documents that are "highly confidential" and should be used only in the most limited circumstances. What Oversee has proposed is that if it determines that a document should be labeled "attorney's eyes only", that the parties would bring the necessary motion before the court. However, Oversee has not indicated which documents, or how many documents possibly fall under the classification of "attorney's eyes only". Therefore, Cahn has simply proposed language that requires the party requesting a level of "attorney's eyes only" to show that the confidentially of those particular documents cannot be adequately protected with a designation of "confidential". That is it.

The law already imposes a burden on the party "seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." (*Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063-1064 (9th Cir. Cal. 2004).) The party seeking protection must show "*for each particular document* it seeks to protect . . . that specific prejudice or harm will result if no protective order is granted…" (*Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 (N.D. Cal. 2005) (emphasis added).) Further, "[w]here a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact. . ." (*Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005).)

Cahn's request is directly in line with the applicable case law. The party seeking protection has the burden to show that the document can not receive the adequate level of protection from being labeled "confidential".

Additionally, this language will serve to expedite the already limited discovery process. The parties have a very limited time to exchange documents in this matter. The inclusion of the proposed language will limit the number of disputes that will arise as to a party's request to designate a document "attorney's eyes only". By requiring the party to show that the document cannot adequately be

labeled "confidential", the party is already taking a step forward in meeting their burden of "good cause" of labeling the document "attorney's eyes only". Such a showing will necessarily limit the amount of motion practice that will occur as a result of the proposed protective order.

Finally, while Oversee spends its entire motion emphasizing that Cahn's recitation of the law is "legally inaccurate" (4:6-7 of ex parte), Oversee admits that it does in fact have the initial burden to show that harm would result if the information was disclosed. (8:17-20 of ex parte.) Therefore it is inexplicable why Oversee continues to refuse to include such language in the protective order. Additionally, despite all of its conjecture and accusations, Oversee fails to provide a single reason, despite its incorrect assertion that Cahn was putting forth an inaccurate recitation of the law, of *why* it will not include language regarding the burden on the party that wishes to impose a higher level of confidentiality than what is provided in the proposed protective order. This is exercise is merely a continuation of Oversee's repeated failure to provide Cahn with the evidence necessary for Cahn to determine whether he reached his performance goals under the MIP, and the reason this action was filed in the first place. Cahn is in a unique position to be able to review evidence related to his MIP to determine if certain benchmarks were met, and Oversee continues, to this day, to refuse to let Cahn review any of these documents. While Oversee has claimed that Cahn is a direct competitor of Oversee, such an accusation is simply nonsensical as Cahn is expressly prohibited from being a competitor of Oversee by his non-compete clause in his employment contract. (§ 7.(a) of Cahn's Employment Agreement, Ex. "3".) Therefore this dispute only serves to further reinforce the appearance that Oversee is intentionally seeking to withhold relevant documents from Cahn's personal review.

Cahn's request is reasonable. It will not only serve to expedite the discovery process, but the burden requested is clearly supported by the applicable case law. Oversee has already included language regarding the party's burden in the proposed

protective order for documents that it deems "confidential". (¶E of the Proposed Protective Order, Ex. "2," attached hereto.) As such, there should also be language included in the proposed protective order regarding documents that a party wishes to designate as "attorney's eyes only".

## V. CONCLUSION

Based on the foregoing, Cahn respectfully request that this Court deny Oversee's ex parte application for the proposed protective order as currently worded. In the alternative, Cahn requests that the Court include the language proposed by that "[t]he party filing such a motion should have the burden of establishing that the document or information should be afforded additional protection and that there are no alternative, less restrictive means to ensure the confidentiality of such information".

DATED: October 12, 2011

JOHN L. BARBER
KENNETH D. WATNICK
SONJA HARRINGTON
**LEWIS BRISBOIS BISGAARD & SMITH** LLP


By:  /s/ Sonja Harrington
Sonja Harrington
Attorneys for MONTE CAHN