**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOHN L. BARBER, SB# 160317
  E-Mail: barber@lbbslaw.com
KENNETH D. WATNICK, SB# 150936
  E-Mail: watnick@lbbslaw.com
SONJA HARRINGTON, SB# 261053
  E-Mail: sharrington@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for MONTE CAHN, an individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual; LAWRENCE NG, an individual; and Does 1 through 10,<br><br>          Defendants. | CASE NO. CV11-03800 SVW (AGRx)<br><br>The Hon. Stephen V. Wilson<br>[Magistrate Judge Alicia G. Rosenberg]<br><br>**MONTE CAHN'S EX PARTE APPLICATION TO CONTINUE THE DEADLINE FOR EXPERT REPORTS**<br><br>[Declaration of Sonja Harrington filled concurrently herewith]<br>[Notice provided to Opposing Party under FRCP 65 and LR 7-19]<br><br>COMPLAINT FILED:  May 3, 2011<br>TRIAL DATE:            January 17, 2012 |

1 TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2     PLEASE TAKE NOTICE that Plaintiff MONTE CAHN ("Cahn") hereby applies *ex parte* for an order requesting a continuation of the Expert Report deadlines. Cahn previously filed an ex parte on this issue on October 13, 2011. This Court granted a two week extension of the deadline until November 2, 2011

    Good cause exists for the requested relief since Defendants have still failed to produce all relevant documents necessary for Cahn's expert report. On October 19, 2011 Plaintiff took the deposition of Defendant Jeff Kupietzky ("Kupietzky"), the former CEO of Oversee.net ("Oversee"). During his deposition Kupietzky revealed at least ten categories of financial documents that have not been produced in this matter that are directly relevant to Cahn's determination of his performance goals under his MIP. These documents are essential for the expert analysis required for Cahn's expert report. In light of Kupietzky's testimony, the missing financial information, and Cahn's current expert report deadline of November 2, 2011, Cahn does not have sufficient time to obtain, review and analyze the newly disclosed evidence prior to the submission of his expert report.

    Cahn advised Defendants of his intention to seek the relief requested and notice of this application on October 27, 2011. (¶¶ 2 and 4 to the Harrington Decl.) On October 27, 2011 Cahn's counsel advised Defendants' counsel that Defendants had until 3:00 p.m. on October 31, 2011 to file any opposition. (¶ 4 of the Harrington Decl.)

    Counsel for Defendants is:

> William A. Delgado
> Wilenken Wilson Loh & Lieb LLP
> 707 Wilshire Boulevard, Suite 3850
> Los Angeles, California 90017
> Telephone: (213) 955-9240
> Fax: (213) 955-9250

    This Application is based upon this Ex Parte Application, the Memorandum of Points and Authorities attached herewith, the Declaration of Sonja Harrington in Support of Ex Parte Application, the papers and records on file in this action, and

1  such additional evidence and documents as the Court deems necessary and proper.
2  A copy of a proposed order is attached hereto as Exhibit "A."
3
4  DATED: October 27, 2011          JOHN L. BARBER
                                    KENNETH D. WATNICK
5                                   SONJA HARRINGTON
                                    **LEWIS BRISBOIS BISGAARD &**
6                                   **SMITH LLP**
7
8                                   By:   /s/ Sonja Harrington
                                          Sonja Harrington
9                                         Attorneys for MONTE CAHN

4847-6993-9725.1

2

MONTE CAHN'S EX PARTE APPLICATION TO CONTINUE THE DEADLINE FOR EXPERT REPORTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

It is with great reluctance that Plaintiff Monte Cahn ("Cahn") brings this second ex parte application before the Court. However, due to the impending deadline of November 2, 2011, in light of new testimony that was provided by Defendant Jeff Kupietzky ("Kupietzky") on October 26, 2011, and in light of Defendants' continuing refusal to produce certain categories of financial documents, Cahn has no other option but to move this Court to continue the deadline for expert reports until such time that the Court deems appropriate.

During Kupietzky's deposition on October 26, 2011, Kupietzky identified at last ten categories of financial documents that have not been produced in this matter. Those documents include:

1. Monthly reports regarding Oversee's financial pacing;
2. Quarterly power point presentations regarding Oversee's financials from 2009 and 2010;
3. Yearly and quarterly presentations which were provided to the board regarding Oversee's financials;
4. Email communication with the Oversee board of directors attaching quarterly reports;
5. Monthly finance reports which were provided to the board regarding Oversee's financials;
6. More than two sets of financial projections each year, one for Oversee internally, and one which was provided to the bank;
7. Quarterly presentations to Oversee's bank group;
8. A folder on Todd Greene's desk that contained board presentations;
9. Monthly reports on TrafficClub and monetization; and
10. Daily reports from Tigran on financial performance;

These documents are directly responsive to Cahn's Requests for Production Nos. 1, 3, 5, 7, 9, 11, 13 and 15. (*See* Cahn's Requests for Production Nos. 1, 3, 5, 7, 9, 11, 13 and 15, Ex. "4" to the Harrington Decl.)   To date, none of these documents have been produced.  Most importantly, these documents are directly relevant to the analysis that is required in support of Cahn's expert report in order to confirm that Oversee owes unpaid bonuses pursuant to Cahn's Management Incentive Plan ("MIP").  The current deadline for Cahn's expert report is November 2, 2011.  The missing financial documents are necessary to allow Cahn's expert to prepare an appropriate damage report.

Similarly, Oversee disclosed, during a meet and confer on October 24, 2011, that it is withholding unidentified information relating to bonus plans and payments to other senior executives of Oversee.  Cahn's First Request for Production requested this information because Cahn's MIP provided that he would be paid bonuses based on an amount of Oversee's EBITDA that was "TBD", or to be determined.   During and after the negotiation of the MIP, Oversee explained that the "TBD" amount in Cahn's MIP was similar to the bonus criteria that were going to be set for all other senior executives' bonus plans and payments.  Thus, the bonus plans and bonus payments to other senior executives may be relevant to determining the "TBD" performance goal in Cahn's MIP and proving that Cahn achieved these goals.

Accordingly, Cahn respectfully requests that the Court continue the current expert report deadline of November 2, 2011 to such date that the Court deems appropriate.

II.     **PROCEDURAL BACKGROUND**

This case arises from Defendants' breach of a Management Incentive Plan ("MIP") entered into between Cahn and Oversee at the commencement of his employment at Oversee.  The MIP set certain benchmarks, or performance goals,

that Cahn was incentivized to meet based on various business segments gross profit and/or EBITDA.  The plan was to be in effect during Cahn's three years of employment at Oversee.  If Cahn reached these benchmarks, or a certain percentage of any of the benchmarks, he was to be awarded a pre-determined bonus.  According to Defendants, Cahn failed to reach any of the performance goals for any of the three years that he was employed at Oversee, despite the fact that the goals for one of the business segments, Oversee EBITDA, was identified as "TBD" in the MIP and was never disclosed to Cahn during his employment.  (*See* Schedule A to Cahn's MIP, Ex. "5" to the Harrington Decl.)  Cahn repeatedly requested to review the financial information substantiating Defendants' assertion that the goals were not met, but his requests were repeatedly denied.  As such, Cahn was forced to bring the present action against Defendants.  Cahn filed his Complaint on May 3, 2011.

After the filing of Cahn's complaint, Defendants filed a Motion to Dismiss [Doc. No. 6].  As a result Cahn filed his First Amended Complaint on June 22, 2011 [Doc. No. 10].  Again, on July 15, 2011 Defendants filed a Motion to Dismiss the First Amended Complaint [Doc. No. 12].  On August 25, 2011, this Court granted Defendants' Motion to Dismiss the First Amended Complaint and ordered the parties to conduct a Rule 26 conference prior to the August 29, 2011 Status Conference [Doc. 23].  During the August 29, 2011 Status Conference this Court ruled that the First Cause of Action for Breach of the MIP would be bifurcated from the remaining causes of action, ordered disclosure of relevant communications within three weeks, and set trial for January 17, 2012.  (Court's August 29, 2011 Minute Order [Doc. 26], Ex. "6" to the Harrington Decl.)

Pursuant to the Court's Order, the parties exchanged documents on September 19, 2011.  (¶ 8 to the Harrington Decl.)   Cahn also propounded a first request for production, which requested the financial information necessary for its experts to prepare his expert report.  (*See* Cahn's Requests for Production Nos. 1, 3, 5, 7, 9, 11, 13 and 15, Ex. "4" to the Harrington Decl.)  Oversee subsequently made

4847-6993-9725.1

3

MONTE CAHN'S EX PARTE APPLICATION TO CONTINUE THE DEADLINE FOR EXPERT REPORTS

1   two document productions, but has refused to produce critical documents relating to
2   Oversee's financial performance during the three year period at issue.  (¶ 8 to the
3   Harrington Decl.)
4       On October 26, 2011 Cahn took the deposition of Kupietzky.  During his
5   deposition Kupietzky testified that Oversee would put together: monthly reports
6   regarding Oversee's financial pacing (45:12-46:5 of Kupietzky Deposition, Ex. "7"
7   to the Harrington Decl.); quarterly power point presentations regarding Oversee's
8   financials from 2009 and 2010 (240:25-242:5 of Kupietzky Deposition, Ex. "7" to
9   the Harrington Decl.); yearly and quarterly presentations which were provided to the
10  board regarding Oversee's financials (242:6-242:19, 244:17-245:4 of Kupietzky
11  Deposition, Ex. "7" to the Harrington Decl.); email communication with the
12  Oversee board of directors attaching quarterly reports (245:16-246:2 of Kupietzky
13  Deposition, Ex. "7" to the Harrington Decl.); monthly finance reports which were
14  provided to the board regarding Oversee's financials (245:8-245:15 of Kupietzky
15  Deposition, Ex. "7" to the Harrington Decl.); More than two sets of financial
16  projections each year, one for Oversee internally, and one which was provided to the
17  bank (225:21-226:19, 229:6-17, 230:7-23, 235:2-20 of Kupietzky Deposition, Ex.
18  "7" to the Harrington Decl.); quarterly presentations to Oversee's bank group
19  (243:7-244:7 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.); a folder on
20  the desk of their general counsel, Todd Greene, that contained board presentations
21  (242:6-243:6 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.); monthly
22  reports on TrafficClub and monetization (47:10-24, 207:13-24 of Kupietzky
23  Deposition, Ex. "7" to the Harrington Decl.); and daily reports from Tigran on
24  financial performance (47:10-24, 223:1-6 of Kupietzky Deposition, Ex. "7" to the
25  Harrington Decl.).  All of these documents were responsive to Cahn's document
26  requests.  (*See* Cahn's Requests for Production Nos. 1, 3, 5, 7, 9, 11, 13 and 15, Ex.
27  "4" to the Harrington Decl.)  None of these documents were included in Oversee's
28  document productions.  (¶ 13 to the Harrington Decl.)

1  Additionally, in the First Request for Production, Cahn requested documents
2  and information relating to bonus plans and bonus compensation for other Oversee
3  senior executives.  (Request No. 26, Ex. "4" to the Harrington Decl.)  These
4  documents have not been produced.  On October 24, 2011 the parties conducted a
5  meet and confer, however, as of the filing of this motion the parties have not been
6  able to reach an agreement as to the production of this category of documents.  (*See*
7  Exs. "8"-"10" to the Harrington Decl.)

### III.  GOOD CAUSE EXISTS TO GRANT THE EX PARTE APPLICATION

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the Court may modify its Scheduling Order "for good cause and with the judge's consent."  (FRCP Rule 16(b).)  The party seeking to modify the order must demonstrate that the schedule cannot reasonably be met, "despite the [party's] diligence."  ( *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992); *In re Imperial Credit Indus., Inc. Sec. Litig.,* 252 F. Supp. 2d 1005, 1017 (C.D. Cal. 2003).)  As further explained below, while discovery has commenced, and documents have been exchange by both parties since receiving the Order setting the trial date on August 29, 2011, with the expedited schedule, and the new information received by Cahn during Kupietzky's deposition on October 26, 2011, Cahn's expert report deadline of November 2, 2011 cannot reasonably be met.

Cahn filed the instant action on May 3, 2011.  On August 29, 2011 this Court held a Status Conference and ruled that Cahn's First Cause of Action for Breach of Contract would be bifurcated from the remaining causes of action, and set a trial date of January 17, 2012.  The Court ordered that "[w]ithin three weeks, the parties are ordered to exchange any and all correspondence, including emails, that they think relevant."  (Court's August 29, 2011 Minute Order [Doc. 26], Ex. "6" to Harrington Decl.)  Pursuant to the Court's Order both Parties simultaneously exchanged correspondence related to the First Cause of Action on September 19,

4847-6993-9725.1                                          5
MONTE CAHN'S EX PARTE APPLICATION TO CONTINUE THE DEADLINE FOR EXPERT REPORTS

2011.  (¶ 8 of the Harrington Decl.)  However, Oversee failed to produce any financial statements relating to Oversee's financial performance between 2007 and 2010, and Cahn's performance as related to his performance goals under the MIP.  Due to Cahn's approaching expert report deadline of October 19, 2011, Cahn was forced to file an ex parte application to continue the impending deadline.  On October 13, 2011 Cahn filed an ex parte application to continue the original expert report deadline of October 26, 2011.  [Doc. 36.]  On October 14, 2011, the Court granted Cahn's ex parte application and continued the expert report deadline by two weeks, setting the new deadline for November 2, 2011.  [Doc. 42.]

        Following the Court's ruling Oversee made two additional document productions.  (¶ 8 of the Harrington Decl.)  Oversee's production consisted mostly of upper level financial information, focused on Oversee's financial performance as a whole, and was primarily targeted to the due diligence phase of Oversee's acquisition of Moniker.  While audited financial statements from 2007-2010 were included, notably missing from Oversee's production are relevant forecasts, budgets, and weekly, monthly, quarterly and yearly status reports for Oversee and all of its subsidiaries.  (¶ 13 to the Harrington Decl.)

        Additionally, on October 26, 2011 Cahn took the deposition of Defendant Kupietzky, Oversee's former CEO, and the CEO during the majority of Cahn's employment with Oversee.  During the deposition Kupietzky testified that the following documents were created by Oversee:

1. Monthly reports regarding Oversee's financial pacing; (45:12-46:5 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)
2. Quarterly power point presentations regarding Oversee's financials from 2009 and 2010; (240:25-242:5 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

3. Yearly and quarterly presentations which were provided to the board regarding Oversee's financials; (242:6-242:19, 244:17-245:4 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

4. Email communication with the Oversee board of directors attaching quarterly reports; (245:16-246:2 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

5. Monthly finance reports which were provided to the board regarding Oversee's financials; (245:8-245:15 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

6. More than two sets of financial projections each year, one for Oversee internally, and one which was provided to the bank; (225:21-226:19, 229:6-17, 230:7-23, 235:2-20 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

7. Quarterly presentations to Oversee's bank group; (243:7-244:7 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

8. A folder on Todd Greene's desk that contained board presentations; (242:6-243:6 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

9. Monthly reports on TrafficClub and monetization; (47:10-24, 207:13-24 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

10. Daily reports from Tigran on financial performance; (47:10-24, 223:1-6 of Kupietzky Deposition, Ex. "7" to the Harrington Decl.)

These categories of missing documents are directly responsive to Cahn's Requests for Production Nos. 1, 3, 5, 7, 9, 11, 13 and 15. (*See* Cahn's Requests for Production Nos. 1, 3, 5, 7, 9, 11, 13 and 15, Ex. "4" to the Harrington Decl.) Furthermore, these categories of documents are directly relevant to the analysis that is required for Cahn's expert report in order to determine whether or not Cahn met his performance goals under his MIP. It is anticipated that these documents would provide more detailed information regarding not only the subsidiaries at issue in the

MIP, but also either corroborate or discredit the high level financials that were produced by Oversee. Without these documents it is impossible for Cahn and his experts to verify the accuracy of the financial information provided by Oversee.

Finally, Cahn has requested documents and information relating to bonus plans and bonus compensation for other Oversee senior executives. (Request No. 26, Ex. "4" to the Harrington Decl.) This particular category of documents is particularly relevant to Cahn's expert report since under the MIP Cahn was to be treated like all other members of the senior management in regard to the fourth business segment – Oversee's EBITDA. (December 13, 2007 email from Cahn to Kupietzky, Ex. "11" to Harrington Decl.) This understanding was reiterated by Mr. Kupietzky himself in 2008. (October 17, 2008 email from Kupietzky to Cahn, Ex. "12" to Harrington Decl.) Further, through discovery it has been revealed that other members of the executive team also received MIPs, and their plans had similar benchmarks to Cahn's fourth business segment. (December 13, 2007 email from Kupietzky to Cahn, Ex. "11" to Harrington Decl.) Thus, these documents are a potential source of information that Cahn can use to prove that he met this "TBD" benchmark and is owed $3.2 million.

With a current expert report deadline of November 2, 2011, and without Oversee having produced any of the identified categories of documents, Cahn will suffer sever prejudice by not having the ability to consider these valuable financial documents in analyzing his performance goals under the MIP. Oversee's failure to produce all responsive documents should not prejudice Cahn's ability to conduct a thorough analysis of ALL of Oversee's financial metrics and documents, and ability to utilize all relevant documents in the completion of his expert report.

IV. **CONCLUSION**

Based on the foregoing, Cahn respectfully request that this Court grant the *ex parte* application and issue an appropriate schedule for expert reports.

4847-6993-9725.1

8

MONTE CAHN'S EX PARTE APPLICATION TO CONTINUE THE DEADLINE FOR EXPERT REPORTS

1
2  DATED: October 27, 2011        JOHN L. BARBER
3                                 KENNETH D. WATNICK
                                   SONJA HARRINGTON
4                                 **LEWIS BRISBOIS BISGAARD & SMITH LLP**
5
6                                 By:  /s/ Sonja Harrington
                                       Sonja Harrington
7                                      Attorneys for MONTE CAHN
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4847-6993-9725.1

9

MONTE CAHN'S EX PARTE APPLICATION TO CONTINUE THE DEADLINE FOR EXPERT REPORTS

# DECLARATION OF SONJA HARRINGTON

I, SONJA HARRINGTON, declare:

1. I am an attorney duly licensed to practice before the courts of the State of California and am an associate with the law firm of Lewis, Brisbois, Bisgaard & Smith, LLP, attorneys of record for Plaintiff Monte Cahn ("Cahn"). I have personal knowledge of the facts stated herein and as such could and would testify competently thereto as follows.

2. On October 27, 2011 at 5:16 p.m. Cahn requested from Oversee that the parties stipulate to a continuation of their respective expert disclosures. Cahn advised Defendants that if Defendants did not agree to stipulate to a schedule Cahn file an ex parte to continue the current expert deadline of November 2, 2011. A true and correct copy of the October 27, 2011 email is attached hereto as Exhibit "1".

3. Defendants counsel informed Cahn that Defendants could not agree to Cahn's request for a stipulation. A true and correct copy of the October 27, 2011 email is attached hereto as Exhibit "2".

4. On October 27, 2011 at 6:54 p.m. Cahn informed Oversee of its intention to file an ex parte to continue the current expert deadline of November 2, 2011, and advised Oversee that it had until 3:00 p.m. on October 31, 2011 to file any opposition. A true and correct copy of the October 27, 2011 email is attached hereto as Exhibit "3".

5. A true and correct copy of Oversee's Responses to Cahn's Requests for Production, Set 1 is attached hereto as Exhibit "4".

6. A true and correct copy of Monte Cahn's 2007 Management Incentive Plan is attached hereto as Exhibit "5".

7. A true and correct copy of the Court's August 29, 2011 Minute Order [Doc. 26], is attached hereto as Exhibit "6".

8. Pursuant to the Court's August 29, 2011 Order, the parties exchanged documents on September 19, 2011. After the first document production, Oversee

1  made two subsequent document productions, one on October 14, 2011 and one on
2  October 19, 2011.  However, Oversee failed to produce critical documents relating
3  to Oversee's financial performance between 2008-2010.

     9.    A true and correct copy of excerpts of the Rough Draft of Jeff Kupietzky's October 26, 2011 deposition is attached hereto as Exhibit "7".

     10.    A true and correct copy of the October 24, 2011 email from Harrington to Delgado is attached hereto as Exhibit "8".

     11.    A true and correct copy of the October 25, 2011 email from Delgado to Harrington is attached hereto as Exhibit "9".

     12.    A true and correct copy of the October 25, 2011 email from Harrington to Delgado is attached hereto as Exhibit "10".

     13.    None of the categories of financial reporting documents that Jeff Kupietzky referenced during his deposition, including relevant forecasts, budgets, and weekly, monthly, quarterly and yearly status reports for Oversee and all of its subsidiaries, were produced by Oversee in any of their three productions.

     14.    A true and correct copy of a December 13, 2007 email from Cahn to Kupietzky is attached hereto as Exhibit "11".

     15.    A true and correct copy of an October 17, 2008 email from Kupietzky to Cahn is attached hereto as Exhibit "12".

     I declare, under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct.  Executed this 27th day of October 2011 in Los Angeles, California.

                                             _____/s/ Sonja Harrington_____
                                             Sonja Harrington