William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFF KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual, | Case No. CV11-03800 SVW (AGRx) |
| Plaintiff, | |
| v. | **JOINT STIPULATION REGARDING DEFENDANT OVERSEE.NET'S MOTION TO COMPEL PRODUCTION OF LAPTOP AND DOCUMENTS** |
| OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10 | |
| Defendants. | Date:  November 29, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom D, 8th Floor |
| | Discovery Cutoff: December 16, 2011<br>Pre-Trial Conference: January 9, 2012<br>Trial Date:          January 17, 2012 |

# **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTIONS...................................................................................1

II.  SPECIFIC REQUESTS..........................................................................5

III. COMMUNICATIONS BETWEEN PLAINTIFF AND WILLIAM GROSS......17

    A.   Defendants' Argument.................................................................17

        1.   Summary of Dispute...........................................................17

        2.   Summary of Relevant Facts................................................18

        3.   Choice of Law....................................................................20

        4.   Plaintiff had no expectations of privacy in the emails exchanged between Plaintiff and William Gross through Seevast's and Oversee's networks..........................................20

        5.   Summary............................................................................24

    B.   Plaintiff's Argument....................................................................24

        1.   Statement of Facts..............................................................24

        2.   Choice of Law....................................................................26

        3.   Argument...........................................................................27

IV.  CONCLUSIONS....................................................................................29

# **TABLE OF AUTHORITIES**

**Page(s)**

**State Cases**

*Black v. State,*
   920 So.2d 668 (Fla. 5th DCA 2006) ................................................................. 23

*Holmes v. Petrovich Dev. Co., LLC,*
   191 Cal. App. 4th 1047 (2011) ....................................................... 21, 22, 23

*Kearney v. Salomon Smith Barney, Inc.,*
   39 Cal. 4th 95 (2006) ................................................................................... 27

*State Farm Fire & Casualty Co. v. Superior Court,*
   54 Cal. App. 4th 625 (1997) ......................................................................... 20

**Federal Cases**

*Alliance to End Repression v. Rochford,*
   75 F.R.D. 441 (N.D. Ill. 1977) ..................................................................... 15

*Bernstein v. Travelers,*
   447 F.Supp. 2d 1100 (N.D. Cal. 2006) ......................................................... 15

*Bible v. Rio Properties, Inc.,*
   246 F.R.D. 614 (C.D.Cal. 2007) ................................................................... 20

*Convertino v. United States DOJ,*
   674 F. Supp. 2d 97 (D.D.C. 2009) ................................................................ 28

*Dawe v. Corrections USA,*
   263 F.R.D. 613 (E.D. Cal. 2009) ........................................................ 6, 9, 10

*Elvig v. Calvin Presbyterian Church,*
   375 F.3d 951 (9th Cir. 2004) ....................................................................... 15

*KL Group v. Case, Kay & Lynch,*
   829 F.2d 909 (9th Cir. 1987) ........................................................... 20, 26, 27

*Leor Exploration & Prod., LLC v. Aguiar,*
   2009 WL 3097207 (S.D.Fla. Sept. 23, 2009) ....................................... 21, 22, 23, 28

*McGhee v. Arabian American Oil Co.,*
   871 F.2d 1412 (9th Cir. Cal. 1989) ............................................................... 26

*National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP,*
   256 F.R.D. 678 (C.D. Cal. 2009) ................................................................. 14

*Osband v. Ayers*,
 2008 U.S. Dist. LEXIS 86227, *28 (E.D. Cal. June 13, 2008) ................................ 29

*Playboy Enterprises, Inc. v. Welles*,
 60 F. Supp. 2d 1050 (S.D. Cal. 1999) ...................................................... 6, 10

*Taylor v. Waddell & Reed, Inc.*,
 2011 WL 1979486 (S.D.Cal. May 20, 2011) ............................................ 22

*TMX Funding, Inc. v. Impero Tech., Inc.*,
 2010 WL 1028254 (N.D. Cal. Mar. 18, 2010) ............................................ 7

*U.S. ex rel. O'Connell v. Chapman Univ.*,
 245 F.R.D. 646 (C.D. Cal. 2007) ........................................................ 13

*Ukiah Automotive Investments v. Mitsubishi Motors of North America, Inc.*,
 2006 WL 1348562 at *3 (N.D. Cal. May 17, 2006) .................................. 6, 9

*Youngblood v. Gates*,
 112 F.R.D. 342 (C.D. Cal. 1985) ...................................................... 14, 15

**Rules**

Fed. R. Civ. P. Rule 11 ...................................................................... 14

Fed. R. Civ. P. Rule 26 ............................................................. passim

Fed. R. Civ. P. Rule 33(a)(2) ............................................................ 14

Fed. R. Civ. P. Rule 34 ............................................................. passim

Fed. R. Evid. § 501 ................................................................ 20, 26

Local Rule 37-1 ............................................................................. 1

Local Rule 37-2 ............................................................................. 1

**Statutes**

California Evidence Code Section 912(a) .............................................. 21

California Evidence Code Section 952 ......................................... 20, 21, 22

California Evidence Code Section 954 .................................................. 20

**Other Authorities**

Fla. Stat. Ann. § 90.502 ................................................................ 20

Fla. Stat. Ann. § 90.507 ................................................................ 21

Pursuant to Local Rule 37-2 of the Local Rules for the Central District of California, Defendants Oversee.net ("Oversee" or "Defendant") and Plaintiff Monte Cahn ("Plaintiff" or "Cahn") (hereinafter jointly referred to as the "Parties") hereby submit this Joint Stipulation in connection with Oversee's Motion to Compel Production of Laptop and Documents.

Pursuant to Local Rule 37-1, counsel for Plaintiff and Oversee met and conferred on October 12, 2011, and were unable to resolve their dispute on the requests and issues set forth herein. Declaration of William Delgado, ¶¶ 5-6. Oversee hereby request that the Court order Cahn to produce the laptop and requested documents, as set forth below.

## I.   INTRODUCTIONS

### OVERSEE'S INTRODUCTION

Plaintiff is a former employee of Oversee who served as the President of Moniker Online Services, LLC ("Moniker"), an indirect subsidiary of Oversee. Moniker is a web-based service that provides users an interface to search for, register and manage their domain names. Oversee specializes in monetizing, registering, selling and developing domain names through its various subsidiaries, including Moniker. In December 2007, Oversee purchased Moniker from a company called Seevast Corp. ("Seevast").

Plaintiff has brought several claims against Oversee and two of its former officers, including claims for breach of contract, accounting, fraud, and conversion. As a result of Judge Wilson's bifurcation order, the only claim presently at issue is the first claim against Oversee for breach of a company financial incentive plan of which Plaintiff claims he is a participant, known as the Management Incentive Plan ("MIP"). [Docket No. 26 (Court's August 29, 2011 Order bifurcating everything but Plaintiff's First Claim for Breach of Contract – Management Incentive Plan).] The Court allowed discovery to proceed on this claim, and the claim will be tried on January 17, 2012. *Id.*

In essence, Plaintiff's first claim for breach of the MIP is based on the allegation that Moniker's operations and results were manipulated in order to prevent Plaintiff from achieving the MIP compensation targets.  Those targets were based on the attainment of performance goals in four categories.  Second Amended Complaint ("SAC"), ¶ 20.   As to three categories (Moniker Registrar Business Segment, Moniker Domain Sales Business Segment, Moniker TrafficClub Business Segment), the performance targets were not reached.  According to the language of the MIP, the performance target for the fourth category (Oversee EBIDTA) was left as "TBD" or "To Be Determined" at the discretion of the Board of Directors.

The parties are engaged in discovery and have noticed depositions, but, as discussed below, Plaintiff's gamesmanship and dilatory tactics are serving only to impede an already confined discovery window.  By this motion, Oversee respectfully requests the following relief: (1) that, pursuant to Request for Production No. 1, the Court order Plaintiff to turn over for inspection an Oversee-owned laptop that is in Plaintiff's possession, which not only contains documents relevant to this dispute but also contains confidential and sensitive business information, including confidential business plans and documents protected by the attorney-client privilege, that should not be in the possession, custody or control of Plaintiff, his counsel, or his consultants; (2) that the Court order Plaintiff to provide further responses to Requests for Production Nos. 13, 15 and 39, all of which seek documents relevant to the first claim for breach of the MIP; and (3) that the Court find that Plaintiff did not have a reasonable expectation of privacy in e-mails he sent to his personal attorney using Oversee's or its predecessor's internet e-mail system and company laptop, and, thus, has no claim of privilege over those documents.  Each of these are discussed in more detail below.

/ / /

/ / /

/ / /

/ / /

**PLAINTIFF'S INTRODUCTION**

SUMMARY OF REASONS THAT DEFENDANTS' JOINT STIPULATION SHOULD BE DENIED

Defendants' Joint Stipulation raises three baseless issues. First, Oversee improperly demands that, in connection with Request No. 1, the Court determine ownership of a laptop that belongs to Cahn. Rule 34 does not provide for the determination of ownership of property, this is not the proper subject of a discovery dispute or motion. Furthermore, Defendants' demand for the turnover of a laptop is hopelessly overbroad and not limited to the breach of the MIP claim. Indeed, the overbroad nature of this demand is confirmed by Defendants' simultaneous assertion that Defendants would limit their own search to three select keywords, and would only expand the search once the parties agreed on "a reasonable set of keywords or other limitations (e.g., recipients, dates, etc.), as is typical in all litigation." (¶ 2 of Harrington Decl.) Cahn is willing to follow a similar protocol with respect to the documents located on his laptop, if such is what Defendants' desire, however simply requesting the entire laptop is impermissible.

Second, the Joint Stipulation improperly demands discovery that is beyond the scope of Court's August 29, 2011 Order bifurcating Cahn's first claim for breach of his Management Incentive Plan ("MIP"), from the remaining causes of action. [Doc. No. 26.] Oversee's Request for Production No. 15 requests information specific to Cahn's fifth claim for fraud, specifically to his claim for damages under the fraud cause of action. These allegations are inapplicable, and beyond the scope of Plaintiff's first cause of action for breach of contract.

Finally, Defendants seek communications exchanged between Plaintiff and his counsel prior to, and during his employment with Oversee. However, Plaintiff had a reasonable expectation of privacy in this communications based on Oversee's actions during, and after, Plaintiff's employment with Oversee. Therefore, the communications remain protected by the attorney-client privilege.

## BACKGROUND OF CLAIM

The events giving rise to this action date back to negotiations, in 2007, between Plaintiff and Defendants relating to the sale of Moniker to Oversee. During these negotiations, Defendants made numerous representations about the opportunities that would be available to Moniker and Plaintiff as a result of the merger, such as an increased staff, control over Oversee's owned and operated domain names, ability to cross-market to Oversee's other subsidiaries, and access to significant marketing resources. Defendants made these representations, amongst others, in order to induce Plaintiff to join Oversee. One of the incentives that Defendants offered Plaintiff was a Management Incentive Plan, or "MIP", which was to operate as Plaintiff's compensation plan during his employment with Oversee. The MIP identified four business segments and set performance goals for three of the four segments. The fourth business segment, Oversee's EBITDA, was to be set by the Board of Directors, in consultation with Monte, each year. Under the MIP, if Plaintiff attained a certain percentage of any of the performance goals, he was to earn a predetermined bonus award. These performance goals were set with the belief and understanding that Plaintiff was to remain the President of Moniker, and that Oversee was to implement the numerous synergistic opportunities that had been represented to Plaintiff during the merger negotiations and during the negotiation of the MIP. Additionally, if there was to be a significant change to any of these business units or to Plaintiffs role, these goals were to be amended to take into consideration the changes that had been made. However, after Plaintiff began his employment with Oversee, Oversee took numerous intentional actions specifically targeted to interfere and impede with Plaintiff's attainment of his performance goals under his MIP. Furthermore, despite numerous material changes to both Plaintiff's role as President of Moniker, and to the business segments, Oversee failed to make the necessary amendments to the MIP. Additionally, the Board of Directors failed to consult with Plaintiff to determine Oversee's EBITDA goals, and as a result, Oversee failed to set any goals for Plaintiff's fourth business

segment under the MIP. As a result, Plaintiff brought the present Complaint against Defendants alleging (1) Breach of the MIP; (2) Breach of the Commission Plan; (3) Breach of the Restaurants.com contract; (4) Accounting; (5) Fraud; (6) Conversion; and (7) Conversion.

## II. **SPECIFIC REQUESTS**

Request for Production No. 1:

The laptop provided to You by Oversee in connection with Your employment.

Response to Request for Production No. 1:

Cahn incorporates his general objections as if said general objections were set forth in full herein. Cahn also objects to this request in that it is not the proper subject of a Request for Production in that it does not seek "documents or electronically stored information". (FRCP 34.) Therefore, the sole purpose of this request is to burden, harass, and annoy Cahn. Additionally, this document request is beyond the scope of permissible discovery under the Court's Order. Therefore, the sole purpose of this request is to burden, harass, and annoy Cahn, and the request is not a proper subject of discovery.

Cahn also objects to this request in that it is based on a false premise. By agreement of the parties, Cahn's existing laptop was replaced by Oversee with the understanding that Cahn would be permitted to purchase this laptop at its fair market value. The parties agreed and understood that the laptop belonged to Cahn.

Defendants' Argument:

Oversee issued Plaintiff a laptop computer for use in connection with his job. Declaration of Todd Greene ("Greene Decl."), ¶ 2. The computer remains Oversee's property, and was to be used by Plaintiff solely for business purposes. *Id.*, ¶¶ 3, 5-7 and Ex. A. Plaintiff's employment with Oversee terminated on December 31, 2010, but upon his termination, Plaintiff failed to return the computer and did not pay any money to Oversee for the purchase of the computer. *Id.*, ¶ 3. Notwithstanding numerous meet and confer efforts, Plaintiff has failed and refused, and continues to fail

1   and refuse, to return the laptop to Oversee or to place it in the custody of a neutral third

2   party.  Declaration of William Delgado ("Delgado Decl."), ¶¶ 7-10.  The absurdity of

3   Plaintiff's position is reflected in his objections to this document request.

4          First, Plaintiff objects that the request is not the proper subject of a Request for

5   Production pursuant to Rule 34 of the Federal Rules of Civil Procedure.  But, this

6   objection ignores Rule 34(a)(1)(B), which permits a party to request the inspection of

7   "any designated tangible things," including computers.  Fed. R. Civ. P. 34(a)(1)(B); *see*

8   *Dawe v. Corrections USA*, 263 F.R.D. 613, 619-620 (E.D. Cal. 2009) (permitting

9   inspection of a defendant's computer and its contents pursuant to propounding party's

10   requests for production); *Ukiah Automotive Investments v. Mitsubishi Motors of North*

11   *America, Inc.*, 2006 WL 1348562 at *3-4 (N.D. Cal. May 17, 2006) (finding inspection

12   of plaintiff's computer appropriate); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp.

13   2d 1050, 1054 (S.D. Cal. 1999) (allowing computer inspection to discover deleted e-

14   mails).

15          Plaintiff's second objection is that the document request is beyond the scope of

16   permissible discovery under the Court's Order.  To the contrary, in a ruling on July 20,

17   2011 on Oversee's request for a temporary restraining order whereby Oversee sought

18   to have the laptop turned over to an independent third-party custodian,[1] the Court

19   specifically stated that "Defendants will have access to the computer in accordance

20   with Fed. R. Civ. P. Rule 26 at the appropriate time." [Docket No. 17.]  In short, Judge

21   Wilson has already stated that Oversee is entitled to access, and the appropriate time is

22   now.  The parties are engaged in Rule 26 discovery, and trial is scheduled for January

23   17, 2012.  Plaintiff's first claim broadly asserts that, among other things, Oversee

24   improperly diverted expenses and profits from Moniker to other subsidiaries of

25   Oversee and took several actions that impeded Plaintiff's ability to achieve his MIP

26   targets.  SAC, ¶ 25.  It is highly likely that the laptop contains documents relevant to

27
28   [1]   The Court denied the temporary restraining order on the grounds that there was
        no "emergency" justifying emergency relief.  [Docket No. 17.]

the first claim for relief, including communications regarding the negotiations of the MIP, the calculation of the MIP targets, and documents regarding financial performance.

Furthermore, by virtue of his position, Plaintiff had broad access to a range of confidential business information, including contemplated business transactions, financial data and projections, and customer lists as well as Oversee's privileged communications with counsel pertaining to existing or threatened litigation involving the company. Greene decl., ¶¶ 8-9. Thus, there is a substantial likelihood that the laptop contains sensitive and proprietary business information related to Oversee to which Plaintiff should have no further access, to which his counsel should not have any access, and that should not be placed at risk. By allowing Oversee to inspect the laptop, Oversee can identify such documents and put Plaintiff and his attorneys on notice as to the privileged and/or confidential nature of such documents.[2]

Plaintiff's final objection is that the request is based on the false premise that Oversee is entitled to the laptop. The laptop, however, was purchased by Oversee and is the property of Oversee. Greene Decl., ¶¶ 2-3. Though Plaintiff contends that the parties understood that Plaintiff would be permitted to purchase this laptop at its fair market value, notably absent from the objection is any affirmative statement that he actually *did* purchase the laptop. That is because he did not. *Id.* Simply, Plaintiff is

---

[2]   Oversee also suspects that the computer may contain evidence that Plaintiff improperly accessed and/or copied proprietary Oversee information. *See TMX Funding, Inc. v. Impero Tech., Inc.*, 2010 WL 1028254 (N.D. Cal. Mar. 18, 2010) (finding that customer information is a trade secret and mandating that former employees return company laptops containing proprietary, confidential or trade secret information). The computer could also contain evidence of efforts by Plaintiff to subvert Oversee's businesses and/or to redirect corporate opportunities to himself. In short, there is no reasonable dispute that the computer represents a critical repository of evidence in this case.

1 refusing to surrender possession of Oversee's property, and is refusing to negotiate its

2 return in good faith.[3]

3    Plaintiff has no right to the laptop at issue, and should be ordered to produce the

4 laptop to Oversee.  Defendants, therefore, respectfully request that the Court overrule

5 Plaintiff's objections, and order Plaintiff to produce Oversee's laptop without further

6 delay.

7 Plaintiff's Argument:

8    Defendants improperly request, in their Request for Production, that the Court

9 order Plaintiff to turn over his laptop to Defendants.  Plaintiff objected on the grounds

10 that a Request for Production is not a device to seek or determine ownership of a

11 laptop.  Contrary to Defendants' assertion, it is in fact the absurdity of Defendant's

12 position that is reflected in its own argument and case law cited above.

13    FRCP Rule 34(a) states that:

14      A party may serve on any other party a request within the scope of

15      Rule 26(b):

16         (1) to produce and permit the requesting party or its

17         representative *to inspect, copy, test, or sample* the following

18         items in the responding party's possession, custody, or

19         control:

20

21

_____

22 [3]   Although Plaintiff did not raise any objection on the basis that the computer

23 contains privileged information, Oversee was sensitive to this consideration in
   its meet and confer efforts.  Indeed, to obviate any privilege concerns, Oversee

24 offered the following proposal: the laptop would be given to a mutually agreed-
   upon third party data expert who would image the hard drive and retain that

25 image in escrow to which neither side would have access absent court order;
   Plaintiff and his counsel would then identify any documents on the hard drive

26 that Plaintiff claims are privileged; the independent, third-party expert would
   segregate those privileged documents out; and, the laptop is returned to Oversee.

27

28 Delgado Decl., ¶ 10.  Plaintiff refused to accept this proposal.  *Id.*

1                  (A) any designated documents or electronically stored

2                  information — including writings, drawings, graphs,

3                  charts, photographs, sound recordings, images, and

4                  other data or data compilations — stored in any

5                  medium from which information can be obtained either

6                  directly or, if necessary, after translation by the

7                  responding party into a reasonably usable form; or

8                  (B) any designated tangible things;

9  Further FRCP Rule 34(b)(1) requires that:

10        The request:

11               (A) must describe with reasonable particularity each

12               item or category of items to be inspected;

13               (B) must specify a reasonable time, place, and manner

14               for the inspection and for performing the related acts;

15               and

16               (C) may specify the form or forms in which

17               electronically stored information is to be produced.

18     In its request Defendants failed to comply with both FRCP Rule 34(a) and (b).

19  Defendants' request fails to "describe with reasonable particularity each item or

20  category of items to be inspected" from the subject laptop.   Instead, Defendants seek

21  to obtain possession and control of Plaintiff's entire laptop.  This change of custody is

22  not contemplated by Rule 34.  Rule 34(a) clearly states that Defendants may "inspect,

23  copy, test or sample" relevant information stored on Plaintiff's laptop.  However,

24  Plaintiff is not required to turn over possession of his laptop to Defendants, or a neutral

25  third party, in response to a Request for Production.   The Court may not determine

26  ownership of the laptop through a discovery dispute.

27     In support of its argument, Defendants cite to *Dawe v. Corr. USA*, 263 F.R.D.

28  613 (E.D. Cal. 2009), *Ukiah Automotive Investments v. Mitsubishi Motors of North*

*America, Inc.*, 2006 WL 1348562 at *3-4 (N.D. Cal. May 17, 2006), and *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999). However, these cases further support Plaintiff's position that he is not required to relinquish control of his laptop. Instead, Plaintiff is only required to preserve the information that is stored on the laptop, and make that information available to Defendants, which Plaintiff has already done. In *Dawe v. Corr. USA*, 263 F.R.D. 613 (E.D. Cal. 2009) Defendants sought to inspect Plaintiff's computer and its contents pursuant their Request for Production. (*Dawe v. Corr. USA*, 263 F.R.D. 613, 618 (E.D. Cal. 2009).) The court granted Defendants' motion to compel inspection of the computer and its electronically stored information. (*Id.* at 619.) Additionally, in *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999) the Court appointed a computer specialist to make a "mirror image" of the computer so that Defendant's counsel could review the documents and produce to Plaintiff. (*Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999).) However, in neither of these cases did the court require the party in possession of the computer to relinquish control of the computer, it only required access to the information stored on the computer. Plaintiff has never objected to Defendants' access to the laptop, and has searched and produced documents in response to each relevant document request that Defendants have propounded.

Defendants also improperly interpret the Court's July 20, 2011 Order Denying Defendants Ex Parte Application for a temporary Restraining Order. In its Order the Court states that "Defendants will have access to the computer in accordance with Fed. R. Civ. P. Rule 26 at the appropriate time." [Doc. No. 17.] Defendants have improperly interpreted this Order to mean that they are entitled to **possession** of the laptop upon the commencement of discovery. This is incorrect. The Order only entitles Defendants to *access* the laptop and the information on the laptop. Plaintiff has not denied Defendants access to either. In fact, Plaintiff has searched the laptop at issue for documents related to each relevant request for production of documents. Additionally, prior to the commencement of discovery, at its own cost, Plaintiff hired a

forensic specialist to make a "mirror image" of the hard drive in order to protect the integrity of the information on the laptop.  Therefore, not only has Plaintiff complied with the scope of Rules 26 and 34, and provided access to the information on the laptop in response to each relevant request for production, but on its own initiative, Plaintiff even took the extra step to protect the information on the laptop by making a ghost of the hard drive.  Furthermore, Defendants argument is negated by its own admission in Section III of this Stipulation that Defendants had access to Plaintiff's information on his laptop, and monitored such information.  Therefore any information that is allegedly on Plaintiff's laptop is already in Defendants possession, making Defendants' argument here moot.

Also, the Court has bifurcated the breach of MIP claim from the other issues in the action.  [Doc. No. 26.]   Thus, the scope of discovery is limited to the breach of MIP claim.  Defendants are not entitled to unfettered access to the entirety of Plaintiff's laptop but rather documents relevant to the breach of MIP claim.  Plaintiff has produced such documents and, as noted, Plaintiff has suggested that the parties agree upon a protocol and search terms so that both parties can search for all documents that are responsive to the First Request for Production.

Finally, Defendants' argument regarding the rightful owner of the laptop is immaterial to a Request for Production.  Regardless, Defendants waived their right to assert that the information on the laptop was privileged or confidential since after Plaintiff left his employment with Oversee, Plaintiff and Oversee were engaged in negotiations regarding Plaintiff's purchase of the laptop.  (¶¶ 5, 8 and 9 of Cahn Decl.)  At no time during these negotiations did Defendants raise the issue of confidential or privileged information.  (¶ 7 of Cahn Decl.)  In fact, at no time during these negotiations did Defendants ever request that Plaintiff return the laptop either.  (¶ 15 of Cahn Decl.)  It was not until the commencement of this litigation that Defendants asserted, for the first time, their right to possession of the laptop, and the alleged existence of "confidential" information.  (¶ 15 of Cahn Decl.)   Additionally, since

1  Plaintiff has been using the laptop as both his business and his personal laptop since

2  the summer of 2010, which Defendants were aware, Plaintiff's personal and

3  confidential information is located on the laptop at issue.  (¶ 4 of Cahn Decl.)

4  However, this argument is moot since Plaintiff has already provided Defendants access

5  to the information relevant to this litigation located on Plaintiff's laptop.  If Defendants

6  wish to expand the scope of the search conducted by Plaintiff, or if Defendants have

7  another category of documents relevant to this litigation which they wish to conduct a

8  search on, Plaintiff is willing to work with Defendants on such requests.  However,

9  under Rule 34 Plaintiff is not required to relinquish control of his personal laptop to

10  Defendants.

11

12  Request for Production No. 13:

13      All Documents which refer or relate to Oversee removing the DomainSponsor

14  feed from TrafficClub in February 2007.

15  Response to Request for Production No. 13:

16      Cahn incorporates his general objections as if said general objections were set

17  forth in full herein.  Cahn objects to this request to the extent that it seeks documents

18  that are subject to the attorney client and work product privileges.  Cahn further objects

19  to this request in that it seeks documents that are neither relevant nor reasonably

20  calculated to lead to the discovery of admissible evidence related to the claim at issue

21  in this action, pursuant to the Court's August 29, 2011 Order.

22  Defendants' Argument:

23      Plaintiff's objections to this request are meritless.  Plaintiff first objects to this

24  request on the grounds that it seeks privileged communications.  To the extent that

25  privileged documents exist, those documents should be placed on a privilege log.

26      Second, Plaintiff speciously contends that the request seeks documents that are

27  irrelevant.  But, this request correlates directly to a document produced by Plaintiff in

28  response to the Court's August 29, 2011 order requiring the parties "to exchange any

and all correspondence, including e-mails, that they think [are] relevant" to the first claim for breach of the MIP. [Docket No. 26.] Indeed, in response to the Court's Order, Plaintiff produced a February 21, 2007 e-mail from Plaintiff to Oversee's then-CEO, Lawrence Ng, relating to this very issue. Delgado Decl., ¶ 11, Ex. M. Having produced this document under the Court's Order, **Plaintiff** clearly views this event as relevant to its claim, and, thus, Oversee is entitled to discovery thereon.

Furthermore, in his Second Amended Complaint, Plaintiff essentially alleges that Oversee entered into a contract with Google that required Oversee to shut down TrafficClub in January 2008, thereby preventing Plaintiff from meeting the TrafficClub target under the MIP. SAC, ¶¶ 25(d), 40. Plaintiff's allegation may be based on an erroneous understanding that arose from a previous incident wherein Oversee removed the DomainSponsor feed from TrafficClub in February 2007. As a result, Oversee is permitted to inquire into the previous incident and Plaintiff's understanding of why it occurred and how it informs his present allegation. Plaintiff bears the burden of clarifying, explaining, and supporting his objections and to show why this discovery should not be allowed. *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 648 (C.D. Cal. 2007). Plaintiff cannot meet this burden, and should be ordered to produce responsive documents.

Plaintiff's Argument:

In an effort to advance the discovery process in this matter, Cahn has agreed to supplement his discovery response to confirm that he will produce all relevant, non-privileged documents in his possession.

Request for Production No. 15:

All Documents which refer or relate to the "lucrative business opportunities" that Cahn allegedly had in late 2007 as alleged in Paragraph 22 of the FAC.

Response to Request for Production No. 15:

Cahn incorporates his general objections as if said general objections were set forth in full herein.  Cahn objects to this request to the extent that it seeks documents that are subject to the attorney client and work product privileges.  Cahn further objects to this request in that it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence related to the claim at issue in this action, pursuant to the Court's August 29, 2011 Order.

Defendants' Argument:

This request plainly seeks production of documents that should be produced during this phase of discovery.  Cf. *Youngblood v. Gates*, 112 F.R.D. 342, 344 (C.D. Cal. 1985) ("The scope of discovery in civil cases is extremely broad and relevancy objections, while permissible, will not be sustained where discovery sought is relevant to the subject matter.").   Plaintiff contends that, pursuant to the MIP, he had the ability to earn up to $13,000,000 in bonus payments, and that based on Oversee's representations to that effect, among others, he was induced to forego other "lucrative business opportunities." SAC, ¶ 22.  This request seeks documents related to those other alleged opportunities.  Plaintiff objects to this request, claiming that it is not relevant to the first claim for breach of the MIP.  As can be seen in paragraph 22 of the SAC, however, this allegation is part and parcel of the negotiations between the parties with respect to the MIP and to Plaintiff's monetary expectations thereunder.  These are issues that are at the heart of Plaintiff's first claim.  In addition, this document request essentially complements Rule 33(a)(2), which allows a party to propound contention interrogatories. *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) ("Requiring a defendant to answer a contention interrogatory and to produce documents that support its affirmative defenses is consistent with Rule 11 of the Federal Rules of Civil Procedure, which requires parties have some factual basis for their claims and allegations.").

<u>Plaintiff's Argument</u>:

On August 29, 2011 the Court ordered that Plaintiff's First Claim for Breach of Contract – Management Incentive Plan would be bifurcated, and that the parties were to proceed with discovery on this claim only.  [Doc. No. 26.]  Oversee's Request for Production No. 15 seeks documents related to the "lucrative business opportunities" that Cahn had in late 2007.  Cahn's allegation of other "lucrative business opportunities" is specific to Cahn's allegation of fraud, particularly to Cahn's damages suffered as a result of Oversee's fraud.   Therefore, any discovery related to Plaintiff's claim for fraud is strictly precluded by the Court's August 29, 2011 Order.

Defendants argue that discovery of the Plaintiff's other "lucrative business opportunities" should be permitted since "the scope of discovery in civil cases is extremely broad…" (*Youngblood v. Gates*, 112 F.R.D. 342, 344 (C.D. Cal. 1985).) However, FRCP Rule 26(b)(1) was amended in 2000 to limit discovery, absent a showing of good cause, to matter relevant to the claims or defenses of the parties, rather than the "subject matter of the action." (*Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 968 (9th Cir. 2004).)  The Advisory Committee Notes that accompanied these amendments reflect that – "the primary target of the changes was discovery that swept 'far beyond the claims and defenses of the parties,' discovery that imposed unjustifiable expenses and delays and that sometimes seemed designed not to fairly litigate the issues presented by the pleadings but to 'develop new claims or defenses.'" (*Bernstein v. Travelers*, 447 F.Supp. 2d 1100, 1102 (N.D. Cal. 2006), citing, FRCP 26(b) advisory committee's note to amendments effective 12/1/2000.) )  Thus, the changes to Rule 26 signal to the "court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." (FRCP 26(b) advisory committee's note to amendments effective 12/1/2000; *Alliance to End Repression v. Rochford*, 75 F.R.D. 441, 444 (N.D.

1   Ill. 1977 [holding "'[r]elevance' for purposes of discovery is determined by reference

2   to the subject matter in issue and not particular pleadings. . ."].)

3        Here, only the breach if the MIP is at issue, not Plaintiff's allegations of fraud.

4   This Court has issued a bifurcation order which limits discovery and trial to the First

5   Claim for breach of the MIP.  [Doc. No. 26.]   In contrast, Paragraphs 63, 65, 70 and 71

6   of Plaintiff's Second Amended Complaint, under the Fifth Claim for Relief for Fraud,

7   deal specifically with Plaintiff's allegations of "other lucrative business opportunities".

8   These paragraphs state that:

9        63.   In order to appear more desirable in the bidding

10  process, Oversee inflated its bid to push out the other bidders,

11  two of which were private equity firms who offered Cahn

12  very enticing and lucrative business opportunities. . .

13       65.   However, in order to secure Cahn's employment

14  at Oversee, and to prevent Cahn from joining a competitor or

15  starting a competing venture, Defendants intentionally made

16  numerous fraudulent and false representations, some of

17  which were set forth above. . .

18       70.   During the time of the negotiations, Cahn had

19  numerous other lucrative opportunities available to him

20  including accepting employment at various private equity

21  firms, purchasing Moniker for himself or starting his own

22  competitive domain related business.

23       71.   However, based on the aforementioned

24  representations, and based on the incentives offered by

25  Oversee, Cahn was induced to forgo the other lucrative

26  business opportunities, and accepted employment with

27  Oversee.  If Defendants had told Cahn the truth, he never

28  would have agreed to join Oversee.

1  (¶¶ 63, 65, 70 and 71 under the Fifth Claim for Fraud to the Second Amended

2  Complaint.)

3       The allegation of other lucrative business opportunities as alleged in the "Facts

4  and Background" section of paragraph 22 is directly related to claims and allegations

5  set forth in Plaintiff's claim for fraud.   Specifically, it demonstrates the lost

6  opportunities that Plaintiff suffered as a result of Defendants' fraudulent

7  representations.  However, it does not relate to, nor is it relevant to Plaintiff's

8  allegation of Defendants' breach of the MIP.  Defendants improperly assert that these

9  other opportunities were "part and parcel of the negotiations between the parties with

10  respect to the MIP".  This is a patent misstatement of the facts.  Plaintiff's dealings and

11  communications with other parties were separate and distinct from his negotiations

12  with Defendants.  Additionally, contrary to Defendants' assertion, the allegation is not

13  relevant to Plaintiff's monetary expectation under the MIP.  Plaintiff's monetary

14  expectation under the MIP is limited to the pre-negotiated bonus payments as identified

15  under the terms of the MIP.   These are two distinct claims.

16       Furthermore, under Defendants' analysis, Defendants would be permitted to

17  propound discovery on all of the allegations in the Complaint under the theory that that

18  relevancy should be interpreted broadly, thereby obviating the purpose of the Court's

19  August 29, 2011 Order.   With the limited time frame allowed for discovery on the

20  First Cause of Action, the parties should be required to limit the scope of discovery to

21  only those allegations relevant to the First Cause of Action.  Permitting discovery on

22  Plaintiff's other claims would unfairly burden Plaintiff with additional discovery in an

23  already constrained time period.

24  **III.   COMMUNICATIONS BETWEEN PLAINTIFF AND WILLIAM GROSS**

25       **A.   Defendants' Argument**

26            1.  Summary of Dispute.

27       In collecting documents for production pursuant to the Court's August 29, 2011

28  Order requiring that communications related to the MIP be produced and in response to

1  Plaintiff's First Set of Requests for Production to Oversee, Oversee discovered that it is

2  in possession of various e-mails between Plaintiff and his personal attorney, William

3  Gross.  Neither Oversee nor its counsel reviewed those documents, and instead,

4  prepared a log of such e-mails based solely on the header information of the e-mail

5  (i.e., "From," "To," "Subject," etc.) ("Cahn-Gross Log").  Delgado Decl., ¶ 4, Ex. F

6  (exhibit thereto).

7        The parties met and conferred, and Plaintiff maintains that the e-mail

8  communications are privileged notwithstanding the fact that they were sent and stored

9  on Oversee's network, and notwithstanding company policies that expressly warned

10  Plaintiff that his e-mails would *not* be private.  Delgado Decl., ¶ 6; Greene Decl., Exs.

11  A (pp. 18), B (p. 27-28) and C (p. 24).  As discussed below, the law is clear that

12  Plaintiff had no expectation of privacy in <u>all</u> of the e-mails on the Cahn-Gross Log and,

13  as such, the privilege is waived.

14              2.  <u>Summary of Relevant Facts</u>.

15        Plaintiff formed Moniker in 1999, and sold Moniker to a company called

16  Seevast Corp. ("Seevast") in 2005.  SAC, ¶ 10.  Plaintiff remained CEO of Moniker

17  after Seevast's acquisition.  *Id.*  Seevast sold Moniker to Oversee in December 2007,

18  and at that time, Plaintiff became an employee of Oversee.  SAC, ¶ 22.  Plaintiff's

19  employment at Oversee terminated on December 31, 2010.

20        The e-mails on the Cahn-Gross Log span the time before the acquisition of

21  Moniker by Oversee (during which time Plaintiff was employed by Seevast), through

22  Plaintiff's employment at Oversee.  During the time that Plaintiff was employed with

23  Seevast, he was subject to the terms of Seevast's Employee Handbook ("Seevast's

24  Handbook").  Greene Decl., Ex. C.  Seevast's Handbook provides, in pertinent part:

25    • The use of the Internet and e-mail through Seevast is primarily for business

26       purposes.

27

28

---

- Seevast reserves the right at any time and without prior notice to examine e-mail, personal file directories, and other information stored on Seevast computers. ... Use of the electronic mail system constitutes acceptance of such monitoring.

Greene Decl., Ex. C (pg. 24, ¶ 6.7(a), (c)).

During the time that Plaintiff was employed by Oversee, he was subject to two Oversee Employee Handbooks, dated July 2006 and January 2009 ("Oversee Handbooks"), the relevant terms of which are substantially similar. *See* Greene Decl., Ex. A (pp. 17-18), Ex, B (pp. 27-29). The Oversee Handbooks provided, in pertinent part:

- "Employees should have no expectation of privacy of any correspondence, messages or information in the systems." *Id.*, Ex. A (p. 18), Ex. B (p. 28)
- "All electronic mail ... and computer files are the Company's records. The contents of e-mail and ...computer files are the property of the Company." *Id.*
- "Internet access, as well as the internal e-mail system, is provided for official Company business only," and only incidental or occasional personal use is permitted. *Id.*
- "All electronic communications...are the sole property of the Company..." *Id.*, Ex. B (p. 28).
- "The internet and e-mail are not to be used for non-professional purposes" and "may not be used in any manner that would ... not be in the best interest of the Company." *Id.*
- "The Company, at any time with or without notice or consent and not necessarily in the employee's presence, has the right to access and monitor the information on any Company equipment consistent with applicable law. **The employee waives any right to privacy in anything created, stored, sent or received on the Company's computers, internet, e-mail or voice-mail system."** *Id.* (emphasis added.); *see also, id.*, Ex. A (p. 18).

3.  <u>Choice of Law</u>.

The availability of the attorney-client privilege in a diversity case is governed by state law.  Fed. R. Evid. § 501; *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987); *Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 617 (C.D.Cal. 2007). Here, the plaintiff is a Florida resident, Oversee is a California resident, and the case was brought in the Central District of California.  The Ninth Circuit suggests several methods of resolving which state law the forum should apply: (1) assume that the state which supplies the rule of decision is the state which also supplies the privilege law, (2) apply the privilege rules of the state in which the federal court sits, or (3) apply the conflict doctrine of the state in which the federal court sits.  *Id.*  The Court should apply California law, since it is the law of the state where the Court sits, Oversee is a California company, and Plaintiff admits that a substantial part of the events that give rise to Plaintiff's claim occurred in California.  SAC, ¶ 2.  However, even if Florida law applies, the same conclusion results because under Florida law, no attorney-client privilege attaches to any of the e-mails on the Cahn-Gross Log.  For the Court's ease, Oversee has cited to California and Florida law.

4.  <u>Plaintiff had no expectation of privacy in the e-mails exchanged
between Plaintiff and William Gross through Seevast's and Oversee's
networks</u>.

California Evidence Code Sections 952 and 954 codify the attorney-client privilege.[4]  To be privileged from disclosure, the attorney-client communication must satisfy a three-part test: (1) the communication must have been made between a client and an attorney; (2) the communication must have been made in the course of the attorney-client relationship; and (3) the communication must have been transmitted in confidence.  Cal. Evid. Code §§ 952, 954; *State Farm Fire & Casualty Co. v. Superior Court*, 54 Cal. App. 4th 625 (1997); *see also* Fla. Stat. Ann. § 90.502.  The privilege,

---
4

however, "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone.  Consent to disclosure is manifested by *any* statement or other conduct of the holder of the privilege indicating consent to the disclosure…." Cal. Evid. Code § 912(a) (emphasis added); *see also* Fla. Stat. Ann. § 90.507 ("A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person … voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy…."). Where an employee is aware of a company policy that clearly states that employees have no expectation of privacy in their company e-mail and that the company may access and monitor such e-mails, the employee's communications with his personal attorney vis-à-vis company e-mail are not considered privileged. *Holmes v. Petrovich Dev. Co., LLC*, 191 Cal. App. 4th 1047 (2011); *Leor Exploration & Prod., LLC v. Aguiar*, 2009 WL 3097207 (S.D.Fla. Sept. 23, 2009) (holding that employee had no reasonable expectation of privacy in e-mails transmitted through employer's server).

*Holmes* illustrates the point. The plaintiff in that case brought a sexual harassment and wrongful termination suit against her employer, and at issue was whether the district court erred in allowing the defendant-company to introduce into evidence e-mails sent by the plaintiff to her attorney regarding possible legal action against the defendants.  The court definitively concluded that the trial court properly allowed introduction of those e-mails because the communications did not constitute confidential communications within the meaning of Evidence Code Section 952. *Id.* at 1051.  This was so because the plaintiff used a company computer to send e-mails even though she had signed and read an employee handbook, which provided that the company's technology resources should be used "only for company business" and that employees were prohibited from sending or receiving personal e-mails; that employees have no right of privacy with respect to personal information or messages sent using

the company's technology resources; that e-mail is not a private communication because others may be able to read or access the message; and that the company may inspect all files or messages at any time for any reason at its discretion, and that it would periodically monitor its technology resources for compliance with the company's policy. *Id.* at 1052.  The court reasoned:

> "[T]he e-mails sent via company computer under the circumstances of this case were akin to consulting her lawyer in her employer's conference room, in a loud voice, with the door open, so that any reasonable person would expect that their discussion of her complaints about her employer would be overheard by him.  By using the company's computer to communicate with her lawyer, knowing the communications violated company computer policy and could be discovered by her employer due to company monitoring of e-mail usage, [plaintiff] did not communicate 'in confidence by means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted.' (evid. code, § 952) consequently, the communications were not privileged."

*Id.* at 1051-52; *see also, Taylor v. Waddell & Reed, Inc.*, 2011 WL 1979486 (S.D.Cal. May 20, 2011) (plaintiffs had no expectation of privacy in e-mails sent through Defendant's e-mail system).

Florida law is in accord with *Holmes*.  In *Leor*, *supra*, the Southern District of Florida applied Florida's privilege law to a dispute over whether the attorney-client privilege was waived with respect to an e-mail sent from defendant's attorney to

1  defendant's personal advisor, who was plaintiff Leor Exploration & Production's

2  ("Leor") employee. The e-mail was sent to the advisor's Leor e-mail account. *Leor*,

3  2009 WL 3097207 at * 3.  The court considered four factors in determining whether an

4  employee has an expectation of privacy in computer files or e-mail: (1) does the

5  corporation maintain a policy banning personal or other objectionable use, (2) does the

6  company monitor the use of employee's computer or e-mail, (3) do third parties have a

7  right of access to the computer or e-mails, and (4) did the corporation notify the

8  employee, or was the employee aware, of the use and monitoring policies?  *Id.* at *4.

9  The court found that each of the factors was present because, as in this case, Leor's

10 Employee Handbook states that Leor owns all electronic communications, that

11 individuals using the Leor e-mail system have no expectation of the right to privacy,

12 and that Leor representatives retained the right to access and monitor the use of its

13 systems from time to time.  *Id.*  The court held that defendant had no reasonable

14 expectation of privacy in e-mails transmitted through Leor's server.  *Id.*; *see also, Black*

15 *v. State*, 920 So.2d 668 (Fla. 5th DCA 2006) (finding attorney-client privilege did not

16 apply to defendant's phone call to former lawyer where, *inter alia*, the defendant was

17 warned that telephone conversations were monitored and taped).

18        This case is indistinguishable from *Holmes* and *Leor*.  The fact that Oversee

19 discovered the documents on its own technology systems reflects that Plaintiff used his

20 company computer and the company's internet system to send e-mails.  More

21 importantly, both the Oversee Handbooks and the Seevast Handbook make clear that

22 employees have no expectation of privacy in e-mails sent using the companies'

23 respective internet systems, and both companies reserved the right to inspect all e-

24 mails at any time.  Indeed, the Oversee Handbooks contain <u>all</u> of the provisions that the

25 Court in *Holmes* and *Leor* noted as relevant to the determination of whether there is a

26 waiver of the privilege.  The fact that Plaintiff had a subjective expectation of privacy

27 does not wrap the e-mails with privilege when he made the conscious decision to send

28 e-mails to his attorney over the companies' networks.

5. <u>Summary</u>.

Under the circumstances of this case, the e-mails noted on the Cahn-Gross Log cannot be considered a "confidential communication between client and lawyer" because Plaintiff used company computers – and company internet systems – to communicate with Mr. Gross, and Plaintiff knew that his communications might be monitored by Seevast and Oversee.  For the foregoing reasons, Defendants respectfully request that the Court find that the privilege is waived, and allow Defendants to review the e-mails.

**B.    Plaintiff's Argument**

1.    <u>Statement of Facts</u>

Cahn formed Domain Systems, Inc. d/b/a Moniker.com ("Moniker") in 1999. Cahn successfully managed and operated the business as an owner until 2005, at which time Seevast Corp. ("Seevast") purchased Moniker.  Cahn remained CEO and maintained management responsibilities for the company until December 2007, at which time Oversee purchased Moniker.  Cahn joined Oversee as President of Moniker on December 14, 2007, and was an employee of Oversee until December 31, 2010, at which time his employment contract with expired.

Moniker is based in Ft. Lauderdale, Florida, and Oversee is headquartered in Los Angeles, California.  When Oversee purchased Moniker, Cahn continued to operate Moniker out of the Florida office.  Due to the travel requirements of his position, Plaintiff was accustomed to working from a laptop.  From January 1999 through the summer of 2010, Cahn exclusively used his own personal laptop in executing his duties as President of Moniker.  (¶ 2 of Cahn Decl.)  When Cahn began his employment with Oversee, he does not recall signing an employee handbook, or being told, or acknowledging, that the terms of the employee handbook applied to his, as President of Moniker.  (¶ 3 of Cahn Decl.)

Cahn's personal laptop broke on or around July 2010.  (¶ 2 of Cahn Decl.)  On

or around July 2010 Oversee offered to replace Cahn's personal computer and

purchased the laptop that is now the issue of Oversee's Motion to Compel.  (¶ 4 of

Cahn Decl.)  After Oversee purchased Cahn the new laptop it transferred all of Cahn's

personal and business data that had been stored on his personal laptop to the new

laptop.  (¶ 4 of Cahn Decl.)  This personal data included information that dated back

several years prior to his employment at Oversee, and contains his personal, private,

and confidential information.  (¶ 4 of Cahn Decl.)  Oversee never requested that Cahn

segregate his personal and business information on the laptop.  (¶ 4 of Cahn Decl.)

Pursuant to Cahn's discussions with Craig Snyder during the time the laptop was

purchased, Cahn understood and believed that he would be able to retain the laptop at

the end of his employment term.  (¶ 5 of Cahn Decl.)  During Cahn's employment with

Oversee, all of his Oversee and Moniker related e-mails, sent and received from the

laptop at issue, were processed through both the Moniker and Oversee servers.  (¶ 6 of

Cahn Decl.)

Cahn's employment term with Oversee expired on December 31, 2010.  When

he left Oversee he was never asked to return the laptop.  Oversee never informed him

that there was confidential information on the laptop, and never requested that he

delete any information from the laptop when his employment term ended.  In fact,

Oversee and Cahn were engaged in discussions regarding the purchase of his laptop.  (¶

7 of Cahn Decl.)   On March 8, 2011 Cahn received an email from Andrew Wong

offering to sell Cahn the laptop.  (¶ 8 of Cahn Decl., email dated March 8, 2011 from

Andrew Wong to Monte, Exhibit "A" to Cahn Decl.)  Cahn responded to Andrew

Wong, informing him that he and Craig Snyder had discussions regarding his purchase

of the computer, and had not only discussed a much lower price, but discussed not

having to pay for the laptop at all.  (¶ 9 of Cahn Decl., email dated March 8, 2011 from

Monte to Andrew Wong, Exhibit "A" to Cahn Decl.)   During his negotiations with

Cahn, Oversee never indicated that there was confidential information on the laptop

1   that should be deleted, or that the laptop was only to be used in connection with Cahn's

2   position as President of Moniker. (¶ 10 of Cahn Decl.)   The parties' negotiations

3   regarding the laptop came to a stand-still while they tried to reach an acceptable

4   resolution of monies owed to Cahn under his MIP. (¶ 11 of Cahn Decl.)   Since Cahn

5   left Oversee on December 31, 2010, he has been using the laptop under the assumption

6   and belief that he would be able to purchase and retain the laptop for his own personal

7   use, or that the laptop would be given to him. (¶ 12 of Cahn Decl.)   In fact, even after

8   Cahn left Oversee, Oversee let Cahn maintain access to his Moniker/Oversee email

9   because they knew he used it for more than just Oversee emails, and they wanted him

10  to continue to working on the Restauratns.com sale. (¶ 13 of Cahn Decl., email dated

11  December 20, 2010 from Jack Nelson to Monte Cahn, Exhibit "C" to Cahn Decl.)

12  Oversee and Cahn were unable to reach a resolution regarding the payments owed to

13  Cahn under his MIP, and as a result he filed suit against Oversee on May 3, 2011.   (¶

14  14 of Cahn Decl.)  It was not until June 9, 2011 that Oversee, for the first time,

15  requested to obtain possession of the laptop. (¶ 15 of Cahn Decl.)  On July 18, 2011

16  Cahn turned over possession of the laptop to his counsel. (¶ 17 of Cahn Decl.)

17              2.    Choice of Law

18       Under Fed. R. Evid. 501, the attorney-client privilege in a diversity case is

19  governed by state law. (Fed. R. Evid. 501.)  However, in determining which state's law

20  to apply, the following three methods have been suggested for resolving the choice of

21  law issue: "(1) Assume that the state 'which supplies the rule of decision' is the state

22  which also supplies the privilege law; (2) apply the privilege rules of the state in which

23  the federal court sits; or (3) apply the conflict of law doctrine of the state in which the

24  federal court sits." (*KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir.

25  Haw. 1987).)

26       Under California law, choice-of-law questions are resolved using the

27  "governmental interest analysis". (*McGhee v. Arabian American Oil Co.,* 871 F.2d

28

1412, 1422 (9th Cir. Cal. 1989).)  The government interest test involves a three step analysis:

> First, the court determines whether the relevant law of each
> of the potentially affected jurisdictions with regard to the
> particular issue in question is the same or different. Second, if
> there is a difference, the court examines each jurisdiction's
> interest in the application of its own law under the
> circumstances of the particular case to determine whether a
> true conflict exists.  Third, if the court finds that there is a
> true conflict, it carefully evaluates and compares the nature
> and strength of the interest of each jurisdiction in the
> application of its own law 'to determine which state's interest
> would be more impaired if its policy were subordinated to the
> policy of the other state' [citation] and then ultimately applies
> "the law of the state whose interest would be the more
> impaired if its law were not applied."

(*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-108 (2006).)

Under the first two *KL Group* factors, California law would apply.  However, under the third factor, either California or Florida law could apply.  This distinction is of no consequence since both jurisdictions apply the same attorney-client privilege principles.

### 3.    Argument

The key issue here is whether Cahn had an expectation of privacy in the emails he sent and received from his laptop, both the laptop at issue in this motion, and his personal laptop that he used while he was employed at Seevast.  The answer is a resounding "yes".  Not only did Cahn have a reasonable expectation of privacy in his emails, but Oversee, from the beginning, treated Cahn's laptop, and the information on Cahn's laptop as Cahn's personal information.  Therefore, Cahn had reasonable

1  expectation of privacy in the emails that he sent from his laptop to his attorneys during

2  his employment with Oversee.

3      The courts have held that "the question of privilege comes down to whether the

4  intent to communicate in confidence was objectively reasonable." (*Convertino v.*

5  *United States DOJ*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009).)  In *Leor Exploration &*

6  *Prod. LLC v. Aguiar*, 2009 U.S. Dist. LEXIS 87323 (S.D. Fla. Sept. 23, 2009), the

7  Court found that Aguiar had not met this burden of proof only because he had not

8  shown that he had a reasonable expectation of privacy in the emails he transmitted

9  through his employer's computer. (*Leor Exploration & Prod. LLC v. Aguiar*, 2009

10  U.S. Dist. LEXIS 87323, *9 (S.D. Fla. Sept. 23, 2009).)  That is not the case here.

11      Here, from the beginning, Cahn exclusively used his own personal laptop in

12  executing his employment duties.  (¶ 2 of Cahn Decl.)  It was not until his personal

13  laptop broke, and Oversee offered to replace it, that he began using a laptop purchased

14  by Oversee.  (¶ 4 of Cahn Decl.)   However, even this laptop was purchased with the

15  understanding that Cahn would be able to purchase and retain it after his employment

16  with Oversee.  (¶ 5 of Cahn Decl.)  Oversee even took the additional step of

17  transferring all of Cahn's personal data that had been stored on his laptop, and never

18  requested that he segregate his personal data from his business information on the

19  laptop.  (¶ 5 of Cahn Decl.)   Further, after Cahn's employment with Oversee ended,

20  Oversee even granted Cahn access to his Moniker/Oversee email because they knew he

21  used it for more than just Oversee emails.  (¶ 12 of Cahn Decl.)  Oversee's conduct

22  has established a clear pattern of behavior of treating Cahn's laptop, and the

23  information on Cahn's laptop as his own personal, private, and confidential

24  information.  As such, Cahn had a reasonable expectation of privacy in the information

25  transmitted from the computer.

26      Additionally, Oversee's effort to obtain attorney-client communications from

27  Cahn's personal laptop fails for the same reason.  Furthermore, the Seevast Employee

28  Handbook expressly permits "use of the internet and e-mail… [for] incidental personal

use is permitted so long as it does not interfere with Seevast."  (¶ 6.7(a) of the Seevast

Employee Handbook, Ex. C to the Greene Decl.)  Therefore, Seevast's policy

expressly permitted incidental personal use its computers, thereby giving Cahn a

reasonable expectation of privacy in his communications with counsel.

"The importance of the attorney-client privilege is unquestionable" and is

"'fundamental to [our] legal system" and "a hallmark of [its] jurisprudence."  (*Osband*

*v. Ayers*, 2008 U.S. Dist. LEXIS 86227, *28 (E.D. Cal. June 13, 2008.)  Cahn's laptop

the information on the laptop, and the communications to and from the laptop have

always been treated as Cahn's personal and confidential information.  As such, Cahn

maintained a reasonable expectation of privacy in that information.  Therefore, Cahn

respectfully requests that the Court uphold Cahn's assertion of attorney-client privilege

in these documents.

## IV.    <u>CONCLUSIONS</u>

**OVERSEE'S CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant

their motion and order Plaintiff to provide further responses to Requests for Production

Nos. 1, 13, 15, and 39, and produce the laptop and documents relevant thereto.

Defendants also request that the Court order that the e-mails denoted on the Cahn-

Gross Log are not privileged, and allow Defendants to review the e-mails.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# PLAINTIFF'S CONCLUSION

For the reasons stated herein, Plaintiff Monte Cahn respectfully requests that the Court deny Oversee's Motion and request to produce Plaintiff's laptop and the confidential communications currently designated as privileged on the Cahn-Gross Privilege Log.

Dated:  November 2, 2011          WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*
    William A. Delgado
    Attorneys for Defendant Oversee.net

Dated:  November 2, 2011          LEWIS BRISBOIS BISGAARD & SMITH LLP


By: */s/ Kenneth D. Watnick*
    Kenneth D. Watnick
    Attorneys for Plaintiff Monte Cahn