UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| N/A | N/A | |

**Proceedings:**   IN CHAMBERS ORDER re MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), MOTION TO STRIKE PURSUANT TO RULE 12(e) [28]

## I.   INTRODUCTION

On May 3, 2011, Plaintiff Monte Cahn filed a Complaint against Defendants Oversee.net, Jeff Kupietzky, and Lawrence Ng alleging a total of ten claims: (1)-(3) three separate breach of contract claims; (4) breach of the covenant of good faith and fair dealing; (5) breach of fiduciary duty; (6) an accounting; (7) intentional misrepresentation; (8) negligent misrepresentation; (9) conversion; and (10) unfair competition under California Business and Profession Code § 17200.  (Complaint ¶¶ 28-93).  On June 1, 2011, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) and a Motion to Strike pursuant to Rule 12(e).  On June 22, 2011, Plaintiff filed a First Amended Complaint ("FAC"), eliminating the claim for breach of fiduciary duty.  On July 15, 2011, Defendant filed a Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f) ("MTD"), which the Court granted in an Order on August 25, 2011.  (Dkt. 22).  Specifically, the Court's August 25, 2011 Order dismissed Plaintiff's Fourth, Sixth, Eighth, Ninth and Tenth Claims.

On September 6, 2011, Plaintiff filed his Second Amended Complaint ("SAC") alleging seven claims: (1)-(3) three separate breach of contract claims; (4) an Accounting; (5) Fraud; (6)-(7) two separate claims for Conversion.  On September 23, 2011, Defendants the instant Motion to Dismiss and Motion to Strike seeking dismissal of Plaintiff's Fifth, Sixth and Seventh Claims.

For the reasons set forth in this Order, Defendants' Motions are hereby GRANTED.

## II.   FACTUAL BACKGROUND

According to the SAC, in 1999, Plaintiff Cahn, a pioneer in the field of internet domain name selling and valuing, formed Domain Systems, Inc. d/b/a Moniker.com ("Moniker").  (FAC ¶¶ 8-9).  Moniker provided services including sales, brokerage, registration and management of internet domain names.  (Id.).  Cahn managed Moniker until 2005, when he sold Moniker to Seevast Corp.  (Id. at ¶ 10).

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

Cahn remained CEO of Moniker and managed the business until 2007, at which point Defendant Oversee allegedly approached Seevast and Cahn with an offer to purchase Moniker. (Id. at ¶ 12). According to the FAC, Oversee insisted that Cahn join Oversee for a period of at least three years as an explicit condition of the agreement to purchase Moniker. (Id.).

Plaintiff alleges that Defendants Jeff Kupietzky and Lawrence Ng, who were "primarily responsible" for negotiating on behalf of Oversee, made a series of statements and promises in or around 2007 designed to induce Plaintiff to join Oversee after its acquisition of Moniker. (Id. at ¶ 13-16). Plaintiff alleges that, as an additional inducement for Plaintiff to join Oversee, Oversee proposed a "Management Incentive Plan" ("MIP") under which Plaintiff could earn up to $13,000,000 if certain performance goals were met. (Id. at ¶ 20). Plaintiff further alleges that Ng and Kupietzky were "primarily responsible" for making a series of false representations designed to assure Plaintiff that he would be able to earn the $13,000,000 in payments under the MIP (Id. at ¶ 21). Plaintiff alleges that Ng and Kupietzky's allegedly false representations induced Plaintiff to forego other lucrative business opportunities. (Id. at ¶ 22). Plaintiff further alleges that, at some time on or around December 2007, Defendants formed the intent to conceal their intentions to benefit from "Moniker's great public reputation" while interfering with Plaintiff's ability to manage Moniker, thus making it impossible for Plaintiff to obtain the $13,000,000 in payments under the MIP. (Id. at ¶ 24). The parties reached a mutual agreement regarding the sale of Moniker to Oversee on or around December 14, 2007. (Id. at ¶ 23).

Plaintiff alleges that, subsequent to the acquisition of Moniker by Oversee, Defendants engaged in affirmative acts designed to prevent Plaintiff from obtaining benefits under the MIP. (Id. at ¶¶ 25a-o). Specifically, among other allegations, Plaintiff alleges that Defendants: gave Plaintiff additional responsibilities without modifying the performance goals under the MIP; improperly diverted revenues and profits from Moniker; cut Plaintiff's staff at Moniker in spite of promises to provide Moniker with sufficient resources to combat prior staffing issues; improperly reported Moniker's expenses, creating the false impression that Moniker was underperforming; restrained Moniker's marketing budget; denied Moniker the opportunity to cross-market to other Oversee subsidiaries in spite of promises to the contrary; and failed to obtain a California escrow license for Moniker that would have allowed Moniker to legally perform domain name auctions in California, where Oversee was based. (Id.).

Plaintiff alleges that, on or around June 4, 2010, Oversee offered him additional compensation through a Commission Plan under which Plaintiff was to receive a pre-determined percentage payment of certain individual sales transaction. (Id. at ¶ 29). Plaintiff alleges that Defendants denied him full compensation under the Commission Plan through improper diversion of revenue and accounting errors. (Id. at ¶ 30). Plaintiff's employment with Defendant Oversee expired on December 31, 2010. (Id. at ¶ 34).

Defendants argue that: (1) Plaintiff's Fifth, Sixth and Seventh Claims for Relief all fail to state a claim upon which relief can be granted; (2) Plaintiff's Fifth Claim fails to plead fraud with particularity as required under Rule 9(b); and (3) Plaintiff's Seventh Claim was filed without the requisite leave of

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

court under Rule 15(d). Additionally, Defendants move to strike Plaintiff's prayer for punitive damages pursuant to Rule 12(f), arguing that Plaintiff has failed to plead a claim entitling him to such relief.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

On a motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989) (quoting Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)).

Claims for fraud must meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Ninth Circuit clarified the requirements of Rule 9(b) in In re Glenfed Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). When pleading fraud, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Id. at 1548 n. 7 (quoting J.W. Moore et al., Moore's Federal Practice § 9.03, at 9-19-21 (2d. ed. 1994)). Moreover, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and quotation omitted).

### B.    Motion to Strike

Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" either on its own or upon a party's motion. Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983). Immaterial matter is that which has no important relationship to the claim, and impertinent matter is that which does not pertain and is unnecessary to the issues in question. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1994) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382, at 706-07 (1990)), rev'd on other grounds, 510 U.S. 517,

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

534-35 (1994).

### III. DISCUSSION

#### A. Plaintiff's Fifth Claim for Fraud

In its August 25, 2011 Order, the Court dismissed Plaintiff's claims for Intentional and Negligent Misrepresentation, noting that those claims: (1) failed to meet the heightened pleading requirements of Rule 9(b); and that (2) any alleged misrepresentations involved Defendants' future performance of its obligations under the MIP.  Defendants move to dismiss Plaintiff's amended fraud claim, arguing that Plaintiff's SAC essentially contains the same factual allegations as Plaintiff's previously dismissed fraud claim.  The Court agrees to a large extent.  Many of the statements contained in Plaintiff's amended fraud claim are vague and unspecific, and constitute non-actionable puffery.  (SAC ¶ 65b, d, e, g, h, k, l); see Glen Holly Entertainment, Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir. 2003).  However, Plaintiff has added a factual allegation that could minimally satisfy the requirements of Rule 9(b).  Specifically, Plaintiff's amended fraud claim alleges that "Ng and Kupietzky knew that Oversee had a contract with Google that would render it impossible for TrafficClub to continue to operate in the same manner after the merger."  (SAC ¶ 65m).  However, Plaintiff' fails to identify what, exactly TrafficClub is, how the alleged contract between Oversee and Google was inconsistent with TrafficClub's business model and operations or how, and to what extent, that alleged inconsistency would impact Plaintiff's ability to achieve the performance incentives under the MIP.  Therefore, while the Court does not opine on whether a further amended claim would satisfy the requirements of Rule 9(b), the Court believes that dismissal without prejudice is appropriate.

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED as to Plaintiff's Fifth Claim for Fraud WITHOUT PREJUDICE.

#### B. Plaintiff's Sixth Claim for Conversion

Plaintiff's FAC alleged a claim for conversion based on Plaitiff's contention that a number of domain names owned by Plaintiff "were mixed up with Moniker's," and that as a result, Plaintiff did not receive revenue generated by those domain names.  (FAC ¶¶ 78-83).  The Court dismissed that claim in its August 25, 2011 Order because Plaintiff's previous conversion claim "fail[ed] to allege any intentional acts by Defendants."  (Dkt. 22).  Plaintiff's Sixth Claim for Conversion in his SAC adds the allegation that,"[a]t the time of the merger, Oversee intended to obtain possession of all of Moniker's owned and operated domain names," and that Oversee did, in fact, obtain possession of those domain names after the merger.  (SAC ¶¶ 75-76).  As Plaintiff correctly notes, a claim for conversion only requires that the defendant intend to take possession of the subject property, not that the defendant *specifically* intend to take possession of the *plaintiff's* property.  See, e.g. CRS Recovery, Inc. v. Laxton,

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | PMC |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

600 F.3d 1138, 1145 (9th Cir. 2010) (noting that, "so long as [defendant] exercised conscious dominion and control over [the property at issue], he assumed the risk on the question of whether he is correct about the true title holder"). However, the Court finds that Plaintiff's Sixth Claim for Conversion is time-barred for the reasons set forth below.

### 1. Statute of Limitations Under California Law

Defendants argue that Plaintiff's Sixth Claim for Conversion is time-barred under California's two-year statute of limitations for conversion claims involving intangible items.[1] See Cal. Code Civ. Proc. § 339(1); see also Italiani v. Metro–Goldwyn–Mayer Corp., 45 Cal.App.2d 464, 466–67 (1941) (concluding that claim for misappropriation of literary property or conversion thereof was subject to the two year statute of limitations in § 339(1)). Specifically, Defendants note that Plaintiff's SAC alleges that Defendant Oversee took possession of the Moniker domain names "at the time of the merger," which occurred on December 14, 2007. (Mot. at 13) (citing SAC ¶ 23, 75). Plaintiff filed the instant action on May 3, 2011. (Dkt. 1). Accordingly, Defendants argue that Plaintiff's Sixth Claim for Conversion is time-barred.

Under the so-called discovery rule, California courts have held that when the defendant in a conversion action fraudulently conceals or fails to disclose relevant facts in violation of a fiduciary duty, the statute of limitations does not commence to run until the aggrieved party discovers, or should have discovered, the existence of his conversion claim. AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006). Accordingly, Plaintiff responds that his claim is not time-barred because Defendant Oversee, as Plaintiff's employer, breached its duty to Plaintiff to "safely hold [his] assets, and to not commingle Plaintiff's assets with the corporate assets of Oversee." (Opp. at 21) (citing Tyler v. State of California, 134 Cal. App. 3d 973, 977 (1982)). Plaintiff further argues that Defendant Oversee's "improper withholding of [Plaintiff's] personal domain names" also constitutes a continuing conversion. (Opp. at 22). Therefore, Plaintiff argues that, since Defendant Oversee remains in possession of and continues to receive revenue from approximately 200 of Plaintiff's personal domain names, Plaintiff's claim is timely. (Id.).

However, California courts will only toll the statute of limitations in a conversion claim if: (1) the defendant commits affirmative acts to fraudulently conceal the theft, or (2) the defendant breaches a fiduciary duty to the plaintiff by failing to disclose the theft. AmerUS, 143 Cal. App. 4th at 639. To invoke the discovery rule, the plaintiff "must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 815 (2005). As Defendants note, Plaintiff's SAC does not contain facts sufficient for the Court to conclude that the discovery rule applies to Plaintiff's Sixth Claim for Conversion. (Reply at 10). Plaintiff's SAC does not allege acts of fraudulent concealment by

---

[1]Plaintiff does not dispute that an internet domain name is an intangible item.

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

Defendants, nor does it allege the existence or breach of a fiduciary duty.  Therefore, Defendant's Motion is GRANTED as to Plaintiff's Sixth Claim for Conversion WITHOUT PREJUDICE.

### 2. Whether Florida Law Applies

In addition, Plaintiff argues that, because Plaintiff is a Florida resident with personal property purchased and managed from Florida, the statute of limitations issue also involves a choice of law issue.  Under California law, courts use the "governmental interests" test to resolve choice of law questions.  McGhee v. Arabian American Oil Co., 871 F.2d 1412, 1422 (9th Cir. 1989).
> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state", and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

Kearney v. Salomon Smith Barney, Inc., 39 Cal.4th 95, 107-108, (2006) (internal citations omitted).  Plaintiff argues that the Court should apply Florida law, which provides a four year statute of limitations for conversion claims, because of Florida's "strong interest in protecting the rights and interests of its residents, especially their personal property" from "the predatory actions of non-resident corporations." (Opp. at 21); see Fla. Stat. § 95.11(3)(h); Feingold v. American Rack & Stack, 734 So.2d 479, 480 (1999).  Because a Florida citizen would be "severely prejudiced if a foreign court imposed a different statute of limitations" to a conversion claim, Plaintiff argues that Florida's four year statute of limitations should apply.  (Id.).   However, as the Ninth Circuit has noted:
> Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law . . . and especially so where California's statute would bar a claim.  California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state, because a "state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'"

Deutsch v. Turner Corp., 324 F.3d 692, 716-717 (9th Cir. 2003) (internal citations omitted).  The only conflict between California and Florida law in this case is the length of the applicable statute of limitations.  Accordingly, the Court concludes that the two year statute of limitations discussed above applies.  Therefore, Defendant's Motion is GRANTED as to Plaintiff's Sixth Claim for Conversion WITHOUT PREJUDICE.

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

### C. Plaintiff's Seventh Claim for Conversion

Plaintiff's Seventh Claim for Conversion alleges that, on August 16, 2011, an employee of Oversee confiscated Plaintiff's "personal account" containing over 3,000 personal domain names such that Plaintiff was "locked out" of that account, and the affected domain names were redirected to Oversee, in turn redirecting revenue from those domain names to Oversee.  (SAC ¶¶ 85).  As Defendants note, Plaintiff did not seek leave of the Court to supplement its FAC based on events that happened after the date of Plaintiff's original pleading.  (Mot. at 15); Fed R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").  Accordingly, the Court GRANTS Defendants' Motion as to Plaintiff's Seventh Claim for Conversion WITHOUT PREJUDICE.

In addition, Plaintiff's Seventh Claim for Conversion fails to plead a valid conversion claim.  As Defendants note, Plaintiff's SAC acknowledges that Plaintiff's account was restored on August 31, 2011.  (SAC ¶ 88).  Accordingly, Plaintiff's Seventh Claim for Conversion is simply a claim for money damages, as opposed to a claim for the alleged converted property itself, in this case, Plaintiff's domain names.  "[M]oney cannot be the subject of an action for conversion unless a specific sum capable of identification is involved."  Haigler v. Donnelly, 18 Cal.2d 674, 681, 117 P.2d 331 (1941).  Therefore, the Court GRANTS Defendants' Motion as to Plaintiff's Seventh Claim for Conversion WITHOUT PREJUDICE for this reason as well.

### D. Plaintiff's Prayer for Punitive Damages

In its August 25, 2011 Order, the Court dismissed Plaintiff's prayer for punitive damages because of the Court's dismissal of Plaintiff's claim for intentional misrepresentation.  In this case, Plaintiff's prayer for punitive damages depends on the validity of his claim for fraud.  Therefore, because Defendant's Motion to Dismiss is GRANTED regarding Plaintiff's Fifth Claim for Fraud, Defendant's Motion to Strike is GRANTED regarding Plaintiff's prayer for punitive damages.

### IV. CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f) are hereby GRANTED.  Plaintiff's Fifth, Sixth and Seventh Claims are DISMISSED WITHOUT PREJUDICE.  Defendants' Motion to Strike Plaintiff's prayer for punitive damages is GRANTED.

:

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

|  | : |
|---|---|
| Initials of Preparer | PMC |