1  William A. Delgado (Bar No. 222666)
2  wdelgado@willenken.com
   Leemore Kushner (State Bar No. 221969)
3  lkushner@willenken.com
4  WILLENKEN WILSON LOH & LIEB LLP
   707 Wilshire Blvd., Suite 3850
5  Los Angeles, CA 90017
6  Tel: (213) 955-9240
   Fax: (213) 955-9250
7
8  Attorneys for Defendants
   OVERSEE.NET, JEFFREY KUPIETZKY,
9  and LAWRENCE NG

10
                **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13  MONTE CAHN, an individual,              | Case No. CV-11-03800 SVW (AGRx)

14          Plaintiff,                       | **SUPPLEMENTAL MEMORANDUM**
15                                           | **SUBMITTED BY DEFENDANT**
                                             | **OVERSEE.NET'S IN SUPPORT OF**
16      v.                                   | **MOTION TO COMPEL**
                                             | **PRODUCTION OF LAPTOP AND**
17  OVERSEE.NET, a California                | **DOCUMENTS**
18  corporation; JEFF KUPIETZKY, an
    individual, LAWRENCE NG, an              | DATE:   November 29, 2011
19  individual; and DOES 1 through 10        | TIME:   10:00 a.m.
                                             | PLACE:  Courtroom D, 8th Floor
20
            Defendants.                      | Discovery Cutoff: December 16, 2011
21                                           | Pre-Trial Conference: January 9, 2012
                                             | Trial Date:        January 17, 2012
22

23

24

25

26  _____         |

27

28

## SUPPLEMENTAL MEMORANDUM

There are three issues in dispute: (1) Cahn's refusal to turn over an Oversee-owned laptop, (2) Cahn's refusal to produce documents relevant to the allegedly "lucrative business opportunities" that are referred to <u>five</u> times in the Second Amended Complaint, and (3) Oversee's request that it be granted unfettered access to emails Cahn sent to and/or received from his personal attorney, William Gross, because he had no expectation of privacy in those communications.[1]  The arguments advanced by Plaintiff in support of his position regarding these issues are untenable and simply wrong. Each is addressed below.

***First***, Plaintiff continues to provide no explanation for his blatant refusal to turn over the Oversee-owned laptop to a *neutral* data expert to image the hard drive. Declaration of William A. Delgado filed in Support of Joint Stipulation, ¶ 10.  Plaintiff claims that the "mirror image" purportedly created by his own forensic expert should suffice, but it does not.  Oversee has sufficient basis to believe that the laptop contains documents relevant to the instant dispute and that has not been produced by Plaintiff. *Id.* Indeed, Plaintiff had broad access to confidential business information, and likely has documents concerning contemplated business transactions and financial data and projections, among other things.  At a minimum, the Court should order that the laptop be provided to a *neutral* expert for inspection.

Plaintiff's focus on the propriety of Request No. 1 is a red herring.  The request as written is entirely consistent with Rule 34, which permits a party to inspect "any designated tangible things."  Oversee designated the "tangible thing" that it seeks to inspect – namely, the Oversee-owned computer in Cahn's possession – and there is no confusion on that issue.  Courts have routinely ordered that inspection of the entirety of a computer is appropriate, and Oversee respectfully requests a similar order here. *See,*

---

[1] Oversee also moved to compel documents responsive to Request No. 13, however, in the Joint Stipulation, Plaintiff represented that he would produce documents relevant thereto.

1   *e.g., Daws v. Corr. USA*, 263 F.R.D. 613, 618 n.6 (E.D.Cal. 2009); *Ukiah Automotive*

2   *Investments v. Mitsubishi Motors of North America, Inc.*, 2006 WL 1348562 at *3-4

3   (N.D.Cal. May 17, 2006).

4       *Dawe v. Corr. USA*, is directly on point.  There, defendants propounded the

5   following request for production to a co-defendant: "Please produce for forensic

6   inspection and examination the Laptop Computer described above…."  *Dawe v. Corr.*

7   *USA*, 263 F.R.D. 613, 618 n.6 (E.D.Cal. 2009).  The co-defendant signed a declaration

8   that he had produced all responsive, non-privileged information, but the defendants

9   nonetheless sought to compel inspection of the laptop because they believed that

10  additional, relevant documents were contained therein.  Like Cahn, the co-defendant in

11  *Dawe* claimed that the vast majority of the data on the computer had no relation to the

12  issues in dispute and would result in a significant disclosure of personal information.

13  The court nonetheless granted the defendants' motion to compel inspection of the

14  computer and its electronically stored information, including metadata, subject to

15  certain stipulations for plaintiff to identify privileged documents and prepare a

16  privilege log.  Consistent with *Dawe*, Oversee respectfully requests that the Court

17  overrule Cahn's objections to Request No. 1, and order Cahn to produce the laptop

18  without delay.

19      **_Second_**, Plaintiff's claim that documents responsive to Request No. 15, which

20  seeks documents related to the "lucrative business opportunities" referenced in

21  paragraph 22 of the First Amended Complaint,[2] are irrelevant to Plaintiff's First Claim

22  for Breach of the MIP is absurd.  Indeed, <u>paragraph 22 is expressly incorporated into</u>

23  <u>Plaintiff's First Claim for Breach of the MIP</u>.  FAC, ¶ 32 (incorporating each of the

24  preceding paragraphs, including paragraph 22, into the First Claim for Relief).  The

25  _____

26  [2] Oversee's requests were propounded before Plaintiff filed his SAC.  Paragraph 22 of
    the SAC also references the "lucrative business opportunities" that Cahn allegedly

27  passed up, and is expressly incorporated into Plaintiff's First Claim for Breach of the
    MIP.  SAC, ¶ 36 (incorporating paragraphs 1 through 35 into the First Claim for

28  Relief).

1   documents are, thus, directly relevant to the claim at issue, and any claim to the

2   contrary is specious, at best.  Indeed, the fact that Plaintiff purportedly turned down

3   other business ventures for employment with Oversee is obviously an important factor

4   to Plaintiff because there are <u>five</u> separate references to these alleged business

5   opportunities in the SAC.  SAC ¶¶ 22, 63, 65, 70, 71.  Not only are the requested

6   documents directly relevant to determine the veracity of Plaintiff's express allegations,

7   but they are also relevant to determine what Cahn's monetary expectations were under

8   the MIP.  How lucrative were the offers that he passed up?  Were they more or less or

9   equally lucrative than the compensation that Cahn expected to receive from Oversee?

10  Were they more or less or equally lucrative than the compensation that Cahn did

11  receive from Oversee?  The documents directly speak to Cahn's salary and bonus

12  expectations.  Moreover, to the extent that Plaintiff argues at trial that he passed up

13  other employment opportunities, it would be patently prejudicial to Oversee if it is

14  denied the right to documents related thereto.  Plaintiff was required to have a Rule 11

15  basis for the allegations that he set forth in his Second Amended Complaint, and

16  Oversee is entitled to seek the basis for those allegations through its document

17  requests.  *See, Nat'l Acad. Of Recording Arts & Sciences, Inc. v. On Point Events, LP*,

18  256 F.R.D. 678, 682 (C.D.Cal. 2009) (explaining that the duty to answer contention

19  interrogatories and to produce documents related thereto is "consistent with Rule 11 of

20  the Federal Rules of Civil Procedure).

21       ***Third***, Plaintiff had no expectation of privacy in his communications with

22  attorney William Gross.  There is no question that the laptop at issue was purchased by

23  Oversee, and the fact that Plaintiff claims he is entitled to it does not make it so.  *See*

24  Declaration of Todd Greene filed concurrently with the Joint Stipulation ("Greene

25  Decl."), ¶¶ 2-3.  Though Plaintiff makes reference to the fact that he *could* have

26  purchased the laptop had a reasonable price been agreed upon, the fact remains that

27  Plaintiff *did not* purchase the laptop, and it remains an Oversee-owned laptop.  *Id.*

28

1    Plaintiff does not address *Holmes* in his portion of the Joint Stipulation because

2  the holding in that case is fatal to his claim of privilege.  *Holmes v. Petrovich*

3  *Development Co.*, 191 Cal. App. 4th 1047 (2011).  The facts of the case are detailed in

4  Oversee's portion of the Joint Stipulation, and Oversee will not reiterate them herein

5  except to note the clear holding that an employee's email to her personal attorney using

6  a company computer in violation of company policy was not protected by the attorney-

7  client privilege.  *Id.* at 1071.  Not surprisingly, like Cahn, the plaintiff in Holmes also

8  argued that she had an expectation of privacy in her communications with her attorney.

9  *Id.* at 1069 (plaintiff placed emphasis on the fact that she believed her personal email

10  would be private because she password- protected her personal email). The court found

11  the plaintiff's belief unreasonable because the plaintiff had been warned vis-à-vis the

12  employee handbook that the company would monitor email to ensure compliance with

13  office policy restricting personal and other uses of the email system and that she had no

14  expectation of privacy in the email communications sent from the company computer.

15  *See id.*  The existence of these warnings alone was enough for the court.  Thus, the

16  emails themselves lacked privacy in the first instance, and any subsequent measures

17  taken by the plaintiff to maintain their privacy did not change that reality.[3]

18    Likewise, here, the fact that Cahn claims he had an expectation of privacy is of

19  no consequence because, like the plaintiff in *Holmes*, he sent emails using Oversee's

20  and/or Seevast's email systems, and was subject to clear and express company

21  directives stating that employees, including Cahn, do not have an expectation of

22  privacy in anything created, stored, or sent on the company's computers or email

---

23  [3] Plaintiff's characterization of the *Leor* holding on page 28 of the Joint Stipulation is
24  confusing and wrong.  As discussed in the Joint Stipulation, the Court found that the
   defendant had no reasonable expectation in e-mails transmitted through his company's
25  e-mail system because the company banned personal or other objectionable use, the
26  company had a policy of monitoring the use of employee's computers or email, third
   parties had a right of access to the computer or emails, and the employees are made
27  aware of the use and monitoring policies.  *Leor Exploration & Prod., LLC v. Aguiar*,
28  2009 WL 3097207 (S.D.Fla. Sept. 23, 2009).

1  *systems*. Cahn places emphasis on the fact that he was using a personal computer, as

2  opposed to a company-owned laptop, prior to July 2010. But that fact, even if true,

3  does not change the analysis because the Employee Handbooks do not simply provide

4  that employees have no expectation of privacy in the company-owned computers.

5  Instead, the policies specifically provide that employees have no expectation of privacy

6  of any correspondence, message or information in the "systems." Greene Decl., Ex. A

7  (p. 18) (first bullet point); Ex. B (p. 28) (first bullet point); Ex. C (p. 24) (¶ 6.7). The

8  term "systems" is defined as including (but not limited to) the telephone, **e-mail**,

9  facsimile, **internet**, corporate intranet, voice mail, computers and systems software.

10  Greene Decl., Ex. A (p. 17); Ex. B (p. 27). The handbooks, thus, clearly establish that,

11  to the extent that Cahn sent emails, including emails to his personal attorney, from his

12  Moniker email account and using the Oversee email network, any third party had the

13  right to inspect those emails, he had no expectation of privacy in those emails, and, in

14  fact, any expectation of privacy he did have was waived.[4]

15  **CONCLUSION**

16      For the foregoing reasons, Oversee respectfully requests that the Court grant its

17  motion .

18  Dated:  November 15, 2011          WILLENKEN WILSON LOH & LIEB LLP

19

20

21                                 By: */s/ William A. Delgado*                    .

22                                      William A. Delgado
                                        Attorneys for Defendants OVERSEE.NET,

23                                      JEFFREY KUPIETZKY, and LAWRENCE
                                        NG

24

---

25  [4] Plaintiff states, in conclusory fashion and without any evidentiary support, that
    "Oversee, from the beginning, treated Cahn's laptop, and the information on Cahn's

26  laptop as Cahn's personal information." Joint Stipulation, p. 27 (ll. 27-28). As
    discussed above, however, the Employee Handbooks belie that contention. That is also

27  immaterial to the emails in dispute, which were not merely stored on a company

28  computer, but were sent through Moniker's and Oversee's email and network systems.