William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>      Plaintiff,<br><br>  v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10<br><br>      Defendants. | Case No. CV11-03800 SVW (AGRx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO RULE 12(f)**<br><br>DATE:    January 9, 2012<br>TIME:    1:30 p.m.<br>PLACE:  Crtrm. 6 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2012, at 1:30 p.m. in Courtroom 6 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Oversee.net, Jeffrey Kupietzky, and Lawrence Ng will, and hereby do, move, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain Claims for Relief in the Third Amended Complaint in this action on the ground that they fail to state a claim upon which relief can be granted and to strike Plaintiff's request for punitive damages.

The grounds for this motion are as follows:

- The Fifth, Sixth, and Seventh Claims for Relief all fail to state a claim upon which relief can be granted;
- The Fifth Claim for Relief fails to plead fraud with particularity as required by Fed. R. Civ. P. 9; and
- The Seventh Claim was filed without the requisite leave of court under Fed. R. Civ. P. 15(d).

Defendants additionally hereby move to strike Plaintiff's prayer for punitive damages on the ground that Plaintiff has failed to plead any claim pursuant to which he would be entitled to that form of damages.

This Motion is brought pursuant to this Notice of Motion and Motion; the Memorandum of Points and Authorities and Request for Judicial Notice filed herewith, and on such other or further matters as may be presented at the hearing of this matter. This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on December 7, 2011.

Dated:  December 8, 2011          WILLENKEN WILSON LOH & LIEB LLP


By:*/s/ William A. Delgado*
William A. Delgado
Attorneys for Defendants OVERSEE.NET,
JEFFREY KUPIETZKY, and LAWRENCE NG

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................... 1

II.     SUMMARY OF THE CASE ................................................................. 2

III.    PROCEDURAL BACKGROUND ........................................................ 3

    A.   Dismissal of the FAC.................................................................... 3

    B.   Dismissal of the SAC.................................................................... 3

IV.    SUMMARY OF THIRD AMENDED COMPLAINT ........................... 4

    A.   Amended Fraud Claim.................................................................. 4

    B.   Amended Conversion Claims. ...................................................... 9

V.     LEGAL STANDARD ......................................................................... 10

VI.    ARGUMENT ...................................................................................... 10

    A.   The Fifth Claim for Fraud Should be Dismissed.......................... 10

        1.   The Fifth Claim Still Seeks Damages for Breach of Cahn's Contracts .................................................................. 11

        2.   The Fifth Claim for Fraud Should Be Dismissed Because it Attempts to Turn a Breach of Contract Claim Into a Tort Claim ...................... 12

        3.   The Supposed Misrepresentations Are Non-Actionable, Vague Forecasts and Opinions..................................................... 14

        4.   Cahn's Fraud Claims Are Not Pleaded With Particularity.................. 18

        5.   Cahn's Claims Are Barred by the Parol Evidence Rule ...................... 19

    B.   Plaintiff's Claims for Conversion Should Be Dismissed Without Leave To Amend. .................................................................................... 21

        1.   Plaintiff Did Not Cure the Defects In His Sixth Claim For Conversion. ....................................................................... 21

        2.   Plaintiff's Seventh Claim Should Be Dismissed Without Leave To Amend............................................................................ 23

VII.   PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE

STRICKEN. ........................................................................................ 24

VIII. CONCLUSION ................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bell Atlantic Corp. v. Twombly,*
    500 U.S. 544 (2007)................................................................................ 10

*Blake v. Dierdorff,*
    856 F.2d 1365 (9th Cir. 1988) ............................................................ 19

*Branch v. Tunnell,*
    14 F.3d 449 (9th Cir. 1994) ................................................................ 10

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ................................................................ 10

*Cusano v. Klein,*
    280 F. Supp. 2d 1035 (C.D. Cal. 2003) ......................................... 12, 14

*Durning v. First Boston Corp.,*
    815 F.2d 1265 (9th Cir. 1987) ............................................................ 10

*Erikson v. Pardus,*
    551 U.S. 89 (2007)................................................................................ 10

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) .................................... 15, 18, 19

*Ileto v. Glock, Inc.,*
    349 F.3d 1191 (9th Cir. 2003) ............................................................ 10

*In re GlenFed, Inc. Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994) ............................................................ 18

*McGehee v. Coe Newnes/McGehee UCL,*
    2004 WL 2452855 at *2 (N.D. Cal. 2004) ......................................... 12

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ................................................................ 19

*Ortega v. Toyota Motor Sales, USA, Inc.,*
    572 F. Supp. 2d 1218 (S.D. Cal. 2008).................................................................. 23

*Townsend v. Columbia Operations,*
    667 F.2d 844 (9th Cir. 1982) ............................................................................ 10

*U.S. v. Stonehill,*
    83 F.3d 1156 (9th Cir. 1996) ............................................................................ 13

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .......................................................................... 18

*Wasco Products, Inc. v. Southwall Technologies, Inc.,*
    435 F.3d 989 (9th Cir. 2006) ............................................................................ 21

*Wilkerson v. Butler,*
    229 F.R.D. 166 (E.D. Cal. 2005) ...................................................................... 24

**State Cases**

*Alling v. Universal Mfg. Corp.,*
    5 Cal. App. 4th 1412 (1992) ............................................................................. 20

*AmerUS Life Ins. Co. v. Bank of America, N.A.,*
    143 Cal. App. 4th 631 (2006) ........................................................................... 21

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) ....................................................................................... 12

*Banco do Brasil v. Latian,*
    234 Cal. App. 3d 973 (1991) ............................................................................ 20

*Bono v. Clark,*
    103 Cal.App.4th 1409 (2002) ........................................................................... 22

*BP Alaska Exploration, Inc. v. Superior Court,*
    199 Cal. App. 3d 1240 (1988) .......................................................................... 16

*Casa Herrera, Inc. v. Beydoun,*
    32 Cal.4th 336 (2004) ...................................................................................... 19

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
  43 Cal. 4th 375 (2008) ................................................................................ 22

*Conrad v. Bank of America*,
  45 Cal. App. 4th 133 (1996) ...................................................................... 20

*Ehrlich v. Menezes*,
  21 Cal. 4th 543 (1990) ................................................................................ 12

*Engalla v. Permanente Medical Group, Inc., supra*,
  15 Cal.4th at p. 976 .................................................................................... 15

*Ford v. Shearson Lehman/American Express, Inc.*,
  180 Cal. App. 3d 1011 (1986) .................................................................... 14

*Foreman & Clark Corp. v. Fallon*,
  3 Cal.3d 875 (1971) .................................................................................... 15

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ................................................................................ 21

*Haigler v. Donnelly*,
  18 Cal. 2d 674 ............................................................................................ 23

*Hall v. Time Inc.*,
  158 Cal.App.4th 847 (2008) ...................................................................... 16

*Lovejoy v. AT&T Corp.*,
  92 Cal. App. 4th 85 (2001) ........................................................................ 18

*Michelson v. Hamada*,
  29 Cal. App. 4th 1566 (1994) .................................................................... 23

*Mirkin v. Wasserman*,
  5 Cal.4th 1082 (1993) ................................................................................ 15

*Naftzger v. American Numismatic Society*,
  42 Cal.App.4th 421 (1996) ........................................................................ 22

*Neu-Visions Sports, Inc. v. Soren/McAddam/Bartells*,
  86 Cal. App. 4th 303 (2000) ...................................................................... 15

*Pacesetter Homes, Inc. v. Brodkin,*
    5 Cal. App. 3d 206 (1970) ........................................................... 15

*Price v. Wells Fargo Bank,*
    213 Cal. App. 3d 465 (1989) ................................................ 14, 20

*Shahood v. Cavin,*
    154 Cal. App. 2d 745 (1957) ....................................................... 23

*Strasberg v. Odyssey Group, Inc.,*
    51 Cal.App.4th 906 (1996) .......................................................... 22

*Tarmann v. State Farm Mut. Auto Ins. Co.,*
    2 Cal. App. 4th 153 (1991) ......................................................... 14

*Vu v. Cal. Commerce Club, Inc.,*
    58 Cal. App. 4th 229 (1997) ........................................................ 24


**Rules**

Fed. R. Civ. P. 9(b) ....................................................................... 18

Federal Rule of Civil Procedure 12(b)(6) ..................................... 10

Federal Rule of Civil Procedure 12(f) .......................................... 24

Fed. R. Civ. P. 15(d) ..................................................................... 23

**Statutes**

Cal. Civ. Code § 1625 ............................................................ 14, 17

Cal. Civ. Code § 1710(1) .............................................................. 18

Cal. Code Civ. Proc. § 1856(a) .................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Monte Cahn seeks millions of dollars in bonuses from defendant Oversee.net ("Oversee").  Cahn's bonus opportunities, however, were contingent on the financial performance of Domain Systems, Inc. dba Moniker.com ("Moniker").  Cahn plainly recognizes that his contractual bonus rights were conditioned on Moniker performance being consistent with what turned out to be Cahn's wildly inflated projections.  Cahn is thus owed nothing under the Management Incentive Plan ("MIP") incorporated by reference into the Employment Agreement. Cahn seeks to evade the terms of the parties' agreements by resorting to specious claims of fraud against Oversee and two of its former officers.  But, Oversee negotiated to make Cahn's bonus opportunities contingent on the truthfulness of Cahn's projections.  When those projections proved false, Cahn lost his bonus rights.  No amount of fanciful pleading can change the parties' negotiated deal.

This is now Cahn's fourth attempt to plead a viable basis to convert his breach of contract claims into tort claims.  Like his previous three complaints, Cahn's Third Amended Complaint ("TAC") continues to allege that Cahn suffered damages because he did not receive bonuses under the MIP.  His claim against Oversee, if one exists, is for breach of contract.  Cahn's written Employment Agreement and the MIP state that they are integrated documents.  All of the parties' representations and agreements are superseded by the documents; either they are expressed as contractual terms, or they are eliminated by the parties' failure to include them.

As is shown below, the TAC is a particularly disingenuous effort to cure an incurable problem.  Cahn adds little to his existing allegations.  What little he does add fails to support a fraud claim.  Mostly, he has simply changed the order of the representations he alleges in order to conceal the fact that he continues to seek to sue the Defendants over precisely the same representations – all of which are either

1 | incorporated into the terms of the Employment Agreement and MIP or superseded by
2 | virtue of being omitted from those documents.

3 |    Cahn's conversion claims also continue to incorporate the flaws that supported
4 | their dismissal in Cahn's Second Amended Complaint ("SAC").  Those claims also
5 | must also be dismissed.

6 | **II.**    **SUMMARY OF THE CASE**

7 |    As with Cahn's earlier complaints, the TAC alleges a series of claims arising
8 | from defendant Oversee's acquisition of Moniker.  Cahn contends that Oversee
9 | breached three separate agreements under which Cahn claims he was entitled to
10 | compensation.  The most significant of the documents is the MIP.  The MIP is not a
11 | contract directly between Cahn and Oversee.  Rather, it is an Oversee incentive plan in
12 | which Cahn's Employment Agreement gives him participation rights.  Collectively, the
13 | Employment Agreement and the MIP establish the terms of Cahn's employment at
14 | Oversee, including his rights to compensation.  Both of those documents contain broad
15 | integration clauses that state clearly that they supersede all prior representations and
16 | agreements.

17 |    Cahn alleges that Moniker's operations and results were manipulated in order to
18 | prevent Cahn from reaching his MIP compensation targets.  Cahn's efforts to plead a
19 | fraud claim amount to little more than alleging that the Defendants promised him that
20 | he would be given a fair opportunity to earn his contractual incentive compensation.
21 | This Court has twice reviewed Cahn's efforts to turn basic contract claims into claims
22 | for fraud and has twice concluded that Cahn's efforts failed.  Nothing has changed with
23 | the TAC.

24 |    Cahn also has failed to address the shortcomings of his conversion claims.  His
25 | first conversion claim is still time-barred, and his second conversion claim (now
26 | unlabeled in the body of the complaint) fails to allege a sum certain and cannot be filed
27 | without leave of court – a request that Cahn still has not made and the Court has not
28 | granted.

III.   **PROCEDURAL BACKGROUND**

    A.   **Dismissal of the FAC.**

      By its Order regarding the FAC, the Court dismissed Cahn's claims for Breach of the Implied Covenant of Good Faith and Fair Dealing (4th Claim); Intentional and Negligent Misrepresentation (6th and 8th Claims); Conversion (9th Claim); and Statutory Unfair Competition (10th Claim). The FAC did not contain a Seventh Claim. Following the Court's Order granting Defendants' Motions to Dismiss [Dkt. 22], Cahn was left with three contract claims and a claim for an accounting.

    B.   **Dismissal of the SAC.**

      The SAC abandoned Cahn's Fourth, Eighth and Tenth Claims for, respectively, Breach of the Implied Covenant of Good Faith and Fair Dealing, Negligent Misrepresentation, and Statutory Unfair Competition. Cahn attempted to revive his Sixth Claim for Intentional Misrepresentation (re-labeled as his Fifth Claim for "Fraud") and his Ninth Claim (renumbered as his Sixth Claim) for Conversion. Cahn also alleged a supplemental conversion claim (Seventh Claim), allegedly arising from events transpiring between August 16 and August 31, 2011.

      Factually, the allegations in the SAC remained virtually unchanged from the FAC. In an effort to conceal the lack of change, Cahn reformatted some of his allegations and repeatedly added to his factual allegations speculative contentions about the Defendants' states of mind, but, otherwise, he did little other than to allege additional bases to contend that Oversee breached the MIP.

      Once again, the Court dismissed Cahn's tort claims. [Dkt. 49]. The Court held that Cahn had failed to allege a viable fraud claim, that his Sixth Claim for Conversion was time-barred, and that his Seventh Claim was added in violation of Fed. R. Civ. P. 15(d) and was not adequately pleaded. Although the Court again dismissed these claims without prejudice, Cahn did not seek, and the Court did not grant, leave to file supplemental claims.

As is shown below, the TAC does not cure any of the defects recognized in the Order granting Oversee's Motions to Dismiss the Second Amended Complaint.

## IV.   SUMMARY OF THIRD AMENDED COMPLAINT.

Cahn's TAC is substantively indistinguishable from his earlier pleadings. He continues to seek to pursue fraud claims based on vague alleged representations that are superseded by the parties' writings. He continues to pursue two conversion claims, one of which is barred by the statute of limitations, and the other of which is neither substantively nor procedurally proper (and, now, even lacks the "conversion" label).

### A.   Amended Fraud Claim.

The "amendments" to Cahn's Fifth Claim for Fraud confirm that Cahn has no chance of ever pleading a viable fraud claim. Although significantly re-organized, Cahn's allegations are substantively unchanged. He continues to allege a combination of: (i) vague aspirational forecasts; (ii) specific representations that are subsumed and preempted by the Employment Agreement and the MIP; and (iii) incoherent arguments theorizing that, at the same time, Oversee pursued wholly inconsistent goals of seeking to mislead Cahn into accepting employment, while really wanting him gone from the company. The amendments are summarized below.

Paragraph 69 collects the alleged misrepresentations on which Cahn bases his fraud claim. As is shown in the chart, below, Cahn actually identifies only one new, and wholly immaterial, alleged misrepresentation. *See*, TAC, ¶ 73. The balance of the amendments consists of wholesale re-shuffling of the same representations that this Court has twice ruled to be non-actionable:

| SAC ¶ | Allegation | TAC ¶ | Change (if any) |
|---|---|---|---|
| 15, 65.m. | "Throughout the negotiations, Ng and Kupietzky, and Oversee represented to Cahn that Oversee could fully integrate, support and enhance the business activities of Moniker's operations." | 69.a. | "~~Throughout the negotiations,~~ Ng and Kupietzky~~, and Oversee~~ represented to Cahn that Oversee could fully integrate, support, and enhance the business activities of Moniker's operations." |
| 65.k. | "Kupietzky and Ng represented that there would be a seamless transition of Moniker's business activities into Oversee and that the Moniker staff would prosper by the merger of the companies;" | 69.b. | "Kupietzky and Ng represented that there would be a seamless ~~transition of Moniker's business activities~~ three month integration of Moniker's business activities into Oversee and that the Moniker staff would prosper by the merger of the companies." |
| 65.a. | "Kupietzky and Ng represented that the employment offer and opportunity presented to Cahn was more lucrative than any other offers currently available to him;" | 69.d. | Unchanged |
| 65.b. | "Kupietzky and Ng represented that Cahn would be establishing a long-term prosperous relationship with Oversee and that Oversee would ensure that Cahn had a viable platform to develop and grow his various business opportunities;" | 69.f. | Unchanged |
| 65.c. | "Kupietzky and Ng represented that in addition to the MIP, Cahn could expect additional salary, bonuses, commission, and other lucrative business opportunities through his relationship with Oversee;" | 69.g. | Unchanged |

| SAC ¶ | Allegation | TAC ¶ | Change (if any) |
|---|---|---|---|
| 65.d., 65.e. 16. 17. | "Kupietzky represented that joining Oversee would maximize Moniker's profitability because of [the marketing, public relations resources, technology and integration] provided by Oversee;" "Ng represented that joining Oversee would maximize Moniker's profitability [because of the increased staffing and company resources that Oversee would provide Moniker];" "Kupietzky assured Cahn that, if Cahn joined Oversee, Oversee would not terminate or eliminate the positions of the Moniker employees." "During the merger discussions, Ng made statements to Cahn regarding his view that Moniker, pre-merger, was 'understaffed' and its employees 'overworked.' Based on this assessment, Ng promised Cahn that, if he joined Oversee, the merger with Oversee would provide Moniker with the resources and staffing it needed to flourish in the market." | 69.h. | "Ng and Kupietzky represented that joining Oversee would maximize Moniker's profitability [because of the increased staffing and customer resources that Oversee would provide Moniker], including [the marketing, public relations resources, technology and integration] that would be provided by Oversee. Oversee through Ng, Jeff Navach, and Kupietzky, represented that Oversee would increase Moniker's staff to 36 within months of closing the transaction." |
| 65.j. | "Kupietzky and Ng represented that Cahn would directly report to Ng and that Ng intended to remain as the CEO of Oversee for the foreseeable future;" | 69.i. | Unchanged |
| 65.g. | "Kupietzky and Ng represented that Cahn would be treated in the same manner as all of the other Oversee executives;" | 69.j. | Unchanged |

| SAC ¶ | Allegation | TAC ¶ | Change (if any) |
|---|---|---|---|
| 22. & 65.i. | "Similarly, during the negotiations, other defendant representatives, including Todd Greene and Hamed Meshki, represented and assured Cahn that if the performance goals for Oversee EBITDA could not be determined before the merger, the parties would meet in good faith and develop objective criteria for determining these goals." | 69.l.; 69.k. | l: [unchanged from ¶ 22, 65.i.] k: "<u>Kupietzky represented to Cahn that Oversee would set the Oversee EBITDA in consultation with Cahn.</u>" (Merely a restatement of 69.l.). |
| 65.i. | "Kupietzky represented to Cahn during the negotiations that the overall Oversee EBITDA in the MIP would adjusted, either up or down, from the time the merger took place throughout the term of the MIP, and those calculations would be the controlling benchmarks." | 69.l. | Unchanged |
| | | 69.m. | "Ng and Kupietzky represented to Cahn that the Board would certify the performance results under the MIP." (New, but measurement of performance and the Board's role are expressly addressed in, and superseded by, the MIP, which, *inter alia,* states that the final measurement will be based on audited financials. (MIP §§ 4(a), 15(f))) |
| 65.l. | "Kupietzky and Ng represented that Cahn would enjoy a leadership role in Oversee;" | 69.o. | Unchanged |

| SAC ¶ | Allegation | TAC ¶ | Change (if any) |
|---|---|---|---|
| | | 69.q | "During the negotiations, Oversee, through Kupietzky and Ng, promised to make changes in the MIP in the event that Cahn's responsibilities changed." (New, but substantively no different than SAC ¶¶ 22, 65.i. (quoted above)). |
| 15. | "Throughout the negotiations, Ng and Kupietzky and Oversee represented to Cahn that Oversee could fully integrate, support, and enhance the business activities of Moniker's operations. These representations were knowingly false . . . . Among other things, Ng and Kupietzky knew that Oversee had a contract with Google that would render it impossible for TrafficClub to continue to operate in the same manner after the merger. Ng and Kupietzky were aware that Oversee's contract with Google was inconsistent with Traffic Club's business mode and operations." | 71. | <u>In 2007, when Oversee, Kupietzky, and Ng were discussing the acquisition with Cahn, they represented that the TrafficClub product could be integrated into Oversee . . . . These representations were knowingly false . . . . Defendants knew that TrafficClub employed business practices that were inconsistent with the terms of Oversee's contract with Google.</u>" (Re-worded; no substantive change). |
| | | 73. | "During the negotiations in 2007, Kupietzky, Ng, Armstrong and other representatives of Oversee informed Cahn that Oversee was reducing the sales price for Moniker so that it would have funds available for the MIP." (New). |

The above chart identifies all of the *representations* alleged in Count Five of the TAC. Although Count Five contains numerous other allegations – both in the sub-

paragraphs identified above and in other paragraphs – those allegations either repeat the allegations in paragraph 69 or purport to identify the true facts that make the representations allegedly untrue.[1]  Thus, not only does Cahn's amendment misleadingly scramble and re-order allegations to provide the appearance of actual revision, but Cahn continues to fail to allege actionable misrepresentations in support of his claim for fraud.

### B.    Amended Conversion Claims.

Cahn's Sixth Claim for Conversion is virtually unchanged.  Cahn still alleges that, due to a mix-up, Oversee wound up with approximately 4,500 domain names owned by Cahn, and Oversee still owns 200 of them.  TAC, ¶¶ 88, 93; SAC, ¶¶ 77, 80.

Cahn has simply added the allegation (without alleging supporting facts), that Oversee owed Cahn fiduciary duties and that it concealed the alleged conversion from Cahn.  These additional allegations do not include facts and, as discussed below, are legally insufficient.

Cahn's amendments to his Seventh Claim for Conversion are completely non-responsive to the grounds for dismissal.  Cahn primarily seeks to add the allegation that Oversee owed Cahn fiduciary duties and/or was a party to an implied-in-fact contract.  Cahn also alleges that he requires injunctive relief to address conduct that Cahn specifically alleges lasted two weeks and terminated on August 31, 2011.  Perhaps the most notable revision to the Seventh Claim is that, although the caption continues to identify it as a claim for conversion, the body of the complaint fails to say what cause of action Cahn is pursuing.  Furthermore, none of Cahn's revisions addresses the fact that, before Cahn can plead a supplemental cause of action, he must seek leave of court to do so.  He still has not sought leave of court.

---

[1]    Paragraph 69(r), (s), (t), (v), and (w), paragraphs 72 and 81, and amendments to paragraph 27(a), (b), (e), and (f) also allege that Oversee diverted revenues from the Moniker business segments.  Not only is this allegation not tied to representations, but the recognition of revenues is addressed expressly in the MIP, and these allegations thus arise, if at all, under the MIP.  *See,* MIP, § 14(a).

## V.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  In determining whether the complaint's allegations are sufficient to state a claim for relief, all allegations of material fact are taken as true. *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Moreover, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  The plaintiff's obligation to provide the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, the Court is not limited solely to the allegations of the complaint, and may take judicial notice of documents that are referenced in the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  In addition, it is well established that a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).  "[W]hen [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading," and the document may be considered in ruling on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds.

## VI.    ARGUMENT

### A.    The Fifth Claim for Fraud Should be Dismissed

Cahn's Fifth Claim for Fraud continues to seek to turn contract claims into fraud claims, while ignoring the terms of the parties' written contracts, disregarding the parol

evidence rule, and continuing to rely on evasive alleged representations that could never support a claim for fraud.  Cahn signed an Employment Agreement that, *inter alia,* secured his participation in the MIP.[2]  If Oversee breached the Employment Agreement and/or the MIP and caused Cahn damage, then Oversee will be held liable on Cahn's First Claim for Relief.  But, Cahn cannot turn a contract dispute into a tort claim by arguing that Oversee and the individual defendants made representations to him that, as affirmed by Cahn's signature on the Employment Agreement, were superseded and preempted by the written contracts.

### 1. THE FIFTH CLAIM STILL SEEKS DAMAGES FOR BREACH OF CAHN'S CONTRACTS.

As the chart in Section IV.A., above, shows, Cahn continues to make the *same* factual allegations that this Court has now twice rejected.  He continues to allege that Oversee failed to provide adequate support to Moniker, to give Cahn the authority and position he believed he deserved, and to pay him what he claimed he was owed under the MIP.  TAC, ¶ 69.  Cahn also carries over the express allegation that Defendants and others represented to him that the MIP provisions would be amended (TAC, ¶69 (k), (l)) – an allegation expressly foreclosed by the contractual integration clauses and Cahn's own admission that the MIP was a fully-integrated agreement (TAC, ¶ 41).  In other words, he does not dispute that Oversee, in fact, offered him an advantageous employment opportunity; he just claims that Oversee did not live up to its offer, the terms of which are memorialized in the MIP and the Employment Agreement.

Because the claim hasn't changed, for the same reasons described in Defendants' prior motions to dismiss, the TAC should be dismissed with prejudice.  In particular, the Fifth Claim for Fraud is merely a restated breach of contract claim, the alleged misrepresentations are nothing more than non-actionable opinions and forecasts, and none of the alleged misrepresentations is pleaded with requisite Rule 9 specificity.

---

[2]     The MIP is not a signed contract; it is simply an incentive plan created by Oversee, eligibility for which is secured by Cahn's Employment Agreement.

## 2. THE FIFTH CLAIM FOR FRAUD SHOULD BE DISMISSED BECAUSE IT ATTEMPTS TO TURN A BREACH OF CONTRACT CLAIM INTO A TORT CLAIM.

As a general rule, California does not authorize tort recovery for breach of contract claims. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514-15 (1994) (recognizing fundamental differences between contract and tort cases). In contract actions, "[t]he measure of damages is limited to those losses which might be reasonably foreseen by the parties." *Ehrlich v. Menezes*, 21 Cal. 4th 543, 553 (1990). "Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. An omission to perform a contractual obligation is never a tort, unless that omission is also an omission of a legal duty." *Id.* at 551 (citations omitted). "The California Supreme Court has repeatedly held that '[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.'" *McGehee v. Coe Newnes/McGehee UCL*, 2004 WL 2452855 at *2 (N.D. Cal. 2004) (citing *Applied Equipment*, 7 Cal. 4th at 515). Here, Plaintiff has not alleged any "independent duty" because none exists.

*Cusano v. Klein*, 280 F. Supp. 2d 1035 (C.D. Cal. 2003), is instructive. There, the court dismissed the plaintiff's fraud claims because the fraud claims did no more than allege breaches of contractual duties. The plaintiff and defendants in *Cusano* entered into a written contract whereby defendants were obligated to render quarterly accounting statements to plaintiff for plaintiff's share of profits derived from worldwide exploitation of plaintiff's songs. *Id.* at 1037-38. The plaintiff alleged breach of contract and fraud based on defendants' alleged improper accounting for royalties due to plaintiff, contrary to defendants' representations that they would faithfully administer the royalty account. *Id.* at 1039. The Court stated that "a fraud claim fails when it merely states an alleged breach of contractual duties and does not

1    concern representations that are collateral or extraneous to the parties' contract."[3] *Id.*

2    at 1042.  The Court held that the plaintiff could not "maintain his claims for fraud and

3    negligent misrepresentation against [the defendant] because they merely state a breach

4    of contractual duties…  The claims against [defendants] do not involve representations

5    collateral or extraneous to the employment contract." *Id.*

6       Here, Cahn has tried to disguise his contract claim as a fraud claim by

7    attempting to add allegations that his losses occurred as a result of (i) Defendants

8    "taking for themselves the full benefit of Moniker's great public reputation and

9    industry value;" and (ii) being induced to forego other opportunities.  TAC, ¶¶ 76, 80.

10    But, that is mere obfuscation.  To the extent he is claiming that his loss is due to

11    Oversee's actions causing damage to Moniker, he has no standing to allege damages to

12    Moniker.[4]  To the extent that Cahn was induced to forego other opportunities, Cahn is

13    still alleging a claim for breach of the MIP.  His argument is that he expected to earn

14    more under the MIP (as compared to his other opportunities), so he chose to stay on

---

3    The Court applied New York law, which is identical in all pertinent respects to California law on this issue.

4    *See, e.g., U.S. v. Stonehill,* 83 F.3d 1156, 1160 (9th Cir. 1996) ("Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party." (citations omitted)).

with Oversee after Oversee acquired Moniker.  Therefore, his damage, if any, lies in any failure to receive what he was due under the MIP.[5]

Put simply, as in *Cusano*, Plaintiff's fraud claims do **not** involve duties, actions or representations collateral or extraneous to the agreements at issue.  Cahn's theory is that the Defendants misled him about how much money he would make with Oversee.  Nevertheless, his rights to compensation with Oversee are governed by contracts (as alleged in Cahn's first three claims).  Thus, these representations, assuming they were made, are not separate from the contracts; they were part of the contract negotiation process and superseded, as a matter of law, by the written agreements. Cal. Civ. Code § 1625.

### 3. THE SUPPOSED MISREPRESENTATIONS ARE NON-ACTIONABLE, VAGUE FORECASTS AND OPINIONS.

To be actionable, a misrepresentation "must ordinarily be as to past or existing material facts.  Predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (internal quotations and citations omitted) (demurrer properly sustained where the alleged misrepresentation involved promises of future conduct and not past or existing material fact); *Glen Holly Entm't,*

---

[5] He is also conflating his contract and tort theories.  He clearly wants to measure his damages based on his rights, if any, to payment under the MIP.  Yet, to the extent he is claiming fraud in the inducement, his theory is that he was induced to sign an agreement that he would not have signed if he had known the true facts, and his remedy (not pursued in the TAC) would be to rescind the MIP. *See, Ford v. Shearson Lehman/American Express, Inc.,* 180 Cal. App. 3d 1011, 1028 (1986), *rv. denied* ("In the usual case of fraud, where the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable*.  In order to escape from its obligations the aggrieved party must *rescind,* by prompt notice and an offer to restore the consideration received, if any.") (emphasis in original; citation omitted); *see also Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 484 (1989).

1   *Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  Indeed, it is

2   hornbook law that statements regarding future events are merely deemed opinion.

3   *Neu-Visions Sports, Inc. v. Soren/McAddam/Bartells*, 86 Cal. App. 4th 303, 309-10

4   (2000).  Accordingly, California courts have held that predictions about future sales,

5   profits or value are non-actionable expressions of opinion.  *See, id.* (holding that

6   statement that property was worth $5 million was non-actionable opinion, because it

7   essentially was a prediction that an appraiser would value the property at $5 million);

8   *Foreman & Clark Corp. v. Fallon*, 3 Cal.3d 875, 882 (1971) (affirming trial court's

9   finding that statements regarding lessors' future sales were mere expressions of

10   opinion); *Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206, 210 (1970) (affirming

11   trial court's finding that statements regarding the future rental income that might be

12   generated after the completion of unfinished duplex units were non-actionable

13   statements of opinion).

14   Furthermore, generalized, vague allegations do not adequately plead actionable

15   misrepresentations.  *See, e.g., Glen Holly Entm't*, 343 F.3d at 1015-16 (affirming

16   dismissal of fraud claims that were "generalized, vague and unspecific assertions").

17   Cahn must allege with particularity a specific representation of the type someone

18   would justifiably rely upon under the circumstances and actual justifiable reliance.

19   In a fraud case, justifiable reliance is the same as causation, thus,

20   '[a]ctual reliance occurs when a misrepresentation is an immediate

21   cause of [a plaintiff's] conduct, which alters his legal relations, and

22   when, absent such representation, the plaintiff would not, in all

23   reasonable probability, have entered into the contract or other

24   transaction.' (*Engalla v. Permanente Medical Group, Inc., supra*,

25   15 Cal.4th at p. 976, 64 Cal.Rptr.2d 843, 938 P.2d 903; *see Mirkin*

26   *v. Wasserman* (1993) 5 Cal.4th 1082, 1092, 23 Cal.Rptr.2d 101, 858

27   P.2d 568 ["specific pleading is necessary to 'establish a complete

28

1   causal relationship' between the alleged misrepresentations and the

2   harm claimed to have resulted therefrom"].)

3   *Hall v. Time Inc.,* 158 Cal.App.4th 847, 855 n. 2 (2008) (brackets in original; internal

4   quotations omitted).

5       In dismissing Cahn's SAC, the Court noted that Cahn failed to plead fraud with

6   particularity.  The Court disposed of the majority of Cahn's claims with ease,

7   recognizing that he had come nowhere close to alleging fraud.  [Dkt. 49, p. 4.]

8       The Court did, however, note that Cahn's allegations that Oversee's Google

9   contract undermined TrafficClub's operations potentially could be further defined to

10  cure their lack of particularity.  *Id.* Cahn still has not cured the problem with this

11  allegation.  Cahn's TrafficClub amendments appear primarily in paragraph 14 of the

12  TAC.  They add nothing.  Cahn explains what TrafficClub did and he alleges that

13  Oversee's Google contract would have required changes in those operations.  He fails

14  to allege, however, that Defendants made false statements about the Google contract or

15  that Cahn acted or failed to act in any way in reliance on any (non-alleged) false

16  statements about that contract.

17      A review of the misrepresentations collected in Cahn's Fifth Claim for Relief, at

18  TAC, ¶¶ 69, 71 and 73, reinforce the shortcomings in Cahn's complaint.  They

19  primarily consist of statements that this Court previously described as "vague and

20  unspecific, and constitute non-actionable puffery."  [Dkt. 49, p. 4.]  They include

21  Defendants supposedly telling Cahn that:

22      69.b.  The transition would be "seamless" – a vague opinion and forecast.

23      69.d.  Cahn's employment offer was more lucrative than his other

24          opportunities – clearly an opinion and also one on which Cahn

25          could not reasonably rely.  *See, BP Alaska Exploration, Inc. v.*

26          *Superior Court*, 199 Cal. App. 3d 1240, 1264 (1988) ("If a party

27          knows the true facts, he cannot justifiably rely on the alleged

28          misrepresentations.").

69.f.   The parties' relationship would be "prosperous" and would "develop and grow" –a vague opinion and forecast.

69.g.   Cahn could expect additional compensation beyond the MIP – this allegation is barred by ¶ 38 of the Complaint and Civil Code § 1625.

69.h.   Cahn would "maximize Moniker's profitability"– a vague opinion and forecast.

69.i.   Cahn would report directly to Ng, who was CEO – Cahn is complaining that Ng retired, and unless the law supports Ng's indentured servitude, that is not an actionable misrepresentation.

69.j.   Cahn would be treated like other executives – a vague opinion and forecast.

69.l.   The MIP would be revised to allow Cahn to hit his targets.  This claim is barred by ¶ 41of the TAC (admitting that the MIP is a fully-integrated agreement) and Civil Code § 1625.

69.m.   Ng and Kupietzky represented that the Board of Directors would certify MIP performance results.  This is an issue expressly addressed in, and thus superseded by, the MIP.  *See,* MIP, § 4.

69.o.   Cahn would be a leader – a vague opinion and forecast.

69.q.   Oversee agreed to revise the MIP if Cahn's responsibilities changed.  Amendments to the MIP are also expressly addressed in the MIP.  *See,* MIP, § 9.

71.   Defendants represented that TrafficClub could be integrated into Oversee even though TrafficClub business practices were inconsistent with Oversee's contract with Google.  This allegation is not substantively changed from the SAC, ¶ 15, and it fails to plead an actual specific misrepresentation of an existing fact.

73.    Defendants and others stated that the purchase price paid for Moniker was reduced to make funds "available for the MIP." It is unclear what this means, but there is no allegation that Oversee used a lack of funds as a reason for not paying Cahn.

In short, Cahn's fraud allegations amount to descriptions of generalized discussions during contract negotiations[6] that were never reduced to writing, could not justifiably be relied upon, never created enforceable commitments, and in the case of some of his minor additional allegations are *non-sequiturs*. They are not "fraud" claims.

### 4.  CAHN'S FRAUD CLAIMS ARE NOT PLEADED WITH PARTICULARITY.

As this Court previously recognized, claims for fraud[7] must be alleged with particularity. Fed. R. Civ. P. 9(b); *Glen Holly Entm't,* 100 F.Supp.2d at 1093. To properly plead a fraud claim, the complaint must adequately specify the statements that are allegedly false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) ("averments of fraud must be accompanied by the who, what, where, when, and how of the misconduct charged" (citations omitted)). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and *why* it

---

[6]    Cahn expressly alleges that the representations on which he sues all were made to induce him to sign his Employment Agreement with Oversee, an admission that only highlights the fact that Cahn's fraud claims are entirely derivative of, and superseded by, his contract claims. *See, e.g.,* TAC, ¶ 13, 20, 24.

[7]    Intentional misrepresentation is the suggestion, as a fact, of that which is not true, by one who does not believe it to be true. Cal. Civ. Code § 1710(1). The elements are: (1) misrepresentation of past or existing fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *See, e.g., Lovejoy v. AT&T Corp.,* 92 Cal. App. 4th 85, 93 (2001).

is false." *Glen Holly Entm't, Inc.*, 100 F.2d at 1095 (emphasis added); *see also, id.* at 1093 ("The alleged misrepresentation must also ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud."); *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (holding that Rule 9(b) requires specific descriptions of the representation made and the reasons for their falsity). Averments that fail to meet these exacting standards must be dismissed. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

As with Cahn's prior complaints, the TAC simply does not meet this exacting standard. While the TAC may refer to the "who" (i.e., Defendant Ng and/or Kupietzky), it does not specifically describe the contents of the alleged misrepresentation or state where, when, or how the Defendants allegedly conveyed them. Cahn's fraud claim bears all the marks of a garbage dump of vague statements or off-hand remarks: (i) that either Cahn was unable to get Defendants to commit to in writing; (ii) in which Cahn placed so little reliance that he didn't bother to request them in writing; or (iii) that never actually were made. Fraud claims must be pleaded with particularity because of the temptation to plead them in just the way Cahn has done here. Having now taken his fourth shot at the issue, he deserves no more opportunities. It is clear that Cahn's claims are contractual, and he should be limited to the bargain he struck.

### 5. CAHN'S CLAIMS ARE BARRED BY THE PAROL EVIDENCE RULE.

As noted above, Cahn admits that the MIP is an integrated agreement, and both it and the Employment Agreement contain broad integration clauses. TAC, ¶ 41; MIP, § 10; Employment Agreement, § 14. There is thus no dispute that the parol evidence rule applies. *See,* Cal. Code Civ. Proc. § 1856(a).[8]

---

[8] Although it appears in the California Code of Civil Procedure, the parol evidence rule is a substantive rule of law. *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 343 (2004).

1    Where a party seeks to allege that it was induced to enter into an agreement

2    through fraudulent representations, "this separate false promise constitutes fraud which

3    may be proven to nullify the main agreement . . . ." *Price v. Wells Fargo Bank*, 213

4    Cal. App. 3d 465, 484 (1989). **However**, a claim for promissory fraud cannot be

5    permitted to serve simply as an alternative cause of action whenever an enforceable

6    contract is not formed. *Conrad v. Bank of America,* 45 Cal. App. 4th 133, 156 (1996).

7    Therefore, case law requires that the promise relate to an issue separate from the

8    matters covered by the parties' contracts. *Price,* 213 Cal. App. 3d at 484 ("if the false

9    promise relates to the matter covered by the main agreement and contradicts or varies

10    the terms thereof, any evidence of the false promise directly violates the parol evidence

11    rule and is inadmissible" (citations omitted)); *accord, Banco do Brasil v. Latian*, 234

12    Cal. App. 3d 973, 1000 (1991) (evidence of supposed oral promise to provide $2

13    million line of credit not described in loan documents is admissible only if it is

14    "independent of or consistent with the written instrument"); *Alling v. Universal Mfg.*

15    *Corp.*, 5 Cal.App.4th 1412, 1436-37 (1992) ("Unless the false promise is either

16    independent of or consistent with the written instrument, evidence thereof is

17    inadmissible").

18    The requirement of contractual independence is fatal to Cahn's claims. All of

19    the allegedly false promises are alleged to have harmed Cahn by undermining his

20    ability to earn incentive bonuses under the MIP. Without the MIP, Cahn would have

21    no claim. His fraud claim is thus *not* independent of the parties' contracts; to the

22    contrary, Cahn's fraud claim is directly *dependent* on the MIP, and it is thus barred by

23    the parol evidence rule.

24

25

26

27

28

**B.**   **Plaintiff's Claims for Conversion Should Be Dismissed Without Leave To Amend.**

    **1.**   **PLAINTIFF DID NOT CURE THE DEFECTS IN HIS SIXTH CLAIM FOR CONVERSION.**

In its Order granting the motion to dismiss Cahn's SAC, this Court held that the California two-year statute of limitations bars Cahn's claims.  [Dkt. 49, p. 6.]  Cahn's attempts to evade the limitations period consist of conclusory assertions and not facts.

As noted in Defendants' prior motions to dismiss, the California discovery rule does *not* apply to a claim for conversion, nor does the owner's ignorance toll the statute; rather, the "statute of limitations for conversion is triggered by the act of wrongfully taking the property." *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006).   California courts will only toll the statute of limitations in a conversion claim if: (1) the defendant commits affirmative acts to fraudulently conceal the theft, or (2) the defendant breaches a fiduciary duty to the plaintiff by failing to disclose the theft.  *Id.*  Indeed, this Court specifically noted that, to toll the limitations period, Cahn would need to plead facts showing concealment.  [Dkt. 49, p. 5 ("To invoke the discovery rule, the plaintiff 'must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence.' *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005).").  The facts supporting tolling must be pled with particularity. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("'Under either California or federal authority, the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment' in order to toll the statute of limitations.") (citations omitted).  Directly defying this Court's ruling, Cahn's amendment merely reads:  "Cahn only recently discovered this information because of Oversee's concealment."  TAC, ¶ 93.

Cahn's other efforts to salvage his conversion claim consist of two equally insupportable theories.  First, Cahn alleges that a "DNS monetization service provider"

such as Oversee owes a fiduciary duty to domain name owners such as Cahn.  Cahn offers no authority for that proposition, and there is certainly nothing in the description of the relationship between Oversee and Cahn that would appear on its face to give rise to Oversee owing Cahn fiduciary duties.[9]  *See, City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) ("Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf of and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.").

Second, Cahn alleges what appears to be a continuing conversion theory.  That theory, which was also alleged in the SAC, is directly contrary to California law.  As noted above, the conversion statute of limitations commences to run when the taking occurs.  *See, AmerUS Life Ins. Co.*, 143 Cal. App. 4th at 639 ("Under California law, the general rule is well established: the statute of limitations for conversion is triggered by the act of wrongfully taking property"); *Bono v. Clark*, 103 Cal.App.4th 1409, 1433 (2002) ("the statute of limitations for conversion is triggered by the act of wrongfully taking property"); *Strasberg v. Odyssey Group, Inc.*, 51 Cal.App.4th 906, 915-16 (1996) ("it is act of wrongfully taking the property which triggers the statute of limitations"); *Naftzger v. American Numismatic Society*, 42 Cal.App.4th 421, 429 (1996) ("an owner's cause of action accrues when the conversion occurs even if the owner is ignorant of the wrong committed").  Oversee is unable to locate any authority that stands for the proposition that a defendant is guilty of a new act of conversion every day he keeps an item that he has taken.[10]

---

[9]  As Moniker's President, *Cahn* certainly owed *Oversee* fiduciary duties, but the reverse is not true.

[10]  In its order granting Defendants' motions to dismiss the SAC, this Court noted, but failed to accept, Cahn's "continuing conversion" argument. [Dkt. 49 at p. 5.]

### 2. PLAINTIFF'S SEVENTH CLAIM SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

Cahn's Seventh Claim continues to allege conduct that took place between August 16, 2011 and August 31, 2011.  TAC, ¶¶ 99-102.  Cahn filed this action on May 3, 2011.  It is thus beyond dispute that the Seventh Claim for Relief alleges events that, according to Mr. Cahn, transpired after he filed this suit.  It is therefore a Supplemental Claim under Rule 15(d).  Even after this Court dismissed his Seventh Claim based, in part, on Cahn's failure to move for leave to file a supplemental claim, Cahn still has not filed a motion for leave to file a supplemental complaint.  His claim is thus still improper under Fed. R. Civ. P. 15(d).

In addition to the procedural defect, the Seventh Claim remains substantively deficient.  The most obvious defect is that Cahn has now removed the identity of the cause of action from the body of the complaint (although the case caption continues to call it a conversion claim).  *See* TAC, pp. 1, 39, *compare* SAC, at 24:27.  Given that the Seventh Claim largely incorporates the allegations from the Seventh Claim in the SAC, and given that it is identified in the case caption as a claim for conversion, Defendants have little choice but to analyze it as a conversion claim.

As a conversion claim, the Seventh Claim fails because it continues to seek recovery of an unliquidated sum of money.  The law is clear that generalized claims for money are not actionable as conversion; money can only be the subject of an action for conversion if a specific sum capable of identification is involved.  *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008); *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1589 (1994) (refusing to review trial court's order denying submission of conversion claim to jury where plaintiff claiming breach of contract because plaintiff did not allege a "specific, definite sum capable of identification to be recovered"); *Shahood v. Cavin*, 154 Cal. App. 2d 745, 747 (1957) (a claim for

conversion lies "'only for specific chattels wrongfully converted, and not for money had and received for payment of debts, money being the subject of conversion only when it can be described or identified as a specific chattel.'").  Indeed, when money is the subject of a claim for conversion, a plaintiff must plead facts sufficiently describing and identifying the property.  *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997).

Cahn's revisions to his Seventh Claim seek to cure this glaring defect by removing the conversion title from the body of the complaint.  That is not a cure at all. Cahn is still alleging – both according to his SAC and the caption of the TAC – a conversion claim that fails to plead a sum certain, and his claim therefore continues to be invalid. Plaintiff cannot plead a viable conversion claim, and his seventh claim should, therefore, be dismissed without leave to amend.

## VII.   PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN.

Plaintiff seeks punitive damages on his Fifth Claim for Fraud.  TAC, ¶ 83. As described above, that claim lacks merit and the prayer for punitive damages should thus be stricken.  Fed. R. Civ. P. 12(f); *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005) ("A motion to strike is appropriate to address requested relief, such as punitive damages, which is not recoverable as a matter of law").

## VIII. CONCLUSION

Cahn's Fourth attempt to turn a contract dispute into a tort claim should be rejected and the Fifth, Sixth and Seventh Claims for Relief should be dismissed with prejudice.

Dated:  December 8, 2011                WILLENKEN WILSON LOH & LIEB LLP

By: /s/ William A. Delgado
William A. Delgado
Attorneys for Defendants OVERSEE.NET,
JEFFREY KUPIETZKY, and LAWRENCE NG