William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10<br><br>    Defendants. | Case No. CV11-03800 SVW (AGRx)<br><br>**DEFENDANT OVERSEE.NET'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE RE: SETTING OF OVERSEE EBITDA PERFORMANCE GOAL**<br><br>DATE:   January 9, 2012<br>TIME:   10:00 a.m.<br>PLACE: Crtrm. 6<br><br>Complaint Filed:   May 3, 2011<br>Pretrial Conf. Date: January 9, 2012<br>Trial Date:   January 17, 2012 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on January 9, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the above-entitled Court, Defendant Oversee.net ("Oversee") will, and hereby does, move this Court, *in limine*, for an order precluding plaintiff Monte Cahn ("Cahn"), his counsel and witnesses from presenting or eliciting, or making any argument about or references to, any evidence that the board of directors of either ODN Holding Corporation or Overesee.net (collectively "Board") set the target performance goals for Oversee EBITDA in the 2007 Management Incentive Plan ("MIP"), including but not limited to, the contention that the applicable performance goals were the same as those which the Board adopted for budgetary purposes and used in compensating Oversee executives who did not participate in the MIP.

This Motion is brought pursuant to Federal Rules of Evidence 402 and 403, and is made on the grounds that (i) the MIP vests the Board with exclusive and broad discretion in deciding whether to set any Oversee EBITDA performance goal at all, and (ii) the indisputable fact that the Board never set an Oversee EBITDA performance goal for the MIP.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Todd Greene filed on November 16, 2011 (Docket No. 67), the Declaration of Elizabeth Murray filed on November 16, 2011 (Docket No. 97), the Declaration of William A. Delgado , the exhibits attached to the declarations, all pleadings, records and papers on file in this action, such matters of which this Court may take judicial notice, and upon such other evidence and oral argument as may be considered by the Court before or at the hearing on this Motion.

//

//

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on December 2, 2011.

Dated: December 12, 2011          WILLENKEN WILSON LOH & LIEB LLP

By: */s/ William A. Delgado*
William A. Delgado
Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Oversee.net 2007 Management Incentive Plan ("MIP") provides that participants are eligible to receive certain bonus compensation if, *inter alia,* Oversee's EBITDA met certain performance goals. The performance goals for the Oversee Business Segment are not identified in the MIP. They are left as "TBD" – to be determined by the Board. This Motion seeks to exclude two categories of evidence and argument that Plaintiff Cahn apparently intends to offer. First, Mr. Cahn apparently intends to argue that the Oversee Board *did,* in fact, set the Oversee "TBD" performance goals. That argument is not only false, but it contradicts Cahn's complaint. Second, and related to the first argument, Cahn apparently intends to argue that the Board's setting of Oversee budgets that included projections of Oversee EBITDA constituted the MIP Oversee EBITDA goals. His argument is based on the contention that the MIP *required* that the performance goals for Oversee EBITDA in the MIP be identical to any EBITDA goals budgeted for the company. That runs contrary to the plain language of the MIP.

## II. STATEMENT OF FACTS

In December 2007, Oversee acquired a business called Domain Systems, Inc. dba Moniker.com ("Moniker"). Plaintiff was Moniker's CEO and upon acquisition he became President of Moniker. Plaintiff executed an Employment Agreement, which ran from the transaction closing date in December, 2007 until December 31, 2010. Declaration of Todd Greene, filed November 16, 2011 ("Greene Decl."), Ex. E (Docket No. 67).[1] The MIP was "an additional inducement" offered to Cahn (and available to

---

[1] Both the Employment Agreement and the MIP have been filed with the Court various times under seal. Rather than create additional work for the Court and its clerks by seeking to file these documents under seal, yet again, Oversee has elected to simply refer to its previous filings where the documents can be referenced.

other participants) to accept employment with Oversee. TAC, ¶ 21; MIP at Section 5(a), attached as Exhibit C to the Declaration of Elizabeth Murray, filed November 16, 2011 ("Murray Decl."). The Employment Agreement entitles Cahn to participate in the MIP as one of the elements of Cahn's employment compensation. Employment Agreement, ¶ 3(d) (attached as Greene Decl. Ex. E).

The MIP covers three determination periods through December 31, 2010. MIP, Section 15(e). The parties agreed that the terms of the MIP would be interpreted in accordance with California law. *Id*. at Section 13. The MIP is a fully integrated document. *Id*. at Section 10 ("This Plan contains the entire agreement between the parties hereto with respect to the subject matter contained herein, and supersedes all prior agreements or prior understandings, whether written or oral, between the parties relating to such subject matter"); *see also,* Third Amended Complaint (TAC), ¶ 41.

As structured, the MIP provided participants with numerous opportunities to earn bonus compensation provided they made "significant contributions" to continued or improved profitability and growth. MIP at Section 1. Primarily, participants could earn bonuses if one or more of the legacy Moniker business segments met specified financial goals ("Moniker Segment Goals"). *Id*. at Section 3 and Schedule A thereto.

An additional and separate means by which participants could earn bonus compensation under the MIP focused on the overall performance of the entire company, Oversee. However, unlike the Moniker Segment Goals, the parties did not negotiate the Oversee EBITDA Performance Goals. Rather, the setting of those goals was left to the discretion of the Oversee Board of Directors. *Id*. at Section 15(u).

There is no dispute that the Oversee Board never set a MIP Oversee EBITDA Performance Goal. That has been the consistent testimony of the Board members, and Cahn alleges in his complaints that the Board not only failed to set performance goals, but that it never intended to set them. *See* TAC, ¶ 23. Cahn also admits that he never consulted with the Board about setting the Oversee performance goals. *See* Deposition Transcript of Monte Cahn, taken November 15, 2011 ("Cahn Depo.") at 144:17-21 ("I

never spoke to the board or had an opportunity to talk to the board. I was never invited to discuss anything with the board") (attached as Delgado Decl. Ex. D).

Yet, Cahn intends to offer argument that the Oversee Board indirectly set the performance goals for Oversee EBITDA in the MIP when it set annual company budgets. Cahn bases this contention on the argument that the MIP *required* the Board to utilize the same Oversee EBITDA goals set in the company's budgets for purposes of the MIP. He bases this argument on the contention that he demanded assurance that the MIP's Oversee performance goals would be the same as those set to trigger bonus rights for other members of Oversee's senior management. As is shown below, the MIP is not reasonably susceptible to the interpretation that Cahn bargained for and received the right to have the MIP Oversee EBITDA goals be identical to those budgeted for other senior management. Indeed, the language of the MIP refutes that contention and the evidence surrounding execution of the MIP further undermines Cahn's argument.

### III.  ARGUMENT

#### A.  The Parol Evidence Rule.

This Court is familiar with its role in interpreting contracts. Contract interpretation is a judicial function. *See, e.g., Parsons v. Bristol Dev. Co.*, 62 Cal.2d 861, 865 (1965). In construing a contract, "the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Cal. Code Civ. Proc. § 1858.

"The parol evidence rule is not merely a rule of evidence concerned with the method of proving an agreement; it is a principle of substantive law." *Alling v. Universal Manufacturing Corp.,* 5 Cal. App. 4th 1412, 1433 (1992). The procedure

required by the parol evidence rule is explained in *Blumenfeld v. R.H. Macy & Co.,* 92 Cal. App. 3d 38, 45, 154 Cal. Rptr. 652 (1979):

> The [*Pacific Gas*] decision requires a court to follow a two-step process to determine the admissibility of extrinsic evidence to interpret a written agreement. First, so that the court can place itself in the same situation in which the parties found themselves at the time they entered the agreement, the court should provisionally receive all credible evidence concerning the intention of the parties to determine whether or not the written agreement is reasonably susceptible to the interpretation offered by a party. Second, if the court decides in light of this extrinsic evidence that the contract is reasonably susceptible to the offered interpretation, then the court may admit such extrinsic evidence to interpret the contract. On the other hand, if the court decides in light of this extrinsic evidence that the contract is not reasonably susceptible to the offered interpretation, then the evidence is inadmissible to interpret the contract.

The parol evidence rule does not allow a court to rewrite an agreement.

> Under the parol evidence rule, extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was. The agreement is the writing itself. Parol evidence cannot be admitted to show intention independent of an unambiguous written instrument. Thus, as Justice Holmes explained, parol evidence is not admissible to show that when the parties 'said five hundred feet they agreed it should mean one hundred inches, or that Bunker Hill Monument should signify the Old South Church.'

*Wagner v. Columbia Pictures Industries, Inc.,* 146 Cal. App. 4th 586, 592 (2007); *Bank of America Nat'l Trust and Sav. Ass'n v. Lamb Finance Company*, 179 Cal. App. 2d 498, 501-02 (1960).

California recognizes the objective theory of contracts under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation. *Berman v. Bromberg*, 56 Cal. App. 4th 936, 948 (1997). Thus, while the Court must give provisional consideration to

proffered parol evidence, that evidence may be considered only to interpret the contract, not to amend it.

### B. Cahn's Pleading Admissions.

In addition to the fact that the parol evidence rule precludes Cahn from arguing that the Oversee budgets constituted the Oversee MIP performance goals, Cahn's own pleadings foreclose the argument. Cahn affirmatively alleges that the Board never set any MIP Oversee EBITDA Performance Goals. *See* TAC, ¶ 23. By making that allegation, Cahn is foreclosed from now arguing the opposite. *Siegel v. Warner Bros. Entmt., Inc.,* 542 F. Supp. 2d 1098, 1133 (C.D. Cal. 2008) ("factual assertions in pleadings . . . are considered judicial admissions that bind the party who made them."); *see also Nicolaysen v. Pacific Home*, 65 Cal. App. 2d 769, 773 (1944) (under the well-established rule of practical construction, a party's conduct or statements with respect to the terms of a contract provide the "best evidence" of what was intended by its provisions); *Rosen v. E.C. Losch Co.*, 234 Cal. App. 2d 324, 331 (1965) ("The practical construction placed upon the agreement by the parties is, of course, substantial evidence of their intent"). As such, Cahn himself has provided a compelling reason for excluding evidence and argument that the Board did set the MIP Oversee EBITDA Performance Goals.

### C. The MIP Is Not Reasonably Susceptible to Cahn's Interpretation.

Based upon Cahn's own pleading admissions and the parol evidence rule, there is no evidentiary basis on which Cahn may offer evidence or argument that the Oversee EBITDA budgets approved by the Board also constituted the MIP's Oversee EBITDA Performance Goals. His argument fails as a matter of contract interpretation because the MIP is not reasonably susceptible to the interpretation he offers, and it further fails because he has judicially admitted that Oversee did not, in fact, set the MIP Oversee EBITDA performance goals. Cahn nonetheless intends to testify that he reached an

oral understanding with Oversee during the MIP negotiations, that this oral understanding was incorporated into the MIP, and that, as a result of that oral understanding, the Oversee budget goals constituted the Oversee MIP targets.

The argument fails as a matter of law. The MIP does not place any constraints on the Board's discretion to set MIP Oversee EBITDA targets. Although the MIP states that the Board is to "consult" with Mr. Cahn on those targets, it does not say that the Board has to do what Mr. Cahn wanted, and it certainly does not state that the MIP targets must be consistent with budgeted targets. Furthermore, Cahn has already admitted that the Board did not, in fact, set Oversee MIP targets.

### D. Admissible Parol Evidence Further Undermines Cahn's Arguments.

During the parties' negotiation over the MIP, the parties did, in fact, discuss Cahn's desire to have the MIP Oversee Performance Goals tied to any performance goals set for Oversee senior executives. Specifically, Cahn proposed that the MIP Oversee EBITDA Performance Goals be "the same as the goals set for the rest of Oversee senior management."[3] However, Cahn's proposed language was rejected by Oversee. In particular, Mr. Cahn's attorney requested language tying the MIP Oversee figures to performance goals set for senior management, but Oversee said no:

> Q   Did you ever have any conversations with anybody on the Oversee side, in which they indicated to you that under the MIP Mr. Cahn's Oversee TBD component was going to be the same as the Oversee goals for the other senior management of Oversee?
>
> A   Did I have conversations with them?
>
> Q   Yes.
>
> A   I don't recall whether I had a conversation with them but my e-mails requested that.
>
> Q   I understand that. Your e-mails requested that treatment and do you recall Oversee ever agreeing to that treatment?

---

[3] Delgado Decl., Ex. A.

1
2
3

    A   I seem to remember that Mr. Meshki agreed but had to go back to his client and then this language was agreed. **And based upon Mr. Kupietzky's e-mail, it wasn't -- you know, the exact proposal that we had made wasn't acceptable**.

4
5

    Q   Just -- and this is something you said a few moments ago, you had a conversation with Mr. Meshki about your earlier proposed language. Mr. Meshki thought it was acceptable, correct so far?

6

    A   Yes.

7
8

    Q   But Mr. Meshki then discussed it with his client and got back to you and said it was not acceptable to Oversee, correct?

9

    A   That is my recollection.

*See,* Delgado Declaration, ex. C (Gross (rough) depo., pp. 158-160) (emphasis added). Indeed, Oversee *told* Cahn that the MIP Oversee EBITDA Performance Goals would not be the same as those for other senior managers.[4]

       Thus, first, Cahn's parol evidence is inadmissible because the MIP is not reasonably susceptible to the interpretation that the MIP Oversee goals were to be identical to those set for senior management. Second, to the extent there is any dispute on the issue, Oversee's proffered parol evidence, which is consistent with the fact that the MIP does not contain any limits on the Board's discretion to set the Oversee MIP component, *is* admissible because it is consistent with the language in the MIP.

//
//

---

[4] Delgado Decl., Ex. B (e-mail in which Oversee advises Cahn that, in contrast to the MIP Oversee EBITDA Performance Goals, the Non-MIP Oversee EBITDA Performance Targets have a "different Moniker component added to their legacy Oversee number reflecting finance's plan for overall company earnings").

## IV. CONCLUSION

For the foregoing reasons, the Court should exclude any evidence or argument that the Board set the MIP Oversee EBITDA Performance Goals, including but not limited to the contention that these goals were set by virtue of the Board's approval of Oversee budgets that contained Oversee EBITDA Performance Targets.

Dated:  December 12, 2011            WILLENKEN WILSON LOH & LIEB LLP

By: */s/ William A. Delgado*
William A. Delgado
Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated: December 12, 2011  WILLENKEN WILSON LOH & LIEB LLP

By: */s/ William A. Delgado*
William A. Delgado
Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG