William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10<br><br>Defendants. | Case No. CV11-03800 SVW (AGRx)<br><br>**OVERSEE.NET'S OPPOSITION TO CAHN'S MOTION *IN LIMINE* #2 "EXCLUDING ANY PAROL EVIDENCE THAT SEEKS TO REVISE AND/OR CONTRADICT THE DEFINITIONS OF 'OVERSEE EBITDA' AND 'TARGET EBITDA' IN MANAGEMENT INCENTIVE PLAN"**<br><br>DATE: January 9, 2011<br>TIME: 3:00 p.m.<br>PLACE: Crtrm. 6<br><br>Complaint Filed: May 3, 2011<br>Pretrial Conf. Date: January 9, 2012<br>Trial Date: January 17, 2012 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

No practicing lawyer would dispute the argument that *both* parties are barred by the California parol evidence rule from offering evidence to support an interpretation of the MIP to which the MIP is not reasonably susceptible. That, however, is not the relief requested in Cahn's Motion. In this Motion, Cahn asks this Court to interpret the MIP as a matter of law based upon truncated quotations and without giving provisional consideration to parol evidence. The parol evidence rule prohibits such an approach.

As is discussed, below, the MIP did not require the Oversee Board to set the Oversee "TBD" EBITDA target, and the MIP certainly did not require the Board to make the MIP target the same as any *budgetary* goals Oversee may have established internally. Yet, Mr. Cahn's motion asks this Court to rule, as a matter of law, and without giving provisional consideration to any parol evidence, that the MIP established an Oversee EBITDA performance goal that was either equal to Oversee's actual results or was required to be identical to any budgeted goals the Board may have set from time-to-time. That argument is inconsistent with the language of the MIP, and, Oversee respectfully submits, this Court certainly may not rule as Cahn demands as a matter of law.

## II. STATEMENT OF PERTINENT FACTS

As relevant to this Motion *in limine*, the upcoming trial addresses Cahn's claim for breach of contract under the Oversee.net 2007 Management Incentive Plan ("MIP"), a performance plan that was intended to reward participants if the performance goals of various business segments were accomplished. The MIP set numerical performance goals for three Moniker business segments (TrafficClub, Registrar, and Domain Sales). However, the MIP left the performance goals for the fourth business segment (Oversee) as "TBD" or "to be determined." This particular motion focuses on the "Oversee TBD" component of the MIP.

Cahn has already affirmatively alleged that the Board never set any Oversee EBITDA performance goals under the MIP. In fact, he alleges that Oversee never intended to set them. *See* Third Amended Complaint (TAC), ¶ 23 ("Kupietzky [former director, CEO and President of Oversee] never intended to set Oversee's EBITDA goals"). Cahn also admits he never met with the Board to discuss the setting of the Oversee EBITDA performance goals for the MIP. *See* Deposition Transcript of Monte Cahn, taken November 15, 2011, at 144:17-21 ("I never spoke to the board or had an opportunity to talk to the board. I was never invited to discuss anything with the board."), attached as Exhibit D to the Declaration of William Delgado, filed December 12, 2011 (Docket No. 124-5).

Because it is not disputed that the MIP did not set any Oversee EBITDA Performance Goals, and the Board never set them either, Cahn's ability to prevail on the portion of his claim that pertain to the Oversee "TBD" component of the MIP requires the Court to impose a "TBD" figure. Cahn's theory – not clearly articulated in his motion – is that, whenever the Board set an EBITDA target for *budgeting* purposes, that budgeted figure instantly became the Oversee "TBD" figure in the MIP.[1] According to Cahn, this is the required result because the Board was required to set the Oversee "TBD" performance goal in the MIP, and, therefore, must have implicitly done so when it approved budgets. Cahn has also argued that he reached an agreement with Oversee executives that the Oversee "TBD" figure used in the MIP would be the same as any budgeted figure that triggered bonus opportunities for Oversee senior management. As discussed in Oversee's Motion *in limine* no. 1, Cahn did, in fact, request such a provision, and Oversee expressly rejected it.[2] The MIP, as finalized,

---

[1] The attainment of the budget EBITDA goals triggered potential bonus opportunities for members of Oversee senior management.

[2] Cahn's counsel testified as follows:

makes no mention of any correlation between the Oversee "TBD" figure and Oversee's actual results, budgets or the bonus opportunities of Oversee senior management.

With the MIP leaving the establishment of the Oversee EBITDA performance goals to the Board's absolute discretion, coupled with Cahn's own allegation that the Board never set an Oversee performance goal, Cahn is left to dance an elaborate minuet. It begins with Cahn arguing that definitions in the MIP constitute directives, and it follows with Cahn misquoting the definitions and performing one final, albeit fatal, leap to reach his insupportable conclusion. Rhetorical flourishes aside, Cahn

> Q   Did you ever have any conversations with anybody on the Oversee side, in which they indicated to you that under the MIP Mr. Cahn's Oversee TBD component was going to be the same as the Oversee goals for the other senior management of Oversee?
> A   Did I have conversations with them?
> Q   Yes.
> A   I don't recall whether I had a conversation with them but my e-mails requested that.
> Q   I understand that. Your e-mails requested that treatment and do you recall Oversee ever agreeing to that treatment?
> A   I seem to remember that Mr. Meshki agreed but had to go back to his client and then this language was agreed. **And based upon Mr. Kupietzky's e-mail, it wasn't -- you know, the exact proposal that we had made wasn't acceptable**.
> Q   Just -- and this is something you said a few moments ago, you had a conversation with Mr. Meshki about your earlier proposed language. Mr. Meshki thought it was acceptable, correct so far?
> A   Yes.
> Q   But Mr. Meshki then discussed it with his client and got back to you and said it was not acceptable to Oversee, correct?
> A   That is my recollection.
>
> *See,* Declaration of William Delgado, filed December 12, 2011, Exh. C (Docket No. 124-4 (Rough Deposition Transcript of William Gross at pp. 158-160) (emphasis added); *see also,* Delgado Decl., Ex. B (Docket No. 124-3) (e-mail in which Oversee advises Cahn that the MIP Oversee EBITDA performance goals would not be the same as those used to trigger bonus opportunities for other Oversee senior management).

1  argues that the definition of the words "Target EBITDA" in Section 15(u) required the
2  Board to set the performance goal, and the definition of how Oversee EBITDA is
3  measured removes from the Board any discretion in setting the performance goal.
4  Cahn's final leap is to argue that the two definitions, combined, establish that Cahn
5  was entitled to receive a bonus either whenever Oversee produced EBITDA (regardless
6  of what it was) or whenever Oversee achieved any budgeted EBITDA target.
7       Cahn is wrong on his interpretation of the MIP definitions, and his efforts to
8  weasel a bonus on the basis of terms that Oversee expressly rejected defies reason.
9  Cahn wants to exclude parol evidence, not because he is afraid that Oversee is trying to
10 contradict the MIP, but because the MIP fails to support Cahn's claims, and his only
11 chance to salvage his claims is to exclude the evidence that Oversee specifically
12 rejected his proposal to limit the Board's discretion in setting the Oversee EBITDA
13 performance goal or to tie it to goals for other senior management.  If Cahn can erase
14 history, then he can argue for an interpretation of the MIP that is inconsistent with its
15 terms and contradicted by the parties' negotiations.
16
17 **III.   ARGUMENT**
18      Oversee has no quarrel with the proposition that the terms of the MIP cannot be
19 contradicted by parol evidence.  The terms can, however, be explained by parol
20 evidence.  With those inarguable propositions as a starting point, Cahn's arguments
21 cannot survive.
22
23      A.   <u>Cahn Argues for an Insupportable Interpretation of the MIP.</u>
24      Cahn begins by arguing that Oversee intends to offer evidence that "shall"
25 means "may or may not."  In fact, "shall" is not the rigid term Cahn claims.  *See, e.g.,*
26 *People v. Ledesma*, 16 Cal. 4th 90, 95(1997) ("'shall' can be construed as either
27 mandatory or directory as well as denote future operation") (*quoting* 1A Sutherland,
28 *Statutory Construction* (5th ed.1993) pp. 763–769); *Morris v. County of Marin*, 18 Cal.

1  3d 901, 909-910 (1977) ("[T]here is no simple, mechanical test for determining
2  whether [the term "shall"] should be given 'directory' or 'mandatory' effect," as the
3  intent must be gathered from, among other things, the terms of the provision construed
4  as a whole and its overall objective) (internal citations omitted).  But, in any event,
5  Cahn intentionally mischaracterizes the issue in order to support his argument.

6  Cahn focuses on the definitions of terms used in the MIP which are set forth in
7  Section 15.  The definitions are not, themselves, operational provisions – they merely
8  define terms used elsewhere in the MIP.  Section 15(u), contrary to Cahn's truncated
9  quotation, does not say that the Oversee performance goal "shall be determined from
10 time to time by the Board . . . ."  Motion, at 1:23-25.  Rather, as one would expect with
11 a definition, Section 15(u) of the MIP defines the Oversee performance goals, stating
12 that they are "as shall be determined from time to time by the Board . . . ."  Cahn's
13 intentional omission of the word "as" is intended to imply that 15(u) is a mandate and
14 not a definition.  Quoted properly, it is a definition.

15 So, the starting point of the analysis is that the Oversee performance goal is
16 whatever goal the Board chooses to set, in consultation with Mr. Cahn.  There is no
17 dispute that the Board never set a performance goal and never consulted with Mr. Cahn
18 about it.  As noted, above, Cahn alleges the former and testified to the latter.  So, there
19 is no numeric Oversee EBITDA performance goal.  It will be up to the Court to decide
20 the ramifications of that situation, but the fact is immutable.

21 Cahn then moves to the definition of how Oversee EBITDA is calculated, which
22 is described in Section 15(m).  Nobody disputes that definition.  But, although not clear
23 from the text of his motion, Cahn is arguing that the Section 15(m) created one of two
24 equally implausible results.  Cahn may be arguing that Section 15(m) sets up a
25 syllogism under which Oversee EBITDA, calculated in accordance with Section

26
27
28

15(m), automatically *became* the Oversee EBITDA *performance goal*.[3] That argument refutes itself – it would turn "TBD" into "deemed earned," and would provide an award irrespective of actual performance, which is contrary to the stated intent of the MIP. MIP, Section 1 ("The Plan is designed to reward…the Participants for significant contributions toward the continued or improved profitability and growth of the Company."). Alternatively, Cahn appears to argue that Section 15(m) required the Board to use budgeted projections to set the Oversee "TBD" performance goal because, as Cahn argues, "Oversee EBITDA is an objective mathematical calculation." Motion at 2:13. That argument is barely comprehensible. Section 15(m) describes how actual performance of Oversee EBITDA is to be measured in determining whether actual performance met the Oversee "TBD" performance goals. However, as there were no performance goals, there was nothing against which to measure actual performance.

Furthermore, any interpretation that strips the Board's discretion from the setting of Oversee performance goals ignores the fact that the MIP anticipated that Mr. Cahn would consult with the Board on those goals. MIP, § 15(u). There would be nothing to consult about if there was no discretion to be exercised, so Cahn's construction reads Cahn's consultation opportunity out of the agreement. *See, e.g., City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) (interpretation rendering contract language nugatory or inoperative is disfavored).

All of the foregoing simply illustrates that, when Cahn argues that Oversee should be prohibited from contradicting the terms of the MIP, he really means that nobody but his counsel should be able to argue about what they mean. As demonstrated in Oversee's Motion *in limine* no. 1, Cahn wants to argue that the Oversee performance goals were required to be the same as the Oversee budgeted

---

[3] Cahn argues: "nowhere in the text of the MIP, or in the definition of Oversee EBITDA, does it provide Oversee with discretionary [sic] in determining Cahn's performance under the Oversee EBITDA business segment." Motion at 2:17-20.

goals. That argument is inconsistent with the MIP and undermined by parol evidence demonstrating that Oversee rejected Cahn's proposal to add that requirement.

### B. The Parol Evidence Rule Allows Evidence to Explain the Terms of the MIP.

The parties appear to agree on the terms of the parol evidence rule, but Cahn's motion is silent on the issue of procedure. The procedure required by the parol evidence rule is explained in *Blumenfeld v. R.H. Macy & Co.,* 92 Cal. App. 3d 38, 45, 154 Cal. Rptr. 652 (1979):

> The [*Pacific Gas*] decision requires a court to follow a two-step process to determine the admissibility of extrinsic evidence to interpret a written agreement. First, so that the court can place itself in the same situation in which the parties found themselves at the time they entered the agreement, the court should provisionally receive all credible evidence concerning the intention of the parties to determine whether or not the written agreement is reasonably susceptible to the interpretation offered by a party. Second, if the court decides in light of this extrinsic evidence that the contract is reasonably susceptible to the offered interpretation, then the court may admit such extrinsic evidence to interpret the contract. On the other hand, if the court decides in light of this extrinsic evidence that the contract is not reasonably susceptible to the offered interpretation, then the evidence is inadmissible to interpret the contract.

California recognizes the objective theory of contracts under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation. *Berman v. Bromberg*, 56 Cal. App. 4th 936, 948 (1997). Thus, while the Court must give provisional consideration to proffered parol evidence, that evidence may be considered only to interpret the contract, not to amend it.

Applying these principles to Cahn's motion does not produce the result he seeks. As discussed, above, the MIP left the setting of the Oversee performance goals to the discretion of the Board. The Board never set those goals, and Cahn never met with the

Board to discuss them.  There is thus no reasonable dispute that the MIP's Oversee performance goals were not met, because they did not exist.

      Cahn's motion asks the Court to impose a definition not supported by the MIP and contrary to the parties' negotiations.  In particular, by this Motion, Cahn is asking the Court to preclude evidence that Oversee **rejected** Cahn's proposal to tie the Board's hands in setting the MIP goals – even though the rejection of that proposal is fully consistent with retaining the Oversee goals as "TBD" and allowing the Board full discretion to set them.  He proposes instead, to impose a provision stating that the Board was required to set the Oversee MIP goals to be either: (i) identical to the results achieved; or (ii) identical to the goals set for other senior managers.  The first argument is absurd; the second contradicts the plain terms of the MIP and is belied by parol evidence demonstrating that Oversee specifically rejected precisely the proposed definition that Cahn now seeks to impose.

## IV.   <u>CONCLUSION</u>

      For the foregoing reasons, Plaintiff's Motion should be denied in its entirety.

Dated:  December 19, 2011         WILLENKEN WILSON LOH & LIEB LLP

                                By:*/s/ William A. Delgado*
                                William A. Delgado
                                Attorneys for Defendants OVERSEE.NET,
                                JEFFREY KUPIETZKY, and LAWRENCE NG

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated:  December 19, 2011                WILLENKEN WILSON LOH & LIEB LLP

By:*/s/ William A. Delgado*
William A. Delgado
Attorneys for Defendants OVERSEE.NET, JEFFREY KUPIETZKY, and LAWRENCE NG