1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOHN L. BARBER, SB# 160317
2    E-Mail: barber@lbbslaw.com
KENNETH D. WATNICK, SB# 150936
3    E-Mail: watnick@lbbslaw.com
SONJA HARRINGTON, SB# 261053
4    E-Mail: sharrington@lbbslaw.com
221 North Figueroa Street, Suite 1200
5  Los Angeles, California  90012
Telephone: 213.250.1800
6  Facsimile: 213.250.7900

7  Attorneys for MONTE CAHN, an individual

8                  UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | MONTE CAHN, an individual, | CASE NO. CV11-03800 SVW (AGRx)
12 |          Plaintiff, |
13 |      v. | The Hon. Stephen V. Wilson
      | [Magistrate Judge Alicia G. Rosenberg]
14 |
15 | OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an | **MONTE CAHN'S
16 | individual; LAWRENCE NG, an individual; and Does 1 through 10, | SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER DATED DECEMBER 15, 2011**
17 |          Defendants. |
18 | | COMPLAINT FILED:  May 3, 2011
19 | | TRIAL DATE:        January 17, 2012

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    **INTRODUCTION**

On December 6, 2011, this Court granted Monte Cahn's Motion to Compel production of the database of financial information underlying the Management Incentive Plan ("MIP") calculations and directed the parties to meet and confer with respect to the production of this information.  During the meet and confer, the parties identified a dispute as to the production of data and information relating to TrafficClub Gross Profit, as defined in Section 15(k) of the MIP, and the TrafficClub Business Segment, as defined in Section 15(z) of the MIP.

This dispute arose, in part, because Oversee combined the TrafficClub division with the Domain Sponsor division within a month of Oversee's acquisition of Moniker and its divisions, including TrafficClub.  After TrafficClub and Domain Sponsor were combined, Oversee ceased tracking performance of the TrafficClub Business Segment.  Moreover, after the combination, "Account managers from TrafficClub were also responsible for Domain Sponsor and vice versa."  (Deposition of Jeff Kupietzky, Oversee's former Chief Executive Officer, p. 146, lns. 2-5, Exhibit "1," attached hereto.)  The operations and customers of TrafficClub were managed by the Domain Sponsor Team.  (*Id*.)  Mr. Cahn was appointed the Vice President of Domain Sponsor and was given "sales responsibility for part of the Domain Sponsor business."  (Deposition of Jeff Kupietzky, p. 166, lns. 11-17, Exhibit "1" to the Watnick Declaration attached hereto.)

Because the TrafficClub Business Segment, as defined in Section 15(z) of the MIP, was inextricably intertwined with the consolidated TrafficClub/Domain Sponsor division, Cahn believes that he is entitled to discovery of information relating to (a) identification of all new customers of Domain Sponsor after January 2008, (b) the revenues and costs of goods sold for all new customers of the combined division during the period from 2008 to 2010, and (c) the identification of the account manager that was credited for each new customers.  Cahn also believes that he is entitled to discovery of information relating to the expansion or increase of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

1   monetization revenues relating to all customers of the TrafficClub/Domain Sponsor
2   division during the period from 2008 to 2010 and identification of the account
3   managers responsible for these accounts.  Stated differently, given the combination
4   of divisions and Mr. Cahn's revised responsibilities, the increase in monetization
5   revenue from some – if not all – of Domain Sponsor accounts is revenue that should
6   be credited to Mr. Cahn under the TrafficClub Gross Profit performance goal of the
7   MIP.

8       During the hearing on December 15, 2011, Oversee claimed that the Court
9   should not permit discovery relating to increased or expanded revenues from
10  existing Domain Sponsor customers who not customers of TrafficClub as of
11  December 14, 2007.  Oversee claimed that this interpretation was based on the
12  definition of "TrafficClub Customers" in Section 15(aa) of the MIP.  Oversee's
13  claim is based on an incorrect analysis of the MIP.

14      Cahn is entitled to bonus awards based on TrafficClub's Gross Profit.  With
15  one inapplicable exception, the calculation of TrafficClub Gross Profit does not
16  relate to the term "TrafficClub Customers" in Section 15(aa) of the MIP.  Instead,
17  TrafficClub Gross Profit, as defined in Section 15(k) of the MIP, is based on all
18  revenues of the TrafficClub Business Segment, a defined term in the MIP that does
19  not mention, incorporate, or rely upon the definition of TrafficClub Customer.  The
20  TrafficClub Business Segment and TrafficClub Gross Profit include revenues
21  resulting from Mr. Cahn's and/or his subordinates' successful expansion of existing
22  Domain Sponsor customers who were not customers of the Moniker monetization
23  business as of December 14, 2007.

24      This conclusion is also confirmed by Oversee's admission that, subsequent to
25  January 2008, the TrafficClub Business Segment was combined with Domain
26  Sponsor, that account managers were assigned with responsibility for growing and
27  expanding Domain Sponsor and TrafficClub customers, and that Mr. Cahn was
28  appointed the Vice President of Domain Sponsor with responsibility for sales.  Thus,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MONTE CAHN'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER DATED DECEMBER 15, 2011

1  the parties' course of conduct confirms that Cahn is entitled to claim he achieved his

2  performance goal based on the expansion of revenues from the combined

3  TrafficClub/Domain Sponsor division.

4

5  **II.**     **TRAFFICCLUB GROSS PROFITS CONSIST OF TOTAL REVENUES**

6  **FROM CUSTOMERS OF THE MONIKER BUSINESS SEGMENT**

7           This action arises from Oversee's breach of its obligations under the MIP

8  dated December 14, 2007.  Under the MIP, Cahn would be able to earn bonuses

9  through a three year goal oriented bonus structure.  The bonus structure in the

10  proposed MIP was based on performance goals in four categories, including

11  TrafficClub Gross Profit.  (Schedule "A" of the MIP, Ex. "C" to the Murray

12  Declaration that was attached as Exhibit "1" to the Harrington Declaration in

13  Support of Cahn's November 21, 2011 Supplemental Brief ("Harrington

14  Declaration".)

15           The MIP used initial capitals to identify defined terms in the MIP. The term

16  "Gross Profit" was defined in the MIP to mean:

17           "total revenues from customers of the **TrafficClub Business Segment** less all

18           cost of goods sold relating thereto (including revenue share payments);

19           provided, however, in the case of **Shared Customers**, **Gross Profit** shall be

20           determined by multiplying (i) the **Gross Profit** from such **Shared Customers**

21           by (ii) the **Applicable Shared Customer Percentage**."

22  Section 15(k) of MIP, Ex. "C" to the Murray Declaration that was attached as

23  Exhibit "1" to the Harrington Declaration (emphasis added).

24           The term "TrafficClub Business Segment" was defined to mean:

25           "the business of Moniker relating to the monetization of internet domain

26           names through rotation of such internet domain names on third party parking

27           platforms."

28  Section 15(a) of the MIP, Ex. "C" to the Murray Declaration that was attached as

3

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Exhibit "1" to the Harrington Declaration.

2      The term "Shared Customers" was defined to mean existing customers of

3  Moniker's TrafficClub Business Segment and Domain Sponsor as of December 14,

4  2007.  This definition was contained within the definition of "TrafficClub Club

5  Customers".  It stated as follows:

6          "(iii) those customers of Moniker's TrafficClub Business Segment as of the

7          date of this plan that were also customers of DomainSponsor (such customers

8          in this clause (iii) referred to as, 'Shared Customers')."

9  Section 15(aa) of the MIP, Ex. "C" to the Murray Declaration, Exhibit "1" to the

10  Harrington Declaration.

11      The term "'Applicable Customer Percentage" means "the percentage

12  determined as follows: (i) the gross revenues received by Moniker from its upstream

13  advertiser partners in respect of the domain names owned by all Shared Customers

14  participating in the TrafficClub Business Segment during the full month preceding

15  the adoption date of this Plan (the "Moniker Shared Customer Revenue") divided by

16  (ii) the sum of (A) the Moniker Shared Customer Revenue and (B) the gross

17  revenues received by the Company from its upstream advertiser partners in respect

18  of the domain names owned by all Shared Customers participating in the

19  DomainSponsor monetization platform during the full month preceding the adoption

20  date of this Plan."  (Section 15(a) of the MIP, Ex. "C" to the Murray Declaration,

21  Exhibit "1" to the Harrington Declaration.)

22      Thus, the term "Gross Profit" is based on the defined terms "TrafficClub

23  Business Segment" (Section 15(z) of the MIP), "Shared Customers (Section

24  15(a)(iii) of the MIP), and "Applicable Shared Customer Percentage" (Section 15(a)

25  of the MIP).  Given these definitions, Oversee cannot argue that the phrase

26  "TrafficClub Customers" or the definitions in Sections 15(aa)(i) and (ii) of the MIP

27  limit Cahn's claims.  These definitions are not considered in calculating TrafficClub

28  Gross Profit and are not relevant to determination of whether Cahn is owed bonuses

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4

1  based on Gross Profits of the TrafficClub Business Segment.  More importantly,

2  because the definitions in Sections 15(a)(i) and (ii) have no relevance to calculation

3  of total revenues of the TrafficClub Business Segment, these definitions do not

4  preclude Cahn from arguing that the TrafficClub Business Segment includes

5  expansion of monetization of revenues from a customer of the combined

6  TrafficClub/Domain Sponsor division.  These definitions do not preclude Cahn from

7  obtaining discovery of information relating to his efforts to expand existing

8  customers of Domain Sponsors.

9        Also, Sections 15(a)(i) and (ii) of the MIP do not discuss or relate to whether

10  Cahn is entitled to credit under the TrafficClub Gross Profit Business Segment for

11  the expansion of existing Domain Sponsor customer accounts.  Section 15(a)(i)

12  relates to existing customers of Moniker's TrafficClub Business Segment who were

13  not customers of Domain Sponsor.  Section 15(a)(ii) relates to **new** customers of

14  Moniker or Domain Sponsor.  Neither provision discusses the treatment or

15  characterization of Cahn's expansion of the monetization revenues for existing

16  customers of the combined TrafficClub/Domain Sponsor division.

17

18  **III.   THE PARTIES' CONDUCT CONFIRMS THAT CAHN IS ENTITLED**

19         **TO REVENUES BASED ON THE COMBINED OPERATIONS**

20        When Oversee acquired Moniker in December 2007, TrafficClub was an

21  operating division of Moniker.  However, within a month of acquisition, Oversee

22  combined TrafficClub with Domain Sponsor.  (Paragraph 14 of Cahn Declaration,

23  Ex. "2" to the Watnick Declaration.)  After this combination, Oversee stopped

24  tracking the TrafficClub Business Segment, as defined in the MIP. (Kupietzky

25  Depo., 209:20-22, 226:4-22; Navach Depo. 63:3-64:3; Peterson Depo., 55:14-56:12;

26  O'Neill Depo. 171:13-22, Exs. "1", "3", "4" and "5" to the Watnick Declaration,

27  attached hereto.)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**MONTE CAHN'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER DATED DECEMBER 15, 2011**

1    After the two divisions were combined, Mr. Cahn was appointed the Vice

2   President of the Domain Sponsor business division, with sales responsibility for the

3   combined division.  (Kupietzky Depo., 166:11-17, Ex. "1" to the Watnick

4   Declaration, attached hereto.)  Also, based on the combination of TrafficClub and

5   Domain Sponsor, "Account managers from Traffic Club were also responsible for

6   Domain Sponsor and vice versa."  (Kupietzky Depo., 146:3-5, Ex. "1" to the

7   Watnick Declaration, attached hereto.)  Thus, Mr. Cahn's efforts to grow or expand

8   this combined TrafficClub/Domain Sponsor Division should be considered in the

9   calculation of TrafficClub Gross Profit.

10    Notwithstanding the foregoing, Mr. Cahn discovered that he was not

11   receiving credit under the MIP for substantial referrals of monetization business in

12   2008, 2009, and 2010.  (E-mail dated May 11, 2008 from Monte Cahn to Jeff

13   Kupietzky, Ex. "6" to the Watnick Declaration, attached hereto, and Kupietzky

14   Depo., 166:11-17, Ex. "1" to the Watnick Declaration, attached hereto.)  For

15   example, Cahn advised Oversee in March 4, 2008 that he had persuaded Mike

16   Berkens "to move all names from Skenzo to DS [Domain Sponsor]" and requested

17   that Oversee "make sure this is tracked accordingly [under the MIP]."  (E-mail dated

18   March 4, 2008 from Monte Cahn to Jeff Kupietzky, Ex. "7" to the Watnick

19   Declaration, attached hereto.)  It does not appear that Oversee gave Mr. Cahn credit

20   for this revenue under the MIP.

21    Similarly, after Oversee combined TrafficClub and Domain Sponsor, Mr.

22   Cahn confirmed that Moniker employees referred substantial monetization business

23   to Mr. Watters and others. Mr. Cahn advised:

24    "Want to make sure we are being tracked and credited properly for the

25    parking revenue we are sending as a result of the trafficclub conversion and

26    our own accounts now on DS . . . Also, my team has referred a ton of

27    domains, customers and traffic to Don Watters and crew since January . . .

28    How do we sort through this and check so that it applies towards the MIP."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6
MONTE CAHN'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER DATED DECEMBER 15, 2011

1  E-mail dated May 11, 2008 from Monte Cahn to Jeff Kupietzky, Ex. "6" to the

2  Watnick Declaration, attached hereto.

3       It does not appear that Cahn was afforded credit for these customers.

4       In effect, the Court should order the production of documents and information

5  reflecting the expansion or increase of monetization revenues relating to all new or

6  existing customers of the TrafficClub/Domain Sponsor division during the period

7  from 2008 to 2010, costs of good sold, and identification of the account managers

8  responsible for these accounts.  This information is necessary to allow Cahn to

9  prove that he is owed bonuses based on achievement of the TrafficClub Gross Profit

10 performance goal.

11

12 **IV.   THE EXISTING PROTECTIVE ORDER PROVIDES APPROPRIATE**

13 **PROTECTION FROM THE MISUSE OF THE REQUESTED**

14 **INFORMATION**

15      Oversee argues that the existing protective order does not provide sufficient

16 protection for the TrafficClub information and that the Court should preclude Mr.

17 Cahn from reviewing this information.  These arguments are incorrect and should be

18 rejected.

19      First, Cahn would be severely prejudiced if he were denied access to the

20 revenue information relating to the customers on the combined TrafficClub/Domain

21 Sponsor Division.  Cahn is the only individual who could assist his counsel in

22 determining which new or existing accounts should be subject to the TrafficClub

23 Business Segment.  Cahn's counsel has no alternative means to identify the

24 appropriate allocation of revenues, particularly since this Court ordered the delivery

25 of Cahn's laptop to a third party.  Even if this laptop were returned or accessible to

26 Cahn's counsel, Cahn does not have sufficient time to develop and refine computer

27 searches that might lead to information about which new or existing accounts should

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MONTE CAHN'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER DATED DECEMBER 15, 2011

1  be subject to the TrafficClub Business Segment.  Trial is scheduled for January 17,

2  2012.

3         Second, this Court has issued a protective order that precludes the use of

4  confidential information outside of this litigation.  This Court has the authority to

5  ensure that its orders are followed.  Cahn is aware of this order and is aware of his

6  obligations under the protective order.  In addition, Cahn has non disclosure

7  obligations under his employment agreement with Oversee.

8         Third, Cahn's need for discovery substantially outweighs Oversee's

9  confidentiality claims.  The requested information is fundamental to the prosecution

10 of Cahn's claims in this action.  Also, Oversee caused this dispute by creating,

11 maintaining, or distributing contemporaneous reports about the performance of the

12 TrafficClub Business Segment.

13

14 **V.     <u>CONCLUSION</u>**

15        Cahn requests that the Court order Oversee to immediately disclose

16 information relating to (a) identification of all new customers of Domain Sponsor

17 after January 2008, (b) the revenues and costs of goods sold for all new customers of

18 the combined division during the period from 2008 to 2010, and (c) the

19 identification of the account manager that was credited for each new customers.

20 Cahn also believes that the Court should order Oversee to disclose information

21 relating to the expansion or increase of monetization revenues relating to all

22 customers of the TrafficClub/Domain Sponsor division during the period from 2008

23 to 2010 and identification of the account managers responsible for these accounts.

24

25

26

27

28

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

8

1   DATED: December __20, 2011      JOHN L. BARBER
                                   KENNETH D. WATNICK
2                                  SONJA HARRINGTON
                                   LEWIS BRISBOIS BISGAARD & SMITH LLP
3

4                                  By: _____/s/ Kenneth D. Watnick_____
5                                      Kenneth D. Watnick
                                       Attorneys for MONTE CAHN, an
6                                      individual
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MONTE CAHN'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER DATED DECEMBER 15, 2011**

## DECLARATION OF KENNETH D. WATNICK

I, KENNETH D. WATNICK, declare and state as follows:

1.      I am an attorney licensed to practice before all of the Courts of the State of California and the United States District Court for the Central District of California. I am one of the counsel for Plaintiff Monte Cahn ("Cahn") in this action.  I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify thereto.

2.      Attached hereto and incorporated herein by reference as Ex. "1" is a true and correct copy of excerpts from the deposition of Jeff Kupietzky.

3.      Attached hereto and incorporated herein by reference as Ex. "2" is a true and correct copy of the Declaration of Monte Cahn.

4.      Attached hereto and incorporated herein by reference as Ex. "3" is a true and correct copy of excerpts from the deposition of Jeff Navach.

5.      Attached hereto and incorporated herein by reference as Ex. "4" is a true and correct copy of excerpts from the deposition of Stacy Peterson.

6.      Attached hereto and incorporated herein by reference as Ex. "5" is a true and correct copy of excerpts from the deposition of Stephen O'Neill.

7.      Attached hereto and incorporated herein by reference as Ex. "6" is a true and correct copy of an e-mail dated May 12, 2008 from Monte Cahn to Jeff Kupietzky.

8.      Attached hereto and incorporated herein by reference as Ex. "7" is a true and correct copy of an e-mail dated March 4, 2008 from Monte Cahn to Jeff Kupietzky.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of December, 2011, at Glendale, California.

/s/ Kenneth D. Watnick

Kenneth D. Watnick

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

10