William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10<br><br>        Defendants. | Case No. CV11-03800 SVW (AGRx)<br><br>**DEFENDANT OVERSEE.NET'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE REGARDING COMPENSATION OF OTHER OVERSEE SENIOR MANAGEMENT**<br><br>DATE:    January 9, 2012<br>TIME:    3:00 p.m.<br>PLACE: Crtrm. 6<br><br>Complaint Filed:    May 3, 2011<br>Pretrial Conf. Date: January 9, 2012<br>Trial Date:       January 17, 2012 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Recognizing that the Court has stricken Plaintiff's jury demand as to his First Claim for Relief for breach of contract (Docket No. 172), the question of what evidence should be kept from the jury is no longer pertinent.  However, this Motion and Plaintiff's Opposition thereto raise critical issues of relevance, contract interpretation and application of the parol evidence rule that are central to the Court's adjudication of the breach of contract claim.  Accordingly, this Reply will address these issues in an effort to help streamline the Court's determination.

## II.    ARGUMENT

Conceding that evidence of the  amount of compensation of other Oversee senior executives bears no relevance to this case, Plaintiff argues that he actually wishes to introduce evidence of the executive's performance targets, whether such targets were met, and whether they received  bonus compensation as a result thereof.  This purported solution, however, merely raises the issues of admitting different yet equally misleading and irrelevant evidence.

First, introducing evidence of other executives' performance targets and purported receipt of unspecified bonus payouts is clearly intended to create an inaccurate impression that a disproportionately larger amount of bonus compensation was paid to the others than to Plaintiff.  It presents Oversee with the false dilemma of choosing  between revealing the executive's private financial information and dispelling a misleading impression of disparate treatment.

Second, the proposed evidence is irrelevant because it is based on the fallacious premise that the same Oversee EBITDA targets applied to Plaintiff as to the executives who were **not** participants under the MIP (the "Senior Executives").  This is the central contract interpretation question that is addressed in Oversee's Motion *In Limine* #1

(Docket No. 124) and Plaintiff's Motion *In Limine* #2 (Docket No. 143).  Plaintiff contends that the performance targets for the Senior Executives also served as the MIP Oversee EBITDA performance goals.[1]  On that basis, Plaintiff argues that if the Senior Executives hit their targets and got paid bonuses, Oversee breached its duties under the MIP by not paying Plaintiff as well.

Since the parties' arguments on this issue have already been addressed in other briefings, the discussion below summarizes the analysis, which leads to the conclusion that Plaintiff's interpretation of the MIP cannot be sustained as a matter of law and that, therefore, Plaintiff should not be entitled to introduce evidence as to the compensation of the Senior Executives.

A.   Even if Analyzed as a Contract, the MIP Grants Oversee Broad Discretion in Its Decision to Set the MIP Oversee EBITDA Performance Goals, If Any At All.

At the core of Plaintiff's argument is the assumption that the MIP imposed a mandatory duty for Oversee to set annual EBITDA goals under the plan.  That argument presupposes that the MIP is a contract.  Oversee has consistently maintained that: (i) the MIP is an incentive plan not a contract and (ii) even if it is a contract, no such mandatory duty existed because under its plain terms, the MIP contemplated leaving the setting of the goals entirely up to the Board in its discretion.

Examination of the language of the MIP confirms Oversee's interpretation, and directly contradicts Plaintiff's.  Specifically, Plaintiff cites to the definitions in Section 15 of the MIP, which he claims mandates that the EBITDA goals "shall be determined . . . by the Board, in consultation with Monte Cahn."  MIP, Section 15(u).  However, as a matter of contract construction, the word "shall" is not the rigid term Cahn claims.  *See, e.g., People v. Ledesma*, 16 Cal. 4th 90, 95(1997) ("'shall' can be construed as

---

[1]   These targets are simply budgetary projections of total company EBITDA set by the Board.

1  either mandatory or directory as well as denote future operation") (*quoting* 1A

2  Sutherland, *Statutory Construction* (5th ed.1993) pp. 763–769); *Morris v. County of*

3  *Marin*, 18 Cal. 3d 901, 909-910 (1977) ("[T]here is no simple, mechanical test for

4  determining whether [the term "shall"] should be given 'directory' or 'mandatory'

5  effect," as the intent must be gathered from, among other things, the terms of the

6  provision construed as a whole and its overall objective) (internal citations omitted).

7  But, in any event, Cahn intentionally misquotes the MIP's language in order to support

8  his argument.

9       Section 15 of the MIP, entitled, "Certain Definitions," is not intended to

10  prescribe duties or actions as Plaintiff urges.  The definitions are not, themselves,

11  operational provisions of the MIP – they merely define terms used elsewhere in the

12  MIP.  Section 15(u), contrary to Cahn's truncated quotation, does not say that the

13  Oversee performance goal "shall be determined from time to time by the Board . . . ."

14  Rather, as one would expect with a definition, Section 15(u) of the MIP defines the

15  Oversee performance goals, stating that they are "*as* shall be determined from time to

16  time by the Board . . . ." (emphasis supplied).  Cahn's intentional omission of the word

17  "as" is intended to imply that 15(u) is a mandate and not a definition. Quoted properly,

18  however, it is a definition that simply provides that, with respect to Oversee EBITDA,

19  "Target EBITDA" will be defined however the Board decides in its discretion.

20

21       B.      The MIP Does Not Prescribe Oversee EBITDA Performance Goals.

22       Plaintiff's argument equating the budgetary Oversee EBITDA projections with

23  the MIP Oversee EBITDA targets is refuted by the fact that the language of the MIP

24  provides no basis to tie these metrics.  By its terms, the MIP does not prescribe *any*

25  formula or numeric value to these goals – they are simply left "TBD" for the Board to

26  set, in consultation with Plaintiff.  Nor does the MIP provide any correlation between

27  the bonus targets for Oversee's senior executives to the MIP's performance goals or

28  their bonus and the MIP's performance awards.

1    Indeed, Plaintiff concedes in his Complaint that the MIP does not prescribe what

2    the goals are, which is why he alleges that the parties reached only oral agreements on

3    the subject.  *See* Third Amended Complaint ("TAC") at ¶ 23 ("during the negotiations,

4    other defendant representatives . . . represented to and assured Cahn that if the

5    performance goals for Oversee EBITDA could not be determined before the merger,

6    the parties would meet in good faith and develop objective criteria for determining

7    these goals [and] that these goals would be the same as the goals for senior

8    management").  Although Oversee disputes any such side or oral agreements were

9    made, the undisputed fact remains that, under the terms of the MIP, the Oversee

10   EBITDA performance goal is whatever goal the Board chooses to set, in consultation

11   with Plaintiff.

12   Faced with this quandary, Plaintiff then tries a more circuitous route.  Plaintiff

13   points to the definition of "Oversee EBITDA" in Section 15(m) of the MIP, which

14   describes the concept in standard accounting terms as an objective mathematical

15   calculation.  Nobody disputes this definition, but how Plaintiff tries to apply it is

16   patently illogical.

17   Although he fails to articulate it clearly, Plaintiff's argument appears to have two

18   variants, both of which are implausible.  Under one version, Plaintiff argues that *any*

19   Oversee EBITDA calculated in accordance with Section 15(m) *is* the Target EBITDA

20   *performance goal* in Section 15(u).  This argument refutes itself, as it turns "TBD" into

21   "deemed earned" and would provide an award irrespective of actual performance.  This

22   runs directly contrary to the clearly stated intent of the MIP, which is "designed to

23   reward . . . the Participants for significant contributions toward the continued or

24   improved profitability and growth of the Company."  MIP, Section 1.  In addition, the

25   argument necessarily begs the question of why the MIP would have two definitions—

26   one for Oversee EBITDA and one for Target EBITDA—if, in fact, the two were one

27   and the same.

28

Alternatively, Plaintiff appears to argue that Section 15(m) requires the Board to use the budgetary EBITDA projections as the MIP Oversee EBITDA targets because Oversee EBITDA is just a straightforward mathematical calculation.  This argument is barely comprehensible.  Section 15(m) describes how actual performance of Oversee EBITDA is to be calculated in determining whether actual performance met the Oversee "TBD" performance goals.  It does not prescribe how to choose the goals or their numeric value.  And, without any performance goals, there was nothing against which to measure actual performance.

Under either version of the argument – that the MIP Oversee EBITDA goals are the actual EBITDA performance numbers, or they are merely the budgetary EBITDA projections that the Board mathematically calculates as part of its regular business – Plaintiff's interpretation of the MIP offends the cardinal rule of contract construction that every contractual term should be given meaning and read together.  *See, e.g.,* 1 Witkin, *Summary of Cal. Law* (10th ed. 2005) Contracts, §§ 745, 750, pp. 833, 840 ("an interpretation [of a contract] which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect").  Under Plaintiff's interpretation, the Board is stripped of its discretion from the setting of MIP Oversee EBITDA performance goals.  This ignores the fact that the MIP expressly contemplates that Plaintiff would consult with the Board on those goals.  However, there would be nothing to consult about if there was no discretion to be exercised, so Plaintiff's construction reads Cahn's consultation opportunity and the part of the defined term Target EBITDA that relates to Oversee EBITDA out of the MIP altogether.  *See, e.g., City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 473 (1998) (interpretation rendering contract language nugatory or inoperative is disfavored).

C.   <u>Plaintiff's Prior Pleading Admissions Preclude Him From Arguing that the Board Set the MIP Oversee EBITDA Performance Goals.</u>

In addition to not being able to establish that the MIP obligated the Board to adopt the budgetary EBITDA projections as the MIP EBITDA performance goals, Plaintiff is also unable to show breach of any such obligation.  Plaintiff argues that Oversee breached the MIP because it purportedly failed to pay him bonus compensation even though Oversee EBITDA targets were set and met.  However, this argument is precluded by his prior pleading admission that no Oversee EBITDA performance goals under the MIP were ever set.

As courts have held, "factual assertions in pleadings . . . are considered judicial admissions that bind the party who made them." *Siegel v. Warner Bros. Entmt., Inc.*, 542 F. Supp. 2d 1098, 1133 (C.D. Cal. 2008).  Here, Plaintiff alleges that during negotiations over the MIP, Oversee repeatedly assured him that "Oversee would set the Oversee EBITDA in Cahn's MIP each year . . . in consultation with Cahn," and that "these goals would be the same goals for other senior management."  TAC ¶ 23.  However, Plaintiff further affirmatively alleges that these representations were "not true" and were "fraudulently made, and were relied upon by Cahn to his detriment." *Id*.  Moreover, Plaintiff has testified that he never met with the Board to discuss the setting of the Oversee EBITDA performance goals for the MIP.  *See* Deposition Transcript of Monte Cahn, taken November 15, 2011, at 144:17-21 ("I never spoke to the board or had an opportunity to talk to the board.  I was never invited to discuss anything with the board."), attached as Exhibit D to the Declaration of William Delgado, filed December 12, 2011 (Docket No. 124-5).  As such, Plaintiff is now precluded from arguing to the contrary – that the Board did in fact set the MIP Oversee EBITDA performance goals.  *See Rosen v. E.C. Losch Co.*, 234 Cal. App. 2d 324, 331

1  (1965) ("The practical construction placed upon the agreement by the parties is, of

2  course, substantial evidence of their intent").[2]

3

4      D.      Parol Evidence Conclusively Establishes That the Parties Did Not Agree

5              to Equate the Oversee Budgetary EBITDA Projections With the MIP

6              EBITDA Performance Goals.

7          The procedure required by the parol evidence rule is well-established, as

8  explained in *Blumenfeld v. R.H. Macy & Co.,* 92 Cal. App. 3d 38, 45, 154 Cal. Rptr.

9  652 (1979):

10         The [*Pacific Gas*] decision requires a court to follow a two-step process to
11         determine the admissibility of extrinsic evidence to interpret a written
           agreement.  First, so that the court can place itself in the same situation in
12         which the parties found themselves at the time they entered the agreement,
           the court should provisionally receive all credible evidence concerning the
13         intention of the parties to determine whether or not the written agreement
           is reasonably susceptible to the interpretation offered by a party.  Second,
14         if the court decides in light of this extrinsic evidence that the contract is
           reasonably susceptible to the offered interpretation, then the court may
15         admit such extrinsic evidence to interpret the contract.  On the other hand,
           if the court decides in light of this extrinsic evidence that the contract is
16         not reasonably susceptible to the offered interpretation, then the evidence
17         is inadmissible to interpret the contract.

18

19

20         Applying these principles to this case, the Court will provisionally receive all

21  credible parol evidence.  One item of parol evidence – the credibility of which Plaintiff

22  has never challenged – refutes Plaintiff's current construction of the MIP.   During

23  negotiations over the MIP, Plaintiff proposed language to make the MIP Oversee

24  EBITDA performance goals "the same as the goals set for the rest of Oversee senior

25  ───────────────
    [2]   Undoubtedly, Plaintiff's schizophrenic complaint also alleges that the annual
26        Oversee EBITDA goals were met, and, therefore, he was entitled to receive bonus
          compensation.  TAC ¶¶ 29-30.  However, that is premised on the assumption that
27        the company's budgetary EBITDA projections are deemed to be the MIP Oversee
          EBITDA performance goals, which merely begs the question.
28

management." Delgado Decl., Ex. A. to Oversee's Motion *In Limine* No. 1 (docket no. 218).  However, Plaintiff's proposed language was <u>rejected</u> by Oversee.  In particular, Plaintiff's attorney requested language tying the MIP Oversee figures to performance goals set for senior management, but Oversee said no:

> Q   Did you ever have any conversations with anybody on the Oversee side, in which they indicated to you that under the MIP Mr. Cahn's Oversee TBD component was going to be the same as the Oversee goals for the other senior management of Oversee?
>
> A   Did I have conversations with them?
>
> Q   Yes.
>
> A   I don't recall whether I had a conversation with them but my e-mails requested that.
>
> Q   I understand that.  Your e-mails requested that treatment and do you recall Oversee ever agreeing to that treatment?
>
> A   I seem to remember that Mr. Meshki agreed but had to go back to his client and then this language was agreed.  **And based upon Mr. Kupietzky's e-mail, it wasn't -- you know, the exact proposal that we had made wasn't acceptable**.
>
> Q   Just -- and this is something you said a few moments ago, you had a conversation with Mr. Meshki about your earlier proposed language.  Mr. Meshki thought it was acceptable, correct so far?
>
> A   Yes.
>
> Q   But Mr. Meshki then discussed it with his client and got back to you and said it was not acceptable to Oversee, correct?
>
> A   That is my recollection.

*See,* Delgado Declaration, ex. C to Oversee's Motion *In Limine* No. 1 (Docket No. 218)  (Gross (rough) depo., pp. 159-160) (emphasis added).  Indeed, Oversee *told* Cahn

1  that the MIP Oversee EBITDA Performance Goals would <u>not</u> be the same as those for

2  other senior managers.[3]

3       Accordingly, the parol evidence which the Court will provisionally consider

4  serves only to confirm what is plainly obvious from a reasonable construction of the

5  terms of the MIP:  the parties never agreed to equate the MIP Oversee EBITDA

6  performance goals with the company's budgetary projections for annual EBITDA, and,

7  in fact, this linkage was expressly rejected.

8  //

9  //

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 _____

26  [3] Delgado Decl., Ex. B to Oversee's Motion *In Limine* No. 1 (Docket No. 218) (e-mail
    in which Oversee advises Cahn that, in contrast to the MIP Oversee EBITDA

27  Performance Goals, the Non-MIP Oversee EBITDA Performance Targets have a
    "different Moniker component added to their legacy Oversee number reflecting

28  finance's plan for overall company earnings").

# III.   CONCLUSION

Even assuming it is a contract, as properly construed, the MIP gives the Board broad discretion in setting the MIP Oversee EBITDA goal, including whether to set one at all.  The MIP does not prescribe that the performance goals for Oversee EBITDA be equivalent to the company's budgetary EBITDA projections nor does it provide any other correlation whatsoever between the bonus targets of Oversee's senior executives and the MIP's goals.

Plaintiff's construction to the contrary is inconsistent with the purpose and clearly stated terms of the MIP, and, in fact, contradicts his prior pleading admissions. In case there is any doubt, provisional consideration of parol evidence conclusively establishes that the parties expressly rejected any attempt to equate the targets of the senior executives the MIP's Oversee EBITDA performance goals.  Accordingly, Plaintiff should not be permitted to introduce any evidence regarding the performance targets or bonuses of non-MIP participants, as such evidence is irrelevant to the MIP EBITDA goals upon which Plaintiff is suing.  Admission of this evidence would only serve to waste the Court's time and resources.

Dated:  December 23, 2011                WILLENKEN WILSON LOH & LIEB LLP

By:/s/ William A. Delgado
William A. Delgado
Attorneys for Defendants OVERSEE.NET,
JEFFREY KUPIETZKY, and LAWRENCE NG

1

## **CERTIFICATE OF SERVICE**

2

3       I hereby certify that I electronically filed the foregoing with the Clerk of the

4   Court using the CM/ECF system which will send notification of such filing to the

5   Electronic Service List for this Case.

6

    Dated:  December 23, 2011          WILLENKEN WILSON LOH & LIEB LLP

7

8

9                                           By: */s/ William A. Delgado*_____

10                                               William A. Delgado
                                                Attorneys for Defendants OVERSEE.NET,
11                                              JEFFREY KUPIETZKY, and LAWRENCE
                                                NG
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---