UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-03800-SVW -AGR | Date | December 29, 2011 |
|---|---|---|---|
| Title | Monte Cahn v. Oversee.net et al | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**      IN CHAMBERS ORDER Re DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AS TO PLAINTIFF'S FIRST CLAIM FOR RELIEF [63]

**I.      INTRODUCTION**

The instant action concerns Plaintiff Monte Cahn's relationship with his former employer,
Defendant Oversee.net ("Oversee").  In 2005, Plaintiff sold his company Domain Systems, Inc. d/b/a
Moniker.com ("Moniker") to Seevast Corporation.  In 2007, Oversee acquired Moniker from Seevast.
Oversee decided to retain Plaintiff's services.  Plaintiff and Oversee entered into a Management
Incentive Plan pursuant to which participants including Plaintiff would have earned large bonus
payments if various segments of Moniker (the "Moniker Segments") and/or Oversee achieved certain
Performance Goals.  In short, Plaintiff alleges that he is owed millions of dollars in payments under the
Management Incentive Plan.

On November 16, 2011, Defendant Oversee filed the instant Motion for Summary Judgment as
to Plaintiff's First Claim for Relief.  (Dkt. No. 63).  Defendant's Motion is DENIED for the reasons set
forth in this Order.

**II.      FACTUAL BACKGROUND[1]**

As noted above, in 2005, Plaintiff Monte Cahn sold his company Moniker, a company that
performs various internet functions such as domain name registration, to Seevast Corporation.  (Second
Amended Complaint, hereinafter ("SAC") ¶ 9).  Cahn stayed on as Moniker's CEO until 2007, at which
point Seevast marketed Moniker for sale.  (Id. ¶ 10).  On December 14, 2007, Oversee acquired Moniker

---

[1]This factual summary is intended to provide context for the parties' dispute and is not meant to
constitute factual findings or a ruling on the parties' evidentiary disputes.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-03800-SVW -AGR | Date | December 29, 2011 |
|---|---|---|---|

| Title | Monte Cahn v. Oversee.net et al |
|---|---|

from Seevast.  (Id. ¶ 23).  Cahn agreed to join Oversee for a period of at least three years after the sale of Moniker to Oversee.  (Id. ¶ 12).  Cahn and Oversee directly negotiated a Management Incentive Plan ("MIP") which provided a structure under which participants would receive bonus payments if certain segments of Moniker and Oversee achieved certain targets (the "Performance Goals") during a series of three time periods (the "Determination Periods").[2]  Specifically, the MIP set Performance Goals for the TrafficClub, Domain Sales and Registrar segments of Moniker's business (collectively, the "Moniker Business Segments").  (MIP § 15(u)).  The MIP also provided for a Performance Goal for Oversee (the "Oversee Business Segment") but left the exact terms of that Performance Goal  to be determined ("TBD").  (Id.).

In November 2008, Cahn and Oversee entered into an Incentive Compensation Plan ("ICP").[3] The ICP expressly provides that, for the  First and Second Determination Periods: (1) Cahn would be paid either under the MIP or the ICP, but not under both; and (2) Cahn would only receive payment "in respect of the Oversee goals under the MIP" if at least one of the Moniker Business Segments had achieved a Performance Goal.  (ICP at OVER002435-36, "Interaction with MIP" Section).

Plaintiff's First Claim for Relief[4] alleges that Oversee materially breached the MIP by, for example: (1) failing to pay Cahn awards under the MIP; (2) failing to determine in good faith whether the Performance Goals were, in fact, met and (3) intentionally manipulating data and diverting revenue in order to ensure that the Performance Goals would not be met in order to avoid making payments to Cahn under the MIP.  (SAC ¶ 40).

## III.    LEGAL STANDARD

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party may satisfy its Rule 56(c) burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  Once the moving party

---

[2]The MIP is attached as Exhibit 4 to the Declaration of Kenneth D. Watnick in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

[3]The ICP is attached as Exhibit 5 to the Declaration of Kenneth D. Watnick in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment

[4]As noted above, Plaintiff's First Claim for Relief is the only Claim currently at issue.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-03800-SVW -AGR | Date | December 29, 2011 |
|---|---|---|---|

| Title | Monte Cahn v. Oversee.net et al |
|---|---|

has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial.  See id. at 323-24; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.  Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000).  Only genuine disputes over facts that might affect the outcome of the suit under the governing law, *i.e.*, "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party," will properly preclude the entry of summary judgment.  See Anderson, 477 U.S. at 248.

Under Local Rules 56-2 and 56-3, these triable issues of fact must be identified in the non-moving party's "Statement of Genuine Issues" and supported by "declaration or other written evidence." See also Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 779 (9th Cir. 2010) (Federal Rule of Civil Procedure 56(e)(2) requires a party to "set out specific facts showing a genuine issue for trial.").  If the non-moving party fails to identify the triable issues of fact, the court may treat the moving party's evidence as uncontroverted, so long as the facts are "adequately supported" by the moving party.  Local Rule 56-3; see also International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's] task *sua sponte* to search the record for evidence to support the [parties'] claim[s]."); Carmen v. San Francisco United School District, 237 F.3d 1026, 1029 (9th Cir. 2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read.  It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").

## IV.     DISCUSSION

### A.     The Moniker Business Segments

Oversee argues that the Moniker Business Segments simply never achieved the Performance Goals set forth in the MIP.[5]  (Mot. at 9-11).  However, as Cahn argues, Oversee's Motion relies heavily on a "one page, unsourced spreadsheet" (the "Spreadsheet"), attached to Defendants' Motion as Exhibit D to the Declaration of Elizabeth Murray.  (Opp. at 10).  The Spreadsheet is essentially a one page summary of earnings data that purports to prove that the Performance Goals under the MIP were not met.  (Murray Decl., Ex. D).  Oversee has not attempted to authenticate the Spreadsheet nor has Oversee

---

[5]The Court disagrees with Oversee's argument that the MIP is not a contract.  Rather, as Plaintiff notes, Courts recognize incentive plan offered to induce employment as binding contractual agreements. See, e.g. Sabatini v. Hensley, 161 Cal.App.2d 172, 175 (1958).  ("When an employer promises a prospective employee a fixed salary and an indeterminate bonus, each promise is made to induce undertaking of the employment.  Acceptance of the employment is consideration for the promise of a bonus, and this promise thus is enforceable.") (internal citation omitted).

:

Initials of Preparer               PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-03800-SVW -AGR | Date | December 29, 2011 |
|---|---|---|---|
| Title | Monte Cahn v. Oversee.net et al | | |

provided any supporting evidence demonstrating how the figures in the Spreadsheet were calculated. The Court therefore agrees with Cahn that the Spreadsheet is inadmissible under the Federal Rules of

Evidence.  Perhaps most importantly, Rule 1006 provides that:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  There is no indication that Oversee has complied with the requirements of Rule 1006.  Accordingly, the Court concludes that denial of Oversee's Motion is appropriate on that basis alone with regards to payments under the MIP related to based on the performance of the Moniker Business Segments.

**B.     The Oversee Business Segment**

As noted above, the Performance Goal for the Oversee Business Segment was expressly left "TBD" in the MIP.  (MIP § 15(u)  (stating that the Target EBITDA for the Oversee segment "shall be determined from time to time by the Board, in consultation with [Plaintiff] for so long as he is employed by [Defendant Oversee]")).[6]  Oversee argues that the Oversee Board had the discretion under the MIP to choose to not set a Performance Goal for the Oversee Business Segment, and that because such a Goal was never set, Plaintiff's First Claim fails with regard to any payment related to the Oversee Business Segment.[7]  (Mot. at 12-13).  Defendant argues that Stevens v. Mavent, Inc., No. SA CV 07-245 AHS(RNBx), 2008 WL 2824956 (July 21, 2008), a district court order which does not bind this Court, is

---

[6]EBITDA is a commonly used acronym for earnings before interest, taxes, depreciation and amortization.  See http://www.investopedia.com/terms/e/ebitda.asp.

[7]Section 15(u) defines "Target EBITDA" as follows:
"Target EBITDA" means, with respect to each Determination Period, the Registrar EBITDA, Oversee EBITDA or Domain Sales EBITDA, as applicable, with respect to which 100% of the Business Segment Baseline Award with respect to such applicable Businses Segment would be awarded, in the case of Registrar EBITDA and Domain Sales EBITDA as set forth on Schedule A, and with respect to Oversee EBITDA, *as shall be determined from time to time by the Board*, in consultation with Monte Cahn for so long as he is employed by the Company.
(MIP § 15(u) (emphasis added)).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-03800-SVW -AGR | Date | December 29, 2011 |
|---|---|---|---|
| Title | Monte Cahn v. Oversee.net et al | | |

instructive.  (Mot. at 13-14).  The Court disagrees.

        The plaintiff in Stevens was an at-will employee that signed an employment agreement with his employer pursuant to which plaintiff was eligible for bonus compensation based on targets to be set by the employer's board of directors.  Stevens, 2008 WL 2824956 at *1.  However, the board never actually set such a target, and plaintiff did not receive a bonus.  (Id.).  The Court in Stevens held that plaintiff's breach of contract claim failed "because the absence of standards for determining performance bonus eligibility renders damages speculative."  Id. at *3 (citing Scott, 11 Cal.4th at 473).  Specifically, the court noted that while the "parties' Agreement . . . allowed for the possibility of performance bonuses, the terms for attaining such bonuses were to be determined entirely at [the employer's] 'sole discretion.'  Stevens, 2008 WL 2824956 at *3.  Because the employer "did not set conditions for the awarding of bonuses," the Court held that plaintiff's breach of contract claim failed "because the promise to pay quarterly performance bonuses contained in the Agreement has no definable standards and is too indefinite to enforce."  Id.

        The Court finds this reasoning unpersuasive.  Rather, the Court finds that the MIP in the instant action is more plausibly read as vesting Oversee with discretion as to *where* to set the applicable target or goal that would be used to determine whether a bonus payment was due, not unfettered discretion as to whether to set a target or goal at all.  The Court thus agrees with Cahn that Oversee was bound by the implied covenant of good faith and fair dealing to set such a target.  See, e.g. Lazar, 143 Cal.App.3d at 141; Goldberg v. City of Santa Clara, 21 Cal.App.3d 857, 860-861 (1971) (noting "that a party to a contract may allow the amount of his compensation to be determined by the other party to the contract" but if the party "acts in bad faith (usually manifested by setting an unconscionably low figure), the matter may be put to a [trier of fact] to decide upon the reasonable value").  Had Oversee set a Performance Goal for the Oversee Business Segment that Cahn simply wished were easier to achieve, Oversee would have acted within its discretion under the MIP and Cahn would be powerless to complain.[8]   As noted above, Oversee claims that no such Performance Goal was ever set, and that the Oversee Board had discretion under the MIP to choose to not set a Performance Goal.  Accordingly, the Court cannot grant summary judgment in favor of Oversee with regards to the Oversee Business Segment.[9]

---

        [8]The fact that Oversee claims it never set such a Performance Goal means that Oversee arguably acted so as to frustrate the MIP because the MIP clearly required Oversee to set an Oversee Performance Goal.  Moreover, had Oversee set a goal that was purposefully formulated to award no incentive or a nominal incentive, that too could be grounds for a finding of breach.  See Goldberg,21 Cal.App.3d at 860-861.  However, the Court need not reach this issue because Oversee claims that no such goal was ever established.

        [9]It is worth noting that the parties also disagree as to whether that the Oversee Board set Oversee Performance Goals for 2009 and 2010.  The parties agree that the Oversee Board set such a goal as a

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-03800-SVW -AGR | Date | December 29, 2011 |
|---|---|---|---|
| Title | Monte Cahn v. Oversee.net et al | | |

Furthermore, as noted above, Cahn and Oversee executed the ICP, which applied to the first two of three Determination Periods, in November 2008.  Oversee argues that, at a minimum, Cahn is not entitled to payments for the first two Determination Periods based on the performance of the Oversee Business Segment because at none of the Moniker Business Segments achieved a Performance Goal in any of the Determination Periods.  However, as noted above, the Court finds that Defendant's argument that none of the Moniker Performance Goals were achieved rests on inadmissible evidence.  Accordingly, the Court finds that any effect the ICP might have on payments allegedly owed to Cahn is an issue best left for trial.

###### C.      Plaintiff's Failure to Designate MIP Participants

Under Section 5(a) of the MIP, Cahn was required to "designate those persons who will be Participants" in the MIP within fifteen days of the start of each fiscal year.  (MIP § 5(a)).  It is undisputed that Cahn never provided a list of Participants to the Oversee Board.  Oversee thus argues that its Motion should be granted in full on the basis that, even if Cahn was entitled to some bonus payment for any of the Business Segments for any of the three Determination Periods, any resulting relief would be overly speculative "because it is now impossible to determine how an award would have been divided among multiple participants."  (Mot. at 15).  The Court finds, on the record the currently before the Court, that this is a factual issue not capable of resolution at the summary judgment stage.  Specifically, there is an issue of fact because Cahn maintains that "the parties agreed and understood that Cahn was a participant in the MIP."  (Opp. at 24).

#### V.      CONCLUSION

Defendant Oversee's Motion is DENIED for the reasons set forth in this Order.

---

metric for determining compensation of employees other than Cahn.  However, Plaintiff claims that, contrary to Defendants' assertion, that same goal applied both to Oversee legacy management employees and Plaintiff, as a participant under the MIP. (Opp. at 17).  The Court need not resolve this dispute at this point.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | PMC | |