William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Leemore Kushner (State Bar No. 221969)
lkushner@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Defendants
OVERSEE.NET, JEFFREY KUPIETZKY,
and LAWRENCE NG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual, | Case No. CV-11-03800 SVW (AGRx) |
| Plaintiff, | **NOTICE OF PENDING DISCOVERY DISPUTES** |
| v. | |
| OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10 | Complaint Filed: May 3, 2011<br>Pretrial Date: January 10, 2012<br>Trial Date: January 17, 2012 |
| Defendants. | |

NOTICE OF PENDING DISCOVERY DISPUTES

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to this Court's Order Re: Status Conference, filed August 25, 2011 (Docket No. 23), Defendant Oversee.net notifies the Court of two pending discovery disputes that arose on January 5, 2012. The disputes are described in the attached memorandum.

Dated: January 9, 2012             WILLENKEN WILSON LOH & LIEB LLP


                                   By: /s/ William A. Delgado            .
                                   William A. Delgado
                                   Attorneys for Defendants OVERSEE.NET,
                                   JEFFREY KUPIETZKY, and LAWRENCE NG

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Two events give rise to this notice to the Court: (i) a January 5, 2012 letter from Plaintiff again requesting financial information from Oversee; and (ii) a January 5, 2012 order from Magistrate Judge Rosenberg implicating Oversee's confidential customer information.  The purpose of this filing is to advise the Court of these issues in advance of the January 10 Pretrial Conference.  Plaintiff's counsel has already announced their intention to raise these matters and to contend that Oversee has failed to provide adequate discovery.  As is discussed below, Oversee has in fact made extraordinary efforts to provide plaintiff's counsel with discovery in spite of Plaintiff's repeated unwillingness to identify the materials he seeks.

## II. PLAINTIFF'S JANUARY 5, 2012 REQUEST FOR ADDITIONAL FINANCIAL INFORMATION

### A. Background.

On December 6, 2011, Magistrate Judge Rosenberg held a hearing on Plaintiff's Motion to Compel in which she considered Plaintiff's argument that Oversee had failed to make an adequate production of financial documents.  Oversee had objected to Plaintiff's overbroad requests to produce "all documents that relate to financial performance" of various business units but made a broad production of financial records and reports concerning the operations of the business units identified in the Management Incentive Plan ("MIP").  Oversee never declined to make a further production but asked that Cahn describe any additional materials he required.

The December 6 hearing took place approximately one week following the November 28 deadline (extended three times by this Court) for plaintiff to produce his expert witness report.  Judge Rosenberg agreed with the overbreadth of the requests.  Hearing Tr. at 12 ("Part of the problem is the requests are fairly broad ranging…") (attached as Exhibit A).  Oversee also noted that Plaintiff's chief complaint—a

supposed lack of access to "source documents"—resulted from the vagueness of that term and its potential to encompass tens of millions of documents. Judge Rosenberg agreed. Hearing Tr. at 19-20 (stating "I'm not sure that that's what they want…" when considering production of millions of invoices) and 63 ("…I think what [Plaintiff's] trying to find are some summary documents"). Ultimately, Plaintiff's counsel acknowledged that he had not consulted with their expert witness to determine the type of summary information he actually needed:

> THE COURT: Have you talked with your expert? Does he need anything less than quarterly [reports]?
>
> MR. WATNICK: I can – I have not.
>
> THE COURT: Okay. I would ask him what would be relevant from the expert's point of view; how detailed does he need this…

Hearing Tr. at 55. So, six weeks before trial, and a full week after Plaintiff submitted his expert witness report, Mr. Watnick and his expert, Mr. Callaghan, had never discussed the specific information Mr. Callaghan allegedly needed.

    Ultimately, Judge Rosenberg ordered the parties to bring their experts together for a further meet and confer. The purpose of the meet and confer was to address production of financial data in Oversee's databases with a greater level of specificity than that found in Plaintiff's request:

> The other way is we just create a list of documents that seem to fall within this, because when you have requests that say "all documents that relate to financial performance," it's hard to imagine any of these documents that wouldn't. But instead of searching for all documents that relate to financial performance, you're now going to be doing very specific things.

Hearing Tr. 32-33; Order, dated December 6, 2011 (Docket No. 106) (ordering meet and confer).

Consistent with that order, the parties and their respective experts met and conferred on December 13, 2011. With a few exceptions, with which Oversee complied, Plaintiff's expert, David Callaghan, failed to specifically identify the documents he supposedly needed. Callaghan did specifically request Moniker's pre-acquisition Quickbook files and a "chart of accounts." Oversee produced them. However, the majority of Mr. Callaghan's requests described the same vague areas of inquiry. Notably, Callaghan also specifically stated that he did **not** require any documentation that supported Moniker's "Operating Expenses."

Oversee attempted to translate Callaghan's requests into financial reports and queried its financial database to extract several additional, detailed reports. On December 15, 20, 22, 23, and 27, Oversee produced both the two categories of documents Callaghan specifically requested, and spreadsheets and reports that attempted to satisfy the general areas of inquiry he identified.[1] On December 28, 2011, Oversee served its Rebuttal Expert Witness Report which identified, by description or Bates number, the documents produced by Oversee that served as the basis for its expert's MIP calculations for the Registrar and Domain Sales segments.

On December 20th, as a result of the one dispute that arose during the meet and confer regarding TrafficClub information (described below), Oversee filed a Supplemental Brief (Document No. 174) which identified (i) the documents produced to date as a result of the meet and confer; and (ii) the documents Oversee would produce (and did produce by December 23).[2] In that Supplemental Brief, Oversee also offered to allow Plaintiff's expert direct access to Oversee's financial database in the event he wanted to "drill down" further on particular information.

---

[1] Oversee's production even included support for some of the "Operating Expenses" that Plaintiff did not need. In total, the production was approximately 325 MB (primarily spreadsheets) or, approximately, 15 boxes worth of data. *See* http://www.lexbe.com/hp/Pages-Megabyte-Gigabyte.aspx (providing MB to pages tool).

[2] Oversee also produced two additional two documents on December 27.

December 27 represented the deadline (three weeks prior to trial) to notify the Court of outstanding discovery disputes. *See* Court Order (Docket No. 23) ("Any discovery disputes that are not resolved three (3) weeks prior to the scheduled trial date should be brought promptly and directly to the attention of <u>this Court</u>.") Cahn did not file anything, and he did not respond to the December 20 offer to allow direct access to the Oversee financial database.

Then, on January 5, 2012, at 5:07 p.m., Plaintiff's counsel emailed a letter demanding direct access to Oversee's financial database by 10:00 a.m. on January 6. The letter included a vague and overbroad list of categories of information that plaintiff demanded. The list made it clear that plaintiff was, essentially, starting from scratch. Indeed, given the short time until trial, it is inconceivable that Mr. Callaghan could possibly incorporate the additional data into trial testimony by Wednesday, January 11, 2011, the date on which direct examination declarations are due.

B.  <u>The (Potentially) Pending Dispute</u>.

Plaintiff's January 5th letter (attached hereto as Exhibit B) goes far beyond a request for further details on a particular account or area of inquiry. It is wholesale reversion to Plaintiff's original request for "all documents which relate to financial performance" for various business segments. Among the requests are the following:

- "TrafficClub Revenue Detail, TrafficClub COGS Detail…Domain Sales Revenue Detail, Domain Sales COGS Detail." Not only are these categories vague, but Oversee already provided financial data on these areas of inquiry. So it appears Plaintiff is merely requesting that Oversee provide it again.
- "Detail of transactions which add up to the Registrar Revenue figures found in the audited financial statements." Registrar revenue consists of millions of transactions. Mr. Watnick acknowledged at the December 6, 2011 hearing that he was not requesting such information. Hearing Tr. 19

(when asked if he wanted individual invoices to reconstruct the entire history of Moniker, responding with "if I said, 'Yes', I think I would have my client ripping my head off, your Honor.")

- "Transaction details behind figures included as operating expenses" for both registrar and domain sales. Not only is this request vague, this is precisely the information that Mr. Callaghan stated he did not need during the December 13th meet and confer.

- "The supporting financial calculations (including the revenue, EBITDA and COGS analysis) that was used to prepare the prospectus that was provided to potential purchasers of Moniker." This demand directly defies Judge Rosenberg's statement on December 6th. *See* Hearing Tr. at 27-28 (directing production of presentation materials (now produced), but stating: "Not every document you've given to the potential purchaser, because this case is not about the sale of Moniker.") (emphasis added).

Moreover, Plaintiff's letter goes well beyond simply asking for access to the database. It demands that Oversee "provide mechanism/approach to analyze/test that 'non-Moniker' transactions do not include any customers/account ids/account manager that relate to 'Moniker.'" In other words, Plaintiff and his expert, Mr. Callaghan, are demanding that Oversee devise the mechanism for Mr. Callaghan to verify Oversee's MIP calculations.

After spending the week before Christmas compiling a massive amount of financial information at Plaintiff's request, Oversee's invitation to access the database was intended to help clarify any issues regarding its production. It was not an invitation for Plaintiff to disregard the information provided and simply start the process over on January 5th. The repeated shifting demands for documentation are particularly perplexing in light of the fact that the MIP calculations are not created from scratch but, rather, are required to be based on the company's financial statements as audited by Ernst & Young.

The foregoing notwithstanding, Oversee notified Plaintiff it could provide access to its financial database on January 9th at 10:00 a.m. Plaintiff's expert and Plaintiff's counsel have elected to come at 1:30 p.m. Oversee will work with Plaintiff's expert to identify remaining areas of concerns and provide additional information as it is requested.

Oversee anticipates that the January 9 meeting will not resolve the parties' discovery issues. Indeed, Oversee does not believe that Cahn intends to use the meeting to resolve discovery issues based on the timing of the requested meeting and the history recited above. Oversee will be prepared to address this issue with the Court at the Pretrial Conference.

### III. JUDGE ROSENBERG'S JANUARY 5TH ORDER

As noted, above, during the December 13th meet and confer, there was one issue which arose that the parties could not resolve regarding TrafficClub/DomainSponsor information. A hearing was held on December 15th before Judge Rosenberg; supplemental briefs on the issue were filed on December 20th; an order issued on January 5, 2012. Order, dated January 5, 2012 (Docket No. 218).

At a very high level, the issue is the extent to which Mr. Cahn will have access to certain Oversee DomainSponsor customer information (i.e., revenue, costs of goods sold, revenue share percentage). This is a highly sensitive issue because: (i) Mr. Cahn is an acknowledged competitor of Oversee; and (ii) Mr. Cahn's counsel has refused to agree to any protective order that allows for an "Attorneys' Eyes Only" designation.

Cahn's justified his request for DomainSponsor customer information by claiming that he needs it to calculate TrafficClub gross profits. In her January 5, 2012 order, Judge Rosenberg noted that Plaintiff's interpretation of the MIP justifying his request for this information was "strained" (fn. 2) but nevertheless permitted Cahn to have access to certain DomainSponsor customer information. Oversee has no choice but to object to the order. If Mr. Cahn is given access to this information he will

receive a windfall of proprietary information that he can use to compete directly with Oversee.

Cahn's ability to misuse Judge Rosenberg's order became clear when his counsel immediately sent letters demanding confidential financial information concerning many of DomainSponsor's largest customers. That list includes people who were customers of DomainSponsor in 2007 and not customers of TrafficClub in 2007. The MIP specifically excludes those customers from the MIP calculations. MIP, Section 15(aa). The lists also include customers whom Oversee knows Cahn played no role in soliciting.

Oversee will promptly present its objections to this Court. In light of the extensive filings due on January 10 and 11, Oversee will not be able to present its brief on that issue until the end of the week. Although under Federal Rule 72, Oversee has until January 19, 2012 to provide its objections, Oversee intends to file its objection by January 13, 2012.

## IV.  CONCLUSION

Oversee anticipates that Cahn's counsel will claim at the Pretrial Conference that Oversee has not complied with its discovery obligations. Any such contention would be completely untrue, and Oversee would welcome the opportunity to discuss the issue further if the Court believes additional information would be useful.

Dated:  January 9, 2012                    WILLENKEN WILSON LOH & LIEB LLP


By: */s/ William A. Delgado*                    .
William A. Delgado
Attorneys for Defendants OVERSEE.NET,
JEFFREY KUPIETZKY, and LAWRENCE NG

## **DECLARATION OF WILLIAM A. DELGADO**

I, William A. Delgado, hereby declare as follows:

1. I am an attorney duly admitted to practice before this Court and a member of Willenken Wilson Loh & Lieb LLP, counsel of record for Defendants Oversee.net ("Oversee"), Jeff Kupietzky and Lawrence Ng in the above captioned case. I have personal knowledge of the facts stated herein and, if called as a witness, I could competently testify thereto.

2. Attached hereto as Exhibit A are true and correct copies of excerpts from the hearing transcript of the hearing on December 6, 2011 before Magistrate Judge Rosenberg.

3. Attached hereto as Exhibit B is a true and correct copy of the January 5, 2012 e-mail and letter I received from Plaintiff's counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of January, 2012, at Los Angeles, California

*/s/William A. Delgado* .
William A. Delgado

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated: January 9, 2012             WILLENKEN WILSON LOH & LIEB LLP

                                   By: */s/ William A. Delgado*             .
                                   William A. Delgado
                                   Attorneys for Defendants OVERSEE.NET,
                                   JEFFREY KUPIETZKY, and LAWRENCE NG