ORIGINAL

1   William A. Delgado (Bar No. 222666)
2   wdelgado@willenken.com
    Leemore Kushner (State Bar No. 221969)
3   lkushner@willenken.com
4   WILLENKEN WILSON LOH & LIEB LLP
    707 Wilshire Blvd., Suite 3850
5   Los Angeles, CA 90017
    Tel: (213) 955-9240
6   Fax: (213) 955-9250
7
8   Attorneys for Defendants
    OVERSEE.NET, JEFFREY KUPIETZKY,
9   and LAWRENCE NG

10

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13

14  MONTE CAHN, an individual,          | Case No. CV11-03800 SVW (AGRx)
15              Plaintiff,              |
                                         | **DEFENDANT OVERSEE.NET'S** *EX*
16       v.                             | *PARTE* **APPLICATION TO SEAL**
                                         | **TRIAL DOCUMENTS FILED BY**
17  OVERSEE.NET, a California           | **PLAINTIFF MONTE CAHN;**
18  corporation; JEFF KUPIETZKY, an     | **DECLARATION OF WILLIAM A.**
    individual, LAWRENCE NG, an         | **DELGADO**
19  individual; and DOES 1 through 10   |
20                                       | [Notice Provided to Opposing Counsel]
            Defendants.                 | [Fed. R. Civ. P. 65 and L.R. 7-19]
21                                       |
22                                       |
23                                       | Complaint Filed:    May 3, 2011
                                         | Pretrial Conf. Date: January 10, 2012
24                                       | Trial Date:          January 24, 2012
25                                       |
26

27

28

1  TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS
2  OF RECORD:
3       PLEASE TAKE NOTICE THAT, upon this *ex parte* application, and pursuant to
4  Local Rule 79-5, Defendant Oversee.net ("Oversee") hereby applies for an order
5  sealing the following documents filed by Plaintiff Monte Cahn in this matter: (i) Direct
6  Testimony of Monte Cahn (Docket No. 227), (ii) Cahn's [Proposed] Findings of Fact
7  and Conclusions of Law (Docket No. 230), and (iii) Cahn's Trial Brief (Docket No.
8  231).  This Application is supported by the attached Memorandum of Points and
9  authorities.

10                    **NOTICE OF *EX PARTE***
11       On January 18, 2012, Oversee requested by electronic mail that Cahn inform
12  Oversee whether he was amenable to a joint request to this Court to seal the above-
13  referenced documents.  Declaration of William A. Delgado, dated January 20, 2012,
14  Ex. A.  Oversee further informed Cahn that if he was not so amenable, it would bring
15  this *ex parte* the following day.  As of the filing of this application, no response had
16  been received.
17       The name, address and telephone number of Plaintiff's counsel are:
18                  Ken Watnick
19                  Lewis Brisbois Bisgaard & Smith
20                  221 North Figueroa Street, Suite 1200
21                  Los Angeles, CA 90012-2601
22                  Tel: 213.680.5105
23       This Application is brought pursuant to Federal Rule of Civil Procedure 65,
24  Local Rule 7-19, and Local rule 79-5 and is made on the ground that there is
25  compelling reason to seal the documents in order to protect Oversee's confidential
26  financial information from disclosure.  The public's common law right to access can be
27  satisfied with access to redacted versions of the documents.
28

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2    Local Rule 79-5 provides as follows:

3    No case or document shall be filed under seal without prior

4    approval by the Court.  Where approval is required, a written

5    application and a proposed order shall be presented to the judge

6    along with the document submitted for filing under seal.

7         For purposes of discovery, Magistrate Judge Rosenberg determined that good

8    cause existed for the entry of a Protective Order in this case.  Docket No. 38.  The

9    Protective Order allows the parties to designate certain materials as

10   "CONFIDENTIAL," thereby limiting their disclosure to the parties and attorneys in

11   this lawsuit and prohibiting dissemination of designated materials to the public.

12        For purposes of trial-related documents, there is still "compelling reason" to seal

13   the three documents at issue.  The U.S. Supreme Court has noted that sealing of

14   judicial records may be particularly appropriate to protect confidential business

15   information:

16              It is uncontested, however, that the right to inspect and copy

17              judicial records is not absolute. Every court has supervisory

18              power over its own records and files, and access has been

19              denied where court files might have become a vehicle for

20              improper purposes. For example, the common-law right of

21              inspection has bowed before the power of a court to insure that

22              its records are not "used to gratify private spite or promote

23              public scandal" through the publication of "the painful and

24              sometimes disgusting details of a divorce case."  Similarly,

25              courts have refused to permit their files to serve as reservoirs of

26              libelous statements for press consumption, **or as sources of**

27              **business information that might harm a litigant's**

28              **competitive standing.**

---

DEFENDANTS' *EX PARTE* APPLICATION TO SEAL TRIAL DOCUMENTS
2

1    *Nixon v. Warner Commns., Inc.*, 435 U.S. 589, 598 (1978) (internal citations

2    omitted) (emphasis added).  It is within the discretion of the trial court to

3    seal such documents.  *Id.* at 599.

4        Here, the three trial documents filed by Cahn refer to documents and information

5    that Oversee designated as "CONFIDENTIAL" during discovery pursuant to the terms

6    of the Protective Order.  This confidential information included the financial condition

7    of Oversee over a three year period, including EBITDA projections and EBITDA

8    performance.  Oversee is a private company which does not publicize its financial

9    information.  Indeed, Oversee limits the disclosure of its financial information even

10    within its own organization.  Cahn's trial documents contain information that is similar

11    (if not identical) to information in the Direct Examination Declaration of Jeffrey

12    Kupietzky which this Court has already sealed.  Docket No. 233.  Allowing public

13    access to such information would allow Oversee's competitors unfettered access to

14    Oversee's confidential financial information and significantly harm Oversee's

15    competitive standing.  On the other hand, this is not a matter (e.g., a criminal trial)

16    where there is a strong interest in public disclosure.  The public's common law right to

17    access can be satisfied with a redacted version of the trial brief that omits only the

18    specific confidential information at issue.

19        *Ex parte* relief is required because it appears that some of Oversee's information

20    has already been publicly disclosed as the result of Cahn's actions.  As noted, above,

21    Oversee contacted Plaintiff to request that Plaintiff join with Oversee in a request to

22    seal the documents at issue which were publicly filed by Cahn.  Oversee received no

23    response.

24        Instead, the following day, on January 19, 2012, the website "Domain Name

25    Wire, an Internet "blog" that regularly covers this matter posted a new entry which

26    included the financial information that Oversee had disclosed to Cahn under a

27    Protective Order as CONFIDENTIAL.  Delgado Decl. Ex. B.  Notably, prior to

28    January 18, 2012, Domain Name Wire had not posted any entries about Cahn's three

trial filings.  Oversee suspects that it did so only after being contacted by Cahn and being informed that his trial filings were publicly available (but might not be much longer since Cahn was aware Oversee would be bringing this request).   Mr. Cahn certainly attempted to publicize the blog post by sending a link of the article to third parties, including witnesses in this case.  Delgado Decl. Ex. C.

In short, the Court should seal the documents now before the dissemination of Oversee's information is further exacerbated.  Oversee reserves its rights to seek additional remedies in light of the violation of the Protective Order and Cahn's refusal to acknowledge the error in filing the documents and stipulate to their sealing.

## CONCLUSION

For the foregoing reasons, Oversee requests that the Court order that the following documents be sealed by the Clerk of the Court and access be removed from the CM/ECF system:  (i) Direct Testimony of Monte Cahn (Docket No. 227), (ii) Cahn's [Proposed] Findings of Fact and Conclusions of Law (Docket No. 230), and (iii) Cahn's Trial Brief (Docket No. 231).

Dated:  January 20, 2012                    WILLENKEN WILSON LOH & LIEB LLP


By: _____
      William A. Delgado
      Attorneys for Defendants OVERSEE.NET,
      JEFFREY KUPIETZKY, and LAWRENCE
      NG

DECLARATION OF
WILLIAM A. DELGADO

1 | William A. Delgado (Bar No. 222666)
2 | wdelgado@willenken.com
  | Leemore Kushner (State Bar No. 221969)
3 | lkushner@willenken.com
4 | WILLENKEN WILSON LOH & LIEB LLP
  | 707 Wilshire Blvd., Suite 3850
5 | Los Angeles, CA 90017
6 | Tel: (213) 955-9240
  | Fax: (213) 955-9250
7 |
8 | Attorneys for Defendants
  | OVERSEE.NET, JEFFREY KUPIETZKY,
9 | and LAWRENCE NG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE CAHN, an individual, | Case No. CV-11-03800 SVW (AGRx) |
| Plaintiff, | **DECLARATION OF WILLIAM A. DELGADO IN SUPPORT OF DEFENDANTS OVERSEE.NET'S *EX PARTE* APPLICATION TO SEAL TRIAL DOCUMENTS FILED BY PLAINTIFF MONTE CAHN** |
| v. | |
| OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual, LAWRENCE NG, an individual; and DOES 1 through 10 | Complaint Filed:    May 3, 2011<br>Pretrial Conf. Date: January 10, 2012<br>Trial Date:          January 24, 2012 |
| Defendants. | |

DECLARATION OF WILLIAM A. DELGADO

# DECLARATION OF WILLIAM A. DELGADO

I, William A. Delgado, hereby declare as follows:

1.      I am an attorney duly admitted to practice before this Court and a member of Willenken Wilson Loh & Lieb LLP, counsel of record for Defendants Oversee.net ("Oversee"), Jeff Kupietzky and Lawrence Ng in the above captioned case.  I have personal knowledge of the facts stated herein and, if called as a witness, I could competently testify thereto.

2.      Attached as Exhibit A is a true and correct copy of my e-mail to Plaintiff's counsel of January 18, 2012.

3.      Attached as Exhibit B is a true and correct copy of a printout from www.domainnamewire.com which I printed out today.  It is a January 19, 2012 blog post regarding trial filings in this matter which references confidential Oversee information available only in Cahn's documents.

4.      Attached as Exhibit C is a true and correct copy of an e-mail forwarded to me by Jeff Navach, a witness in this matter.  As can be seen from the e-mail forward, Mr. Navach received an e-mail from Mr. Cahn at 9:12 a.m. on January 19, 2012 with a link to the Domain Name Wire article.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of January, 2012, at Los Angeles, California.

_____

William A. Delgado

**EXHIBIT  A**

**William Delgado**

| | |
|---|---|
| **From:** | William Delgado |
| **Sent:** | Wednesday, January 18, 2012 10:40 PM |
| **To:** | 'Watnick, Ken'; Harrington, Sonja; Barber, John |
| **Cc:** | Michael C. Lieb; Leemore Kushner |
| **Subject:** | Plaintiff's Filings |

Counsel,

Please let me know if you are amenable to stipulating that Mr. Cahn's Direct Testimony, Trial Brief, and Proposed Findings of Fact and Conclusions of Law be filed under seal.  Otherwise, we will request by ex parte application to be filed tomorrow that the Court seal those documents on the basis that they refer to Oversee's confidential financial information.

Thank you.

Will Delgado

1

**EXHIBIT B**

| Search |

- Home
- About
- Contact
- Advertise

- Domain Parking
- Domain Registrars
- Domain Sales
- Domain Services
- Expired Domains
- Policy & Law
- Uncategorized
- We Get It Disclosures

## Newsletter

**Subscribe** to our newsletter!

| your name |

| your email |

| your country |

| ████████ | *Privacy policy*

## Resources













## Recent Articles

- Bob Parsons credits Super Bowl ads for $1 billion in sales
- A look at Escrow.com's $1 billion milestone and new broker tool
- IAC sells Sendori for $3 million
- Sedo selling Zimbabwe.com at a fraction of its former price
- So long, MegaUpload.com
- Fortune names GoDaddy to 100 "Best Companies to Work for" list
- Research paper could save brands $185,000 on a "defensive" new TLD
- SOPA and PIPA web site protests memorialized on Screenshots.com
- Monte Cahn and Oversee.net go to trial next week
- National Association of Realtors goes after GayRealtor.com

## Archives

Select Month







## Site Sponsors

- Your ad here.

- Development doesn't need to mean less revenue. Monetize your domains with DomainApps.
  **DomainApps.com**
- Premium domains for sale. Free, personalized assistance: call 866-818-5931.
  **BuyDomains.com**
- International domain name Registration, Trademark & Brand Protection. Fast, easy & secure.
  **101domain.com**
- Australian Domains our specialty. All domain registrations get 3 months of free webhosting.
  **Whois.com.au**
- Domain name dispute and domain monetization lawyers.
  **TraverseLegal.com**
- ccTLD & gTLD domain name registrations at the industry's best prices.
  **DomainersChoice.com**
- Very low prices for International and Australian Domain Name Registration.
  **AustralianWebsites.com**
- International Trademark & Domain Name Registration. More than 160 countries available.
  **Marcaria.com**
- Global ccTLD Registrations Over 1000 Domain Extensions Reseller API and Bulk Discounts
  **Instra.com**
- Sell Domain Names.
  Free, personalized assistance: call 1-866-351-9586
  **Afternic.com**
- Fast International & Australian domain name registration + quality hosting
  **DomainRegistration.com.au**
- Register your domain names with Searchen Networks Inc., Check domain name availability. Search for domain names.
  **Searchen.com**
- Domain Name Wire is the Domain Name Industry's News Source.







**Monte Cahn and Oversee.net go to trial next week**

## Thursday, January 19th, 2012

**Court to decide two aspects of dispute between Moniker founder Monte Cahn and his former employer.**

Monte Cahn and Oversee.net will square off in court on January 24, but it will be a limited non-jury trial over just a couple aspects of Cahn's breach of contract claim.

The trial will seek to address two issues:

1. Oversee's treatment of the Oversee EBITDA performance goal under Cahn's bonus plan
2. Who counts as "TrafficClub customers" for determining if Cahn met his goal for domain monetization

Trial briefs submitted by the respective parties shed more light on the history of Moniker as well as Oversee.net's performance in recent years.

**Seevast sells Moniker to Oversee.net**

Monte Cahn sold Moniker to Seevast (called Kanoodle at the time) in 2005. Seevast thought it would go public or be sold in a couple years. Cahn had a provision in the sale that would allow him to ask for Moniker to be sold again in two years if that didn't happen.

After Seevast bought Moniker, Cahn stayed on with the company. It generated $3.6M in EBITDA in 2006 and $4.1M in 2007, according to Cahn.

After two years the Seevast exit did not materialize, so Cahn asked Seevast to put Moniker up for sale.

A number of companies made firm offers for Moniker, Cahn says, including Tucows, Sedo, Millennium, Baker Capital and two other private equity companies in addition to Oversee. Oversee's initial offer was $50M. It ultimately paid $24.1M, according to Cahn.

Cahn says $10M of the price reduction was to help fund a Management Incentive Program (MIP).

Oversee characterizes the MIP as basically an earn out for Moniker employees. Cahn was to identify its participants each year by January 15, but Oversee.net says he didn't.

The MIP covered four areas: Oversee.net's overall performance, TrafficClub (domain monetization), domain sales, and registrar.

**Overall Oversee.net performance**

Is Cahn owed money under the MIP for Oversee.net's overall performance?

Although the financial goals in the MIP for Moniker's segments were determined when the plan was signed, the overall Oversee goal was left as "TBD". The board would determine the goal each year.

Oversee's board never set goals for the MIP. Because of this, Cahn says he should be held to the same EBITDA goals as the rest of senior management. Oversee claims that during negotiations of the MIP it demanded that it retain discretion to set different EBITDA goals under the MIP than for other senior management. The company says that, although it never set those goals for Cahn, doing so would have been an "idle act". The goals would have been for improving financial conditions, but Oversee.net's condition weakened shortly after the acquisition. It also points out that Cahn never consulted with the board or asked it to set the goal.

According to Cahn's filing, in 2009 and 2010 Oversee.net's EBITDA goal for senior management was around $24M each year, and Cahn says it topped this goal slightly each year.

Oversee.net also created an alternative plan for Cahn, under which he received bonuses in 2008 and 2009. It contends that Cahn could receive a bonus under either the MIP or the new plan each year, but not both.

*Cahn says he deserves a bonus of $3.2M for Oversee hitting the EBITDA goals.*

**DomainSponsor and TrafficClub**

DomainSponsor and TrafficClub have an interesting history.

TrafficClub was Moniker's split-test parking system, which rotated traffic amongst many parking companies to figure out which domains earned the most on each system.

Before Oversee.net acquired Moniker there was a spat between the two companies with regards to TrafficClub. DomainSponsor pulled out of the TrafficClub program and reached out to TrafficClub customers to convince them to bring their business to DomainSponsor.

The Oversee.net acquisition surprised some in the industry because of this previous disagreement.

Shortly after buying Moniker, Oversee.net shut down TrafficClub.

At issue is how much (if any) Cahn is owed for his work bringing in new DomainSponsor customers and/or bringing on more revenue from existing ones.

Cahn says he worked hard to bring new clients to DomainSponsor or get existing ones to expand their business. He convinced Mike Berkens to transfer his entire portfolio. He also struck a deal with Jan Barta to advance $3M to him that would be paid off by monetizing domains. He also says he brought on traffic from clients such as Rick Schwartz, Tucows, and Marchex.

Cahn says that Oversee.net didn't track the revenue he brought in to the new combined TrafficClub/DomainSponsor correctly. (It's worth noting that Cahn originally was to run the Moniker division at Oversee, but later was given responsibility for DomainSponsor.)

There's also a disagreement about which customers should be counted toward Cahn's goal, and the court will decide that in this case. Cahn says the incentive plan includes customers that were on DomainSponsor (but not TrafficClub) when he joined Oversee but whose business Cahn grew after arriving. Oversee.net disagrees, saying the plan does not include these customers.

According to Cahn, DomainSponsor/TrafficClub's gross profit was $51.7M in 2009 and $37.3M in 2010. That's an interesting number to benchmark the fall in domain parking during that time.

*Cahn says Oversee owes him $1.6M related to TrafficClub.*

I think this gives a fair overview of what both sides are arguing. But the details are nuanced, and this summary by no means covers every point of fact the two parties will argue in court. It's now up to a judge to decide.


**DOMAIN SERVICES PROFILE: Protrada**

Protrada
* Protrada brings together domains from the largest auction houses
* Analyze, bid, buy, monetize from one platform with one login
* Free 14 day trial
* Click here for details

share    share    share    share

Further Reading:

1. Monte Cahn files third ammended complaint against Oversee.net
2. Monte Cahn Updates Lawsuit Against Oversee.net with New Details
3. Court Grants Oversee.net Motion to Dismiss in Monte Cahn Lawsuit

4 Comments » - Posted in Domain Registrars by Andrew Allemann

## Comments

1. Jim Holleran
   January 19th, 2012 | 11:47 am

   Monte Cahn is a class act, a good friends of mine, and in support of him, I am not going to DomainFest this year!

2. George Kirikos
   January 19th, 2012 | 1:31 pm

   What are the odds this is settled before January 24th? Maybe 50:50??

3. Former DS customer
   January 19th, 2012 | 3:00 pm

   "It ultimately paid $24.1M"

   I'm so happy the skimming of my DomainSponsor revenue helped them buy Moniker.

   "I am not going to DomainFest this year!"

   This might be the last DomainFest as we know it since Oversee is receiving much less revenue from our domains because of the decline in ppc revenue (at least that is what they tell us) and add'l competition from Schilling, Donny and others.

4. Andrew Allemann
   January 19th, 2012 | 3:04 pm

   @ George Kirikos -

   I thought it would be settled by now. Since this is only a small part of the entire case and it's only a judge trial, I wouldn't be surprised if both parties see it through to get an idea how the judge will rule on future aspects of the case.

## Leave a reply

**Your comment will be deleted if:** you use an invalid email address, you use a URL shortener for your web site link, your website link goes to a parked domain name, or your "name" is an advertisement keyword.

|_____| name (required)

|_____| email ( will not be shown ) (required)

|_____| website

[                    ▲]
[                     ]
[                     ]
[                    ▼]

[■■■■■■■■■■■■■■]

☐ **Notify me of followup comments via e-mail**

☐ **Notify me of new posts by email.**

TOP
Copyright 2005-2012 Domain Name Wire | Register | Privacy Policy | Author Disclosures

**EXHIBIT C**

**William Delgado**

| | |
|---|---|
| **From:** | Jeff Navach [jnavach@gmail.com] |
| **Sent:** | Friday, January 20, 2012 10:59 AM |
| **To:** | William Delgado |
| **Subject:** | Fwd: FYI |

---------- Forwarded message ----------
From: **Monte Cahn** <monte@cahn.net>
Date: Thu, Jan 19, 2012 at 9:12 AM
Subject: FYI
To: Jeff Navach <jnavach@gmail.com>

http://domainnamewire.com/2012/01/19/monte-cahn-oversee-trial/

Thanks,

Monte Cahn
monte@cahn.net

1

**PROOF OF SERVICE**

STATE OF CALIFORNIA)
COUNTY OF LOS ANGELES)

      I am employed in the county of Los Angeles State of California.  I am over the age of 18 and not a party to the within action; my business address is: APEX; 1055 W. Seventh Street, Suite 250, Los Angeles, CA 90017.

      On **January 20, 2012**, I served the foregoing document(s) described as: **DEFENDANT OVERSEE.NET'S EX PARTE APPLICATION TO SEAL TRIAL DOCUMENTS FILED BY PLAINTIFF MONTE CAHN; DECLARATION OF WILLIAM A. DELGADO** on the interested parties in this action.

[X]    By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

John L. Barber
Kenneth D. Watnick
Shawna T. Rasul
Sonja Harrington
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, CA 90012
Tel: 213-250-1800
Fax: 213-250-7900

[ ]    **BY FIRST CLASS MAIL** I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    **BY PERSONAL SERVICE** I delivered such envelope by hand to the offices of the addressee(s) listed above.

Executed on **January 20, 2012,** at Los Angeles, California.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

STEVE KAISER
_____
Type or Print Name

_____
Signature