UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | April 19, 2012 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

| | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| N/A | N/A | |

**Proceedings:**   IN CHAMBERS ORDER re MOTION for Partial Summary Judgment as to TrafficClub Customer definition filed by Defendant Oversee.net [283]

**I.   INTRODUCTION**

The instant action concerns Plaintiff Monte Cahn's relationship with his former employer, Defendant Oversee.net ("Oversee").[1]  In 2005, Cahn sold his company Domain Systems, Inc. d/b/a Moniker.com ("Moniker") to Seevast Corporation. In 2007, Oversee acquired Moniker from Seevast, and decided to retain Cahn's services.  Cahn and Oversee entered into a Management Incentive Plan ("MIP")[2] pursuant to which participants including Cahn would have earned large bonus payments if various segments of Moniker (the "Moniker Business Segments") and/or Oversee achieved certain Performance Goals. In short, Cahn alleges that he is owed millions of dollars in payments under the MIP.

On November 16, 2011, Oversee filed a Motion for Summary Judgment as to Cahn's First Claim for Relief (Dkt. No. 63) which the Court denied on December 29, 2011. (Dkt. No. 209).  Cahn's First Claim essentially consists of two key issues: (1) whether the Moniker Business Segments achieved any of the Performance Goals under the MIP; and (2) whether Oversee promised Cahn that his Performance Goal under the MIP would be identical to a target (the "Company Budget") used as part of the process for determining bonuses for Oversee legacy management employees. On January 24 and 25, 2012, the Court held a trial on the second issue. On February 6, 2012, the Court issued its Findings of Facts and Conclusions of Law (Dkt. No. 273) in which it held that: (1) Cahn failed to meet his burden to establish

---

[1] Cahn also named Oversee employees Jeff Kupietzky and Lawrence Ng as Defendants in this action.  The Court refers to all Defendants collectively as "Oversee" throughout this Order.

[2] The MIP is attached as Exhibit D to the Declaration of William A. Delgado in support of Oversee's Motion for Partial Summary Judgment Regarding TrafficClub Business Segment.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | April 19, 2012 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

that Oversee represented that the Oversee Performance Goal under the MIP would be identical to the Company Budget; and (2) the MIP is not reasonably susceptible to Cahn's proposed interpretation that the Oversee Performance Goal was identical to the Company Budget.[3]

The instant Motion concerns a discovery dispute related to the domain monetization business segments of Moniker (TrafficClub) and Oversee (DomainSponsor). The dispute arose out of Oversee's Objections to Magistrate Judge Rosenberg's January 5, 2012 Order providing for discovery of certain DomainSponsor customers. (Dkt. No. 218). Judge Rosenberg ordered Oversee to produce "the responsive information necessary for the Management Incentive Plan ("MIP") calculation for those customers who were (1) existing customers of DomainSponsor as of the date of the MIP acquisition and whose business with DomainSponsor expanded after January 1, 2008," or so-called "Enhanced Customers." Oversee objected on the grounds that, under its interpretation of the MIP, Cahn should not be permitted any discovery regarding such customers. On February 2, 2012, the Court asked the parties to provide further briefing on the issue. (Dkt. No. 272).

On March 19, 2012, Oversee filed the instant Motion for Partial Summary Judgment as to TrafficClub Customer definition.[4] (Dkt. No. 283). Oversee's Motion concerns the narrow issue of whether the appropriate definition of TrafficClub Customers includes those "Enhanced Customers." Oversee argues that it does not, and that Cahn should therefore not be permitted discovery as to "Enhanced Customers."

Oversee's Motion for Partial Summary Judgment is GRANTED for the reasons set forth in this Order.

**II.   LEGAL STANDARD**

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party may satisfy

---

[3] A more detailed account of the factual history and various issues and allegations in the entire case can be found in the Court's Findings of Fact and Conclusions of Law. (Dkt. No. 273). Given the narrow scope of the instant Motion, the Court will not recount all of those issues and allegations in this Order.

[4] On the same day, Cahn filed a Motion for Summary Adjudication in which he argues that Oversee breached the MIP by shutting down TrafficClub. (See Dkt. Nos. 280, 292). That Motion is addressed in a separate Order.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | April 19, 2012 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

its Rule 56(c) burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See id. at 323-24; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes over facts that might affect the outcome of the suit under the governing law, *i.e.*, "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party," will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248.

Under Local Rules 56-2 and 56-3, these triable issues of fact must be identified in the non-moving party's "Statement of Genuine Issues" and supported by "declaration or other written evidence." See also Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 779 (9th Cir. 2010) ("Federal Rule of Civil Procedure 56(e)(2) requires a party to "set out specific facts showing a genuine issue for trial."). If the non-moving party fails to identify the triable issues of fact, the court may treat the moving party's evidence as uncontroverted, so long as the facts are "adequately supported" by the moving party. Local Rule 56-3; see also International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's] task *sua sponte* to search the record for evidence to support the [parties'] claim[s]."); Carmen v. San Francisco United School District, 237 F.3d 1026, 1029 (9th Cir. 2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").

### III. DISCUSSION

Oversee's Motion turns on an extremely straightforward issue of contract interpretation. The relevant provisions of the MIP provide as follows.[5] Schedule A to the MIP defines the "Target Metric" for the TrafficClub Business Segment as "TrafficClub Gross Profit." (Delgado Decl., Ex. D. at OVER002429). Section 15(k) of the MIP defines "Gross Profit" as "total revenues from customers of the TrafficClub Business Segment less all cost of goods sold relating thereto (including revenue share payments)." Section 15(aa) defines "Traffic Club Customers" as follows:

> "TrafficClub Customers" means (i) those existing customers of Moniker's TrafficClub Business Segment as of the adoption date of [the MIP] that were not customers of [Oversee] on the date of [the MIP] or at any time during the twelve (12) months prior to the date of [the MIP], (ii) any new customers of any domain monetization business of

---

[5]It is worth noting at the outset that the MIP is a fully integrated document. (See Delgado Decl., Ex. D. at OVER002423).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | April 19, 2012 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

  Moniker or [Oversee] added after the adoption date of [the MIP] which (A) were not customers of [Oversee] at any time during the twelve (1) months prior to becoming a customer of the domain monetization business of Moniker or [Overseee] and (B) became customers of [Oversee] or Moniker substantially as a result of the efforts of Monte Cahn or another employee of [Oversee] performing services for Moniker and (iii) those customers of Moniker's TrafficClub Business Segment as of the date of this Plan that were also customers of DomainSponsor (such customers in this clause (iii) referred to as, "Shared Customers").

(Delgado Decl., Ex. D. at OVER002428). As Oversee notes, Section 15(aa) includes three categories of TrafficClub Customers: (i) those who were only customers of TrafficClub at the time the MIP was adopted, (ii) new customers of either TrafficClub or DomainSponsor who became customers as a result of the substantial efforts of Cahn or a Moniker employee, and (iii) those who were customers of *both* DomainSponsor and TrafficClub at the time the MIP was adopted, or so-called "shared customers." (Mot. at 3). Oversee argues that Cahn's position that "customers of TrafficClub" also includes a fourth category of "Enhanced Customers," namely, those that were customers only of DomainSponsor at the time the MIP was adopted and whose business Cahn and/or his team expanded, is untenable. (Id.).

  Cahn claims that the Definitions section of the MIP (Section 15) does not support Oversee's argument that, because Section 15(aa) does not include an "Enhanced Customer" category, such customers are not "customers of TrafficClub." (Opp'n at 11). Cahn notes, and Oversee does not dispute that, under the MIP, defined terms are consistently capitalized. (Id.). Cahn next points to the definition of Gross Profits contained in Section 15(k) of the MIP, quoted above. Cahn argues that because that definition refers to "customers of the TrafficClub Business Segment," as opposed to "TrafficClub Customers," it can be inferred that the parties specifically intended *not* to use the defined term TrafficClub Customers. (Id. at 11-12). Cahn further notes that, in Section 15(k), the parties use the defined (and capitalized) term TrafficClub Business Segment, which is defined in Section 15(z) as "that business of Moniker relating to the monetization of internet domain names through rotation of such internet domain names on third party parking platforms." (Id. at 12; Delgado Decl., Ex. D. at OVER002428). Cahn thus argues that Gross Profit as that term is used in Section 15(k) of the MIP actually means the revenues generated from *all* of the customers created from the business of Moniker related to the monetization of internet domain names through rotation of such domain names on third party parking platforms, as opposed to being limited to the three categories of customers spelled out in the definition of TrafficClub Customers set forth in Section 15(aa). (Opp'n at 12).

  Cahn's argument ignores a basic tenet of contract interpretation codified in the California Civil Code; namely, that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Under Cahn's proposed interpretation of the MIP, Section 15(aa) has literally no meaning. To reiterate, Cahn's argument is simply that, because Section 15(k) does not use the exact phrase "TrafficClub Business Segment," but instead uses the phrase "customers of the TrafficClub Business Segment," Section 15(aa)

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | PMC |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | April 19, 2012 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

should be completely disregarded. That argument might have some merit if there was some other provision of the MIP to which Section 15(aa) might apply. There is not. Therefore, Cahn's argument is problematic, especially in light of Civil Code § 1641. Section 15(aa) is not referenced in any other provision of the MIP. Therefore, the *only* provision within the MIP where Section 15(aa) could possibly be relevant is to interpret the phrase "customers of the TrafficClub Business Segment" as that phrase is used in Section 15(k). Accordingly, the Court agrees with Oversee that, under the plain language of the MIP: (1) "customers of the TrafficClub Business Segment" as that phrase is used in Section 15(k) refers to TrafficClub Customers as that term is defined in Section 15(aa); and (2) TrafficClub Customers do not include so-called "Enhanced Customers."[6]

As noted above, the instant Motion arose out of Magistrate Judge Rosenberg's January 5, 2012 Order in which she ordered Oversee to produce "the responsive information necessary for the [MIP] calculation for those customers who were (1) existing customers of DomainSponsor as of the date of the MIP acquisition and whose business with DomainSponsor expanded after January 1, 2008." First, it is worth noting that Judge Rosenberg also found Cahn's interpretation of the MIP "strained." (See Dkt. No. 218 at 3 n.2). Second, in ordering Oversee to produce the discovery at issue, Judge Rosenberg expressly declined to make "any determination that Cahn is or is not entitled to credit under the MIP for such customers," presumably because such an issue of contract interpretation is one for this Court to make. (Id. at 4). In this Order, this Court has made that determination. Cahn is not entitled under the MIP to take credit for such "Enhanced Customers." Therefore, Oversee need not produce any discovery related to those customers.

### IV.   CONCLUSION

Oversee's Motion for Partial Summary Judgment is GRANTED for the reasons set forth in this Order.

---

[6]While the MIP is not a model of drafting clarity, it is clear to the Court that the interpretation of the MIP set forth above is the most reasonable interpretation of the relevant MIP provisions. Furthermore, Cahn has presented no extrinsic evidence from which the Court conclude that the MIP is reasonably susceptible to his proffered interpretation. See Blumenfeld b. R.H. Macy. & Co., 92 Cal. App. 3d 38, 45 (1979) (citing Pac. Gas And Elec. Co. G.W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33 (1968)). Nor has Cahn presented any admissible evidence from which the Court could conclude that the MIP was ever amended to include Enhanced Customers within the definition of TrafficClub Customers. Finally, the Court agrees with Oversee that the bulk of Cahn's Opposition is dedicated to wholly irrelevant accusations and argumentation that suggest that Cahn has grossly misconstrued the limited scope of the issues contained in Oversee's Motion. The Court need not address those arguments.

| | : | |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 11-03800-SVW (AGRx) | Date | April 19, 2012 |
|---|---|---|---|
| Title | Cahn v. Oversee.net, et al. | | |

|  | : |
|---|---|
| Initials of Preparer | PMC |