1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOHN L. BARBER, SB# 160317
2      E-Mail: barber@lbbslaw.com
KENNETH D. WATNICK, SB# 150936
3      E-Mail: watnick@lbbslaw.com
SONJA HARRINGTON, SB# 261053
4      E-Mail: sharrington@lbbslaw.com
221 North Figueroa Street, Suite 1200
5  Los Angeles, California 90012
Telephone: 213.250.1800
6  Facsimile: 213.250.7900

7  Attorneys for MONTE CAHN

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11

| | |
|---|---|
| MONTE CAHN, | CASE NO. CV11-03800 SVW (AGRx) |
| Plaintiff, | |
| vs. | The Honorable Stephen V. Wilson |
| OVERSEE.NET, a California corporation; JEFF KUPIETZKY, an individual; LAWRENCE NG, an individual; and Does 1 through 10, | **MONTE CAHN'S EX PARTE APPLICATION TO PRECLUDE OVERSEE FROM INTRODUCING OR RELYING UPON DATA THAT WAS NOT PRODUCED UNTIL JULY 2, 2012, APPROXIMATELY ONE WEEK BEFORE TRIAL** |
| Defendants. | |
| | Complaint Filed:    May 3, 2011 |
| | Trial Date:          July 10, 2012 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff MONTE CAHN ("Cahn") hereby applies *ex parte* for an order precluding Oversee.net ("Oversee"), its counsel, and/or its expert from introducing or relying upon or introducing evidence that Oversee belatedly produced on July 2, 2012, approximately one week before the second phase of this trial is scheduled to commence.  The evidence is directly responsive to previously propounded discovery requests, should have been produced in response thereto, and the belated, unexcused production materially prejudices Cahn.  Cahn also seeks other appropriate relief to prevent unfair prejudice from Oversee's belated production, including but not limited, to evidentiary sanctions precluding Oversee from challenging or disputing "Applicable Shared Customer Percentages" for TrafficClub Customers that were previously disclosed by Oversee in discovery.

Cahn seeks this relief through an ex parte application because he cannot schedule a noticed motion prior to the July 10, 2012 trial date.  As stated, Cahn will be substantially prejudiced if this application is not heard on an urgent basis.

Good cause exists for the relief requested.  Oversee should have produced this information almost one year ago in response to multiple requests for production. Oversee has no valid basis or justification for its untimely production, which occurred after the parties submitted direct examination declarations, after expert depositions, after the parties completed all of their pretrial filings, and while the parties were completing final preparations for the second phase of trial scheduled to start on July 10, 2012.  If Oversee were permitted to introduce this information, Cahn would be required to revise his direct examination declarations, cross examination outlines, and trial strategy.  Further, Cahn would have to conduct discovery and investigation of the new data and, more than likely, revise and expand the trial exhibit list.

Oversee's July 2nd production is particularly disturbing since, on June 11, 2012, Oversee filed a Motion to Preclude Cahn from arguing that Oversee's

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

2

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1  document production was incomplete.  [Doc No. 328.]  Oversee's June 11th Motion

2  represented that, as of June 11, 2012, "Oversee has produced such documents [as are

3  necessary to determine whether Cahn met the Performance Goals in the MIP for any

4  of the three Determination Periods]."  (P. 1, lns. 1-10 of Motion in Limine No. 1

5  [Doc. No. 328].)  Oversee also represented to this Court that "Cahn has all the

6  documents he needs" and "not only does Cahn have the documents he needs, he also

7  has a roadmap on how the documents can be analyzed for purposes of a MIP

8  calculation."  (P. 1, ln. 14 and p. 5, lns. 4-8 of Motion in Limine No. 1 [Doc. No.

9  328].)  Assuming Oversee's representations in its Motion in Limine were true, it

10  should not now be permitted to rely on the untimely production on July 2, 2012.  If,

11  on the other hand, its representations were untrue, then it should be severely

12  sanctioned.

13        Inexplicably, Oversee and its expert improperly seek to use the belatedly

14  produced data to contradict and dispute other information that Oversee produced in

15  December 2011 and on May 25, 2012 and to contradict the opinions and

16  assumptions in Oversee's own expert's report dated May 25, 2012.  This previously

17  produced information confirmed that Cahn was entitled to 100% of the gross profits

18  associated with certain TrafficClub Customers, that Oversee failed to properly credit

19  Cahn for millions of dollars in TrafficClub Gross Profits, and that Cahn achieved the

20  TrafficClub Performance Goals under the Management Incentive Plan ("MIP").

21        Case law is clear that discovery is meant to eliminate surprise in order to

22  prevent a party from ambushing the opposing party with documents and information

23  that was hidden during discovery.  Here, Oversee seeks to engage in trial by

24  ambush.  Oversee should have produced this information in 2011, not the week

25  before trial.  Permitting introduction of any data that was not timely produced to

26  Cahn during discovery would unfairly prejudice Cahn, who has prepared for trial

27  based on the information produced in discovery.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1   This Application is made pursuant to Rules 26 and 37 of the Federal Rules of

2   Civil Procedure and Rule 403 of the Federal Rules of Evidence.  This Application is

3   based upon this Ex Parte Application, the Memorandum of Points and Authorities,

4   the Declaration of Kenneth D. Watnick (filed under seal), and all pleadings, records

5   and files herein, and such other matters as the Court deems proper.

6   The parties met and conferred on this application on July 3, 2012.  Counsel

7   for Oversee is William Delgado of Willenken Wilson Loh & Delgado, 707 Wilshire

8   Blvd., Suite 3850, Los Angeles, California 90017.  Mr. Delgado's e-mail address is

9   wdelgado@willenken.com.  Mr. Delgado's telephone number is (213) 955-9240,

10  and his facsimile is (213) 955-9250.  Cahn advised Oversee's counsel that he had

11  until 3:00 p.m. on July 6, 2012 to file an Opposition to this Application.

12

13  DATED: July 5, 2012                JOHN L. BARBER
14                                     KENNETH D. WATNICK
                                       SONJA HARRINGTON
15                                     LEWIS BRISBOIS BISGAARD & SMITH LLP

16

17

18                                     By:  ____/s/ Kenneth D. Watnick_____
19                                          Kenneth D. Watnick
                                            Attorneys for MONTE CAHN

20

21

22

23

24

25

26

27

28



1

# TABLE OF CONTENTS

2

**Page**

3

I.    INTRODUCTION ................................................................................ 1

4

II.   BACKGROUND .................................................................................. 1

5

III.  OVERSEE SHOULD BE PRECLUDED FROM PRESENTING DATA THAT WAS NOT TIMELY PRODUCED ........................................ 7

6

7

     A.    Oversee Should Not Be Permitted to Ambush Cahn at Trial. ............... 7

8

     B.    Federal Rule of Civil Procedure 26 and 37 Mandate Preclusion of the Untimely Production that Oversee Disclose All Documents In Support of Their Claim .............................................. 8

9

10

     C.    The Court May Also Act Under Its Inherent Power to Exclude Evidence Not Produced During Discovery In Order to Prevent Prejudice ........................................................................................ 8

11

12

     D.    Admission of The July 2nd Production Should Be Precluded Pursuant to Rule 403 of the Federal Rules of Evidence ................ 14

13

IV.  CONCLUSION .............................................................................. 16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1

# TABLE OF AUTHORITIES

2

## FEDERAL COURT CASES

3   *Campbell Industries v. M/V Gemini,*
        619 F.2d 24 (9th Cir. 1980)....................................................................15

4

5   *DLC Management Corp. v. Town of Hyde Park,*
        163 F.3d 124 (2d Cir. 1998)...................................................................14

6   *Finley v. Marathon Oil Co.,*
        75 F.3d 1225 (7th Cir.1996)...................................................................11

7

8   *Greyhound Lines, Inc. v. Miller,*
        402 F.2d 134 (8th Cir. 1968)....................................................................7

9   *Hoffman v. Construction Protective Servs.,*
        541 F.3d 1175 (9th Cir. 2008).................................................................12

10

11  *Klonoski v. Mahlab,*
        156 F.3d 255 (1st Cir. 1998) ..................................................................10

12  *Luke v. Family Care & Urgent Med. Clinics,*
        2009 U.S. App. LEXIS 6578 (9th Cir. 2009)..........................................13

13

14  *Mawby v. United States,*
        999 F.2d 1252 (8th Cir. 1993)..................................................................7

15  *Newman v. GHS Osteopathic, Inc.,*
        60 F.3d 153 (3d Cir. 1995).......................................................................9

16

17  *Residential Funding Corp. v. DeGeorge Finance Corp.,*
        306 F.3d 99 (2d Cir. 2002) ...............................................................14, 15

18  *Salgado v. General Motors Corp.,*
        150 F.3d 735, 742 and n. 6 (7th Cir. 1998) ............................................10

19

20  *Steinlage v. Mayo Clinic Rochester,*
        235 F.R.D. 668 (8th Cir. 2006) .................................................................9

21  *Thibeault v. Square D Co.,*
        960 F.2d 239 (1st Cir.1992) ....................................................................10

22

23  *Tolerico v. Home Depot,*
        205 F.R.D. 169 (M.D. Pa. 2002) .............................................................11

24  *Torres v. City of L.A.,*
        548 F.3d 1197 (9th Cir. 2008)..................................................................12

25

26  *Trost v. Trek Bicycle Corp.,*
        162 F.3d 1004 (8th Cir. 1998)...................................................................9

27  *Unigard Securities Ins. Co. v. Lakewood Engineering & Manufacturing*
        *Corp.,*
        982 F.2d 363 (9th Cir. 1992)....................................................................15

28

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*United States v. Proctor & Gamble Co.,*
     356 U.S. 677 (1958) ............................................................................7

*Vance v. United States of America,*
     182 F.3d 920 (6th Cir. 1999) .........................................................10

*Wilson v. Bradlees of New England, Inc.,*
     250 F.3d 10 (1st Cir.2001) .............................................................11

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P.26..............................................................................4, 8, 9, 11, 13

Fed. R. Civ. P.37................................................................................5, 6, 7, 9, 10

Fed. R. Civ. P. 34.......................................................................................................9

Fed. R. Evid. 403 ............................................................................................4, 15, 16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Shortly before the close of business on July 2, 2012, Oversee served Cahn with a "supplemental production" of spreadsheets containing new data relating to the TrafficClub Business Segment and a second supplemental expert report by George Strong which relied on this belated production of data.  (Letter dated July 2, 2012 from William Delgado to Kenneth D. Watnick, with enclosures, Exhibit 1 to the Watnick Declaration (this declaration is being filed under seal).)  Oversee's untimely production is in violation of the Federal Rules of Civil Procedure, generally accepted principles about the function of discovery and trial, this Court's Orders, Oversee's express representations to this Court, and principles of fair play. Oversee's untimely production will substantially prejudice Cahn's trial preparation; require him to revise his direct examination declarations, his cross examination outlines, his exhibit list, and trial strategy; and require him to conduct discovery and investigation with respect to Oversee's new arguments.

Oversee should be precluded from introducing or relying upon such untimely evidence at the trial of the second phase of this matter which is scheduled for July 10, 2012.  Oversee should not be permitted to engage in trial by ambush.

## II.   BACKGROUND

This lawsuit arises out of Defendant Oversee.net's ("Oversee") breach of Monte Cahn's ("Cahn") Management Incentive Plan ("MIP").  Under the MIP, Cahn was to be able to earn up to $13 million in additional compensation based on four different business segments: Moniker's TrafficClub, the Moniker Registrar, Moniker's Domain Sales, and Oversee's EBITDA.

With respect to the TrafficClub Business Segment, Cahn was entitled to a bonus based on gross profits that were earned in connection with "TrafficClub Customers."  "TrafficClub Customers" were defined to include (i) those customers

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1                                    1
CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1   of TrafficClub that were not customers of DomainSponsor within twelve months of

2   the December 14, 2007 acquisition date and (ii) new customers of any domain

3   monetization business of Moniker or Oversee that became customers substantially

4   as a result of the efforts of Cahn or someone performing services for Moniker, and

5   (iii) a percentage of revenues (the "Applicable Shared Customer Percentage") from

6   customers of TrafficClub and DomainSponsor as of the December 14, 2007.

7   (Section 15(aa) of the MIP, Exhibit 2 to the Watnick Declaration.)  The "Applicable

8   Shared Customer Percentage" for these shared customers was determined based on

9   the revenues that TrafficClub and DomainSponsor had generated from the

10  customer(s) in November 2007.  (Section 15(a) of the MIP, Exhibit 2 to the Watnick

11  Declaration.)

12          Cahn propounded multiple requests for production in an effort to obtain all

13  relevant information about whether or not Cahn achieved the TrafficClub

14  Performance Goal under the MIP.  For example, in September, 2011, Cahn

15  propounded a First Request for Production which requested, among other things,

16  "all documents relating to CAHN's satisfaction of his performance goals under the

17  MIP."  (Request Nos. 36 and 37 of First Request for Production, Exhibit 3 to the

18  Watnick Declaration.)  On October 10, 2011, after asserting objections, Oversee

19  responded:

20          Oversee responds that it will produce non-privileged documents

21          sufficient to show that the performance goals under the MIP were not

22          achieved.

23  Response to Request Nos. 36 and 37 of Oversee's Response to First Request for

24  Production, Exhibit 4 to the Watnick Declaration.

25          Similarly, in its Second Request for Production, Cahn propounded multiple

26  requests for production of documents relating to the Shared Customers of

27  TrafficClub, including identification of Shared Customers under the MIP and the

28  accounting of revenues for these Shared Customers.  (Request Nos. 4 and 5 of the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

2

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1  Second Request for Production, Exhibit 11 to the Watnick Declaration.)  Oversee

2  agreed to produce such documents.  (Response to Request Nos. 4 and 5 of the

3  Second Request for Production, Exhibit 12 to the Watnick Declaration.)

4          On November 15, 2011, Cahn filed a Joint Stipulation relating to Oversee's

5  failure to produce documents responsive to the First Request for Production,

6  including Request Nos. 36 and 37.  [Doc. No. 57-1.]  Oversee vigorously opposed

7  Cahn's motion and argued, among other things, that "noticeably absent from Cahn's

8  argument is any explanation as to why the documents already in Plaintiff's

9  possession are insufficient to calculate the sole issue in dispute – namely whether

10  Cahn met his performance goals under the MIP."  (P. 15, lns. 6-8 of Joint

11  Stipulation.  [Doc. No. 57-1.])  According to Oversee, "Cahn has in his possession

12  exactly what he needs to calculate performance under the MIP."  (*Id.*, at p. 16, lns.

13  4-5.)  In support of this contention, Oversee's counsel submitted a declaration which

14  claimed that, among other things, on October 14 or October 19, 2011, Oversee

15  produced:

16          Three spreadsheets related to TrafficClub, which, together, reflect (1)

17          the shares attributable to each customer of TrafficClub; (2) the

18          identities of the customers attributable to TrafficClub; and (3)

19          workpapers reflecting the gross profits, including revenues, costs and

20          commissions, associated with TrafficClub-legacy customers for 2008-

21          2010.

22  Paragraph 6(p) of Declaration of William Delgado in support of Oversee's

23  Opposition to Motion to Compel [Doc. No. 57-3].

24          Magistrate Rosenberg granted, in part, Cahn's motion on December 6, 2011.

25  [Doc. No. 106.]  Pursuant to the Court's Order, Oversee produced additional

26  information, including another spreadsheet that purported to identify TrafficClub

27  Customers and customer identification numbers (OIDs).  (Paragraph 6(x) of

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

3

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1  Declaration of William Delgado in support of Motion in Limine No. 1 [Doc. No.

2  329].)

3      On May 25, 2012, Oversee produced two new spreadsheets of voluminous

4  data relating to TrafficClub as well as Supplemental Expert Report by Oversee's

5  expert, George Strong.  (Letter dated May 25, 2012 from William Delgado to

6  Kenneth D. Watnick, Exhibit 5 to the Watnick Declaration.)  The May 2012

7  spreadsheets contained previously undisclosed customer identification numbers

8  (OIDs) for TrafficClub Customers, a spreadsheet listing numerous TrafficClub

9  customers and previously undisclosed revenue information for these TrafficClub

10  Customers, and a spreadsheet with revenue information for these TrafficClub

11  Customers.  (Excerpts from these spreadsheets are attached as Exhibits 6 and 7 to

12  the Watnick Declaration.)

13      Mr. Strong's concurrently produced supplemental expert report claimed to

14  rely on the new spreadsheets contained in the May 25th production as well as the

15  TrafficClub spreadsheet that had been produced in December 2011 (the "December

16  TrafficClub spreadsheet").  Mr. Strong's supplemental report claimed that the

17  December TrafficClub Spreadsheet  was the "best contemporaneous effort to

18  identify Shared Customers," as defined in the MIP.  (P. 5, paragraph 16 of Strong

19  Report, Exhibit 8 to the Watnick Declaration.)  Mr. Strong also stated that "[f]or the

20  Applicable Shared Customer Percentage, I rely on percentages calculated by Linda

21  Kim."  (P. 5, Paragraph 17 of Strong's Report, Exhibit 8 to the Watnick

22  Declaration.)  (According to Oversee and Mr. Strong, Ms. Kim apparently prepared

23  the December TrafficClub spreadsheet.)

24      Mr. Strong's supplemental report incorporated the percentages from the

25  December TrafficClub Spreadsheet into a column marked "Applicable Shared

26  Customer Percentage" on a Chart entitled "Summary of TrafficClub Customer

27  Accounts, 2008-2010" which was attached as Exhibit 9 to the Strong Supplemental

28  Report.  (Exhibit 8 to the Watnick Declaration (Bate Stamp Nos. 118-154.)  This

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

4

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1   chart confirmed that "TrafficClub Gross Profit" for each TrafficClub Customer  was

2   calculated by multiplying the percentages in the column entitled "Applicable Shared

3   Customer" and the column entitled "Gross Profit" for 2008, 2009, and 2010.  In

4   other words, if a TrafficClub Customer generated $100 in gross profits and was

5   identified on Exhibit 9 to the Strong Supplemental Report as a "100%" TrafficClub

6   Customer, Mr. Strong's expert report would credit Cahn $100 in gross profit

7   towards the TrafficClub Performance Goal in the MIP.  If the Applicable Share

8   Percentage was 50%, Mr. Cahn would receive credit for $50 in gross profit towards

9   the TrafficClub Performance Goal in the MIP.

10        After Oversee's May 25th supplemental production and service of Mr.

11  Strong's supplemental report, Oversee filed a motion in limine which requested that

12  the Court preclude Cahn from arguing that "Oversee's production of financial

13  documents was deficient or prejudicial, particularly with respect to Cahn's ability to

14  carry his burden of proof of his first claim for relief."  (P. i, lns. 5-7 of Notice of

15  Motion and Motion in Limine No. 1 [Doc. No. 328].)  Oversee claimed that the

16  Court should grant the motion pursuant to FRE 402 and 403 and FRCP 37 because,

17  among other things, "Oversee timely produced the relevant financial documents."

18  (*Id.* at, p. i, lns. 8-10.)  Oversee claimed that it had produced all the documents

19  necessary to complete an analysis of whether or not Cahn met the Performance

20  Goals in the MIP and that "Cahn has all the documents he needs"  (*Id.*, at p. 1, lns.

21  4-15.)  Oversee represented to this Court that "[a]ny evidence or argument by Cahn

22  that Oversee failed to produce documents would be both irrelevant and a waste of

23  time."  (*Id.*, at p. 4, lns. 20-24.)

24        After Oversee served Strong's supplemental report and additional data on

25  May 25, 2012, Cahn, his counsel, and his expert began reviewing the new

26  TrafficClub information.  Based upon this review, Cahn identified evidence that

27  reflects that Oversee and its expert, Mr. Strong, did not credit Cahn for millions of

28  dollars in gross profits associated with customers who were identified as "100%"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1                                    5
CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1   TrafficClub Customers on Oversee's December Spreadsheet and in Exhibit 9 to Mr.

2   Strong's Supplemental Report.

3        During his deposition on June 19, 2012, Mr. Strong admitted that Cahn had

4   not received full credit for gross profits associated with customers who were

5   identified as 100% TrafficClub Customers on Exhibit 9 to his report.  For example,

6   during deposition, Mr. Strong confirmed that Mr. Cahn was entitled to credit under

7   the TrafficClub Business segment for one hundred percent (100%) of the gross

8   profit associated with a TrafficClub Customer named "Nokta."  (Deposition of

9   Strong, p. 96, lns. 14-18, Exhibit 9 to the Watnick Declaration.)  Notwithstanding,

10  Mr. Strong failed to credit Cahn for over $108,920 in gross profit associated with

11  this 100% TrafficClub Customer.  (Strong Deposition, p. 139, ln. 13-p. 140, ln. 9,

12  Exhibit 9 to the Watnick Declaration.)  Mr. Strong credited Cahn with "nothing"

13  with respect to this $108,920 in gross profit.  (*Id.*)

14        On June 22, 2012, Cahn and his expert, David Callahan, submitted direct

15  examination declarations which summarized the missing and inaccurate information

16  in Mr. Strong's supplemental report.  (Declarations of David Callahan and Monte

17  Cahn filed on June 22, 2012 [See, Do. No. 338].)  Pursuant to this Court's Order, the

18  parties filed their joint exhibit list, witness lists, and memorandum of contentions on

19  June 22, 2012 [Doc. Nos. 337, 339, 340, 342, and 343] and trial briefs and

20  objections to evidence on June 29, 2012 [Doc. Nos. 352 and 357].  Thus, all pre-trial

21  filings associated with the July 10th trial were completed on or before June 29, 2012.

22        Shortly before the close of business on July 2, 2012, Oversee produced new

23  spreadsheets of data relating to some, but not all, of the Applicable Shared Customer

24  Percentages for the TrafficClub Customers on the December TrafficClub

25  Spreadsheet and Exhibit 9 to Strong's May 25, 2012 Supplemental Report.  (Letter

26  dated July 2, 2012 from William Delgado to Kenneth D. Watnick, Exhibit 1 to the

27  Watnick Declaration.)  Oversee also produced a new report by Mr. Strong, with new

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

6

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1  calculations of Applicable Shared Customer Percentage based on this new data.

2  (*Id.*)

3        The production of this material at the last moment reflected Oversee's belated

4  recognition that <u>its own expert's report and analysis</u> demonstrated that Cahn met the

5  TrafficClub Performance Goal.  To avoid this conclusion, Oversee has new data,

6  and its expert has revised his conclusions.

7        Cahn immediately objected to this belated production.  (E-mails dated July 2,

8  2012, Exhibit 10 to the Watnick Declaration.)  However, Oversee refused to

9  withdraw its July 2nd production and threatened to seek sanctions against Cahn and

10  his counsel for filing a "baseless motion."  (E-mail dated July 2, 2012 from William

11  Delgado to Kenneth D. Watnick, Exhibit 10 to the Watnick Declaration.)  The

12  parties, then, met and conferred on this issue by telephone on July 3, 2012.

13  (Paragraph 15 of the Watnick Declaration.)

14

15  **III.   OVERSEE SHOULD BE PRECLUDED FROM PRESENTING DATA**

16  **THAT WAS NOT TIMELY PRODUCED**

17        **A.   Oversee Should Not Be Permitted to Ambush Cahn at Trial.**

18        Case law is clear that discovery is meant to eliminate surprise in order to

19  prevent a party from ambushing the opposing party with documents and information

20  that was hidden during discovery.  "The purpose of our modern discovery procedure

21  is to narrow the issues, to eliminate surprise, and to achieve substantial justice."

22  (*Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993), *citing Greyhound*

23  *Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968).)  The rules are meant to

24  ensure that the right inquiries are made and parties can obtain "mutual knowledge of

25  all the relevant facts gathered by both parties."  (*Mawby*, 999 F.2d at 1254.)  Full

26  discovery is intended to "make a trial less a game of blindman's bluff and more a

27  fair contest with the basic issues and facts disclosed to the fullest practicable

28  extent."  (*United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682 (1958).)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

7

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1    Here, Oversee's belated production on July 2, 2012 is a classic example of

2 trial by ambush.  Cahn proceeded through discovery and prepared for a July 10th

3 trial based on the information that Oversee produced in discovery in response to

4 requests for production of documents and information relating to, among other

5 things, whether Cahn achieved the performance goals under the MIP, the

6 identification of Shared Customer, and the accounting of Oversee's and

7 TrafficClub's share of the revenues for these Shared Customers.  (Response to

8 Request Nos. 36 and 37 of Oversee's Response to First Request for Production and

9 Response to Request Nos. 4 and 5 of the Second Request for Production, Exhibits 4

10 and 12 to the Watnick Declaration.)  Oversee's untimely production contradicts its

11 repeated representations that its production was complete.  (See, for example, P. 15,

12 lns. 6-8 of Joint Stipulation.  [Doc. No. 57-1]; p. i, lns. 5-10 and p. 1, lns. 4-15 of

13 Notice of Motion and Motion in Limine No. 1 [Doc. No. 328].)

14    Oversee cannot seek to prejudice Cahn's trial preparation by ambushing Cahn

15 with an incomplete and questionable production on the eve of trial, on July 2, 2012.

16 The Court should preclude Oversee, its counsel, and its expert from referencing or

17 relying on this untimely July 2nd production.

18    **B.    Federal Rule of Civil Procedure 26 and 37 Mandate Preclusion of**

19       **the Untimely Production that Oversee Disclose All Documents In**

20       **Support of Their Claim.**

21    Oversee's belated production, after discovery closed and after the parties

22 completed all of their pretrial submissions, is in flagrant disregard of its obligations

23 under the Federal Rules of Civil Procedure.  This Court should preclude Oversee, its

24 counsel, and its expert from referencing or relying upon this untimely production

25 pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure.

26    Under FRCP 26(e)(1) a party has an ongoing obligation to timely supplement

27 or correct its disclosure or response:

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

8

1    A party who has made a disclosure under Rule 26(a) — or

2    who has responded to an interrogatory, request for

3    production, or request for admission — must supplement

4    or correct its disclosure or response:

5        (A) in a timely manner if the party learns that in

6        some material respect the disclosure or response is

7        incomplete or incorrect, and if the additional or

8        corrective information has not otherwise been made

9        known to the other parties during the discovery

10       process or in writing. . .

11   FRCP 26(e)(1).

12   Under Rule 37(c)(1) the Court may impose the sanction of exclusion of

13   evidence at trial for the failure to comply with Rule 26(a) or 26(e) or Rule 34 of the

14   FRCP.

15   If a party fails to provide information or identify a witness as required by Rule 26(a)

16   or 26(e), the party is not allowed to use that information or witness to supply

17   evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

18   justified or is harmless.

19   FRCP 37(c)(1).

20   Courts have held that "pursuant to Rule 37(c)(1), the court will sanction a

21   party that 'without substantial justification' fails to make the mandatory disclosures

22   required by Rule 26(a) or to supplement those disclosures as required by Rule

23   26(e)." (*Steinlage v. Mayo Clinic Rochester,* 235 F.R.D. 668, 671 (8th Cir. 2006).)

24   "Unless the court finds a party's failure to be harmless, a party will not be permitted

25   to use such evidence at trial. (*Id., citing* FRCP 37(c)(1); *Trost v. Trek Bicycle Corp.,*

26   162 F.3d 1004, 1008 (8th Cir. 1998).)

27   The enforcement power of Rule 37(c)(1) is automatic. (*See, e.g., Newman v.

28   GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in

1   mandatory terms and 'is designed to provide a strong inducement for disclosure of

2   Rule 26(a) material.' "); *Vance v. United States of America*, 182 F.3d 920 (6th Cir.

3   1999) ("It is well-established that Fed.R.Civ.P. 37(c)(1), enacted in 1993, mandates

4   that a trial court punish a party for discovery violations in connection with Rule 26

5   unless the violation was harmless or is substantially justified."); *Salgado v. General*

6   *Motors Corp.,* 150 F.3d 735, 742 and n. 6 (7th Cir. 1998) (holding that Rule

7   37(c)(1) provides enforcement mechanism for violations of Rule 26(a) and that "the

8   district court is not required to fire a warning shot"); *Klonoski v. Mahlab*, 156 F.3d

9   255, 269 (1st Cir. 1998) ("[T]he new rule [37(c)(1)] clearly contemplates stricter

10  adherence to discovery requirements, and harsher sanctions for breaches of this rule,

11  and the required sanction in the ordinary case is mandatory preclusion.").)  FRCP

12  37(c) advisory committee notes emphasize that the "automatic sanction" of

13  exclusion "provides a strong inducement for disclosure of material that the

14  disclosing party would expect to use as evidence."  (FRCP 37(c) Advisory

15  Committee Note (1993).)

16       Moreover, FRCP 37(c)(1) does not require a finding of bad faith or callous

17  disregard of the discovery rules to be enforced.  Specifically, Rule 37(c)(1) only

18  requires the nondisclosure to be "without substantial justification" and harmful, but

19  not bad faith.  (*See Southern States Rack & Fixture, Inc., Sherwin-Williams Co.,* 318

20  F.3d 592, 596 (9th Cir. 2003).)  In this regard, the 9th Circuit in *Southern States,*

21  *supra*, held as follows:

22          …[E]xcluding evidence only when the nondisclosing party

23          acted in bad faith would undermine the basic purpose of

24          Rule 37(c)(1):  preventing surprise and prejudice to the

25          opposing party, *see Thibeault v. Square D Co.,* 960 F.2d

26          239, 246 (1st Cir.1992) (noting that "the focus of a

27          preclusion inquiry is mainly upon surprise and prejudice,

28          including the opponent's ability to palliate the ill effects

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

10

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1  stemming from the late disclosure").   And, requiring

2  proof that the nondisclosing party acted in bad faith would

3  improperly shift the burden of proof away from that party

4  on the exclusion issue.   *See Wilson v. Bradlees of New*

5  *England, Inc*., 250 F.3d 10, 21 (1st Cir.2001) ("[I]t is the

6  obligation of the party facing sanctions for belated

7  disclosure to show that its failure to comply with [Rule

8  37(c)(1)] was either justified or harmless ...."); *accord*

9  *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th

10  Cir.1996).

11  *Id.* at 596.

12      The party who fails to comply with FRCP 26 bears the burden of proving

13  "substantial justification" for the nondisclosures or that it was "harmless."

14  Substantial justification" for the failure to make a required disclosure has been

15  regarded as "justification to a degree that could satisfy a reasonable person that

16  parties could differ as to whether the party was required to comply with the

17  disclosure request." "  (*Tolerico v. Home Depot*, 205 F.R.D. 169, 175-176 (M.D. Pa.

18  2002).)

19      Oversee has no valid justification for its untimely production of data that

20  should have been produced almost a year ago.  Oversee was always in possession,

21  custody, and control of this purported data.  Cahn spent substantial time and

22  resources seeking to obtain information about whether Cahn achieved the

23  TrafficClub Performance Goal, Oversee's identification of "Shared Customers", and

24  Oversee's calculation of Cahn's credit for these "Shared Customers" under the MIP.

25  (Request Nos. 37 and 38 of the First Request for Production and Request Nos. 4 and

26  5 of the Second Request for Production, Exhibits 3, 4, 11, and 12 to the Watnick

27  Declaration.)  When Cahn raised concerns about whether Oversee's production was

28  complete, Oversee claimed that it produced all relevant information relating to the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

11

1  TrafficClub Business Segment.  (Paragraph 6(p) of Declaration of William Delgado

2  in support of Oversee's Opposition to Motion to Compel [Doc. No. 57-3]; Paragraph

3  6(x) of Declaration of William Delgado in support of Motion in Limine No. 1 [Doc.

4  No. 329].)  Oversee repeatedly represented, including public filings in November

5  2011and June 2012, that it had produced all documents necessary to complete the

6  analyses of whether or not Cahn achieved the Performance Goals in the MIP.  (P.

7  15, lns. 6-8 of Joint Stipulation.  [Doc. No. 57-1]; paragraph 6(p) of the Delgado

8  Declaration [Doc. No. 57-3]; p. i, lns. 5-10 and p. 1, lns. 4-15 of Notice of Motion

9  and Motion in Limine No. 1 [Doc. No. 328].)  Indeed, Oversee recently filed a

10 Motion in Limine which claimed that it would be "irrelevant and a waste of time" to

11 even discuss, at the July 10th trial, whether Oversee's production was incomplete.

12 (P. 4, lns. 20-24 of Motion in Limine No. 1 [Doc. No. 328].)  Oversee should be

13 bound by its prior representations or sanctioned for its non-disclosure and

14 misrepresentations.

15      With respect to the issue of harm, reopening discovery or changing the trial

16 date can constitute harm pursuant to Rule 37(c)(1).  (*Hoffman v. Constr. Protective*

17 *Servs.*, 541 F.3d 1175, 1180 (9th Cir. 2008).)  "Unfair surprise" or unnecessary

18 expenditure can also constitute harm.  (*Torres v. City of L.A.*, 548 F.3d 1197, 1213

19 (9th Cir. 2008).)

20      Here, the timing of Oversee's production is obviously prejudicial and

21 amounts to unfair surprise.  Cahn prepared for trial based on the evidence produced

22 in discovery in 2011 and based on Oversee's express representations of full

23 compliance with its discovery obligations.  Oversee and its expert now seek to

24 fundamentally change their opinions and conclusions (which was done only after

25 Cahn showed them the fault and error in analysis of the data.)  If Oversee were

26 permitted to introduce and rely on the untimely July 2nd production, Cahn would

27 have to revise his direct examination declarations, his cross examination outlines,

28 his trial strategy; and conduct further investigation with respect to the substance of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1                                    12

CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1    the untimely production.  These tasks cannot possibly accomplished before the

2    second phase of trial is scheduled to commence on July 10, 2012.

3          If Oversee were permitted to rely on the belatedly produced information,

4    Cahn would be subjected to trial by ambush.  Alternatively, if the Court reopened

5    discovery, Cahn would be prejudiced in that his trial would be continued; he would

6    incur additional attorney's fees for further investigation and trial preparation; he

7    would incur additional expert costs in securing additional expert analysis; and he

8    would be subject to further delay in the payment of monies that were owed over two

9    years ago.

10         Oversee has erroneously claimed that, pursuant to Rule 26, it had the right to

11   belatedly produce information and a revised expert report in an effort to respond to

12   Cahn's challenges to Oversee's May 2012 expert report.  (Second paragraph of E-

13   mail dated July 2, 2012 at 8:45 p.m. from William Delgado to Kenneth D. Watnick,

14   Exhibit 10 to the Watnick Declaration.)  Oversee's desire to respond to Cahn's

15   challenges is not a valid justification for its untimely disclosure of evidence that has

16   been exclusively in Oversee's control for over four years.  The Ninth Circuit has

17   confirmed that "Rule 26(e) [of the FRCP] creates a 'duty to supplement,' not a right.

18   Nor does Rule 26(e) create a loophole through which a party who submits partial

19   expert witness disclosures, or who wishes to revise her disclosures in light of her

20   opponent's challenges to the analysis and conclusions therein, can add to them to her

21   advantage after the court's deadline for doing so has passed.  Rather,

22   '[s]upplementation under the Rules means correcting inaccuracies, or filling the

23   interstices of an incomplete report based on information that was not available at the

24   time of the initial disclosure.'"  (*Luke v. Family Care & Urgent Med. Clinics*, 2009

25   U.S. App. LEXIS 6578, at *6-7 (9th Cir. 2009).)  Here, Oversee always possessed

26   the information that it belatedly produced.  Oversee cannot justify its untimely

27   production based on Rule 26(e) or its desire to respond to Cahn's challenges.

28         Oversee apparently produced data on July 2, 2012 as part of a bad faith effort



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1

13

1   to contradict its prior representations about "Applicable Customer Percentage" and

2   the comprehensiveness of its production.  Oversee could not hold this incomplete

3   and inaccurate data until the eve of trial, pending its evaluation of the progress of

4   litigation.  Oversee could not produce such data in a manner that actually prejudiced

5   Cahn's trial preparation and ability to meaningfully evaluate the data.  Oversee and

6   its expert should be precluded from referencing or relying upon this untimely

7   production of data at the July 10th trial.[1]

8   **C.    The Court May Also Act Under Its Inherent Power to Exclude**

9   **Evidence Not Produced During Discovery In Order to Prevent**

10  **Prejudice.**

11          The Court may act under its "inherent powers" to manage its affairs in

12  precluding the introduction of evidence not disclosed during discovery.  "Even in

13  the absence of a discovery order, a court may impose sanctions on a party for

14  misconduct in discovery under its inherent power to manage its own affairs."

15  (*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-107 (2d Cir.

16  2002).)  "The court's inherent power derives from the sage acknowledgment that

17  courts are 'vested, by their very creation, with power to impose silence, respect, and

18  decorum, in their presence, and submission to their lawful mandates. . .' [Citations.]

19  Moreover, the fact that there may be a statute or rule which provides a mechanism

20  for imposing sanctions of a particular variety for a specific type of abuse does not

21  limit a court's inherent power to fashion sanctions, even in situations similar or

22  identical to those contemplated by the statute or rule. " (*DLC Mgmt. Corp. v. Town*

23  *of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).)

24          The Ninth Circuit has affirmed that "Courts are invested with inherent powers

25

26  _____

27  [1]    Also, Oversee's belated production raises serious questions about the integrity of Oversee's record keeping on TrafficClub Customers and the comprehensiveness of

28  its search for documents in response to all of Cahn's discovery requests.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1                                    14
CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

1    that are 'governed not by rule or statute but by the control necessarily vested in
2    courts to manage their own affairs so as to achieve the orderly and expeditious
3    disposition of cases.'" (*Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg.*
4    *Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).)  Additionally, "this circuit has recognized
5    as part of a district court's inherent powers the 'broad discretion to make discovery
6    and evidentiary rulings conducive to the conduct of a fair and orderly trial.  Within
7    this discretion lies the power . . . to exclude testimony of witnesses whose use at
8    trial . . . would unfairly prejudice an opposing party.'  *Campbell Indus. v. M/V*
9    *Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (citations omitted).  The district court
10   therefore possessed the legal right to exercise its discretion in deciding whether to
11   exclude Unigard's evidence." (*Id.*)

12        In *Residential Funding Corp. v. DeGeorge Fin. Corp.,* Plaintiff failed to
13   produce e-mails, which Defendant had requested numerous times, in time for trial.
14   The Court held that "[e]ven in the absence of a discovery order, a court may impose
15   sanctions on a party for misconduct in discovery under its inherent power to manage
16   its own affairs." (*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99,
17   106-107 (2d Cir. 2002).)  And "where, as here, the nature of the alleged breach of a
18   discovery obligation is the non-production of evidence, a district court has broad
19   discretion in fashioning an appropriate sanction. . ." (*Id.* at 107.)

20        Here, as in *Residential Funding*, Cahn has made repeated requests for
21   documents and evidence relating to Oversee's financial calculations used in support
22   of its contention that Cahn did not meet his performance goals.  (Request Nos. 37
23   and 38 of the First Request for Production and Request Nos. 4 and 5 of the Second
24   Request for Production, Exhibits 3, 4, 11, and 12 to the Watnick Declaration.)  By
25   its own admission, Oversee failed to timely produce all such data and seeks, by its
26   July 2nd production, to supplement the record.  Oversee should not be permitted to
27   misuse the discovery process by sandbagging Cahn during discovery and ambushing
28   Cahn with new information on the eve of trial.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4813-2379-0352.1
15
CAHN'S EX PARTE TO PRECLUDE EVIDENCE NOT TIMELY PRODUCED

### D.   Admission of The July 2nd Production Should Be Precluded Pursuant to Rule 403 of the Federal Rules of Evidence

Rule 403 of the Federal Rules of Evidence precludes admission of any evidence where the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  For the reasons discussed above, admission of the untimely produced evidence is a clear example of such unfair prejudice.

### IV.   CONCLUSION

The Court should preclude Oversee, its counsel, and its expert from referencing or relying upon the data contained in the spreadsheets that were produced on July 2, 2012.  Further, the Court would be within its discretion in granting additional relief, including but not limited to, precluding Oversee from challenging the Applicable Shared Customer Percentages that are identified in Mr. Strong's May 25 Expert Report.

DATED: July 5, 2012                LEWIS BRISBOIS BISGAARD & SMITH LLP


By:        /s/ Kenneth D. Watnick
           Kenneth D. Watnick
           Attorneys for MONTE CAHN

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

CERTIFICATE OF SERVICE

2       I hereby certify that this document(s) filed through the ECF system will be

3   sent electronically to the registered participants as identified on the Notice of

4   Electronic Filing (NEF).

5

    DATED: July 5, 2012                KENNETH D. WATNICK
6                                      LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8

9                                      By:      /s/ Kenneth D. Watnick

10                                              Kenneth D. Watnick
                                                Attorneys for Plaintiff Monte Cahn
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW